# EXHIBIT 1

# EXHIBIT 1

*F.D.*

1  DAVID B. CASSELMAN (SBN 81657)
   I.DONALD WEISSMAN (SBN 67980)
2  WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
   5567 Reseda Boulevard, Suite 330
3  Post Office Box 7033
   Tarzana, California 91357-7033
4  Telephone:   (818) 705-6800 • (323) 872-0995
   Facsimile:   (818) 705-8147

5

6  Attorneys for Plaintiffs
   LYDIA HARRIS and NEW IMAGE MEDIA
7  CORPORATION

**FILED**
LOS ANGELES SUPERIOR COURT

MAR 0 9 2005

JOHN A. CLARKE, CLERK

By: _____
   R. CASTLE

8          SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                  FOR THE COUNTY OF LOS ANGELES

10

11 LYDIA HARRIS, LIFESTYLE            )  CASE NO. BC 268857
   RECORDS, INC., AND NEW IMAGE       )
12 MEDIA CORP.,                       )
                                      )  Case Assigned to:
13          Plaintiffs,               )  Judge Ronald M. Sohigian – Dept. 41
                                      )
14      v.                            )  [Complaint Filed: February 26, 2002]
                                      )
15 KEVIN GILLIAM AKA BATTLECAT;       )
   MARION H. KNIGHT AKA SUGE          )
16 KNIGHT; DEATH ROW RECORDS;         )      JUDGMENT
   THA ROW, INC.; DAVID E. KENNER;    )
17 DAVID E. KENNER PROFESSIONAL       )
   LAW CORPORATION; DAVID E.          )
18 KENNER, A PROFESSIONAL             )
   CORPORATION; THE DAVID E.          )
19 KENNER TRUST; INTERSCOPE           )
   RECORDS; JIMMY IOVINE; JOHN T.     )
20 MCCLAIN, JR.; A&M RECORDS; ET      )
   AL.,                               )
21                                    )
           Defendants.                )
22

23

24      Upon the Order striking the Answer of MARION H. KNIGHT, aka SUGE KNIGHT, and

25 DEATH ROW RECORDS, INC., ~~AKA DEATH ROW RECORDS L.L.C.~~, ~~AKA THA ROW, INC.~~,

26 to Plaintiffs' Complaint and entering default thereon, consideration of the Plaintiffs' Application

27 for Default Prove-up Damages and the supporting declarations of Lydia Harris, I.Donald

28 Weissman, Michael Harris and Phil Ames, and good cause appearing therefor,

11

1      IT IS HEREBY ADJUDGED that judgment is entered in favor of plaintiffs, LYDIA

2  HARRIS and NEW IMAGE MEDIA CORP., and against defendants, MARION H. KNIGHT

3  aka SUGE KNIGHT, DEATH ROW RECORDS, INC., ~~the DEATH ROW RECORDS, LLC.~~,

4  ~~and THA ROW, INC.~~, in the sum of $ 45,000,000 for economic damages,

5  $ 2,000,000 for non-economic damages, $ 60,000,000 for punitive damages.

6

7      Further, PLAINTIFFS to recover costs pursuant to a memorandum of costs to be filed

8  pursuant to the statute *in the amount of $* _____

9

10  Dated: 3-9-05 _____ *Rouoel M Schigian*

11          JUDGE OF THE LOS ANGELES SUPERIOR COURT

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
P.O. BOX 7033
TANZANA, CALIFORNIA #1357-7033

2

# EXHIBIT 2

# EXHIBIT 2

1   DAVID R. WEINSTEIN (State Bar No. 082881)
    SHARON Z. WEISS (State Bar No. 169446)
2   ANDY S. KONG (State Bar No. 243933)
    CHRISTINA ERICKSON (State Bar No. 231570)
3   RICHARDSON & PATEL, LLP
    10900 Wilshire Blvd., Suite 500
4   Los Angeles, California  90024
    Telephone (310) 208-1182
5   Facsimile (310) 208-1154

6   Attorneys for Weinstein, Weiss &
    Ordubegian, LLP and Richardson & Patel, LLP

7

8                   UNITED STATES BANKRUPTCY COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                      SAN FERNANDO DIVISION

11

12   In re                          )   Case No. 01:96-bk-15521-GM
                                    )        [Chapter 7]
13   LYDIA HARRIS,                   )
                                    )
14          Debtor.                  )   NOTICE OF LIEN
                                    )
15                                   )
     ──────────────────────────────  )   [NO HEARING REQUIRED]
16

17   TO:     EACH PARTY AND TO THEIR RESPECTIVE COUNSELS OF RECORD

18           AND TO ALL OTHER PERSONS OR ENTITIES INTERESTED IN THIS

19           ACTION:

20           YOU ARE HEREBY NOTIFIED that Weinstein Weiss & Ordubegian, LLP

21   and Richardson & Patel, LLP (collectively "Counsel") were formerly attorneys of

22   record for debtor Lydia Harris in this case.  Counsel have now been relieved as

23   attorneys of record by court order dated December 10, 2008, ECF Doc. No. 129.

24           YOU ARE FURTHER NOTIFIED that, in accordance with the terms of a

25   written fee agreement, Counsel has and claims a lien ahead of all others on Lydia

26   Harris's causes of action asserted in this action, and on any judgment

27   ///

28   ///

h:\h\c\1640.099_LH_Main_Notice of Lien.wpd
1/23/09 (12:01 pm) jt

13

1  rendered in favor of Lydia Harris in this action, to secure payment for legal services

2  rendered and costs and expenses advanced on her behalf.

3

4  DATED: January 23, 2009          WEINSTEIN, WEISS & ORDUBEGIAN,
                                    LLP and RICHARDSON & PATEL, LLP
5

6                                   By _____
7                                       SHARON Z. WEISS
                                    Attorneys for Weinstein Weiss &
8                                   Ordubegian, LLP and Richardson &
                                    Patel, LLP
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

h:\h\c\1640.099_LH_Main_Notice of Lien.wpd
1/23/09 (12:01 pm) jj                          -2-

| In re: Lydia Harris | CHAPTER 7 |
|---|---|
| Debtor(s). | CASE NUMBER: 01-96-bk-15521 |

NOTE: When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
Richardson & Patel, LLP
10900 Wilshire Blvd., Ste. 500
Los Angeles, CA 90024
The foregoing document described <u>NOTICE OF LIEN</u> will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On <u>January 23, 2009</u> I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On <u>January 23, 2009</u> I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

☒ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| January 23, 2009 | CHRISTOPHER M. WESTMAN | *[signature]* |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                                      F 9013-3.1

15

ATTACHMENT TO PROOF OF SERVICE OF DOCUMENT

I.    **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTONIC
FILING ("NEF")**

U.S. TRUSTEE
U.S. Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

II.    **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**

A. **Persons or Entities Served by U.S. Mail:**

Party or Role
Lydia Harris
14019 Southwest Fwy Ste 599
Sugar Land TX  77478-3563

Counsel for Debtor Marion "Suge"
Knight, Jr.
Daniel J. McCarthy
Hill, Farrer & Burrill LLP
One California Plaza
300 South Grand Ave., 37th Floor
Los Angeles, CA  90071-3147

Counsel for Debtor Death Row
Records, Inc.
Robert S. Altagen
Law Offices of Robert S. Altagen,
Inc.
A Professional Corporation
1111 Corporate Center Drive, Suite
201
Monterey Park, CA  91754

Counsel for Helen Frazer, Trustee
Patrick K. McClellen
Law Offices of Patrick K. McClellen
2211 Michelson Drive, Suite 700
Irvine, CA 92612

Counsel for Michael Ray Harris
Steven M. Goldberg
Russ August & Kabat
12424 Wilshire Boulevard, 12th
Floor
Los Angeles, CA 90025

Counsel for The Official Committees
of Unsecured Creditors of Marion
Knight, Jr. & Death Row Records
Debra I Grassgreen
Pachulski Stang Ziehl Young Jones
& Weintraub LLP
150 California St., 15 Fl.
San Francisco, CA 94111-4500

Wasserman, Comden & Casselman
LLP
Nancy Lucas
Haight, Brown & Bonesteel, LLP
6080 Center Drive, Suite 800
Los Angeles, CA 90045-1574

Dermont Givens, Esq.
433 North Camden Drive
Suite 600
Beverly Hills, CA 90210

16

Counsel for Death Row Records
Trustee
Ashleigh Danker
Kaye Scholer LLP
1999 Avenue of the Stars Suite 1700
Los Angeles, CA 90067

Mark Friedman
c/o Legal Resource
233  Wilshire Boulevard, Suite 400
Santa Monica, CA  90401

Mark Posner
Law Offices of Mark A. Posner
2728 West 176th Street
Torrance, CA 90504

Debra Vaniman Crawford
Crawford & Crawford
P.O. Box 373
Carmel, CA 93921-0373

Counsel for Conquest Media
Peter Gurfein
Akin Gump
2029 Century Park E. Suite 400
Los Angeles, CA 90067

Accountants to Knight Trustee
Grobstein, Horwath & Company
LLP
15233 Ventura Blvd., 9th Floor
Sherman Oaks, CA 91403

Counsel for Knight Trustee
Eric Israel
Danning, Gill, Diamond & Kollitz,
LLP
2029 Century Park East
Third Floor
Los Angeles, CA 90067

**REQUEST FOR SPECIAL
NOTICE**

Counsel for Party-In-Interest Delmar
Arnauld
Bret D. Lewis
Law Offices of Bret D. Lewis
12304 Santa Monica Blvd., 3rd Floor
Los Angeles, CA 90025

Counsel for Creditor Sharitha
Golden
Gary A. Starre
Starre, Cohn & Albaum
12100 Wilshire Blvd., Suite 700
Los Angeles, CA 90025

Counsel for Party-In-Interest King,
Holmes Paterno & Berliner LLP
King, Holmes, Paterno & Berliner
LLP
Howard E. King
1900 Avenue of the Stars, 25th Floor
Los Angeles, CA 90067-4506

Counsel for Wasserman, Comden &
Casselman L.L.P.
David Neale
Levene, Neale, Bender, Rankin &
Brill LLP
10250 Constellation Blvd., Suite
1700
Los Angeles, CA 90067

Counsel for Creditors Bridgeport
Music Inc., Southfield Music, Inc.,
Westbound Records, Inc. and Nine
Records Inc.
Richard S. Busch
King & Ballow
315 Union St., Suite 1100
Nashville, TN 37201

17

Counsel for Creditors Tammie
Hawkins
and Digital Revolution Holdings,
Inc.
Henry S. David
Alschuler Grossman Stein & Kahan
LLP
The Water Garden
1620 26th Street, 4th Floor, North
Tower
Santa Monica, CA 90404-4060

Counsel for The Harry Fox Agency,
Inc. and The Alliance Portfolio
Peter M. Gilhuly
Alan L. Leavitt
Latham & Watkins LLP
633 West Fifth Street, Suite 4000
Los Angeles, CA 90071-2007

Counsel for Party-In-Interest Rap-A-
Lot 2K Records, Inc.
Jeffrey S. Shinbrot
Jeffrey S. Shinbrot, APLC
8383 Wilshire Blvd., Suite 1010
Beverly Hills, CA 90211

Counsel for Party-In-Interest Rap-A-
Lot 2K Records, Inc.
Charles E. Long
Stumpf Craddock Massey &
Farrimond, APC
1400 Post Oak Blvd., 4th Fl.
Houston, TX 77056

Counsel for Party-In-Interest Rap-A-
Lot 2K Records, Inc.
Henry J. Fasthoff IV
Stumpf Craddock Massey &
Farrimond, APC
1400 Post Oak Blvd., 4th Fl.
Houston, TX 77056

Ross Weston, Esq.
Senior Vice President
Sony BMG Music Entertainment
550 Madison Avenue
New York, NY 10022-3211

Counsel for Afeni Shakur and
Amaru Entertainment, Inc.
Michael Simon
Akerman Senterfitt LLP
725 S Figueroa St 38th Fl.
Los Angeles, CA 90017

Counsel for EverGreen Copyrights,
Inc.
Paul R. Glassman
Adam M. Starr
Greenberg Traurig, LLP
2450 Colorado Avenue Suite 400E
Santa Monica CA 90404

Interscope Records
c/o Mitchell, Silberberg & Knupp
LLP
11377 W. Olympic Blvd.
Los Angeles, CA 90064

Los Angeles County Treasurer and
Tax Collector Revenue &
Enforcement
PO Box 54110
Los Angeles, CA 90054

Calvin Broadus
c/o Martin Zohn
2049 Century Park E. Suite 3200
Los Angeles, CA 90067

Keith W. Berlund, Esq.
The Berlund Group
2800 Neilson Way; suite 1615
Santa Monica, CA 90405

Shahrzad Sadaghiani
c/o Ira Benjamin Katz
1901 Avenue of the Stars
Suite 1900
Los Angeles, CA 90067

Michel'le Toussaint
Gary A. Plotkin, Esq.
Plotkin, Rapoport & Nahamias
16633 Ventura Blvd. Suite 800
Encino, CA 91436

Judge's Copy
Hon. Geraldine Mund
U.S. Bankruptcy Court
21041 Burbank Blvd. #342
Woodland Hills, CA 91367-6606

19

# EXHIBIT 3

EXHIBIT 3

1  SHARON Z. WEISS (State Bar No. 169446)
   CHRISTINA ERICKSON (State Bar No. 231570)
2  ANDY S. KONG (State Bar No. 243933)
   RICHARDSON & PATEL, LLP
3  10900 Wilshire Blvd., Ste. 500
   Los Angeles, California 90024
4  Telephone (310) 208-1182
   Facsimile (310) 208-1154
5
   Attorneys for Weinstein, Weiss &
6  Ordubegian, LLP and Richardson & Patel, LLP

7

8                UNITED STATES BANKRUPTCY COURT

9                CENTRAL DISTRICT OF CALIFORNIA

10                    LOS ANGELES DIVISION

11

12  In re                          )   Bk. No. 2:06-bk-11187-VZ
                                    )        [Chapter 11]
13  MARION KNIGHT, JR. *aka*        )
    SUGE KNIGHT,                    )
14                                  )   NOTICE OF LIEN
              Debtor.              )
15                                  )
                                    )   [NO HEARING REQUIRED]
16  _____ )

17  TO:    EACH PARTY AND TO THEIR RESPECTIVE COUNSELS OF RECORD

18         AND TO ALL OTHER PERSONS OR ENTITIES INTERESTED IN THIS

19         ACTION:

20         YOU ARE HEREBY NOTIFIED that Weinstein Weiss & Ordubegian, LLP

21  and Richardson & Patel, LLP (collectively "Counsel") Richardson & Patel, LLP were

22  formerly attorneys of record for interested party Lydia Harris in this case. Counsel

23  have now been relieved as attorneys of record by court order dated December 2, 2008,

24  ECF Doc. No. 686.

25         YOU ARE FURTHER NOTIFIED that, in accordance with the terms of a

26  written fee agreement, Counsel has and claims a lien ahead of all others on Lydia

27  Harris's causes of action asserted in this action, and on any judgment

28  / / /

h:\h\c\1640.098_MK_Main_Notice of Lien.wpd
1/23/09 (12:01 pm)

20

1 | rendered in favor of Lydia Harris in this action, to secure payment for legal services

2 | rendered and costs and expenses advanced on her behalf.

3

4 | DATED: January 22, 2009        WEINSTEIN, WEISS & ORDUBEGIAN,
5 |                                                        LLP and RICHARDSON & PATEL, LLP

6

7 |                                                        By _____
                                                            SHARON Z. WEISS
8 |                                                        Attorneys for Weinstein Weiss &
                                                            Ordubegian, LLP and Richardson &
9 |                                                        Patel, LLP

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

h:\h\c\1640.098_MK_Main_Notice of Lien.wpd
1/23/09 (12:01 pm)

-2-

21

| In re: Marion Knight, Jr. | CHAPTER 11 |
|---|---|
| Debtor(s). | CASE NUMBER: 2:06-bk-11184-VZ |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
Richardson & Patel, LLP
10900 Wilshire Blvd., Ste. 500
Los Angeles, CA 90024
The foregoing document described <u>NOTICE OF LIEN</u> will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On <u>January 23, 2009</u> I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On <u>January 23, 2009</u> I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.*

☒ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.*

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| January 23, 2009 | CHRISTOPHER M. WESTMAN | _(signature)_ |
|---|---|---|
| Date | Type Name | Signature |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                                          F 9013-3.1

22

ATTACHMENT TO PROOF OF SERVICE OF DOCUMENT

I.   **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

U.S. TRUSTEE
U.S. Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

II.   **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**

**A. Persons or Entities Served by U.S. Mail:**

Party or Role
Lydia Harris
14019 Southwest Fwy Ste 599
Sugar Land TX  77478-3563

Counsel for Debtor Marion "Suge" Knight, Jr.
Daniel J. McCarthy
Hill, Farrer & Burrill LLP
One Califorina Plaza
300 South Grand Ave., 37th Floor
Los Angeles, CA  90071-3147

Counsel for Debtor Death Row Records, Inc.
Robert S. Altagen
Law Offices of Robert S. Altagen, Inc.
A Professional Corporation
1111 Corporate Center Drive, Suite 201
Monterey Park, CA  91754

Counsel for Helen Frazer, Trustee
Patrick K. McClellen
Law Offices of Patrick K. McClellen
2211 Michelson Drive, Suite 700
Irvine, CA 92612

Counsel for Michael Ray Harris
Steven M. Goldberg
Russ August & Kabat
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025

Counsel for The Official Committees of Unsecured Creditors of Marion Knight, Jr. & Death Row Records
Debra I Grassgreen
Pachulski Stang Ziehl Young Jones & Weintraub LLP
150 California St., 15 Fl.
San Francisco, CA 94111-4500

Wasserman, Comden & Casselman LLP
Nancy Lucas
Haight, Brown & Bonesteel, LLP
6080 Center Drive, Suite 800
Los Angeles, CA 90045-1574

Dermont Givens, Esq.
433 North Camden Drive
Suite 600
Beverly Hills, CA 90210

23

Counsel for Death Row Records
Trustee
Ashleigh Danker
Kaye Scholer LLP
1999 Avenue of the Stars Suite 1700
Los Angeles, CA 90067

Mark Friedman
c/o Legal Resource
233 Wilshire Boulevard, Suite 400
Santa Monica, CA 90401

Mark Posner
Law Offices of Mark A. Posner
2728 West 176th Street
Torrance, CA 90504

Debra Vaniman Crawford
Crawford & Crawford
P.O. Box 373
Carmel, CA 93921-0373

Counsel for Conquest Media
Peter Gurfein
Akin Gump
2029 Century Park E. Suite 400
Los Angeles, CA 90067

Accountants to Knight Trustee
Grobstein, Horwath & Company
LLP
15233 Ventura Blvd., 9th Floor
Sherman Oaks, CA 91403

Counsel for Knight Trustee
Eric Israel
Danning, Gill, Diamond & Kollitz,
LLP
2029 Century Park East
Third Floor
Los Angeles, CA 90067

**REQUEST FOR SPECIAL
NOTICE**

Counsel for Party-In-Interest Delmar
Arnauld
Bret D. Lewis
Law Offices of Bret D. Lewis
12304 Santa Monica Blvd., 3rd Floor
Los Angeles, CA 90025

Counsel for Creditor Sharitha
Golden
Gary A. Starre
Starre, Cohn & Albaum
12100 Wilshire Blvd., Suite 700
Los Angeles, CA 90025

Counsel for Party-In-Interest King,
Holmes Paterno & Berliner LLP
King, Holmes, Paterno & Berliner
LLP
Howard E. King
1900 Avenue of the Stars, 25th Floor
Los Angeles, CA 90067-4506

Counsel for Wasserman, Comden &
Casselman L.L.P.
David Neale
Levene, Neale, Bender, Rankin &
Brill LLP
10250 Constellation Blvd., Suite
1700
Los Angeles, CA 90067

Counsel for Creditors Bridgeport
Music Inc., Southfield Music, Inc.,
Westbound Records, Inc. and Nine
Records Inc.
Richard S. Busch
King & Ballow
315 Union St., Suite 1100
Nashville, TN 37201

24

Counsel for Creditors Tammie
Hawkins
and Digital Revolution Holdings,
Inc.
Henry S. David
Alschuler Grossman Stein & Kahan
LLP
The Water Garden
1620 26th Street, 4th Floor, North
Tower
Santa Monica, CA 90404-4060

Counsel for The Harry Fox Agency,
Inc. and The Alliance Portfolio
Peter M. Gilhuly
Alan L. Leavitt
Latham & Watkins LLP
633 West Fifth Street, Suite 4000
Los Angeles, CA 90071-2007

Counsel for Party-In-Interest Rap-A-
Lot 2K Records, Inc.
Jeffrey S. Shinbrot
Jeffrey S. Shinbrot, APLC
8383 Wilshire Blvd., Suite 1010
Beverly Hills, CA 90211

Counsel for Party-In-Interest Rap-A-
Lot 2K Records, Inc.
Charles E. Long
Stumpf Craddock Massey &
Farrimond, APC
1400 Post Oak Blvd., 4th Fl.
Houston, TX 77056

Counsel for Party-In-Interest Rap-A-
Lot 2K Records, Inc.
Henry J. Fasthoff IV
Stumpf Craddock Massey &
Farrimond, APC
1400 Post Oak Blvd., 4th Fl.
Houston, TX 77056

Ross Weston, Esq.
Senior Vice President
Sony BMG Music Entertainment
550 Madison Avenue
New York, NY 10022-3211

Counsel for Afeni Shakur and
Amaru Entertainment, Inc.
Michael Simon
Akerman Senterfitt LLP
725 S Figueroa St 38th Fl.
Los Angeles, CA 90017

Counsel for EverGreen Copyrights,
Inc.
Paul R. Glassman
Adam M. Starr
Greenberg Traurig, LLP
2450 Colorado Avenue Suite 400E
Santa Monica CA 90404

Interscope Records
c/o Mitchell, Silberberg & Knupp
LLP
11377 W. Olympic Blvd.
Los Angeles, CA 90064

Los Angeles County Treasurer and
Tax Collector Revenue &
Enforcement
PO Box 54110
Los Angeles, CA 90054

Calvin Broadus
c/o Martin Zohn
2049 Century Park E. Suite 3200
Los Angeles, CA 90067

Keith W. Berlund, Esq.
The Berlund Group
2800 Neilson Way; suite 1615
Santa Monica, CA 90405

25

Shahrzad Sadaghiani
c/o Ira Benjamin Katz
1901 Avenue of the Stars
Suite 1900
Los Angeles, CA 90067

Michel'le Toussaint
Gary A. Plotkin, Esq.
Plotkin, Rapoport & Nahamias
16633 Ventura Blvd. Suite 800
Encino, CA 91436

Judge's Copy
Hon. Vincent P. Zurzolo
U.S. Bankruptcy Court
255 E. Temple St. #1360
Los Angeles, CA 90012

26

# EXHIBIT 4

EXHIBIT 4

1 | DAVID R. WEINSTEIN (State Bar No. 082881)
SHARON Z. WEISS (State Bar No. 169446)
2 | CHRISTINA ERICKSON (State Bar No. 231570)
ANDY S. KONG (State Bar No. 243933)
3 | RICHARDSON & PATEL, LLP
10900 Wilshire Blvd., Ste. 500
4 | Los Angeles, California 90024
Telephone (310) 208-1182
5 | Facsimile (310) 208-1154

6 | Attorneys for Weinstein, Weiss &
Ordubegian, LLP and Richardson & Patel, LLP

7

8 | UNITED STATES BANKRUPTCY COURT

9 | CENTRAL DISTRICT OF CALIFORNIA

10 | LOS ANGELES DIVISION

11

12 | In re                            )    Case No. 2:06-bk-11205-VZ
                                      )         [Chapter 11]
13 | DEATH ROW RECORDS, INC.,         )
                                      )
14 |        Debtor.                   )    NOTICE OF LIEN
                                      )
15 |                                  )
                                      )    [NO HEARING REQUIRED]
16 | _____   )

17 | TO:    EACH PARTY AND TO THEIR RESPECTIVE COUNSELS OF RECORD

18 |        AND TO ALL OTHER PERSONS OR ENTITIES INTERESTED IN THIS

19 |        ACTION:

20 |        YOU ARE HEREBY NOTIFIED that Weinstein Weiss & Ordubegian, LLP

21 | and Richardson & Patel, LLP (collectively "Counsel") were formerly attorneys of

22 | record for interested party Lydia Harris in this case. Counsel have now been relieved

23 | as attorneys of record by court order dated December 2, 2008, ECF Doc. No. 735.

24 |        YOU ARE FURTHER NOTIFIED that, in accordance with the terms of a

25 | written fee agreement, Counsel has and claims a lien ahead of all others on Lydia

26 | Harris's causes of action asserted in this action, and on any judgment

27 | ///

28 | ///

h:\h\c\1640.097_DRR_Main_Notice_of_Lien.wpd
1/23/09 (12:01 pm)

27

1  rendered in favor of Lydia Harris in this action, to secure payment for legal services

2  rendered and costs and expenses advanced on her behalf.

3

4  DATED: January 23, 2009          WEINSTEIN, WEISS & ORDUBEGIAN,
                                     LLP and RICHARDSON & PATEL, LLP
5

6                                    By _____
7                                       SHARON Z. WEISS
                                        Attorneys for Weinstein Weiss &
8                                       Ordubegian, LLP and Richardson &
                                        Patel, LLP
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

h:\h\c\1640.097_DRR_Main_Notice of Lien.wpd
1/23/09 (12:01 pm)                              -2-

28

| In re:  Death Row Records, Inc. | CHAPTER 11 |
|---|---|
| Debtor(s). | CASE NUMBER: 2:06-bk-11205-VZ |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
Richardson & Patel, LLP
10900 Wilshire Blvd., Ste. 500
Los Angeles, CA 90024
The foregoing document described <u>NOTICE OF LIEN</u> will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")</u> – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On <u>January 23, 2009</u> I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

II.  <u>SERVED BY U.S. MAIL OR OVERNIGHT MAIL</u>(indicate method for each person or entity served):
On <u>January 23, 2009</u> I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.*

☒ Service information continued on attached page

III.  <u>SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL</u> (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  *Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.*

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| January 23, 2009 | CHRISTOPHER M. WESTMAN | *[signature]* |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                           **F 9013-3.1**

ATTACHMENT TO PROOF OF SERVICE OF DOCUMENT

I.   <u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTONIC**</u>
     <u>**FILING ("NEF")**</u>

<u>U.S. TRUSTEE</u>
U.S. Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

II.   <u>**SERVED BY U.S. MAIL OR OVERNIGHT MAIL**</u>

**A. Persons or Entities Served by U.S. Mail:**

<u>Party or Role</u>
Lydia Harris
14019 Southwest Fwy Ste 599
Sugar Land TX  77478-3563

<u>Counsel for Debtor Marion "Suge"</u>
<u>Knight, Jr.</u>
Daniel J. McCarthy
Hill, Farrer & Burrill LLP
One Califorina Plaza
300 South Grand Ave., 37th Floor
Los Angeles, CA  90071-3147

<u>Counsel for Debtor Death Row</u>
<u>Records, Inc.</u>
Robert S. Altagen
Law Offices of Robert S. Altagen,
Inc.
A Professional Corporation
1111 Corporate Center Drive, Suite
201
Monterey Park, CA  91754

<u>Counsel for Helen Frazer, Trustee</u>
Patrick K. McClellen
Law Offices of Patrick K. McClellen
2211 Michelson Drive, Suite 700
Irvine, CA 92612

<u>Counsel for Michael Ray Harris</u>
Steven M. Goldberg
Russ August & Kabat
12424 Wilshire Boulevard, 12th
Floor
Los Angeles, CA 90025

<u>Counsel for The Official Committees</u>
<u>of Unsecured Creditors of Marion</u>
<u>Knight, Jr. & Death Row Records</u>
Debra I Grassgreen
Pachulski Stang Ziehl Young Jones
& Weintraub LLP
150 California St., 15 Fl.
San Francisco, CA 94111-4500

<u>Wasserman, Comden & Casselman</u>
<u>LLP</u>
Nancy Lucas
Haight, Brown & Bonesteel, LLP
6080 Center Drive, Suite 800
Los Angeles, CA 90045-1574

Dermont Givens, Esq.
433 North Camden Drive
Suite 600
Beverly Hills, CA 90210

Counsel for Death Row Records
Trustee
Ashleigh Danker
Kaye Scholer LLP
1999 Avenue of the Stars Suite 1700
Los Angeles, CA 90067

Mark Friedman
c/o Legal Resource
233 Wilshire Boulevard, Suite 400
Santa Monica, CA 90401

Mark Posner
Law Offices of Mark A. Posner
2728 West 176th Street
Torrance, CA 90504

Debra Vaniman Crawford
Crawford & Crawford
P.O. Box 373
Carmel, CA 93921-0373

Counsel for Conquest Media
Peter Gurfein
Akin Gump
2029 Century Park E. Suite 400
Los Angeles, CA 90067

Accountants to Knight Trustee
Grobstein, Horwath & Company
LLP
15233 Ventura Blvd., 9th Floor
Sherman Oaks, CA 91403

Counsel for Knight Trustee
Eric Israel
Danning, Gill, Diamond & Kollitz,
LLP
2029 Century Park East
Third Floor
Los Angeles, CA 90067

**REQUEST FOR SPECIAL
NOTICE**

Counsel for Party-In-Interest Delmar
Arnauld
Bret D. Lewis
Law Offices of Bret D. Lewis
12304 Santa Monica Blvd., 3rd Floor
Los Angeles, CA 90025

Counsel for Creditor Sharitha
Golden
Gary A. Starre
Starre, Cohn & Albaum
12100 Wilshire Blvd., Suite 700
Los Angeles, CA 90025

Counsel for Party-In-Interest King,
Holmes Paterno & Berliner LLP
King, Holmes, Paterno & Berliner
LLP
Howard E. King
1900 Avenue of the Stars, 25th Floor
Los Angeles, CA 90067-4506

Counsel for Wasserman, Comden &
Casselman L.L.P.
David Neale
Levene, Neale, Bender, Rankin &
Brill LLP
10250 Constellation Blvd., Suite
1700
Los Angeles, CA 90067

Counsel for Creditors Bridgeport
Music Inc., Southfield Music, Inc.,
Westbound Records, Inc. and Nine
Records Inc.
Richard S. Busch
King & Ballow
315 Union St., Suite 1100
Nashville, TN 37201

31

Counsel for Creditors Tammie
Hawkins
and Digital Revolution Holdings,
Inc.
Henry S. David
Alschuler Grossman Stein & Kahan
LLP
The Water Garden
1620 26th Street, 4th Floor, North
Tower
Santa Monica, CA 90404-4060

Counsel for The Harry Fox Agency,
Inc. and The Alliance Portfolio
Peter M. Gilhuly
Alan L. Leavitt
Latham & Watkins LLP
633 West Fifth Street, Suite 4000
Los Angeles, CA 90071-2007

Counsel for Party-In-Interest Rap-A-
Lot 2K Records, Inc.
Jeffrey S. Shinbrot
Jeffrey S. Shinbrot, APLC
8383 Wilshire Blvd., Suite 1010
Beverly Hills, CA 90211

Counsel for Party-In-Interest Rap-A-
Lot 2K Records, Inc.
Charles E. Long
Stumpf Craddock Massey &
Farrimond, APC
1400 Post Oak Blvd., 4th Fl.
Houston, TX 77056

Counsel for Party-In-Interest Rap-A-
Lot 2K Records, Inc.
Henry J. Fasthoff IV
Stumpf Craddock Massey &
Farrimond, APC
1400 Post Oak Blvd., 4th Fl.
Houston, TX 77056

Ross Weston, Esq.
Senior Vice President
Sony BMG Music Entertainment
550 Madison Avenue
New York, NY 10022-3211

Counsel for Afeni Shakur and
Amaru Entertainment, Inc.
Michael Simon
Akerman Senterfitt LLP
725 S Figueroa St 38th Fl.
Los Angeles, CA 90017

Counsel for EverGreen Copyrights,
Inc.
Paul R. Glassman
Adam M. Starr
Greenberg Traurig, LLP
2450 Colorado Avenue Suite 400E
Santa Monica CA 90404

Interscope Records
c/o Mitchell, Silberberg & Knupp
LLP
11377 W. Olympic Blvd.
Los Angeles, CA 90064

Los Angeles County Treasurer and
Tax Collector Revenue &
Enforcement
PO Box 54110
Los Angeles, CA 90054

Calvin Broadus
c/o Martin Zohn
2049 Century Park E. Suite 3200
Los Angeles, CA 90067

Keith W. Berlund, Esq.
The Berlund Group
2800 Neilson Way; suite 1615
Santa Monica, CA 90405

32

Shahrzad Sadaghiani
c/o Ira Benjamin Katz
1901 Avenue of the Stars
Suite 1900
Los Angeles, CA 90067

Michel'le Toussaint
Gary A. Plotkin, Esq.
Plotkin, Rapoport & Nahamias
16633 Ventura Blvd. Suite 800
Encino, CA 91436

Judge's Copy
Hon. Vincent P. Zurzolo
U.S. Bankruptcy Court
255 E. Temple St. #1360
Los Angeles, CA 90012

33

# EXHIBIT 5

# EXHIBIT 5

**WASSERMAN, COMDEN & CASSELMAN L.L.P.**
5567 Reseda Boulevard, Suite 330
Post Office Box 7033
Tarzana, California 91357-7033
(818) 705-6800    (323) 872-0995
Fax (818) 996-8266

## CONTINGENCY FEE AGREEMENT

THIS IS AN AGREEMENT between   Lydia Harris  , hereinafter referred to as "Client," and Wasserman, Comden & Casselman L.L.P., hereinafter referred to as "Attorney." Unless a different Agreement is made in writing, this Agreement alone shall govern the respective rights and responsibilities of Client and Attorney.

1.    Claims Covered by Agreement: Client retains Attorney to represent Client in connection with  representation of Lydia Harris regarding litigation of defamation(libel and slander) of Marin "Shug" Knight and related parties.

This Agreement does not cover other related claims that may arise and may require legal services. If such matters arise, separate agreements for legal services will be required if Client wishes Attorney to handle such matters.

2.    Services to be Performed by Attorney: Attorney agrees to perform the following legal services, if necessary, with respect to the claims described above:

-- investigation of claims;
-- determining responsible parties;
-- preparation and filing of lawsuit;
-- settlement procedures and negotiations;
-- prosecution of claim by arbitration or legal action until award or judgment is obtained; and
-- if judgment is obtained in Client's favor, opposing a motion for new trial by an opposing party.

Attorney is authorized to associate or employ, at Attorney's own expense, other counsel to assist in performing the services required by this Agreement, and to appear on Client's behalf in any proceeding or lawsuit.

3.    Services Not Covered by This Agreement: If additional services are necessary in connection with Client's claims, and Client requests Attorney to perform such services, fee arrangements for such additional services must be made between Attorney and Client. Such additional services may be required, for example:

-- if the judgment obtained is not in Client's favor, or the amount thereof is unsatisfactory to Client;
-- if the judgment obtained is in Client's favor, and an opposing party appeals from the judgment;
-- if a retrial is ordered after a motion for new trial or mistrial, or reversal of the judgment on appeal; or
-- in judgment enforcement proceedings.

4.    No Guarantee as to Result: Client acknowledges that Attorney has made no guarantee as to the outcome or the amounts recoverable in connection with Client's claims.

5.    Litigation Costs and Expenses: Attorney is authorized to incur reasonable cost and expenses in performing legal services under this Agreement. Client agrees to reimburse Attorney for such costs and expenses in addition to the contingency fee discussed below in the event of any recovery.

(a)    Particular Costs and Expenses: The costs and expenses necessary in this case may include any or all of the following items (The list is not exclusive; other items may also be necessary, and the rates shown are subject to change on prior written notice to Client.)

-- court filing fees
-- process serving fees
-- fees to private investigators
-- fees to photographers or graphic artists
-- fees to experts for consultation and/or appearance at deposition or trial
-- jury fees
-- mail, messenger and other delivery charges
-- parking and other local travel at 31½¢/mile
-- transportation, meals, lodging and all other costs of necessary out-of-town travel
-- long distance telephone charges

000026

34

*This Agreement does not cover other related claims that may arise and may require legal services. If such matters arise, separate agreements for legal services will be required if Client wishes Attorney to handle such matters.*

2. *Services to be Performed by Attorney: Attorney agrees to perform the following legal services, if necessary, with respect to the claims described above:*

- *investigation of claims;*
- *determining responsible parties;*
- *preparation and filing of lawsuit;*
- *settlement procedures and negotiations;*
- *prosecution of claim by arbitration or legal action until award or judgment is obtained; and*
- *if judgment is obtained in Client's favor, opposing a motion for new trial by an opposing party.*

*Attorney is authorized to associate or employ, at Attorney's own expense, other counsel to assist in performing the services required by this Agreement, and to appear on Client's behalf in any proceeding or lawsuit.*

3. *Services Not Covered by This Agreement: If additional services are necessary in connection with Client's claims, and Client requests Attorney to perform such services, fee arrangements for such additional services must be made between Attorney and Client. Such additional services may be required, for example:*

- *if the judgment obtained is not in Client's favor, or the amount thereof is unsatisfactory to Client;*
- *if the judgment obtained is in Client's favor, and an opposing party appeals from the judgment;*
- *if a retrial is ordered after a motion for new trial or mistrial, or reversal of the judgment on appeal; or*
- *in judgment enforcement proceedings.*

4. *No Guarantee as to Result: Client acknowledges that Attorney has made no guarantee as to the outcome or the amounts recoverable in connection with Client's claims.*

5. *Litigation Costs and Expenses: Attorney is authorized to incur reasonable cost and expenses in performing legal services under this Agreement. Client agrees to reimburse Attorney for such costs and expenses in addition to the contingency fee discussed below in the event of any recovery.*

    (a)    *Particular Costs and Expenses: The costs and expenses necessary in this case may include any or all of the following items (The list is not exclusive; other items may also be necessary, and the rates shown are subject to change on prior written notice to Client.)*

- *court filing fees*
- *process serving fees*
- *fees to private investigators*
- *fees to photographers or graphic artists*
- *fees to experts for consultation and/or appearance at deposition or trial*
- *jury fees*
- *mail, messenger and other delivery charges*
- *parking and other local travel at 31½¢/mile*
- *transportation, meals, lodging and all other costs of necessary out-of-town travel*
- *long distance telephone charges*
- *photocopying (in office) at 30¢/page*
- *word processing charges*
- *computerized legal research*
- *other computer charges*

    (b)    *Client's Responsibility re Costs: Attorney may advance such costs and expenses on Client's behalf, but is not obligated to do so. Client agrees to reimburse Attorney out of any settlement or judgment proceeds as a priority payment.*

6. *Contingency Fee to Attorney: Client acknowledges that he/she has been advised by Attorney and is aware that the contingency fee is a 40% arrangement and has been negotiated between Client and Attorney.*

*Based on such negotiations, Client agrees that the following fee arrangement is fair and reasonable, and to pay Attorney the following amount:*

-1-

000027

35

*If the matter is settled before a lawsuit is filed, the amount equal to forty percent (40%) of any recovery obtained.*

*If the matter is settled after a lawsuit is filed, but before the case is first assigned a trial date, an amount equal to forty percent (40%) of any recovery obtained.*

*Thereafter, an amount equal to forty percent (40%) of any recovery, whether by way of settlement, judgment or compromise.*

(a)    *Costs and Expenses as Affecting Contingency Fee:* Attorney's fee shall be computed based on the gross recovery. Costs and expenses paid by Attorney in connection with Client's claim shall be reimbursed after the contingency fee is computed. Client's share of the recovery shall be the balance remaining after reimbursement of such costs and expenses and payment of the contingency fee.

(b)    *Form of Recovery as Affecting Contingency Fee:* If the recovery consists of payments to be made over a period of time, or other property not entirely cash or cash-equivalent, the contingency fee shall be based on the present cash value of the recovery as determined by generally recognized accounting and appraisal standards. (For example, if the recovery consists of $1,000 payable at $100/year over 10 years, its present value may be approximately $380, depending on prevalent interest rates.) The contingency fee shall be paid out of the first funds or property received by Client.

(c)    *Sanctions Awards not Part of Recovery:* Monetary sanctions awarded to Attorney during the course of this litigation shall not be considered part of Client's recovery in this action. Such sanctions shall be deemed compensation to counsel for extraordinary time and effort expended as a result of an opposing party's bad faith conduct or failure to comply with discovery demands, court orders or similar obligations. But if the sanctions award includes a costs item (such as the filing fee for making a motion), the amount thereof shall be credited to Client's costs account when received by Attorney.

7.    *Effect of Discharge by Client:* Client shall have the right to discharge Attorney at any time upon written notice to Attorney. Such discharge shall not affect Client's obligation to reimburse Attorney for costs incurred prior to such discharge. In addition, Attorney shall be entitled to the reasonable value of legal services performed prior to such discharge to be paid by Client from any subsequent recovery on claims covered by this Agreement.

8.    *Attorney's Lien:* To secure payment to Attorney of all sums due under this Agreement for services rendered or costs advanced, Client hereby grants Attorney a lien on Client's claim and any cause of action or lawsuit filed thereon, and to any recovery Client may obtain, whether by settlement, judgment or otherwise.

9.    *Insurance:* Wasserman, Comden & Casselman L.L.P. maintains errors-and-omissions insurance applicable to the services to be rendered under the terms of this Agreement.

10.    *Arbitration of Disputes:* If a dispute arises between Attorney and Client regarding fees or services in connection with the above-referenced transaction, such dispute shall be submitted to binding arbitration. This includes any claim for breach of contract, negligence, breach of fiduciary duty or other wrongdoing.

Such arbitration shall be conducted in accordance with the rules of the American Arbitration Association or Judicial Arbitration & Mediation Services, or CCP § 1280 et.seq.

You acknowledge that we have explained to you that such binding arbitration may deprive you of various rights that you otherwise might have in a legal action, including without limitation, the right to a jury trial, the right to appeal, and full discovery rights.

*INITIALING BELOW SIGNIFIES ACKNOWLEDGMENT OF THIS EXPLANATION:*

_____                                    _____
(CLIENT'S INITIALS)                                (WC&C)

11.    *Client's Receipt of Agreement and Knowledge of Terms:* Client acknowledges that he/she has read and fully understands all of the terms and conditions of this Agreement before signing it, and has received a copy of this Agreement upon execution thereof.

Executed at 5567 Reseda Blvd., Suite 330, Tarzana, CA 91357    (place) on    January 25, 2002.

ATTORNEY:                                        CLIENT:

_____                                    _____
WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.        LYNDA HARRIS

000028

over a period of time, or other property not entirely cash or cash-equivalent, the contingency fee shall be based on the present cash value of the recovery as determined by generally recognized accounting and appraisal standards. (For example, if the recovery consists of $1,000 payable at $100/year over 10 years, its present value may be approximately $380, depending on prevalent interest rates.) The contingency fee shall be paid out of the first funds or property received by Client.

    (c)    *Sanctions Awards not Part of Recovery:* Monetary sanctions awarded to Attorney during the course of this litigation shall not be considered part of Client's recovery in this action. Such sanctions shall be deemed compensation to counsel for extraordinary time and effort expended as a result of an opposing party's bad faith conduct or failure to comply with discovery demands, court orders or similar obligations. But if the sanctions award includes a costs item (such as the filing fee for making a motion), the amount thereof shall be credited to Client's costs account when received by Attorney.

    7.    *Effect of Discharge by Client:* Client shall have the right to discharge Attorney at any time upon written notice to Attorney. Such discharge shall not affect Client's obligation to reimburse Attorney for costs incurred prior to such discharge. In addition, Attorney shall be entitled to the reasonable value of legal services performed prior to such discharge to be paid by Client from any subsequent recovery on claims covered by this Agreement.

    8.    *Attorney's Lien:* To secure payment to Attorney of all sums due under this Agreement for services rendered or costs advanced, Client hereby grants Attorney a lien on Client's claim and any cause of action or lawsuit filed thereon, and to any recovery Client may obtain, whether by settlement, judgment or otherwise.

    9.    *Insurance:* Wasserman, Comden & Casselman L.L.P. maintains errors-and-omissions insurance applicable to the services to be rendered under the terms of this Agreement.

    10.    *Arbitration of Disputes:* If a dispute arises between Attorney and Client regarding fees or services in connection with the above-referenced transaction, such dispute shall be submitted to binding arbitration. This includes any claim for breach of contract, negligence, breach of fiduciary duty or other wrongdoing.

    Such arbitration shall be conducted in accordance with the rules of the American Arbitration Association or Judicial Arbitration & Mediation Services, or CCP § 1280 et.seq.

    You acknowledge that we have explained to you that such binding arbitration may deprive you of various rights that you otherwise might have in a legal action, including without limitation, the right to a jury trial, the right to appeal, and full discovery rights.

    *INITIALING BELOW SIGNIFIES ACKNOWLEDGMENT OF THIS EXPLANATION:*

_(CLIENT'S INITIALS)_                          _(WC&C)_

    11.    *Client's Receipt of Agreement and Knowledge of Terms:* Client acknowledges that he/she has read and fully understands all of the terms and conditions of this Agreement before signing it, and has received a copy of this Agreement upon execution thereof.

    *Executed at* 5567 Reseda Blvd., Suite 330, Tarzana, CA 91357     *(place) on* January 25, 2002.

ATTORNEY:                        CLIENT:

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.    LYDIA HARRIS

BY: _____                 _____
    MARTIN S. RUDOY                       2010 W. Avenue K, Suite 624
                                      Lancaster, CA 93536
5567 Reseda Boulevard, Suite 330
Tarzana, California 91357                  Telephone:  (Cell) 310-594-2704

(818) 705-6800                          Facsimile:  323-291-7317

Facsimile: (818) 345-0162

000029

-2-

37

*WASSERMAN, COMDEN & CASSELMAN L.L.P.*
*5567 Reseda Boulevard, Suite 330*
*Post Office Box 7033*
*Tarzana, California 91357-7033*
*(818) 705-6800  (323) 872-0995*
*Fax (818) 996-8266*

### CONTINGENCY FEE AGREEMENT

**THIS IS AN AGREEMENT** between  Lydia Harris  and New Image Entertainment, Inc. and Lifestyle Records, Inc., hereinafter referred to as "Client," and Wasserman, Comden & Casselman L.L.P., hereinafter referred to as "Attorney." Unless a different Agreement is made in writing, this Agreement alone shall govern the respective rights and responsibilities of Client and Attorney.

1.    *Claims Covered by Agreement:*  Client retains Attorney to represent Client in connection with  representation regarding matters concerning  Battlecat, including, but not limited to breach of licensing, publishing and all intellectual property issues.

This Agreement does not cover other related claims that may arise and may require legal services.  If such matters arise, separate agreements for legal services will be required if Client wishes Attorney to handle such matters.

2.    *Services to be Performed by Attorney:*  Attorney agrees to perform the following legal services, if necessary, with respect to the claims described above:

  --    investigation of claims;
  --    determining responsible parties;
  --    preparation and filing of lawsuit;
  --    settlement procedures and negotiations;
  --    prosecution of claim by arbitration or legal action until award or judgment is obtained; and
  --    If judgment is obtained in Client's favor, opposing a motion for new trial by an opposing party.

Attorney is authorized to associate or employ, at Attorney's own expense, other counsel to assist in performing the services required by this Agreement, and to appear on Client's behalf in any proceeding or lawsuit.

3.    *Services Not Covered by This Agreement:*  If additional services are necessary in connection with Client's claims, and Client requests Attorney to perform such services, fee arrangements for such additional services must be made between Attorney and Client.  Such additional services may be required, for example:

  --    if the judgment obtained is not in Client's favor, or the amount thereof is unsatisfactory to Client;
  --    if the judgment obtained is in Client's favor, and an opposing party appeals from the judgment;
  --    if a retrial is ordered after a motion for new trial or mistrial, or reversal of the judgment on appeal; or
  --    in judgment enforcement proceedings.

4.    *No Guarantee as to Result:*  Client acknowledges that Attorney has made no guarantee as to the outcome or the amounts recoverable in connection with Client's claims.

5.    *Litigation Costs and Expenses:*  Attorney is authorized to incur reasonable cost and expenses in performing legal services under this Agreement.  Client agrees to reimburse Attorney for such costs and expenses in addition to the contingency fee discussed below in the event of any recovery.

  (a)    *Particular Costs and Expenses:*  The costs and expenses necessary in this case may include any or all of the following items (The list is not exclusive; other items may also be necessary, and the rates shown are subject to change on prior written notice to Client.)

  --    court filing fees
  --    process serving fees
  --    fees to private investigators
  --    fees to photographers or graphic artists
  --    fees to experts for consultation and/or appearance at deposition or trial
  --    jury fees
  --    mail, messenger and other delivery charges
  --    parking and other local travel at 31½¢/mile
  --    transportation, meals, lodging and all other costs of necessary out-of-town travel

000022

38

1.   *Claims Covered by Agreement:*  Client retains Attorney to represent Client in connection with representation regarding matters concerning Battlecat, including, but not limited to breach of licensing, publishing and all intellectual property issues.

This Agreement does not cover other related claims that may arise and may require legal services.  If such matters arise, separate agreements for legal services will be required if Client wishes Attorney to handle such matters.

2.   *Services to be Performed by Attorney:*  Attorney agrees to perform the following legal services, if necessary, with respect to the claims described above:

- investigation of claims;
- determining responsible parties;
- preparation and filing of lawsuit;
- settlement procedures and negotiations;
- prosecution of claim by arbitration or legal action until award or judgment is obtained; and
- if judgment is obtained in Client's favor, opposing a motion for new trial by an opposing party.

Attorney is authorized to associate or employ, at Attorney's own expense, other counsel to assist in performing the services required by this Agreement, and to appear on Client's behalf in any proceeding or lawsuit.

3.   *Services Not Covered by This Agreement:*  If additional services are necessary in connection with Client's claims, and Client requests Attorney to perform such services, fee arrangements for such additional services must be made between Attorney and Client.  Such additional services may be required, for example:

- if the judgment obtained is not in Client's favor, or the amount thereof is unsatisfactory to Client;
- if the judgment obtained is in Client's favor, and an opposing party appeals from the judgment;
- if a retrial is ordered after a motion for new trial or mistrial, or reversal of the judgment on appeal; or
- in judgment enforcement proceedings;

4.   *No Guarantee as to Result:*  Client acknowledges that Attorney has made no guarantee as to the outcome or the amounts recoverable in connection with Client's claims.

5.   *Litigation Costs and Expenses:*  Attorney is authorized to incur reasonable cost and expenses in performing legal services under this Agreement.  Client agrees to reimburse Attorney for such costs and expenses in addition to the contingency fee discussed below in the event of any recovery.

   (a)   *Particular Costs and Expenses:*  The costs and expenses necessary in this case may include any or all of the following items (The list is not exclusive; other items may also be necessary, and the rates shown are subject to change on prior written notice to Client.)

- court filing fees
- process serving fees
- fees to private investigators
- fees to photographers or graphic artists
- fees to experts for consultation and/or appearance at deposition or trial
- jury fees
- mail, messenger and other delivery charges
- parking and other local travel at 31¼¢/mile
- transportation, meals, lodging and all other costs of necessary out-of-town travel
- long distance telephone charges
- photocopying (in office) at 30¢/page
- word processing charges
- other computer time

   (b)   *Client's Responsibility re Costs:*  Attorney may advance such costs and expenses on Client's behalf, but is not obligated to do so.  Client agrees to reimburse Attorney out of any settlement or judgment proceeds as a priority payment.

6.   *Contingency Fee to Attorney:*  Client acknowledges that he/she has been advised by Attorney and is aware that the contingency fee is a 40% arrangement and has been negotiated between Client and Attorney.

Based on such negotiations, Client agrees that the following fee arrangement is fair and reasonable, and to pay Attorney the following amount:

-1-

000023

39

*If the matter is settled before a lawsuit is filed, the amount equal to forty percent (40%) of any recovery obtained.*

*If the matter is settled after a lawsuit is filed, but before the case is first assigned a trial date, an amount equal to thirty three and forty percent (40%) of any recovery obtained.*

*Thereafter, an amount equal to forty percent (40%) of any recovery, whether by way of settlement, judgment or compromise.*

(a)    *Costs and Expenses as Affecting Contingency Fee: Attorney's fee shall be computed based on the gross recovery. Costs and expenses paid by Attorney in connection with Client's claim shall be reimbursed after the contingency fee is computed. Client's share of the recovery shall be the balance remaining after reimbursement of such costs and expenses and payment of the contingency fee.*

(b)    *Form of Recovery as Affecting Contingency Fee: If the recovery consists of payments to be made over a period of time, or other property not entirely cash or cash-equivalent, the contingency fee shall be based on the present cash value of the recovery as determined by generally recognized accounting and appraisal standards. (For example, if the recovery consists of $1,000 payable at $100/year over 10 years, its present value may be approximately $380, depending on prevalent interest rates.) The contingency fee shall be paid out of the first funds or property received by Client.*

(c)    *Sanctions Awards not Part of Recovery: Monetary sanctions awarded to Attorney during the course of this litigation shall not be considered part of Client's recovery in this action. Such sanctions shall be deemed compensation to counsel for extraordinary time and effort expended as a result of an opposing party's bad faith conduct or failure to comply with discovery demands, court orders or similar obligations. But if the sanctions award includes a costs item (such as the filing fee for making a motion), the amount thereof shall be credited to Client's costs account when received by Attorney.*

7.    *Effect of Discharge by Client: Client shall have the right to discharge Attorney at any time upon written notice to Attorney. Such discharge shall not affect Client's obligation to reimburse Attorney for costs incurred prior to such discharge. In addition, Attorney shall be entitled to the reasonable value of legal services performed prior to such discharge to be paid by Client from any subsequent recovery on claims covered by this Agreement.*

8.    *Attorney's Lien: To secure payment to Attorney of all sums due under this Agreement for services rendered or costs advanced, Client hereby grants Attorney a lien on Client's claim and any cause of action or lawsuit filed thereon, and to any recovery Client may obtain, whether by settlement, judgment or otherwise.*

9.    *Insurance: Wasserman, Comden & Casselman L.L.P. maintains errors-and-omissions insurance applicable to the services to be rendered under the terms of this Agreement.*

10.    *Arbitration of Disputes: If a dispute arises between Attorney and Client regarding fees or services in connection with the above-referenced transaction, such dispute shall be submitted to binding arbitration. This includes any claim for breach of contract, negligence, breach of fiduciary duty or other wrongdoing.*

*Such arbitration shall be conducted in accordance with the rules of the American Arbitration Association or Judicial Arbitration & Mediation Services, or CCP § 1280 et.seq.*

*You acknowledge that we have explained to you that such binding arbitration may deprive you of various rights that you otherwise might have in a legal action, including without limitation, the right to a jury trial, the right to appeal, and full discovery rights.*

*INITIALING BELOW SIGNIFIES ACKNOWLEDGMENT OF THIS EXPLANATION:*

_____      _____
*(CLIENT'S INITIALS)*           *(W.C.C.)*

11.    *Client's Receipt of Agreement and Knowledge of Terms: Client acknowledges that he/she has read and fully understands all of the terms and conditions of this Agreement before signing it, and has received a copy of this Agreement upon execution thereof.*

*Executed at 5567 Reseca Blvd., Suite 330, Tarzana, CA 91357      (place) on    January 25, 2002.*

*ATTORNEY:*                    *CLIENT:*

_____

000024

shall be based on the present cash value of the recovery as determined by generally recognized accounting and appraisal standards. (For example, if the recovery consists of $1,000 payable at $100/year over 10 years, its present value may be approximately $380, depending on prevalent interest rates.) The contingency fee shall be paid out of the first funds or property received by Client.

(c) *Sanctions Awards not Part of Recovery:* Monetary sanctions awarded to Attorney during the course of this litigation shall not be considered part of Client's recovery in this action. Such sanctions shall be deemed compensation to counsel for extraordinary time and effort expended as a result of an opposing party's bad faith conduct or failure to comply with discovery demands, court orders or similar obligations. But if the sanctions award includes a costs item (such as the filing fee for making a motion), the amount thereof shall be credited to Client's costs account when received by Attorney.

7. *Effect of Discharge by Client:* Client shall have the right to discharge Attorney at any time upon written notice to Attorney. Such discharge shall not affect Client's obligation to reimburse Attorney for costs incurred prior to such discharge. In addition, Attorney shall be entitled to the reasonable value of legal services performed prior to such discharge to be paid by Client from any subsequent recovery on claims covered by this Agreement.

8. *Attorney's Lien:* To secure payment to Attorney of all sums due under this Agreement for services rendered or costs advanced, Client hereby grants Attorney a lien on Client's claim and any cause of action or lawsuit filed thereon, and to any recovery Client may obtain, whether by settlement, judgment, or otherwise.

9. *Insurance:* Wasserman, Comden & Casselman L.L.P. maintains errors-and-omissions insurance applicable to the services to be rendered under the terms of this Agreement.

10. *Arbitration of Disputes:* If a dispute arises between Attorney and Client regarding fees or services in connection with the above-referenced transaction, such dispute shall be submitted to binding arbitration. This includes any claim for breach of contract, negligence, breach of fiduciary duty or other wrongdoing.

Such arbitration shall be conducted in accordance with the rules of the American Arbitration Association or Judicial Arbitration & Mediation Services, or CCP § 1280 et.seq.

You acknowledge that we have explained to you that such binding arbitration may deprive you of various rights that you otherwise might have in a legal action, including without limitation, the right to a jury trial, the right to appeal, and full discovery rights.

INITIALING BELOW SIGNIFIES ACKNOWLEDGMENT OF THIS EXPLANATION:

_____          _____
(CLIENT'S INITIALS)                           (WC&C)

11. *Client's Receipt of Agreement and Knowledge of Terms:* Client acknowledges that he/she has read and fully understands all of the terms and conditions of this Agreement before signing it, and has received a copy of this Agreement upon execution thereof.

Executed at 5567 Reseda Blvd., Suite 330, Tarzana, CA 91357 _____ (place) on January 25, 2002.

ATTORNEY:                                          CLIENT:

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.

BY: _____          _____
MARTIN S. RUDOY                              2010 W. Avenue K, Suite 624
                                                            Lancaster, CA 93536
5567 Reseda Boulevard, Suite 330
Tarzana, California 91357                     Telephone:  (Cell) 310-594-2704

(818) 705-6800                                  Facsimile:  323-291-7317

Facsimile: (818) 345-0162

-2-

000025

# EXHIBIT 6

# EXHIBIT 6

Case 1:13-ap-01035-MT    Doc 1-1    Filed 02/15/13    Entered 02/15/13 10:29:31    Desc
Exhibit Exhibits 1 to 7    Page 38 of 80

Case 1:96-bk-15521-GM    Doc 160-1    Filed 01/15/13    Entered 01/15/13 17:28:24    Desc
Exhibit A - E    Page 26 of 65

Case 2:06-bk-11205-VZ    Doc 57    Filed 06/23/06    Entered 06/26/06 15:44:00    Desc
Main Document    Page 14 of 37

1  DAVID B. CASSELMAN (Bar No. 81657)
   CATHERINE STEVENSON GARCIA (Bar No. 102909)
2  MARTIN S. RUDOY (Bar No. 201988)
   **WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.**
3  5567 Reseda Boulevard, Suite 330
   Post Office Box 7033
4  Tarzana, California 91357-7033
   Telephone: (818) 705-6800 • (323) 872-0995
5  Facsimile: (818) 345-0162 • (818) 996-8266

6  Attorneys for Plaintiffs
   LYDIA HARRIS, LIFESTYLE RECORDS, INC., AND NEW
7  IMAGE MEDIA CORPORATION

**FILED**
LOS ANGELES SUPERIOR COURT

FEB 2 6 2002

JOHN A. CLARKE, CLERK

BY P. COOK, DEPUTY

Case assigned to Judge
David A. Workman

**COPY**

8           SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              FOR THE COUNTY OF LOS ANGELES

10

11  Lydia Harris, Lifestyle Records, Inc., and ) CASE NO.    BC268857
    New Image Media Corp.,                      )
12                                              )
                Plaintiffs,                     )  COMPLAINT FOR:
13                                              )
        v.                                      )  1.  **Intentional Interference With**
14                                              )      **Contractual Relations and**
    Kevin Gilliam aka Battlecat; Marion H.      )      **Prospective Economic Advantage;**
15  Knight aka Suge Knight; Death Row           )
    Records; Tha Row, Inc.; David E. Kenner;    )  2.  **Breach of Contract;**
16  David E. Kenner Professional Law            )
    Corporation; David E. Kenner, a             )  3.  **Intentional Interference With**
17  Professional Corporation; The David E.      )      **Prospective Economic Advantage;**
    Kenner Trust; Interscope Records; Jimmy     )
18  Iovine; John T. McClain, Jr.; A&M Records;  )  4.  **Fraud and Conspiracy to Defraud;**
    Arista; Artemis; Asylum; BadBoy; Beyond     )
19  Records; Def Jam; Done Deal; D P G; Elektra;)  5.  **Defamation;**
    Hip-O Records; Hoobangin Records; Jive; J-  )
20  Records; Loud Records; MCA; Polygram;       )  6.  **Intentional Infliction of Emotional**
    Priority; RCA; S.F.E. Ent.; Sick Wit It; TVT)      **Distress;**
21  Records; The Orchard; Tommy Boy; Universal; )
    Warner Bros. Records; Zomba and Does 1-100, )  7.  **Professional Malpractice;**
22                                              )
                Defendants.                     )  8.  **Violation of Business & Professions**
23                                              )      **Code §§ 17200; and**
                                                )
24                                                 9.  **Accounting**
25
26
27       Plaintiffs LYDIA HARRIS, LIFESTYLE RECORDS, INC. and NEW IMAGE MEDIA

28  CORPORATION allege against defendants and each of them as follows:

320243.1      *COMPLAINT FOR INTENTIONAL INTERFERENCE, BREACH OF CONTRACT, ETC.*

000007

42

Case 1:13-ap-01035-MT  Doc 1-1  Filed 02/15/13  Entered 02/15/13 10:29:31  Desc
Exhibit Exhibits 1 to 7  Page 39 of 80

Case 1:96-bk-15521-GM  Doc 160-1  Filed 01/15/13  Entered 01/15/13 17:28:24  Desc
Exhibit A - E  Page 27 of 65

Case 2:06-bk-11205-VZ  Doc 57  Filed 06/23/06  Entered 06/26/06 15:44:00  Desc
Main Document  Page 15 of 37

## FACTUAL OVERVIEW

1.      Beginning in approximately 1989, plaintiff LYDIA HARRIS entered into a series of legal relationships with DAVID E. KENNER and SUGE KNIGHT and the other KENNER and KNIGHT defendants (identified more particularly below). DAVID KENNER agreed to act as her attorney, counseling her and the corporate plaintiffs. In consideration for his services, the KENNER defendants received ownership and partnership interests in various business enterprises, including DEATH ROW RECORDS. In each and every venture, DAVID KENNER served as plaintiffs' trusted counsel, partner, advisor and confidant. Despite his fiduciary obligations, DAVID KENNER never disclosed his personal and conflicting interests, motivation and actions to plaintiffs, as alleged herein.

2.      During the period when DEATH ROW RECORDS was formed, it was understood and agreed that LYDIA HARRIS was a fifty percent owner and that DAVID KENNER, as her legal representative, would represent her in the management of that new company. The KENNER and KNIGHT defendants recognized the substantial value and incredible potential of this new business as well as the financial benefits and feasibility of excluding a fifty-percent owner who lacked their business acumen and greed. LYDIA HARRIS was a skilled producer, capable of locating and signing new and exciting talents in the emerging hip hop/rap music business. However, they knew that she lacked corporate business experience or political insider skills. Accordingly, she was vulnerable to misdealings by her partners and fiduciaries in such ventures.

3.      Plaintiff LYDIA HARRIS was the only female participant in the newly formed DEATH ROW RECORD entities. The KENNER and KNIGHT defendants had no respect for her person or position, consistent with the rap music industry perspective and practice of demeaning and disparaging women. From the outset, the KENNER and KNIGHT defendants conspired between themselves to take advantage of her skills, while depriving her of any of the

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
P.O. BOX 7033
TARZANA, CALIFORNIA #1327-7033

2

*COMPLAINT FOR INTENTIONAL INTERFERENCE, BREACH OF CONTRACT, ETC.*

320240.1

000008

Case 1:13-ap-01035-MT    Doc 1-1    Filed 02/15/13    Entered 02/15/13 10:29:31    Desc
Exhibit Exhibits 1 to 7    Page 40 of 80

Case 1:96-bk-15521-GM    Doc 160-1    Filed 01/15/13    Entered 01/15/13 17:28:24    Desc
Exhibit A - E    Page 28 of 65

Case 2:06-bk-11205-VZ    Doc 57    Filed 06/23/06    Entered 06/26/06 15:44:00    Desc
Main Document    Page 16 of 37

1  benefits of her efforts or the collective synergy she helped generate in forming and developing

2  DEATH ROW RECORDS.

3

4      4.    In furtherance of this conspiracy, the KENNER and KNIGHT defendants secretly

5  changed the status and legal existence of DEATH ROW RECORDS, carefully excluding

6  plaintiffs from their plans and actions. Despite her rights and ownership interests in the

7  DEATH ROW industry she helped to create, these defendants created confusion by forming

8  multiple, similarly named entities, diverting funds away from plaintiff HARRIS, while

9  simultaneously undermining each plaintiff in their independent ventures. All of these acts were

10  intended to weaken, discredit and emasculate plaintiffs' efforts to discover, pursue or vindicate

11  their rights.

12

13      5.    These actions have taken many forms over a decade. They have all been part of

14  a continuing, concealed, intentional effort in conscious disregard for the rights of plaintiffs. As

15  set forth below, the KENNER and KNIGHT defendants manipulated plaintiffs as well as

16  plaintiffs' relationships with other conspirators. Purporting to help plaintiffs, they created sham

17  transactions with industry executives and labels. Everyone involved in these conspiracies knew

18  that their goal was to divert plaintiff HARRIS away from her ownership and interests in

19  DEATH ROW RECORDS.

20

21      6.    With the knowledge and aid of industry executives including, but not limited to

22  defendants JIMMY IOVINE and JOHN T. McCLAIN, JR., and their labels, including

23  INTERSCOPE RECORDS, plaintiffs were deceived and induced to waste their time, efforts and

24  money pursuing contractual matters that none of the conspirators intended to honor or took

25  seriously. They knew their contracts were one-sided and illusory. At no time did plaintiffs

26  realize that they were being falsely induced to enter into such contracts by an entire group of

27  conspirators, secretly led by plaintiffs' own lawyer and fiduciary, defendant DAVID KENNER.

28

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
P.O. BOX 7033
TARZANA, CALIFORNIA 91357-7033

3

320243.1    COMPLAINT FOR INTENTIONAL INTERFERENCE, BREACH OF CONTRACT, ETC.

000009

44

Case 1:13-ap-01035-MT    Doc 1-1    Filed 02/15/13    Entered 02/15/13 10:29:31    Desc
Exhibit Exhibits 1 to 7    Page 41 of 80

Case 1:96-bk-15521-GM    Doc 160-1    Filed 01/15/13    Entered 01/15/13 17:28:24    Desc
Exhibit A - E    Page 29 of 65

Case 2:06-bk-11205-VZ    Doc 57    Filed 06/23/06    Entered 06/26/06 15:44:00    Desc
Main Document    Page 17 of 37

7.    This conspiracy later expanded to include actions designed to actively induce others to disregard, avoid and breach their contracts with plaintiffs. Such actions included direct and indirect comments, threats and inducements to producers, writers, artists, labels and distributors under contract to plaintiffs to produce hip hop music. Such improper contacts and inducements directly lead to a series of ongoing contract breaches by defendant BATTLECAT and others.

8.    Ultimately, to impact plaintiffs' ability to continue to meet, identify and cultivate new and talented artists, SUGE KNIGHT publicly defamed LYDIA HARRIS personally. By consciously and falsely defaming her and denouncing her ability, he hoped to destroy her credibility within the music industry and with potential new talent. In so doing, he knew that he could inflict harm to each of the plaintiff entities owned and controlled by her. With this motive in mind, he repeatedly and maliciously defamed her both personally and professionally in the national public spotlight. He chose his words carefully to destroy her image and reputation with new writers, artists and producers. He has published and repeated these known falsehoods about her personally and her professional ability, as set forth below, all to accomplish these improper and unlawful objectives.

9.    Each of the defendants has damaged plaintiffs and deprived them of income and successes in the music industry. Each of these actions began as part of the larger plan and longstanding conspiracy of the KENNER and KNIGHT defendants to destroy her ability to lay claim to her rightful share of the ownership and profits of DEATH ROW RECORDS.

## THE PARTIES

10.    Plaintiff LYDIA HARRIS is an individual residing in Los Angeles County, California. For over a decade, she has made her living in the music entertainment industry. She is or has been a director, officer or managing agent and sole shareholder of LIFESTYLE

4

*COMPLAINT FOR INTENTIONAL INTERFERENCE, BREACH OF CONTRACT, ETC.*

320243.1

000010

45

Case 1:13-ap-01035-MT   Doc 1-1   Filed 02/15/13   Entered 02/15/13 10:29:31   Desc
Exhibit Exhibits 1 to 7   Page 42 of 80

Case 1:96-bk-15521-GM   Doc 160-1   Filed 01/15/13   Entered 01/15/13 17:28:24   Desc
Exhibit A - E   Page 30 of 65

Case 2:06-bk-11205-VZ   Doc 57   Filed 06/23/06   Entered 06/26/06 15:44:00   Desc
Main Document   Page 18 of 37

1   RECORDS, INC., NEW IMAGE MEDIA CORPORATION, and Premier Entertainment, Inc.

2   She was also an officer and 50% shareholder of GFP, Inc., principally involved in the formation

3   and success of defendant DEATH ROW RECORDS.  Plaintiff also co-executive produced the

4   recently released documentary film, "Welcome to Death Row", which chronicles the history of

5   that record label.

6

7        11.    Plaintiffs LIFESTYLE RECORDS, INC. and NEW IMAGE MEDIA

8   CORPORATION are corporations organized and operating under the laws of the State of

9   California.  LYDIA HARRIS, LIFESTYLE RECORDS, INC. and/or NEW IMAGE MEDIA

10  CORPORATION are or have done business under the fictitious business names of Jail House

11  Entertainment, Jail House Records, K D A Distribution Group, Keeping The Dream Alive

12  Productions, Life Style Records, and Nubreed Promotions.  LYDIA HARRIS is also a partner

13  in the general partnership Allen Gordon Entertainment.

14

15       12.    Defendant DAVID E. KENNER resides and does business in Los Angeles

16  County, California.  At all times material, DAVID E. KENNER is and has been licensed to

17  practice law in the State of California.  DAVID E. KENNER was and is an officer, director or

18  managing agent of DEATH ROW RECORDS, DAVID E. KENNER, PROFESSIONAL LAW

19  CORPORATION and DAVID E. KENNER, A PROFESSIONAL CORPORATION, and has

20  been and is the trustee, trustor, or beneficiary of THE DAVID E. KENNER TRUST.

21

22       13.    DAVID E. KENNER, PROFESSIONAL LAW CORPORATION and DAVID

23  E. KENNER, A PROFESSIONAL CORPORATION are corporations organized and existing

24  under the laws of the state of California.  At all times material, DAVID E. KENNER,

25  PROFESSIONAL LAW CORPORATION, DAVID E. KENNER, A PROFESSIONAL

26  CORPORATION and THE DAVID E. KENNER TRUST are the alter egos of DAVID E.

27  KENNER (collectively, the "KENNER defendants").

28

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
P.O. BOX 7033
TARZANA, CALIFORNIA #1357-7033

5

320243.1        *COMPLAINT FOR INTENTIONAL INTERFERENCE, BREACH OF CONTRACT, ETC.*

000011

Case 1:13-ap-01035-MT    Doc 1-1    Filed 02/15/13    Entered 02/15/13 10:29:31    Desc
Exhibit Exhibits 1 to 7    Page 43 of 80

Case 1:96-bk-15521-GM    Doc 160-1    Filed 01/15/13    Entered 01/15/13 17:28:24    Desc
Exhibit A - E    Page 31 of 65

Case 2:06-bk-11205-VZ    Doc 57    Filed 06/23/06    Entered 06/26/06 15:44:00    Desc
Main Document    Page 19 of 37

14. Defendant MARION H. KNIGHT is also known as SUGE KNIGHT ("SUGE KNIGHT"). He is a resident of and does business in Los Angeles County, California. SUGE KNIGHT was and is an officer, director or managing agent of DEATH ROW RECORDS and THA ROW, INC. At all times material, SUGE KNIGHT was acting in both his individual capacity and his capacity as an officer, director or managing agent of DEATH ROW RECORDS and THA ROW, INC. They are all collectively referred to as the "KNIGHT defendants".

15. DEATH ROW RECORDS and THA ROW, INC. were and are corporations organized and existing under the laws of the State of California, with their principal place of business in Los Angeles County. Plaintiff is informed and believes that DEATH ROW RECORDS is also known as DEATH ROW RECORDS, L.L.C.

16. Defendant KEVIN GILLIAM is professionally known as "Battlecat" and "DJ Battlecat" ("BATTLECAT"). He is a resident of and does business in Los Angeles County, California.

17. Defendant INTERSCOPE RECORDS, INC. is a Delaware corporation doing business in Los Angeles County, California, and is the general partner of defendant INTERSCOPE RECORDS, a California general partnership (collectively, "INTERSCOPE"). Defendants JIMMY IOVINE ("IOVINE") and JOHN T. McCLAIN, JR. ("McCLAIN") are residents of Los Angeles County, California. IOVINE and McCLAIN were and/or are officers, directors and/or managing agents of INTERSCOPE. IOVINE, McCLAIN and INTERSCOPE are referred to collectively as the "INTERSCOPE defendants".

18. Plaintiffs are informed and believe that defendants A&M RECORDS; ARISTA; ARTEMIS; ASYLUM; BADBOY; BEYOND RECORDS; DEF JAM; DONE DEAL; D P G; ELEKTRA; HIP-O RECORDS; HOOBANGIN RECORDS; JIVE; J-RECORDS; LOUD RECORDS; MCA; POLYGRAM; PRIORITY; RCA; S.F.E. ENT.; SICK WIT IT; TVT

6

COMPLAINT FOR INTENTIONAL INTERFERENCE, BREACH OF CONTRACT, ETC.

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
P.O. BOX 7033
TARZANA, CALIFORNIA #1357-7033

Case 1:13-ap-01035-MT    Doc 1-1    Filed 02/15/13    Entered 02/15/13 10:29:31    Desc
Exhibit Exhibits 1 to 7    Page 44 of 80

Case 1:96-bk-15521-GM    Doc 160-1    Filed 01/15/13    Entered 01/15/13 17:28:24    Desc
Exhibit A - E    Page 32 of 65

Case 2:06-bk-11205-VZ    Doc 57    Filed 06/23/06    Entered 06/26/06 15:44:00    Desc
Main Document    Page 20 of 37

1 │ RECORDS; THE ORCHARD; TOMMY BOY; UNIVERSAL; WARNER BROS.; and

2 │ ZOMBA (collectively, the "LABELS" or, individually, "LABEL") are corporations or other

3 │ entities doing business in Los Angeles County, California.

4 │

5 │   19.    Plaintiffs are informed and believe that each of the LABELS has contracted with

6 │ and paid compensation to BATTLECAT for his services as a producer, writer or artist on

7 │ albums, cassettes, CD's and/or DVD's which each such LABEL has released for national or

8 │ international sale to the public.

9 │

10 │   20.    Plaintiffs are informed and believe that each DOE defendant is a resident of or an

11 │ entity doing business in Los Angeles County, California. DOES 1 through 100 are producers,

12 │ writers, artists, labels or distributors residing or doing business in Los Angeles County,

13 │ California. The true names and capacities of these DOES are unknown to plaintiffs. Plaintiffs

14 │ therefore sue these defendants by such fictitious names. Plaintiffs will seek leave to amend this

15 │ complaint to insert the true names and capacities of these fictitiously named defendants when

16 │ they are ascertained. Each defendant designated as a "DOE" is responsible in some manner for

17 │ the acts, occurrences and liabilities hereinafter alleged.

18 │

19 │   21.    At all times material, defendants were the agents and employees of each other and

20 │ were acting within the course and scope of said agency and employment relationships.

21 │

22 │                        **FIRST CAUSE OF ACTION**

23 │   **INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS**

24 │            **AND PROSPECTIVE ECONOMIC ADVANTAGE**

25 │         (By Plaintiffs against the Kenner and Knight Defendants)

26 │

27 │   22.    Plaintiffs incorporate all prior paragraphs and the allegations of the third, fourth

28 │ and seventh causes of action as though fully set forth herein.

─────────────────────────────────────────────
                           7

320243.1    *COMPLAINT FOR INTENTIONAL INTERFERENCE, BREACH OF CONTRACT, ETC.*

                                        000013

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
P.O. BOX 7033
TARZANA, CALIFORNIA 91357-7033

Case 1:13-ap-01035-MT    Doc 1-1    Filed 02/15/13    Entered 02/15/13 10:29:31    Desc
Exhibit Exhibits 1 to 7    Page 45 of 80

Case 1:96-bk-15521-GM    Doc 160-1    Filed 01/15/13    Entered 01/15/13 17:28:24    Desc
Exhibit A - E    Page 33 of 65

Case 2:06-bk-11205-VZ    Doc 57    Filed 06/23/06    Entered 06/26/06 15:44:00    Desc
Main Document    Page 21 of 37

23.    At all times material, the KENNER and KNIGHT defendants knew that plaintiffs had a legitimate ownership interest in DEATH ROW RECORDS and legitimate contractual relationships with various producers, writers, artists, labels and distributors. They included valid contracts with BATTLECAT, Dana Dane, Relativity, R.E.D./Sony, and Maverick. These relationships were cultivated and created by plaintiffs, together with DAVID KENNER acting as their counsel, in conjunction with SUGE KNIGHT and/or others. These relationships resulted in contracts, formation of business entities and various agreements, both written and oral, all related to development of hip hop music for sale and distribution to the public.

24.    In furtherance of the conspiracy outlined above, the KENNER and KNIGHT defendants intentionally induced various industry individuals and entities to breach or otherwise abandon their contracts, agreements and business promises to plaintiffs. These inducements were made by relying upon their substantial power and influence in the emerging field of rap music. Defendants were able to "convince" industry executives, labels, producers, writers, artists, distributors and others to avoid working with plaintiffs entirely, enter into sham transactions and/or disregard existing profitable contracts, all to the substantial damage of each plaintiff herein.

25.    As a proximate result of the conduct of defendants, and each of them, plaintiffs have sustained general and special damages, including but not limited to emotional distress (LYDIA HARRIS only), loss of the benefits of their contracts, lost profits, loss of earnings, loss of goodwill, and actual harm to plaintiffs' reputations, all in an amount to be proven at trial.

26.    By engaging in this conduct, defendants, and each of them, acted intentionally, maliciously, oppressively and with willful and conscious disregard for the rights of plaintiffs. DAVID KENNER and SUGE KNIGHT were officers, directors, and/or managing agents of defendant DEATH ROW RECORDS, which independently authorized and ratified their conduct herein. Punitive damages should be assessed against the KENNER and KNIGHT

8

320243.1    *COMPLAINT FOR INTENTIONAL INTERFERENCE, BREACH OF CONTRACT, ETC.*

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
P.O. BOX 7033
TARZANA, CALIFORNIA 91357-7033

000014

49

1    defendants and each of them for the sake of example and to punish these defendants.

2

3                    **SECOND CAUSE OF ACTION**

4                    **BREACH OF CONTRACT**

5                  **(By Plaintiffs Against Battlecat)**

6

7        27.    Plaintiffs incorporate all prior paragraphs as though fully set forth herein.

8

9        28.    One of the contractual relationships created by plaintiffs, relying upon the

10   guidance and legal counsel of DAVID KENNER, involves an Exclusive Producer Agreement

11   with defendant BATTLECAT. This contract was drafted under the supervision of the KENNER

12   defendants and executed under circumstances known to the KENNER and KNIGHT

13   defendants.

14

15       29.    Effective September 11, 1993, plaintiffs LYDIA HARRIS and LIFESTYLE

16   RECORDS entered into this Exclusive Producer Agreement with BATTLECAT.    A true and

17   correct copy of the contract is attached as Exhibit A and incorporated herein as though fully set

18   forth at length.

19

20       30.    Effective November 1, 1996, NEW IMAGE MEDIA CORPORATION acquired

21   all right, title and interest in and to all contracts entered into between BATTLECAT and

22   LIFESTYLE RECORDS.    BATTLECAT acknowledged and agreed in writing to this

23   acquisition. A copy of this agreement is attached as Exhibit B and incorporated herein as

24   though fully set forth at length.

25

26       31.    On or before September 11, 1998, LYDIA HARRIS, NEW IMAGE MEDIA

27   CORPORATION and BATTLECAT entered into a further written agreement which extended

28   the Exclusive Producer Agreement for an additional five years.

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
P.O. BOX 7033
TARZANA, CALIFORNIA 91357-7033

9

320243.1        *COMPLAINT FOR INTENTIONAL INTERFERENCE, BREACH OF CONTRACT, ETC.*

**000015**

Case 1:13-ap-01035-MT    Doc 1-1    Filed 02/15/13    Entered 02/15/13 10:29:31    Desc
Exhibit Exhibits 1 to 7    Page 47 of 80

Case 1:96-bk-15521-GM    Doc 160-1    Filed 01/15/13    Entered 01/15/13 17:28:24    Desc
Exhibit A - E    Page 35 of 65

Case 2:06-bk-11205-VZ    Doc 57    Filed 06/23/06    Entered 06/26/06 15:44:00    Desc
Main Document    Page 23 of 37

1      32.    Plaintiffs have performed all covenants and conditions required of them under the

2 Exclusive Producer Agreement, except for those covenants and conditions which were excused,

3 BATTLECAT has waived or is estopped to assert, or which were rendered impossible due to

4 the conduct of others.

5

6      33.    Relying in part upon inducements and threats emanating from the KENNER and

7 KNIGHT defendants, BATTLECAT intentionally breached the Exclusive Producer Agreement.

8 His breaches include producing, writing, performing, re-mixing or otherwise contributing to the

9 production of musical recordings for the benefit of himself and others, without making any

10 payments to plaintiffs as contractually promised.   In addition, BATTLECAT failed to

11 acknowledge and even affirmatively denied plaintiffs' right, title and interest in and to his work

12 as well as the compensation paid to him as set forth in their Exclusive Producer Agreement.

13

14      34.    Plaintiffs are informed and believe that the following musical works were

15 produced, written, or performed by BATTLECAT, and that he received payments for this work

16 without making any payments to plaintiffs as required by their contract. Plaintiffs are informed

17 and believe that, collectively, more than five million copies of these recordings have been sold.

18 Plaintiffs are further informed and believe that BATTLECAT has or will receive up to $75,000

19 per master (i.e., a single song) for his involvement in each of these projects.

20

21        a.      A&M RECORDS: one or more songs on the albums *The Players*

22             *Club* and *The Players Club [Clean]*, released on or about March

23             7, 1998.

24

25        b.      ARISTA: one or more songs on the album *Weekend*, released on

26             or about October 9, 2001.

27

28        c.      ARTEMIS: one or more songs on the albums *The Streetz Iz A . . .*,

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
P.O. BOX 7033
TARZANA, CALIFORNIA 1357-7033

10

Case 1:13-ap-01035-MT    Doc 1-1    Filed 02/15/13    Entered 02/15/13 10:29:31    Desc
Exhibit Exhibits 1 to 7    Page 48 of 80

Case 1:96-bk-15521-GM    Doc 160-1    Filed 01/15/13    Entered 01/15/13 17:28:24    Desc
Exhibit A - E    Page 36 of 65

Case 2:06-bk-11205-VZ    Doc 57    Filed 06/23/06    Entered 06/26/06 15:44:00    Desc
Main Document    Page 24 of 37

<div style="text-align: center; writing-mode: vertical; font-size: small;">
WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.<br>
5567 REEDA BOULEVARD, SUITE 330<br>
P.O. BOX 7033<br>
TARZANA, CALIFORNIA 91357-7033
</div>

1  released in or about 1999, and *"O"*, released on or about August
2  21, 2001.

3

4  d.  BADBOY: one or more songs on the album *Faithfully*, released on
5  or about November 6, 2001.

6

7  e.  BEYOND RECORDS: one or more songs on the album *Lucy*
8  *Pearl*, released on or about May 23, 2000.

9

10  f.  DEF JAM: one or more songs on the album *Def Jam Music Group*
11  *-Ten Year Anniversary*, released on or about November 21, 1995.

12

13  g.  DONE DEAL:  one or more songs on the album *Heated Speeches*,
14  *Vol. 1*, released on or about April 10, 2001.

15

16  h.  D.P.G.:  one or more songs on the album *Who Ride Wit Us*,
17  released on or about November 6, 2001.

18

19  i.  ELEKTRA/ASYLUM:  one or more songs on the albums *Music*
20  *and Me* and *Music and Me [Clean]*, released on or about December
21  4, 2001.

22

23  j.  HIP-O RECORDS:  one or more songs on the album *Love Hip-*
24  *Hop*, released on or about May 16, 2000.

25

26  k.  HOOBANGIN RECORDS/PRIORITY:   The songs *Platinum*
27  *Game*, released on or about 1998, and *"Children of Da Ghetto*,
28  performed by BATTLECAT, and released in or about 1999.

<div style="text-align: center;">11</div>

Case 1:13-ap-01035-MT   Doc 1-1   Filed 02/15/13   Entered 02/15/13 10:29:31   Desc
Exhibit Exhibits 1 to 7   Page 49 of 80

Case 1:96-bk-15521-GM   Doc 160-1   Filed 01/15/13   Entered 01/15/13 17:28:24   Desc
Exhibit A - E   Page 37 of 65

Case 2:06-bk-11205-VZ   Doc 57   Filed 06/23/06   Entered 06/26/06 15:44:00   Desc
Main Document   Page 25 of 37



l.   J-RECORDS:  The song, *"Do U Wanna Roll"* on the soundtrack *Dr. Doolittle 2*, released on or about June 19, 2001; and, one or more songs on the album *Genesis [Clean]*, released on or about November 27, 2001

m.   JIVE:  The song, *"Na, Na . . ."* on the album *Loyalty and Betrayal [Clean]*, released on or about October 24, 2000; and, one or more songs on the albums *Corruptor* [Original Soundtrack], released on or about March 9, 1999, and *Things in the Game Done Changed*, released on or about January 25, 2000;

n.   LOUD RECORDS:  one or more songs on the albums *Can You Feel Me*, released on or about September 6, 1996, *Restless* and *Restless [Clean]*, released on or about December 12, 2000;

o.   MCA:  The song, *"High Come Down"* on the album, *Wild 'n Tha West [Clean]*, released on or about June 19, 2001.

p.   POLYGRAM:  One or more songs on the following albums: *The Shadiest One*, released on or about April 28, 1998; *Def Jam 1985-2001: History of Hip Hop, Vol. 1*, and *Def Jam 1985-2001: History of Hip Hop, Vol. 1 [Clean]*, released on or about February 27, 2001.

q.   PRIORITY:  One or more songs on the following albums: *Thicker Than Water*, released on or about October 5, 1999;  *Strikes*, released on or about February 22, 2000; *Tha Last Meal*, released on or about December 19, 2000; *Nuthin' But a Gangsta Party, Vol. 2*,

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
P.O. BOX 7033
TARZANA, CALIFORNIA 91357-7033

12

320243.1      *COMPLAINT FOR INTENTIONAL INTERFERENCE, BREACH OF CONTRACT, ETC.*  000018

53

Case 1:13-ap-01035-MT    Doc 1-1    Filed 02/15/13    Entered 02/15/13 10:29:31    Desc
Exhibit Exhibits 1 to 7    Page 50 of 80

Case 1:96-bk-15521-GM    Doc 160-1    Filed 01/15/13    Entered 01/15/13 17:28:24    Desc
Exhibit A - E    Page 38 of 65

Case 2:06-bk-11205-VZ    Doc 57    Filed 06/23/06    Entered 06/26/06 15:44:00    Desc
Main Document    Page 26 of 37

released on or about July 3, 2001; *Personal Business*, released on or about July 17, 2001; *Training Day*, released on or about September 11, 2001; and *Bones*, released on or about October 9, 2001.

r.    RCA:  One or more songs on the albums *2000 Watts* and *2000 Watts [Clean]* albums, released on or about May 22, 2001.

s.    S.F.E. ENT.:  One or more songs on the album *Twisted Reality*, released on or about January 30, 2001.

t.    SICK WIT IT/JIVE/ZOMBA:  One or more songs on the album *Sophmore Release*, released in or about 2000.

u.    SONY RECORDS:  One or more songs on the album *Rap Life*, released on or about November 23, 1999.

v.    THE ORCHARD:  One or more songs on the album *Expensive and Dear*, released on or about March 28, 2000.

w.    TOMMY BOY:  One or more songs on the album *The Ride: Music From Dimension*, released on or about February 17, 1998.

x.    TVT RECORDS: The songs *G'd Up [Single]*, released on or about December 7, 1999, "*Baby if you're ready*" on the album, *Pleezbaleevit!*, released in 2000, and "*Dollaz, drank & dank*" on the album *Da Khop Shop*, released on or about March 21, 2001; and one or more songs on the albums *Tha Eastsidaz* also known as

13

WASSERMAN, COMDEN, CASSELMAN & PEARSON, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
P.O. BOX 7033
TARZANA, CALIFORNIA 81357-7033

54

1       *Snoop Dogg Presents Tha Eastsidaz*, released on or about February

2       1,2000; and *Duces n' Trays, The Old Fashioned Way* and *Duces n'*

3       *Trays, The Old Fashioned Way [Clean]*, released on or about July

4       31, 2001.

5

6      y.    UNIVERSAL: The song "*Just a Baby Boy*" on *Baby Boy [Clean]*

7         and *Baby Boy*, on or about June 19, 2001; and one or more songs

8         on the albums *Waterbed Hev*, released on or about April 22, 1997,

9         and *Superhero*, released on or about August 28, 2001.

10

11      z.    WARNER BROS.: One or more songs on the album *Thin Line*

12         *Between Love and Hate*, released on or about February 13, 1996.

13

14     35.   Plaintiffs are informed and believe that BATTLECAT also contracted to produce

15  or produced musical recordings with DOE defendants 1 through 100. Despite the requirements

16  of their contract, defendant similarly failed to make any payments to plaintiffs for this work as

17  required by their Exclusive Producer Agreement. In addition, plaintiffs are informed and

18  believe that JOHN T. McCLAIN, JR., acting as an officer, director and managing agent of

19  DreamWorks Music Publishing L.L.C., has recently agreed to pay or has paid BATTLECAT

20  approximately $600,000 as consideration for additional production, writing and/or artist

21  services. None of the funds paid to BATTLECAT has been paid to plaintiffs, as required by

22  contract.

23

24     36.   In breach of his promises, BATTLECAT took all funds paid for each such

25  production, composition, recording, including publishing rights and points owed to plaintiff,

26  in violation of their Exclusive Producer Agreement. This conduct was neither excused nor

27  otherwise permitted pursuant to the terms of the agreement.

28

<div style="text-align:center">WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.<br>5567 RESEDA BOULEVARD, SUITE 330<br>P.O. BOX 7033<br>TARZANA, CALIFORNIA 91357-7033</div>

<div style="text-align:center">14</div>

320243.1    *COMPLAINT FOR INTENTIONAL INTERFERENCE, BREACH OF CONTRACT, ETC.*

Case 1:13-ap-01035-MT    Doc 1-1    Filed 02/15/13    Entered 02/15/13 10:29:31    Desc
Exhibit Exhibits 1 to 7    Page 52 of 80

Case 1:96-bk-15521-GM    Doc 160-1    Filed 01/15/13    Entered 01/15/13 17:28:24    Desc
Exhibit A - E    Page 40 of 65

Case 2:06-bk-11205-VZ    Doc 57    Filed 06/23/06    Entered 06/26/06 15:44:00    Desc
Main Document    Page 28 of 37

1    37.    As a proximate result of the conduct of defendant, plaintiffs have sustained

2    general and special damages, including loss of the benefits of the contract, loss of past and

3    future profits, and loss of good will, all in an amount to be proven at trial, but which plaintiff

4    reasonably estimates to exceed $10,000,000.

5

6    ## THIRD CAUSE OF ACTION

7    ## INTENTIONAL INTERFERENCE WITH PROSPECTIVE

8    ## ECONOMIC ADVANTAGE

9    (By Plaintiffs Against the Interscope Defendants, the Labels and Does 1-100)

10

11    38.    Plaintiffs incorporate all prior paragraphs as though fully set forth herein.

12

13    39.    Fully aware of the contract between plaintiffs and BATTLECAT, defendants

14    intentionally engaged in conduct which materially interfered with the performance of that

15    contract. Specifically, each defendant knew that BATTLECAT was under exclusive contract

16    to plaintiffs and that all funds paid for his services should have been paid to plaintiffs, for

17    redistribution to producers, writers, artists, and others, as per their existing contractual

18    agreements. Instead, defendants intentionally interfered with this contractual relationship by

19    inducing, encouraging and permitting others to disregard and abandon their obligations under

20    their contracts with plaintiffs.    As a direct consequence, these individuals and entities paid

21    none of the funds they knew were owed to plaintiffs. In short, defendants simply ignored their

22    obligations to plaintiffs, forcing them to file this action to protect their contractual rights.

23

24    40.    As a proximate result of the conduct of defendants, and each of them, plaintiffs

25    have sustained general and special damages, including but not limited to emotional distress

26    (LYDIA HARRIS only), loss of the benefits of their contracts, lost profits, loss of earnings, loss

27    of goodwill, and actual harm to plaintiffs' reputations, all in an amount to be proven at trial.

28

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 REEDA BOULEVARD, SUITE 550
P.O. BOX 7033
TARZANA, CALIFORNIA #1357-7033

15

Case 1:13-ap-01035-MT    Doc 1-1    Filed 02/15/13    Entered 02/15/13 10:29:31    Desc
Exhibit Exhibits 1 to 7    Page 53 of 80

Case 1:96-bk-15521-GM    Doc 160-1    Filed 01/15/13    Entered 01/15/13 17:28:24    Desc
Exhibit A - E    Page 41 of 65

Case 2:06-bk-11205-VZ    Doc 57    Filed 06/23/06    Entered 06/26/06 15:44:00    Desc
Main Document    Page 29 of 37

1    41.    By engaging in this conduct, the INTERSCOPE DEFENDANTS, and each of

2    them, acted intentionally, maliciously, oppressively and with willful and conscious disregard

3    for the rights of plaintiffs. IOVINE and McCLAIN were and/or are officers, directors, and/or

4    managing agents of INTERSCOPE, which independently authorized and ratified their conduct

5    herein. Punitive damages should be assessed against the INTERSCOPE DEFENDANTS and

6    each of them for the sake of example and to punish these defendants.

7

8                            **FOURTH CAUSE OF ACTION**

9                      **FRAUD AND CONSPIRACY TO DEFRAUD**

10                      (By Plaintiffs Against the Kenner, Knight and

11                          Interscope Defendants, and Does 1-100)

12

13    42.    Plaintiffs incorporate all prior paragraphs as though fully set forth herein.

14

15    43.    Commencing in or about 1989, the KENNER and KNIGHT defendants began

16    enlisting the aid of industry executives and entities for the purpose of furthering their plan to

17    exclude plaintiff LYDIA HARRIS from involvement with and enjoyment of the profits from

18    DEATH ROW RECORDS and its successors and related entities. Using their increasing cachet

19    in the industry, they obtained the assistance of significant executives who would agree to join

20    in their plan. These executives and their companies were motivated to participate in this

21    improper scheme in order to obtain a lucrative position vis-a-vis the emerging hip hop industry

22    centered around the newly created entity known as DEATH ROW RECORDS.

23

24    44.    These executives and their labels agreed to participate by coordinating with the

25    KENNER and KNIGHT defendants to confuse plaintiffs and divert the assets flowing to

26    DEATH ROW RECORDS, divert plaintiffs' energies and attention away from this deception,

27    and induce plaintiffs to enter into contractual relationships which superficially appeared to

28    provide plaintiffs with substantial rights and interests. The INTERSCOPE defendants, among

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
P.O. BOX 7033
TARZANA, CALIFORNIA 1:357-7033

16
320243.1        *COMPLAINT FOR INTENTIONAL INTERFERENCE, BREACH OF CONTRACT, ETC.*

000022

Case 1:13-ap-01035-MT    Doc 1-1    Filed 02/15/13    Entered 02/15/13 10:29:31    Desc
Exhibit Exhibits 1 to 7    Page 54 of 80

Case 1:96-bk-15521-GM    Doc 160-1    Filed 01/15/13    Entered 01/15/13 17:28:24    Desc
Exhibit A - E    Page 42 of 65

Case 2:06-bk-11205-VZ    Doc 57    Filed 06/23/06    Entered 06/26/06 15:44:00    Desc
Main Document    Page 30 of 37

1    others, participated in this conspiracy by entering into lengthy, intentionally confusing and

2    illusory contracts with plaintiffs. These contracts were drafted in conspiracy with plaintiffs'

3    own counsel, the KENNER defendants.

4

5        45.    These contracts required plaintiffs to perform countless tasks and fulfill substantial

6    obligations. At the same time, they imposed no meaningful or enforceable obligations upon the

7    other contracting parties. However, because these contracts were lengthy and/or unintelligible

8    to all but experienced attorneys, plaintiffs were unaware of the illusory nature of the promises

9    contained therein and the absence of meaningful remedies for plaintiffs in the event (and

10   eventuality) that such contracts were later abandoned, ignored or simply dishonored.

11

12       46.    The KENNER defendants intended that plaintiffs would rely upon and follow

13   their advice concerning the entities with whom plaintiffs should contract and the terms of those

14   contracts. However, the KENNER defendants knew that the advice they were giving plaintiffs

15   was adverse and harmful to plaintiffs' interests, leaving them with monumental obligations and

16   duties without any true recourse against breaches by the other contracting parties.

17

18       47.    The KENNER and KNIGHT defendants knew that these contracts would defraud

19   plaintiffs and had the desired effect of (1) diverting LYDIA HARRIS from her personal

20   involvement in DEATH ROW RECORDS, (2) yielding no benefits, profits or value for

21   plaintiffs, and thus, (3) effectively preventing plaintiff HARRIS from financially exerting any

22   meaningful claim when she eventually discovered that she had been defrauded out of her

23   interests in DEATH ROW RECORDS.

24

25       48.    Plaintiffs are informed and believe that the KENNER and KNIGHT defendants

26   persuaded the INTERSCOPE defendants to participate in their conspiracy. Plaintiffs are

27   informed and believe that the KENNER and KNIGHT defendants initiated or participated in

28   this conspiracy in their individual capacities and as officers, directors or managing agents of

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
P.O. BOX 7033
TARZANA, CALIFORNIA 91357-7033

17

58

Case 1:13-ap-01035-MT   Doc 1-1   Filed 02/15/13   Entered 02/15/13 10:29:31   Desc
Exhibit Exhibits 1 to 7   Page 55 of 80

Case 1:96-bk-15521-GM   Doc 160-1   Filed 01/15/13   Entered 01/15/13 17:28:24   Desc
Exhibit A - E   Page 43 of 65

Case 2:06-bk-11205-VZ   Doc 57   Filed 06/23/06   Entered 06/26/06 15:44:00   Desc
Main Document   Page 31 of 37

1    DEATH ROW RECORDS.

2

3        49.    Plaintiffs are further informed and believe that the KENNER defendants

4    participated in drafting and approving the onerous and illusory contract with defendant

5    INTERSCOPE, and with respect to her interests in DEATH ROW RECORDS.  At no time did

6    defendants have any intention of fulfilling their obligations under these agreements.  Rather,

7    they intended to immediately "bury" and divert plaintiffs by altering the legal status of DEATH

8    ROW RECORDS and by assigning the INTERSCOPE-LIFESTYLE contract to a record label

9    with little or no experience in rap music, which would never release the masters for public sale.

10    The impact upon plaintiffs was known to be substantial by virtue of the tremendous time, energy

11    and expense which would be required to develop the master recordings, which the defendants

12    knew would never be released for sale.  As a result, plaintiffs would receive no benefit from

13    their efforts and suffer substantial distress and financial damage.

14

15        50.    Plaintiff LYDIA HARRIS, acting on her own behalf and on behalf of her solely-

16    owned corporation, LIFESTYLE RECORDS, reasonably believed that DAVID KENNER was

17    acting as her attorney, partner, fiduciary, and confidante.  As such, she reasonably and

18    justifiably relied heavily upon his advice.  Plaintiffs also reasonably relied upon the affirmative

19    representations and significant industry reputations of the KNIGHT and INTERSCOPE

20    defendants when they promised to work with her in good faith and to fulfill their promises and

21    contractual obligations.  Plaintiffs were unaware of the falsity of or ulterior motives underlying

22    the advice, representations and promises made by these defendants.

23

24        51.    As a proximate result of the conduct of defendants, and each of them, plaintiffs

25    have sustained general and special damages, including but not limited to emotional distress

26    (LYDIA HARRIS only), loss of the benefits of their contracts, lost profits, loss of earnings, loss

27    of goodwill, and actual harm to plaintiffs' reputations, all in an amount to be proven at trial.

28

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
P.O. BOX 7033
TARZANA, CALIFORNIA 91357-7033

-18-

*COMPLAINT FOR INTENTIONAL INTERFERENCE, BREACH OF CONTRACT, ETC.*

320243.1

000024

59

Case 1:13-ap-01035-MT    Doc 1-1    Filed 02/15/13    Entered 02/15/13 10:29:31    Desc
Exhibit Exhibits 1 to 7    Page 56 of 80

Case 1:96-bk-15521-GM    Doc 160-1    Filed 01/15/13    Entered 01/15/13 17:28:24    Desc
Exhibit A - E    Page 44 of 65

Case 2:06-bk-11205-VZ    Doc 57    Filed 06/23/06    Entered 06/26/06 15:44:00    Desc
Main Document    Page 32 of 37

52.    By engaging in this conduct, defendants, and each of them, acted intentionally, maliciously, oppressively and with willful and conscious disregard for the rights of plaintiffs. IOVINE and McCLAIN were officers, directors, and/or managing agents of defendant INTERSCOPE, which independently authorized and ratified their conduct herein. KENNER was an officer, director, trustee or managing agent of DAVID E. KENNER, PROFESSIONAL LAW CORPORATION, DAVID E. KENNER, A PROFESSIONAL CORPORATION, DAVID E. KENNER TRUST and DEATH ROW RECORDS, which independently authorized and ratified his conduct herein.  KNIGHT was an officer, director or managing agent of DEATH ROW RECORDS, which independently authorized and ratified his conduct herein. Punitive damages should be assessed against these defendants and each of them for the sake of example and to punish these defendants, in an amount to be proven at the time of trial.

### FIFTH CAUSE OF ACTION
### FOR DEFAMATION
**(By Plaintiffs Against the Knight Defendants and Does 1-100)**

53.    Plaintiff incorporates all prior paragraphs as though fully set forth herein.

54.    SUGE KNIGHT, acting in his individual capacity and on behalf of DEATH ROW RECORDS and THA ROW, INC., intentionally defamed plaintiff LYDIA HARRIS by making false and unprivileged publications, disseminated both orally and in writing.

55.    SUGE KNIGHT represented that plaintiff was and is lying about her professional accomplishments; lying about her involvement in the formation and history of Death Row Records; a false FBI and/or government informant; using her position and contacts with new rap artists, producers and writers to falsely accuse them of crimes to get them arrested and convicted of crimes they did not commit; lying about her marital status; marital infidelity; a willing participant in repeated and wanton sexual intercourse with numerous men at DEATH

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
P.O. BOX 7033
TARZANA, CALIFORNIA 91337-7033

19

330243.1    *COMPLAINT FOR INTENTIONAL INTERFERENCE, BREACH OF CONTRACT, ETC.*

000025

Case 2:06-bk-11205-VZ   Doc 57   Filed 06/23/06   Entered 06/26/06 15:44:00   Desc
Main Document   Page 33 of 37

1    ROW RECORDS studio, on the same day, all in order to convince them to give her a recording

2    contract.

3

4          56.    Between approximately March 2001 and February 2002, the following false and

5    unprivileged publications were made about plaintiff by the KNIGHT defendants and were made

6    available for world-wide viewing on the internet site of BET.com:

7

8          "[By BET.com]  I'm sure you've heard about this new documentary film,

9          'Welcome to Death Row', which claims to tell the real story behind the

10         rise and fall of your record label [Death Row Records].

11

12         [by Knight]  I haven't seen it, but I heard a bunch of conversations about

13         the character whose putting it out {laughs}.

14

15         [By BET.com]  What do you think about it?

16

17         [By Knight]  As for the film, that movie . . . they know they're lying. .

18         . . I don't like rats and I'm not going to participate in that. Realistically,

19         can't nobody make a film about Death Row but Suge Knight. One of the

20         things, you don't have to take my word that they're lying. You can take

21         the grand jury and the government's word that they're lying. . . . As

22         far as the Mike guy . . . , this guy has told on almost every drug dealer,

23         lied on them, Columbians and anybody else just to try to get freedom.

24         Then he turned around and lied about Death Row to try to gain his

25         freedom . . . But most of all, [Harry O] is a rat, his wife's a rat. They go

26         around setting people up and think the more they tell on them, that

27         that will get him home. . . . As for anybody saying they had anything

28         to do with Death Row, nobody ever gave me a penny. . . . And for

                                            20

320243.1     COMPLAINT FOR INTENTIONAL INTERFERENCE, BREACH OF CONTRACT, ETC.

000026

Case 1:13-ap-01035-MT    Doc 1-1    Filed 02/15/13    Entered 02/15/13 10:29:31    Desc
Exhibit Exhibits 1 to 7    Page 58 of 80

Case 1:96-bk-15521-GM    Doc 160-1    Filed 01/15/13    Entered 01/15/13 17:28:24    Desc
Exhibit A - E    Page 46 of 65

Case 2:06-bk-11205-VZ    Doc 57    Filed 06/23/06    Entered 06/26/06 15:44:00    Desc
Main Document    Page 34 of 37

1    people to go around and say they had something to do with Death

2    Row or they helped start Death Row? If that's the case, start another

3    label. If it was so easy and if it was so true. When you get desperate

4    people looking for attention and trying to make some money, they'll

5    say anything. When I first found out about [Michael and Lydia Harris],

6    they said they owned Rap-a-Lot Records. The whole concept about it

7    is, if you look at it, don't take just me and Death Row. These are the

8    same people who say they started Rap-A-Lot. These are same people

9    who say they paid for Denzel Washington and made him the actor he

10    is today and took care of him and his wife with drug money.

12    [By BET.com] The Michael Harris and Denzel Washington connection

13    is mentioned in the film.

15    [By Knight] Yea. {laughs} ... If it's Suge Knight and Death Row, they

16    say, 'Okay, it's a big deal.' and we have to prove that they were lying. .

17    . . If a person turns around and say, 'Well, I did this for Denzel

18    Washington with drug money, I did this with Rap-a-Lot with drug money,

19    I did this with Death Row with drug money and I'm doing this for my

20    wife, my family, with drug money', it doesn't take a rocket scientist to

21    figure it out. If they admitting they did all this stuff with drug money,

22    why hasn't the government taken their shit? It's because they're just

23    informants and they're just lying." (Parentheses in original.) (Emphasis

24    added.)

26    57.    On or about January 28, 2002, the KNIGHT defendants also made the following

27    false and unprivileged publications about plaintiff during a widely disseminated broadcast radio

28    show on WBLS Radio Station 107.5 FM in New York City, New York. Plaintiff is informed

21

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5857 RESEDA BOULEVARD, SUITE 300
P.O. BOX 7033
TARZANA, CALIFORNIA 91357-7033

Case 1:13-ap-01035-MT    Doc 1-1    Filed 02/15/13    Entered 02/15/13 10:29:31    Desc
Exhibit Exhibits 1 to 7    Page 59 of 80

Case 1:96-bk-15521-GM    Doc 160-1    Filed 01/15/13    Entered 01/15/13 17:28:24    Desc
Exhibit A - E    Page 47 of 65

Case 2:06-bk-11205-VZ    Doc 57    Filed 06/23/06    Entered 06/26/06 15:44:00    Desc
Main Document    Page 35 of 37

1    and believes that the entirety of the broadcast was aired at least twice.

2

3        58.    Specifically, Mr. Knight said:

4

5            Knight: So, we like, what would you do to sing. She said anything.

6            Interviewer: Uh oh.

7            Knight: So, we all look, anything. Right. She said anything. So, you

8            know, like most, all my home boys. You got to realize one thing. Most

9            of them just got out of the penitentiary.

10           Interviewer: Yes.

11           Knight: You know, so, doing 5 years, 7 years, 8 years, 10 years, no

12           woman.

13           Interviewer: Commit the rudest of acts.

14                                 * * *

15           Knight: All right. So, anyway, we was like, she was like. We're like

16           anything, she like anything. So, what end up happening was, right.

17           What happened. She was willing to do anything. So, before you knew

18           it, you are looking at like from anywhere from 12 guys to 15 guys in

19           the studio.

20           Interviewer: Okay.

21           Knight: Every person had their way with her.

22           Interviewer: Shut up, Suge, shut up.

23           Knight: No, every person had their way with her, right. So, all, any

24           of you could think of, right. So, then after all that finished - - she came

25           and she was hollering at me and she was like -- I sing, you know, some

26           of these guys - I gone and did everybody you want, some guys three

27           times, some guys four. I lost count. So, she like, what's up with this

28           record. I said, you know, you still can't sing to me. She said, well, you

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 350
P.O. BOX 7033
TARZANA, CALIFORNIA #1357-7033

22

320243.1    COMPLAINT FOR INTENTIONAL INTERFERENCE, BREACH OF CONTRACT, ETC.

000028

63

Case 1:13-ap-01035-MT    Doc 1-1    Filed 02/15/13    Entered 02/15/13 10:29:31    Desc
Exhibit Exhibits 1 to 7    Page 60 of 80

Case 1:96-bk-15521-GM    Doc 160-1    Filed 01/15/13    Entered 01/15/13 17:28:24    Desc
Exhibit A - E    Page 48 of 65

Case 2:06-bk-11205-VZ    Doc 57    Filed 06/23/06    Entered 06/26/06 15:44:00    Desc
Main Document    Page 36 of 37

1    know, I'm married.

2    Interviewer:  What.

3    Knight:  So, you know, I was, so I was like, damn, you're married like

4    that.  She said like, yeah.

5    Interviewer:  Ok, ok

6    Knight:  Then she been around.  She said, well look, we own Rap A

7    Lot, we got the Ghetto Boys, we got Scar Face, we got Willy B.  You

8    know, she wanted to name them.

9    Interviewer:  Right.

10    Knight;  We own Denzel Washington.  I said well, damn.  If your

11    husband owns Rap A Lot, that mean you own Rap A Lot.

12    Interviewer:  Right.

13    Knight:  That mean you trying to get down.

14           * * * *

15    Knight:  . . . I'm a business man.  So, she was like, okay, I'm going to talk

16    to him.  So, she talk to him and then he wanted to holler.  So, I was like,

17    okay, look.  This was – I went – I said check this out.  If you say you got

18    Rap A Lot, you say you got the Ghetto Boys, give them to me.  She

19    said you can have them.

20           * * * *

21    Knight:  Lydia goes around, pose as wife and set people up, trying to

22    knock off time for him to come home.  So, she go, she goes around and

23    act like she is still doing something.

24    Interviewer:  Got you, got you.

25    Knight:  And then she goes and set him up, because she's a rat. . . .  So,

26    I call the meeting with everybody.  And I said look, Lydia, that's a rat.

27    She a rat.  Her husband a rat.  Pay no Ghetto Boys and Rap A Lot and

28    Denzel Washington is all lies. . . . they go around and saying doing

<div align="center">23</div>

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
P.O. BOX 7033
TARZANA, CALIFORNIA 91357-7033

Case 1:13-ap-01035-MT    Doc 1-1    Filed 02/15/13    Entered 02/15/13 10:29:31    Desc
Exhibit Exhibits 1 to 7    Page 61 of 80

Case 1:96-bk-15521-GM    Doc 160-1    Filed 01/15/13    Entered 01/15/13 17:28:24    Desc
Exhibit A - E    Page 49 of 65

Case 2:06-bk-11205-VZ    Doc 57    Filed 06/23/06    Entered 06/26/06 15:44:00    Desc
Main Document    Page 37 of 37

something illegal to be in business and help businesses, why do we mess with these people, why don't go and say, okay, how you guys, now let me take yours. . . . Because they are informers, they're snitches. . . . Man, that woman works for the FBI, the government. . . . I mean that's some powerful thing for her to be an informer for the government, a stray snitch." (Emphasis added.)

59.    These publications are unambiguous and libelous on their face.    The representations and actions which defendants have attributed to plaintiff are all untrue.  They have exposed plaintiff to embarrassment, contempt, ridicule and disgrace, both personally and professionally.

60.    Defendants have imputed to plaintiff qualities, including but not limited to, low morality, untrustworthiness, dishonesty and incompetence.  Each false statement had a natural tendency to injure her personally and professionally, and which, by natural consequences, have caused actual damage.  As a result of these false, unprivileged and defamatory statements, defendants have caused LYDIA HARRIS personally and the businesses with which she is involved, including but not limited to NEW IMAGE MEDIA PRODUCTIONS, to be shunned or avoided by members of the entertainment industry.

61.    These publications were malicious and motivated by personal and professional ill will and greed.  Defendant's intentions, both personally and on behalf of DEATH ROW RECORDS and THA ROW, INC., were designed to debase and discredit plaintiffs personally and professionally in the eyes of the new and developing hip hop artists, producers and writers.

62.    Plaintiff timely and properly demanded that the owner, operator and general manager of WBLS Radio Station 107.5 FM retract each and every one of the slanderous statements made by SUGE KNIGHT.  Plaintiff is informed and believes that no retraction has

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
P.O. BOX 7033
TARZANA, CALIFORNIA 91357-7033

24

320240.1       COMPLAINT FOR INTENTIONAL INTERFERENCE, BREACH OF CONTRACT, ETC.

000030

Case 2:06-bk-11205-VZ    Doc 57-1    Filed 06/23/06    Entered 06/26/06 15:44:00    Desc
Part 2 of 11    Page 1 of 37

2 of 11

06 - 11205

1    been issued.

2

3    63.    As a proximate result of the conduct of defendants, and each of them, plaintiffs

4    have sustained general and special damages, including but not limited to emotional distress

5    (LYDIA HARRIS only), loss of the benefits of their contracts, lost profits, loss of earnings, loss

6    of goodwill, and actual harm to plaintiffs' reputations, all in an amount to be proven at trial.

7

8    64.    By engaging in this conduct, the KNIGHT defendants, and each of them, acted

9    intentionally, maliciously, oppressively and with willful and conscious disregard for the rights

10    of plaintiffs. SUGE KNIGHT was and is an officer, director or managing agent of DEATH

11    ROW RECORDS and THA ROW, INC., which independently authorized and ratified his

12    conduct herein. Punitive damages should be assessed against the KNIGHT defendants and each

13    of them for the sake of example and to punish these defendants in an amount to be proven at

14    trial.

15

16    **SIXTH CAUSE OF ACTION**

17    **FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

18    (By Lydia Harris Against the Kenner, Knight and

19    Interscope Defendants and Does 1-100)

20

21    65.    Plaintiffs incorporate all prior paragraphs as though fully set forth herein.

22

23    66.    The KENNER, KNIGHT and INTERSCOPE defendants and Does 1-100 engaged

24    in all of the above-described outrageous and unprivileged conduct with the intention to cause

25    plaintiff LYDIA HARRIS to suffer severe emotional distress.

26

27    67.    As a proximate result of the conduct of defendants, and each of them, as alleged

28    above, plaintiff suffered severe emotional distress and sustained general and special damages,

25

330243.1    *COMPLAINT FOR INTENTIONAL INTERFERENCE, BREACH OF CONTRACT, ETC.*

000031

1   including but not limited to severe emotional distress, loss of the benefits of her contracts, lost

2   profits, loss of earnings, loss of goodwill, and actual harm to plaintiff's reputation, all in an

3   amount to be proven at trial.

4

5         68.   By engaging in this conduct, the KENNER, KNIGHT and INTERSCOPE

6   defendants, and each of them, acted intentionally, maliciously, oppressively and with willful and

7   conscious disregard for the rights of plaintiffs. IOVINE and McCLAIN are or were officers,

8   directors, and/or managing agents of defendant INTERSCOPE, which independently authorized

9   and ratified their conduct herein. KENNER was and is an officer, director, trustee, or managing

10  agent of DAVID E. KENNER, PROFESSIONAL LAW CORPORATION, DAVID E.

11  KENNER, A PROFESSIONAL CORPORATION, DAVID E. KENNER TRUST and DEATH

12  ROW RECORDS, which independently authorized and ratified his conduct herein. KNIGHT

13  was and is an officer, director or managing agent of DEATH ROW RECORDS, which

14  independently authorized and ratified his conduct herein. Punitive damages should be assessed

15  against these defendants and each of them for the sake of example and to punish the defendants

16  in an amount to be proven at trial.

17

18                 **SEVENTH CAUSE OF ACTION**

19             **FOR PROFESSIONAL MALPRACTICE**

20       **(By Plaintiffs Lydia Harris and Lifestyle Records**

21             **Against the Kenner Defendants)**

22

23        69.   Plaintiffs incorporate all prior paragraphs as though fully set forth herein.

24

25        70.   The KENNER defendants, acting as plaintiffs' partner, confidant and counsel,

26  assisted LYDIA HARRIS in the formation of DEATH ROW RECORDS, then continuously

27  represented her with respect to a series of claims, contracts and business dealings as set forth

28  herein. As plaintiffs' counsel, the KENNER defendants owed plaintiffs the highest degree of

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
P.O. BOX 7033
TARZANA, CALIFORNIA 91357-7033

26

1    fiduciary duty and care. As her partner and confidant, the KENNER defendants intentionally

2    cultivated a similarly high degree of trust and confidence. Plaintiffs relied on their relationship

3    with the KENNER defendants to their detriment.

4

5          71.    The KENNER defendants continuously breached their fiduciary duties to

6    plaintiffs, and abused the trust and confidence that plaintiffs placed in them. They concealed

7    their conflicts and motives from plaintiffs, including the fact that they did not intend to

8    represent plaintiffs' interests, but instead intended to harm plaintiffs and advance their own

9    adverse interests. As a result, defendants consistently refused and failed to protect her interests

10   where required.

11

12         72.    From the outset of their legal representation of plaintiffs, the KENNER defendants

13   operated below the standard of care required of an attorney in the community. Such acts

14   included defendants' refusals or failures to properly document and protect the legal ownership

15   interest of plaintiff HARRIS in the newly formed DEATH ROW RECORDS entities.

16

17         73.    LYDIA HARRIS continues to believe she is entitled to one half of the profits and

18   ownership of the DEATH ROW entities. Plaintiff has only recently been advised that there is

19   a serious omission in the existing documentation which the KENNER defendants should have

20   prepared and maintained to legally document plaintiff's involvement and ownership interests.

21

22         74.    In the absence of full disclosure and awareness of these issues, plaintiffs were

23   incapable of giving free or intelligent consent to defendants' conduct and pursuit of adverse

24   positions and conflicting interests. The KENNER defendants concealed all of their actions

25   intended to injure plaintiffs. Instead, they assured plaintiffs that they were doing all that was

26   within their power to assist plaintiffs. But, at all times, the KENNER defendants were using

27   confidential information obtained during their attorney-client relationship to harm plaintiffs'

28   interests and advance their own.

27

320243.1      *COMPLAINT FOR INTENTIONAL INTERFERENCE, BREACH OF CONTRACT, ETC.*

000033

WASSERMAN, COMDEN, CASSELMAN & PEARSON, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
P.O. BOX 7033
TARZANA, CALIFORNIA 11327-7033

Case 2:96-bk-11205-VZ   Doc 57-1    Filed 06/23/06    Entered 06/26/06 15:44:00    Desc
Part 2 of 11   Page 4 of 37

75.    At all times material, defendants DAVID KENNER and SUGE KNIGHT were officers, directors or managing agents of DEATH ROW RECORDS.   DEATH ROW RECORDS acted as a secret competitor of LIFESTYLE RECORDS in the music industry.  In an effort to advance conflicting interests in DEATH ROW RECORDS, the KENNER defendants persuaded plaintiffs to enter into the above-referenced contract with INTERSCOPE involving the work of BATTLECAT and Dana Dane. In doing so, the KENNER defendants purported to act in their capacity as attorney for plaintiffs.  In reality, this conduct was part of a conspiracy with the KNIGHT and INTERSCOPE defendants to defraud plaintiffs.

76.    The KENNER defendants thus conspired with the KNIGHT and INTERSCOPE defendants to draft the INTERSCOPE contract so that numerous duties were imposed only upon plaintiffs concerning their duty to produce the subject masters.  INTERSCOPE would receive sole ownership and control of the masters if plaintiffs could live up to their obligations. Yet, pursuant to their contract, INTERSCOPE had no duty to release the albums once produced. Plaintiffs were thus left with no effective remedy to compel their release or to otherwise obtain the masters to be released by other distributors.

77.    The KENNER defendants drafted and/or affirmatively approved these provisions, which were intended to insure that, when INTERSCOPE refused to release the albums, plaintiffs could not require them to do so.  Thus, plaintiffs would never receive royalties, goodwill, or otherwise profit from any album developed under this agreement.  Such acts were both intentional and below the standard of care for any attorney in such a situation.

78.    Upon execution of the contract between plaintiffs and INTERSCOPE, the KENNER defendants and others then immediately arranged and convinced plaintiffs to agree to the assignment by INTERSCOPE of this contract to Maverick Records.  As a result of that assignment, plaintiffs then owed Maverick the duties imposed upon plaintiffs, with the same intentionally one-sided terms drafted by KENNER with INTERSCOPE.  Maverick thus

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
P.O. BOX 7033
TARZANA, CALIFORNIA 91357-7033

28

320243.1       COMPLAINT FOR INTENTIONAL INTERFERENCE, BREACH OF CONTRACT, ETC.

000034

69

Case 1:13-ap-01035-MT    Doc 1-1    Filed 02/15/13    Entered 02/15/13 10:29:31    Desc
Exhibit Exhibits 1 to 7    Page 66 of 80

Case 1:96-bk-15521-GM    Doc 160-1    Filed 01/15/13    Entered 01/15/13 17:28:24    Desc
Exhibit A - E    Page 54 of 65

Case 2:06-bk-11205-VZ    Doc 57-1    Filed 06/23/06    Entered 06/26/06 15:44:00    Desc
Part 2 of 11    Page 5 of 37

1  received such benefits, with essentially no obligation to release or distribute anything produced

2  by plaintiffs and no risk if they chose not to do so.

3

4      79.   The KENNER defendants told plaintiffs that, as a condition of entering into this

5  agreement with Maverick, plaintiffs had to abandon a lucrative distribution agreement they had

6  already entered into with another label and distributor, Relativity and R.E.D./Sony.  Plaintiffs

7  are informed and believe that Relativity and R.E.D./Sony was interested in pursuing additional

8  distribution agreements with plaintiffs.  However, relying upon the intentionally misleading and

9  harmful advice of the KENNER defendants, plaintiffs abandoned their relationship with

10  Relativity and R.E.D./Sony in order to enter into the assignment the KENNER defendants and

11  others arranged with Maverick.  Maverick has now refused to distribute the BATTLECAT

12  album, to allow its release by any other distributor, or to otherwise return the masters produced

13  by plaintiffs to them. Plaintiffs have no contractual recourse, due directly to the negligent or

14  intentional omissions of the KENNER defendants.

15

16      80.   Plaintiffs placed full confidence and reliance in the KENNER defendants until on

17  or about February 2002.  Only then did plaintiffs begin to discover some of the true facts

18  concerning the long-standing disloyalty and breaches by the KENNER defendants.  Only at that

19  time, while current counsel for plaintiffs were investigating potential claims against others, were

20  the facts giving rise to the liability of the KENNER defendants discovered.  Until this discovery

21  was disclosed to plaintiff, LYDIA HARRIS, she reasonably had been led to believe that DAVID

22  KENNER had great affection and professional loyalty to her.  For those reasons, she did not

23  believe he would harm her or her business relationships.  Defendants relied on that deception

24  to deprive plaintiff HARRIS of her rights to DEATH ROW RECORDS and pursuant to the

25  INTERSCOPE contract described herein.

26

27      81.   As a proximate result of the conduct of defendants, and each of them, plaintiffs

28  have sustained general and special damages, including but not limited to emotional distress

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
P.O. BOX 7033
TARZANA, CALIFORNIA #1337-7033

29

## NINTH CAUSE OF ACTION

## FOR ACCOUNTING

### (By Plaintiffs Against Battlecat, the Interscope
### Defendants, the Labels and Does 1-100)

85.   Plaintiffs incorporate all prior paragraphs as though fully set forth herein.

86.   The amount of money contractually due from each such defendant is presently unknown to plaintiffs and cannot be ascertained without an accounting of the amounts paid by the INTERSCOPE defendants, the LABELs, and Does 1-100, for the services of BATTLECAT as a producer, writer or artist.

WHEREFORE, plaintiffs pray for the following relief:

1.   For general and special damages according to proof;

2.   For restitution and disgorgement of profits according to proof;

3.   For punitive damages pursuant to California Civil Code § 3294 et seq.;

4.   For accountings;

5.   For payment to plaintiffs of the amounts due from defendants as a result of each accounting;

6.   For costs of suit; and

7.   For such further relief which is just and appropriate.

DATED: February 26, 2002        WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.

By: _____

DAVID B. CASSELMAN
Attorneys for Plaintiffs
LYDIA HARRIS, LIFESTYLE RECORDS, INC., AND
NEW IMAGE MEDIA CORPORATION

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
P.O. BOX 7033
TARZANA, CALIFORNIA 91357-7033

31

#320243 v1 - Combined Complaint for INTENTIONAL INTERFERENCE, BREACH OF CONTRACT, ETC.

000037

Case 1:13-ap-01035-MT    Doc 1-1    Filed 02/15/13    Entered 02/15/13 10:29:31    Desc
Exhibit Exhibits 1 to 7    Page 68 of 80

Case 1:96-bk-15521-GM    Doc 160-1    Filed 01/15/13    Entered 01/15/13 17:28:24    Desc
Exhibit A - E    Page 56 of 65

Case 2:06-bk-11205-VZ    Doc 57-1    Filed 06/23/06    Entered 06/26/06 15:44:00    Desc
Part 2 of 11    Page 7 of 37

LIFESTYLE RECORDS
c/o David E. Kenner, Esq.
Fifth Floor
16000 Ventura Boulevard
Encino, CA 91436

September 11, 1993

Mr. Kevin Gilliam
p/k/a "Battle Cat"

Re:    Exclusive Producer Agreement

Dear Mr. Gilliam:

The following shall constitute your and our agreement with respect to your producing for us, during the Term hereof, master recordings ("Masters") embodying performances of various artists (each such artist being referred to as "Artist") and rendering such other services as may be related thereto:

1.    TERM

The term hereof (the "Term") shall commence on the date hereof and shall continue for a period of one year. You hereby grant to us (4) irrevocable options to extend the Term for periods of one (1) year each. Each such option shall be deemed automatically exercised by us unless we give you written notice to the contrary prior to the date that the then current period of the Term would otherwise expire.

2.    RECORDING OBLIGATION

During each one-year period of the Term, you shall record a for us, as a minimum, four (4) L.P. Masters. We shall have the right to require you to record additional Masters in each one-year period at our discretion.

3.    RECORDING PROCEDURES AND BUDGET

LIF/EXPROD/BATTLECA
DEK/9.11.93                                1

EXH  A    000038

Case 1:13-ap-01035-MT   Doc 1-1   Filed 02/15/13   Entered 02/15/13 10:29:31   Desc
Exhibit Exhibits 1 to 7   Page 69 of 80

Case 1:96-bk-15521-GM   Doc 160-1   Filed 01/15/13   Entered 01/15/13 17:28:24   Desc
Exhibit A - E   Page 57 of 65

Case 2:06-bk-11205-VZ   Doc 57-1   Filed 06/23/06   Entered 06/26/06 15:44:00   Desc
Part 2 of 11   Page 8 of 37

(a)     The Masters recorded by you hereunder shall be recorded in a recording studio
selected or approved by us. Each Master hereunder shall consist of newly recorded studio
performances of material selected or approved by us. Each Master shall be subject to our
approval as commercially and technically satisfactory. Upon our request, you shall re-record
any selection until a commercially and technically satisfactory Master shall have been
obtained.

(b)     We shall determine the recording budget for each Master to be produced
hereunder after consultation with you. We shall pay all recording costs up to the approved
budget. All recording costs paid by us shall be deemed advances against and shall be
recouped from all monies becoming payable to the Artist.

4.     COPYRIGHT AND OWNERSHIP OF MASTERS

All Masters recorded by you during the Term hereof shall be entirely our property
and we shall be the owner of all rights of copyright in the Masters. Such Masters shall be
deemed "works made for hire" under the U.S. Copyright Act and all other copyright laws
throughout the world. We shall have the sole, exclusive, worldwide and perpetual right to
use the Masters in any manner we see fit.

5.     MECHANICAL ROYALTIES

You hereby grant us and/or our designees mechanical licenses for the United States
for all musical compositions which you have written (directly or indirectly) on in which you
own the copyright (in whole or in part) and which are produced by you hereunder
("Controlled Compositions") at the rate of 75% of the then-current minimum statutory rate
(without regard to playing time) set forth in the Copyright Act of the United States. With
respect to the aforesaid mechanical licenses issued to us for such Controlled Compositions,
we shall be required to pay mechanical royalties only on Records for which Record royalties
are payable to you hereunder, in the same manner and at the same times as such Record
royalties are payable. If the Distribution Agreement referred to in Paragraph 7 below shall
contain different or additional provisions concerning "Controlled Compositions", then this
paragraph shall automatically be deemed amended to comply with the terms of such
Distribution Agreement.

6.     ADVANCES

We shall pay to you the following sums which shall be advances against you and
recoupable by us out of all royalties becoming payable to you pursuant to this or any other
agreement between you and us:

(a)     Two Thousand Dollars ($2,000) upon the execution of this agreement; and

LIP/EXPROD/BATTLECA
DEK/9.11.93                                    2

Case 1:13-ap-01035-MT    Doc 1-1    Filed 02/15/13    Entered 02/15/13 10:29:31    Desc
Exhibit Exhibits 1 to 7    Page 70 of 80

Case 1:96-bk-15521-GM    Doc 160-1    Filed 01/15/13    Entered 01/15/13 17:28:24    Desc
Exhibit A - E    Page 58 of 65

Case 2:06-bk-11205-VZ    Doc 57-1    Filed 06/23/06    Entered 06/26/06 15:44:00    Desc
Part 2 of 11    Page 9 of 37

(b)    Fifty percent (50%) of the net advances received by us from distributors on account of your services covering the Masters hereunder.

7.    ROYALTIES

Conditioned upon your full and faithful performance of each and all of the terms hereof, we shall pay you the following royalties in respect of records subject to this Agreement:

(a)    A royalty of fifty percent of the net royalties received by us from distributors on account of your services covering the Masters hereunder ("Basic Royalty Rate").

(b)    The aforesaid royalties shall be paid and computed in the same manner as royalties are paid and computed to the Artist pursuant to the terms of the Agreement between us and Artist and, accordingly, shall be subject to all reductions, deductions, and category variations set forth therein with respect to the exploitation of the Masters, including, but not limited to, reductions and deductions for mid-priced, budget and other reduced price sales, PX and other governmental and institutional sales, mail order, premiums and other special sales, multiple albums, so-called compact discs, singles, tape sales, licensee sales, flat fee exploitations, packaging charges, taxes, records distributed as "free" or "no charge" records (whether for promotional purposes or for resale), discounts and reserves.

(c)    We shall have the right to license the Masters to third parties for record and/or all other types of use on a flat-fee basis. We shall credit your royalty account with twenty percent (20%) of the "net amount" received by us under each such license. The term "net amount" shall mean the gross amount less the amounts payable to any other individual producer(s) of the Masters.

(d)    As to Masters produced by you together with another producer, the royalty rate otherwise payable hereunder with respect to sales of any record derived from any such Master and the recording costs and/or advances otherwise payable by us hereunder with respect to any such Master shall be prorated by multiplying such royalty rate or recording costs and/or advances by a fraction, the numerator of which is "1" and the denominator of which is the total number of producers who performed services in connection with such Master.

8.    ACCOUNTING STATEMENTS

(a)    Statements together with payments of accrued royalties, if any, earned by you during the preceding semi-annual period, shall be sent by us to you on or before March 31 each year for the six (6) month period ending December 31 of the previous year, and on or before September 30 of each year for the six (6) month period ending the preceding June 30. We shall have the right to retain a reasonable reserve in your royalty account against subsequent charges, credits, or returns. but in no event more than 22½%.

LH/EXPROD/BATTLECA
DEK/9.11.93

3

000040

Case 1:13-ap-01035-MT   Doc 1-1   Filed 02/15/13   Entered 02/15/13 10:29:31   Desc
Exhibit Exhibits 1 to 7   Page 71 of 80

Case 1:96-bk-15521-GM   Doc 160-1   Filed 01/15/13   Entered 01/15/13 17:28:24   Desc
Exhibit A - E   Page 59 of 65

Case 2:06-bk-11205-VZ   Doc 57-1   Filed 06/23/06   Entered 06/26/06 15:44:00   Desc
Part 2 of 11   Page 10 of 37

(b)   No royalties shall be payable to you on any records sold hereunder unless we have received payment for such record or have received a credit against a previous advance.

(c)   You shall be deemed to have consented to all royalty statements and other accountings rendered by us hereunder and each such royalty statement or other accounting shall be final and binding, and shall not be subject to any objection for any reason whatsoever unless specific objection in writing, stating the basis thereof, is given by you to us within two (2) years after the date rendered.

(d)   We shall maintain books of accounts concerning the sale of records hereunder. You or your attorney or a certified public accountant, in your behalf, may, at your sole expense, examine our said books relating to the sale of records hereunder during our normal business hours, upon reasonable written notice and only once during any year. Our books of accounts relating to any particular royalty statement may be examined as aforesaid only once per statement and within one (1) year after the date rendered.

9.   <u>YOUR WARRANTIES AND REPRESENTATIONS</u>

You hereby warrant and represent that:

(a)   You are under no disability, restriction, or prohibition, whether contractual or otherwise, with respect to your right to execute this Agreement, to grant the rights granted by you to us hereunder, and to perform each and every term and provision hereof.

(b)   You hereby grant to us the right to use and to allow others to use your name and any professional name adopted by you, as well as your biography and all likenesses for phonograph record and related purposes.

(c)   All Controlled Compositions together with all other selections embodied in the Masters which are furnished or selected by you as well as any other materials, ideas, or other properties furnished or selected by you and contained in or used in connection with the master, the packaging therefor, or the advertising thereof, will not violate or infringe upon any common law or statutory rights or any person, firm or corporation.

(e)   You understand that you have the right to seek the advice of independent counsel concerning your rights, the provisions hereof, and the advisability of executing this agreement. Further, you represent and warrant that you have been advised by us, and given me the opportunity, to seek the advice of independent counsel, and acknowledge that you are executing this agreement voluntarily after consultation with independent counsel or after intentionally deciding not to seek advice of independent counsel.

10.   <u>EXCLUSIVITY; RE-RECORDING RESTRICTION</u>

LJF/EXPROD/BATTLECA
DEK/9.11.93

4

Case 1:13-ap-01035-MT    Doc 1-1    Filed 02/15/13    Entered 02/15/13 10:29:31    Desc
Exhibit Exhibits 1 to 7    Page 72 of 80

Case 1:96-bk-15521-GM    Doc 160-1    Filed 01/15/13    Entered 01/15/13 17:28:24    Desc
Exhibit A - E    Page 60 of 65

Case 2:06-bk-11205-VZ    Doc 57-1    Filed 06/23/06    Entered 06/26/06 15:44:00    Desc
Part 2 of 11    Page 11 of 31

(a)    "Masters" and "Master Recordings" — every recording of sound, whether or not coupled with the visual image, by any method and on any substance or material, whether now or hereafter known, which is used or useful in the recording, production and/or manufacture of phonograph records;

(b)    "Records" and "Phonograph Records" — all forms of reproduction of masters now or hereafter known, whether in compact disc, vinyl disc, tape form or any other form, manufactured or distributed primarily for home use, school use, juke box use, or use in means of transportation, embodying (i) sound alone or (ii) sound coupled with visual images, e.g., "sight and sound" devices;

(c)    "Recording Costs" — wages, fees, advances and payments of any nature to or in respect of all musicians, vocalists, conductors, arrangers, orchestrators, engineers, producers, copyists, etc.; payments to a trustee or fund based on wages to the extent required by any agreement between us and any labor organization or trustee; all studio, tape, editing, mixing, remixing, mastering and engineering costs; all costs of trade, per diems, rehearsal halls, non-studio facilities and equipment, dubdown, rental and transportation of instruments; all costs occasioned by the cancellation of any scheduled recording session; and all other costs and expenses incurred in producing the master recordings hereunder which are then customarily recognized as recording costs in the recording industry.

14:    FINANCIAL GUARANTIES.

(a)    Notwithstanding anything to the contrary contained in this Agreement, we hereby guarantee payment to you of not less than $6,000.00 for each full twelve (12) month period hereunder. The balance, if any, of each such payment (i.e., to the extent such guaranteed payment is less than the aggregate of all other monies paid to you or on your behalf in the applicable annual period) shall be paid by us prior to the end of the of each consecutive twelve (12) month period during the term of this agreement. All payments made pursuant to this paragraph 14 shall constitute a prepayment in advance against all monies payable to you under this agreement. In the event you do not receive said sum, you shall give written notice to us of the amount outstanding and we shall have thirty (30) days to cure said failure to pay.

(b)    You acknowledges and confirms that the guaranteed payment set forth in paragraph 14(a) hereof is intended to preserve our right to injunctive relief to prevent the breach of this agreement by you and accordingly it is the parties' mutual intention that said guarantee be intended and construed in such manner as to comply with the provisions of California Code of Civil Procedure Section 3423(5th) and California Code of Civil Procedure Section 526 confirming the availability of injunctive relief to prevent the breach of a contract in writing for the rendition or furnishing of personal services.

If the foregoing accurately reflects your understanding and agreement with us, please indicate by signing below. You and we intend to enter into a more formal agreement but until such

LIR/EXPROD/BATTLECA
DSK/9.11.93

6

000043

Case 1:13-ap-01035-MT    Doc 1-1    Filed 02/15/13    Entered 02/15/13 10:29:31    Desc
Exhibit Exhibits 1 to 7    Page 73 of 80

Case 1:96-bk-15521-GM    Doc 160-1    Filed 01/15/13    Entered 01/15/13 17:28:24    Desc
Exhibit A - E    Page 61 of 65

Case 2:06-bk-11205-VZ    Doc 57-1    Filed 06/23/06    Entered 06/26/06 15:44:00    Desc
Part 2 of 11    Page 12 of 37

agreement is executed, this letter agreement shall constitute a valid and binding agreement
between you and us.

Very truly yours,

Lifestyle Records

By: *Lydia Harris/Pru*

AGREED AND ACCEPTED:

*Kevin Gilliam*
Kevin Gilliam, p/k/a "Battle Cat"
Social Security No. 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

LIV/EXPROD/BATTLECA
DKK/9.11.93                              7

Case 1:13-ap-01035-MT    Doc 1-1    Filed 02/15/13    Entered 02/15/13 10:29:31    Desc
Exhibit Exhibits 1 to 7    Page 74 of 80

Case 1:96-bk-15521-GM    Doc 160-1    Filed 01/15/13    Entered 01/15/13 17:28:24    Desc
Exhibit A - E    Page 62 of 65

Case 2:06-bk-11205-VZ    Doc 57-1    Filed 06/23/06    Entered 06/26/06 15:44:00    Desc
Part 2 of 11    Page 13 of 37

**New Image Media Corp.**
**1609 South Robertson Blvd.**
**Los Angeles, CA 90035**

Dated:  As of November 1, 1996

Mr. Kevin Gilliam
p/k/a "Battlekat"

Dear Kevin:

Please be advised that effective as of November 1, 1996, New Image Media Corp. ("New Image") has acquired ownership and control of all right, title and interest in and to all contracts entered into between you and Lifestyle Records and/or Lifestyle Records, Inc. (collectively "Lifestyle"), and all of the results and proceeds therefrom, including, but not limited to, all musical compositions and master recordings created thereunder.

New Image will account to you in connection with all receipts, income, or revenues derived therefrom and received by New Image.

Please mark your records accordingly and direct all future correspondence to New Image.

Please acknowledge receipt of this notification by signing and returning the enclosed copy of this letter.

Very truly yours,

NEW IMAGE MEDIA CORP.

By: _Lydia Harris_
Its: _C.E.O._

ACCEPTED AND AGREED:

_Kevin Gilliam_
Kevin Gilliam, p/k/a "Battle Cat"
Social Security No. 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

**000045**

78

# EXHIBIT 7

# EXHIBIT 7

Case 1:13-ap-01035-MT    Doc 1-1    Filed 02/15/13    Entered 02/15/13 10:29:31    Desc
Exhibit Exhibits 1 to 7    Page 76 of 80

Case 1:96-bk-15521-GM    Doc 160-2    Filed 01/15/13    Entered 01/15/13 17:28:24    Desc
Exhibit F - G    Page 45 of 68

Case 2:06-bk-11205-VZ    Claim 38-1    Filed 10/31/06    Desc Main Document    Page 38
of 61

```
1   DAVID B. CASSELMAN (SBN 81657)
    I. DONALD WEISSMAN (SBN 67980)
2   HOWARD S. BLUM (SBN 60609)
    WASSERMAN, COMDEN, CASSELMAN & PEARSON
3   5567 Reseda Boulevard, Suite 330
    Post Office Box 7033
4   Tarzana, California 91357-7033
    Telephone:   (818) 705-6800 · (323) 872-0995
5   Facsimile:   (818) 705-8147

6   Attorneys for Plaintiffs
    LYDIA HARRIS and NEW IMAGE MEDIA
7   CORPORATION

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                    FOR THE COUNTY OF LOS ANGELES

10

11  LYDIA HARRIS, LIFESTYLE              )   CASE NO. BC 268857
    RECORDS, INC., AND NEW IMAGE         )
12  MEDIA CORP.,                         )
                                         )   Case Assigned to:
13              Plaintiffs,              )   Judge Ronald M. Sohigian - Dept. 41
                                         )
14      v.                               )   [Complaint Filed: February 26, 2002]
                                         )
15  KEVIN GILLIAM AKA BATTLECAT;         )
    MARION H. KNIGHT AKA SUGE            )
16  KNIGHT; DEATH ROW RECORDS;           )   NOTICE OF ATTORNEY LIEN
    THA ROW, INC.; DAVID E. KENNER;      )
17  DAVID E. KENNER PROFESSIONAL         )
    LAW CORPORATION; DAVID E.            )
18  KENNER, A   PROFESSIONAL             )
    CORPORATION; THE DAVID E.            )
19  KENNER TRUST; INTERSCOPE             )
    RECORDS; JIMMY IOVINE; JOHN T.       )
20  MCCLAIN, JR.; A&M RECORDS; ET        )
    AL.,                                 )
21                                       )
                Defendants.              )
22  _____  )

23  TO:  JUDGMENT CREDITORS LYDIA HARRIS AND NEW IMAGE MEDIA CORP.;

24  JUDGMENT DEBTORS MARION H. KNIGHT AKA SUGE KNIGHT and DEATH ROW

25  RECORDS, INC.; DERMOT DAMIAN GIVENS AND ALL INTERESTED PARTIES:

26

27          PLEASE TAKE NOTICE that the law firm of Wasserman, Comden Casselman &

28  Pearson L.L.P. (hereinafter the "Firm"), hereby gives notice of its lien equal to forty percent
```

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

MAY 19 2005

John A. Clarke, Executive Officer/Clerk

By _____, Deputy
      R. Arralia

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
P.O. BOX 7033
TARZANA, CALIFORNIA 91357-7033

402923.1                    NOTICE OF ATTORNEY LIEN

79

Case 1:13-ap-01035-MT    Doc 1-1    Filed 02/15/13    Entered 02/15/13 10:29:31    Desc
Exhibit Exhibits 1 to 7    Page 77 of 80

Case 1:96-bk-15521-GM    Doc 160-2    Filed 01/15/13    Entered 01/15/13 17:28:24    Desc
Exhibit F - G    Page 46 of 68

Case 2:06-bk-11205-VZ    Claim 38-1    Filed 10/31/06    Desc Main Document    Page 39
of 61

1   (40%) of any and all gross recovery, payments, or consideration of any kind or nature paid or

2   transferred in satisfaction, in whole or in part, of the judgment entered in the above-referenced

3   action in the principal sum of $107,000,000.00, plus interest accruing at the rate of $29,315.00

4   per day. Said percentage is to be applied after priority payment to the Firm of costs expended

5   in the sum of $213,890.27

6

7       PLEASE TAKE FURTHER NOTICE that Wasserman, Comden, Casselman &

8   Pearson L.L.P. must be named as a co-payee on any instrument or WRITING satisfying, in

9   whole or in part, said judgment. Failure to include Wasserman, Comden, Casselman & Pearson

10  L.L.P. as a co-payee will subject the payor to liability for duplicate payment of the sums

11  transferred.

12

13      PLEASE TAKE FURTHER NOTICE that the judgment creditors must notify any

14  transferee or assignee of the judgment, or anyone claiming an interest in said judgment, of the

15  content and existence of this lien.

16

17  DATED: May 18, 2005            WASSERMAN, COMDEN, CASSELMAN &
18                                 PEARSON L.L.P.

19

20                                 By: _____
                                        DAVID B. CASSELMAN
21                                 Attorneys for Plaintiffs
                                   LYDIA HARRIS and NEW IMAGE MEDIA
22                                 CORPORATION

23

24

25

26

27

28

PROOF OF SERVICE
*Lydia Harris v. Kevin Gilliam, et al.*
(LASC Case No. BC 268857)

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:

I am employed in the County of LOS ANGELES, STATE OF CALIFORNIA. My business address is: 5567 Reseda Boulevard, Suite 330, Post Office Box 7033, Tarzana, California 91357-7033. I am over the age of 18 years and am not a party to this action

On May 19, 2005, I served the following document(s) entitled NOTICE OF ATTORNEY LIEN on ALL INTERESTED PARTIES in this action:

SEE ATTACHED LIST

☒ BY MAIL : By placing a true co... in a sealed envelope addressed as above, and plac... ...collect... and ...ollowing ordinary business practices. I am readily f... practice of collection and processing correspon... ...er matters for mailing with the United States Postal Serv...ce ...nce, pleadings and other matters are deposited with the United Sta... ...n Service with postage thereon fully prepaid in Tarzana, California, on the same day in the ordinar course of business. I am aware that on motion of the party served, service i̇s p...:med invalid if the postal cancellation date or postage meter d...more ...lay after date of deposit for mailing in affidavit.

☐ BY OVERNI...  ...ed the ...ove-referenced document(s) to be delivered to... ...livery to the above address(es).

☐ BY FAX: ...d a copy of the foregoing document(s) this date via telecopier to the facsi... ...ers shown above.

☐ BY PERS... ...RVICE: I served such envelope to be delivered by hand to the offices of the addressee(s).

☒ [State] I declar... ...nder penalty of perjury under the laws of the State of California that t... ...egoing is true and correct.

☐ [Federal]  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

...May 19, 2005, at Tarzana, California.

_Leslie Adler_

3

*NOTICE OF ATTORNEY LIEN*

318582.1

WASSERMAN, COMDEN, CASSELMAN & PEARSON LLP.
5567 RESEDA BOULEVARD, SUITE 330
P.O. BOX 7033
TARZANA, CALIFORNIA 91357-7033

**SERVICE LIST**
*Lydia Harris v. Kevin Gilliam, et al.*
(LASC Case No. BC226857)

1

2

3

4  Lydia Harris
3910 Daphne Street
Houston, TX 77021

5

New Image Media Corp.
c/o Lydia Harris
3910 Daphne Street
Houston, TX 77021

6  Hayes F. Michel, Esq.
PROSKAUER ROSE LLP
2049 Century Park East, Suite 3200
7  Los Angeles, California 90067-3206
Tel.:   (310) 557-2900
8  Fax:   (310) 557-2193
*Counsel for Kevin Gilliam, p/k/a Battlecat*

Alan S. Gutman, Esq.
LAW OFFICES OF ALAN S. GUTMAN
9401 Wilshire Boulevard, Suite 575
Beverly Hills, California 90212-2918
Tel:   (310) 385-0700
Fax:   (310) 385-0710
*Counsel for Sony Music Entertainment, Inc.,*

9  Bart H. Williams, Esq.
Megan M. LaBelle, Esq.
10 MUNGER, TOLLES & OLSON, L.L.P.
355 South Grand Avenue, 35th Floor
11 Los Angeles, California 90071-1560
Tel:   (213) 683-9295
12 Fax:   (213) 687-3702
*Counsel for Interscope Records, Jimmy Iovine,*
13 *John A. McClain, III, Aftermath Records and*
*Andre Young*
14

*Relativity Entertainment, Inc. fka Relativity*
*Records, Inc., Loud Records, LLC and*
*Loud Records, Inc.*

Joseph Golden, Esq.
Law Offices of Joseph Golden
10100 Santa Monica Boulevard, Suite 800
Los Angeles, CA 90067-4100
Tel.: (310) 772-2260
Fax: (310) 772-2299
*Counsel for TVT Records LLC and TVT Music,*
*Inc.*

15 Neil C. Erickson, Esq.
Katherine J. Kuneberger, Esq.
16 JEFFER, MANGELS, BUTLER &
MARMARO LLP
17 1900 Avenue of the Stars, Seventh Floor
Los Angeles, CA 90067-4308
18 Tel.: (310) 203-8080
Fax: (310) 203-0567
19 *Counsel for Marion H. Knight aka Suge Knight;*
*Death Row Records; Tha Row Records*

George L. Mallory, Jr., Esq.
MALLORY & ASSOCIATES
1925 Century Park East, Suite 2000
Los Angeles, CA 90067-2701
Tel: (310) 788-5555
Fax: (310) 788-5570
*Counsel for Hollywood Records, Inc.*

20

21 Death Row Records
8200 Wilshire Boulevard
P.O. Box 3037
22 Beverly Hills, CA 90212

Marion H. Knight
aka Suge Knight
c/o Death Row Records
8200 Wilshire Boulevard
P.O. Box 3037
Beverly Hills, CA 90212

23 Tha Row
8200 Wilshire Boulevard
24 P.O. Box 3037
Beverly Hills, CA 90212

25

Suge Publishing
c/o Death Row Records
8200 Wilshire Boulevard
P.O. Box 3037
Beverly Hills, CA 90212

26 Joseph A. Davis, Esq.
DAVIS AND WINSTON
9911 West Pico Boulevard
27 Suite 1400
Los Angeles, CA 900035
28 Tel: (310) 277-4662
*Counsel for Bad Boy Entertainment, Inc.*

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
P.O. BOX 7033
TARZANA, CALIFORNIA 91357-7033

4

402964.1                    *NOTICE OF ATTORNEY LIEN*

Case 1:13-ap-01035-MT    Doc 1-1    Filed 02/15/13    Entered 02/15/13 10:29:31    Desc
Exhibit Exhibits 1 to 7    Page 80 of 80

Case 1:96-bk-15521-GM    Doc 160-2    Filed 01/15/13    Entered 01/15/13 17:28:24    Desc
Exhibit F - G    Page 49 of 68

Case 2:06-bk-11205-VZ    Claim 38-1    Filed 10/31/06    Desc Main Document    Page 42
of 61

| | | |
|---|---|---|
| 1 | Peter J. Anderson, Esq. | James H. Turken, Esq. |
| | LAW OFFICES OF PETER J. ANDERSON | Sharon A. Urias, Esq. |
| 2 | 100 Wilshire Boulevard, Suite #2010 | THELEN, REID & PRIEST LLP |
| | Santa Monica, California 90401 | 333 South Hope Street, Suite 2900 |
| 3 | Tel:   (310) 260-6030 | Los Angeles, California 90071-3048 |
| | Fax:   (310) 260-6040 | Tel:   (213) 576-8000 |
| 4 | *Counsel for Zomba Recording Corp.* | Fax:   (213) 576-8080 |
| | | *Counsel for Priority Records, LLC* |
| 5 | Daniel J. Aaron, Esq. | |
| | DANIEL J. AARON, P.C. | Eve H. Wagner, Esq. |
| 6 | 11 Madison Avenue, 12ᵗʰ Floor | SAUER & WAGNER LLP |
| | New York, New York 10010 | 1801 Century Park East, Suite 520 |
| 7 | Tel:   (212) 684-4466 | Los Angeles, California 90067 |
| | Fax:   (212) 684-5566 | Tel:   (310) 712-8100 |
| 8 | *Co-Counsel for Koch Entertainment* | Fax:   (310) 712-8108 |
| | *Distribution* | *Co-Counsel for Koch Entertainment* |
| 9 | | *Distribution* |
| 10 | Dermot Damian Givens, Esq. | |
| | 433 North Camden Drive, #600 | |
| 11 | Beverly Hills, CA 90210 | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

WASSERMAN, COMDEN, CASSELMAN & PEARSON, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
P.O. BOX 7033
TARZANA, CALIFORNIA 91357-7033

5

318582.2

*NOTICE OF ATTORNEY LIEN*

83