# EXHIBIT 15

# EXHIBIT 15

# SETTLEMENT AGREEMENT

## AND MUTUAL GENERAL

### RELEASE OF ALL CLAIMS

This Settlement Agreement and Mutual General Release of All Claims (hereinafter "Agreement") documents the settlement of a lawsuit filed in the Los Angeles Superior Court, entitled *Wasserman, Comden, Casselman & Pearson, LLP v. Lydia Harris, Lifestyle Records, Inc., New Image Media Corp., Marion H. Knight aka Suge Knight, Death Row Records, Inc., Death Row Records, L.L.C., Tha Row, Inc., Dermot Givens, Kevin Gilliam aka Battlecat, and Does 1 through 100,* bearing Los Angeles Superior Court Case No. BC 340196 and related adversary proceeding filed in the United States Bankruptcy Court, Central District of California, entitled *Wasserman, Comden & Casselman, L.L.P. v. Lydia Harris, et al.,* Adv. Case No. 06-01802-EC (hereinafter collectively "Lawsuit"). The Lawsuit involved claims arising from the legal representation by Wasserman, Comden, Casselman & Pearson, LLP (hereinafter "WCCP") of Lydia Harris, Lifestyle Records, Inc., and New Image Media Corp., (hereinafter collectively "Harris Entities") in connection with claims brought by WCCP on behalf of the Harris Entities against Kevin Gilliam aka Battlecat (hereinafter "Battlecat"), Marion H. Knight aka Suge Knight (hereinafter "Knight"), Death Row Records (hereinafter "DRR"), Tha Row, Inc., David E. Kenner, David E. Kenner Professional Law Corporation, David E. Kenner a Professional Corporation, The David E. Kenner Trust, Interscope Records, Jimmy Iovine, John T. McClain, Jr., A&M Records, Arista, Artemis, BadBoy, Beyond Records, Def Jam, Done Deal, D P G, Elektra, Hip-O Records, Hoobangin Records, Jive, J-Records, Loud Records, MCA, Polygram,

WCIJ-0000087
J386857.1

1

327

Priority, RCA, S.F.E. Ent., Sick Wit It, TVT Records, The Orchard, Tommy Boy, Universal,

Warner Bros. Records, Zomba, *et al.*, and bearing Los Angeles Superior Court Case No.

BC263857 (hereinafter "Underlying Action"). Michael Harris filed a complaint in intervention

in the Underlying Action. On or about March 9, 2005, a Judgment was entered in the

Underlying Action in favor of Lydia Harris and New Image Media Corp. and against defendants

Knight and DRR (Knight and DRR are sometimes referred to as the "Knight Entities"), in the

amount of $107,000,000 (hereinafter the "$107 Million Judgment").

On or about March 26, 2004, the Los Angeles Superior Court entered its Order

Confirming Arbitration Award and Judgment in favor of the Harris Entities and against Battlecat

in the sum of $760,000, together with 10% interest from February 5, 2004 (hereinafter "Battlecat

Judgment"). WCCP commenced enforcement actions to collect on the Battlecat Judgment and to

date, collected $18,060.32. Of this amount, $10,973.17 remains in the Client Trust Account of

Wasserman, Comden & Casselman, LLP.

On or about January 17, 2006, the Los Angeles Superior Court entered an Order Granting

Preliminary Injunction in Favor of WCCP and Against Defendant Lydia Harris, *et al.* (the

"Injunction").

On or about February 22, 2006, the Los Angeles Superior Court entered an Order Re

Discovery Sanctions against Lydia Harris for the total sum of $8,400.00 (hereinafter "Discovery

Order"). Lydia Harris has paid $1800.00 in connection with the Discovery Order.

On or about April 4, 2006, Knight filed for relief under Chapter 11 of Title 11 of the

United States Bankruptcy Code, bankruptcy case number LA 06-11187-EC. The same day,

DRR also filed for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code,

bankruptcy case number LA 06-11205-EC (hereinafter "Knight Bankruptcy").

Since entry of the $107 Million Judgment and the Battlecat Judgment, WCCP has been succeeded in interest for the purposes of the Lawsuit by Wasserman, Comden & Casselman, LLP (hereinafter "WCC") and Clifford H. Pearson. (Clifford H. Pearson and Pearson, Soter, Warshaw & Penny, LLP shall hereinafter collectively be referred to as "Pearson.")

The parties intend by this Agreement to settle any and all claims WCC and Pearson may have as against the Harris Entities related to the Lawsuit or the Underlying Action, the Battlecat Judgment, Discovery Order and Injunction, and all claims the Harris Entities may have as against WCC and Pearson related to the Lawsuit, the Underlying Action, the Battlecat Judgment, Discovery Order and Injunction.

The parties also intend by this Agreement to settle any and all claims WCC and Pearson may have as against Michael Harris related to the Lawsuit or the Underlying Action, and all claims Michael Harris may have as against WCC and Pearson related to the Lawsuit, the Underlying Action, or the $107 Million Judgment.

## PARTIES

This Agreement is reached among the following parties:

(1)     Wasserman, Comden, & Casselman, a limited liability partnership, as successor to Wasserman, Comden, Casselman & Pearson, LLP, on behalf of itself, and its predecessors, successors, executors, assignees, partners, agents, officers, directors, employees, servants, attorneys, insurers, representatives, administrators, and each of them;

(2)     Clifford H. Pearson, an individual, on behalf of himself, and his heirs, executors, assignees, agents, servants, attorneys, insurers, representatives, administrators, and each of them, as well as Pearson, Soter, Warshaw & Penny, a limited liability partnership, on behalf of itself,

and its predecessors, successors, executors, assignees, partners, agents, officers, directors,

employees, servants, attorneys, insurers, representatives, administrators, and each of them;

     (3)    Lydia Harris, an individual, on behalf of herself, and her heirs, executors,

assignees, agents, servants, attorneys, insurers, representatives, administrators, and each of them;

     (4)    Lifestyle Records, Inc., a corporation, on behalf of itself, and its predecessors,

successors, executors, assignees, agents, officers, directors, employees, servants, attorneys,

insurers, representatives, administrators, and each of them;

     (5)    New Image Media Corp., a corporation, on behalf of itself, and its predecessors,

successors, executors, assignees, agents, officers, directors, employees, servants, attorneys,

insurers, representatives, administrators, and each of them; and

     (6)    Michael Harris, an individual, on behalf of himself, and his heirs, executors,

assignees, agents, servants, attorneys, insurers, representatives, administrators, and each of them.


## MUTUAL GENERAL RELEASE

     Except for the obligations arising under this Agreement and for and in exchange for the

consideration described below, WCC and Pearson release the Harris Entities and their heirs,

executors, successors, assignees, partners, agents, officers, directors, employees, servants,

attorneys, insurers, representatives, and administrators as to any and all claims WCC and Pearson

may have, or may have had, as against them relating to or arising from the Lawsuit, the

Underlying Action, the Battlecat Judgment, Discovery Order and Injunction. Likewise, except

for the obligations arising under this Agreement, and for and in exchange for the consideration

described below, the Harris Entities release WCC, Pearson, Leonard J. Comden, Steve K.

Wasserman, and David B. Casselman, and their predecessors, successors, executors, assignees,

330

partners, agents, officers, directors, heirs, executors, assignees, agents, servants, attorneys, insurers, representatives, and administrators as to any and all claims the Harris Entities may have, or may have had as against them relating to or arising from the Lawsuit, the Underlying Action, the Battlecat Judgment, Discovery Order, and Injunction. In providing these mutual releases, WCC and Pearson, on the one hand, and the Harris Entities, on the other hand, fully and forever release, acquit and discharge each other from any and all past, present, and future rights, actions, causes of action, claims, demands, damages, costs, debts, losses, expenses, attorney's fees, penalties, and other compensation of any kind or nature whatsoever, whether known or unknown, suspected or unsuspected, and whether concealed or hidden, which have accrued in favor of one as against the other by reason of any matter whatsoever prior to the date hereof including without limitation on the intended generality and all encompassing scope of this Agreement, any claims which:

(1)    arise out of or are in any way connected with or related to the transactions, occurrences, events, acts or omissions set forth or facts alleged in the pleadings and other papers on file in the Lawsuit or the Underlying Action; or

(2)    arise out of or are in any way connected with or related to any transactions, occurrences, events, acts or omissions, which took place prior to the date hereof.

Additionally, except for the obligations arising under this Agreement, and for and in exchange for the consideration described below WCC and Pearson release Michael Harris and his heirs, executors, successors, assignees, partners, agents, officers, directors, employees, servants, attorneys, insurers, representatives, and administrators, as to any and all claims WCC or Pearson may have, or may have had, as against them relating to or arising from the Lawsuit, the Underlying Action, the Battlecat Judgment, Discovery Order, and Injunction. Likewise, except

WCH-0000007
J230657.1

5

331

for the obligations arising under this Agreement and for and in exchange for the consideration

described below, Michael Harris releases WCC, Pearson, Leonard J. Comden, Steve K.

Wasserman, and David B. Casselman, and their predecessors, successors, executors, assignees,

partners, agents, officers, directors, heirs, executors, assignees, agents, servants, attorneys,

insurers, representatives, and administrators as to any and all claims Michael Harris may have, or

may have had as against them relating to or arising from the Lawsuit, the Underlying Action, the

Battlecat Judgment, Discovery Order, and Injunction. In providing these mutual releases, WCC

and Pearson on the one hand and Michael Harris on the other hand fully and forever release,

acquit and discharge each other from any and all past, present, and future rights, actions, causes

of action, claims, demands, damages, costs, debts, losses, expenses, attorney's fees, penalties,

and other compensation of any kind or nature whatsoever, whether known or unknown,

suspected or unsuspected, and whether concealed or hidden, which have accrued in favor of one

as against the other by reason of any matter whatsoever prior to the date hereof including without

limitation on the intended generality and all encompassing scope of this Agreement, any claims

which:

    (1)    arise out of or are in any way connected with or related to the transactions,

occurrences, events, acts or omissions set forth or facts alleged in the pleadings and other

papers on file in the Lawsuit or the Underlying Action; or

    (2)    arise out of or are in any way connected with or related to any transactions,

occurrences, events, acts or omissions, which took place prior to the date hereof.

    Nothing in the language of this Agreement shall be deemed to revive any claim between

the parties which is barred by operation of law as of the time this Agreement is signed.

CONSIDERATION

6

As consideration for the settlement of the various claims described herein, and as more fully described immediately above, by entering into this Agreement, WCC and Pearson, on the one hand, and the Harris Entities, on the other hand, each waive any and all rights each may have as against the other. Each shall bear his, her, or its own cost of litigation.

Additionally, as consideration for the settlement of the various claims described herein, and as more fully described immediately above, by entering into this Agreement, WCC and Pearson, on the one hand, and Michael Harris, on the other hand, each waive any and all rights each may have as against the other. Each shall bear his, her, or its own cost of litigation.

Additionally, WCC shall receive the following sums on a dollar for dollar pro rata basis:

(1)    29.75 % of any future recovery received by the Harris Entities from either Knight, DRR or their respective bankruptcy cases in connection with the $107 Million Judgment or as the result of the transfer or assignment of the Harris Entities' claims in either the Knight or DRR bankruptcy cases to any third party. Except as provided in subparagraph (2) immediately below, no money shall be due and owing to WCC or Pearson on account of money paid to the Harris Entities in connection with the $107 Million Judgment prior to the filing of the Lawsuit;

(2)    Effective only after collection of the first $1 Million of future recovery of the $107 Million Judgment to the Harris Entities from either Knight, DRR or their respective bankruptcy cases, $49,583.33 for every million dollars of future net money received by the Harris Entities from either Knight, DRR or their respective bankruptcy cases pursuant to the $107 Million Judgment, until WCC and Pearson have been paid a total of $297,500 over and above the amount referred to in the

WCC11-000000
3230687.1

7

333

preceding paragraph. Payments under this sub-division shall also be distributed on a pro rata basis.

Funds received by the Harris Entities pursuant to the $107 Judgment or the Battlecat Judgment shall be deposited into the client trust account of Weinstein, Weiss & Ordubegian LLP. In the event that Weinstein, Weiss & Ordubegian LLP ceases to represent Lydia Harris, said funds shall be deposited into an escrow account agreed upon by the parties.

WCC shall reimburse Weinstein, Weiss & Ordubegian LLP, 29.75% of all of the reasonable legal fees incurred on behalf of the Harris Entities in preserving and defending the $107 Million Judgment, including but not limited to preserving and defending the Harris Entities' claim in the Knight Entities' bankruptcy proceeding, from the date this Agreement is fully executed; provided, however that such payments shall be made **only** from the sums received by WCC from the $107 Million Judgment; and for cash flow purposes only, shall be paid 50% from the first million dollars collected from the Knight Entities, and 50% from the second million dollars collected from the Knight Entities. If additional legal fees are incurred after the proceeds of the second million dollars collected from the Knight Entities are distributed, such fees shall be paid from sums thereafter collected from the Knight Entities.

To illustrate the foregoing, and as an example only, assume that the total amount received from the Knight Entities' bankruptcy is $5,000,000 and the fees incurred by the Harris Entities in the preservation/defense of the Judgment are $200,000 since the execution of this Agreement, the funds would be distributed as follows:

- As to the $200,000 Attorney's fees incurred in bankruptcy: $59,500 would be paid by WCC, paid at the rate of $29,750 out of the first million and $29,750 out of the second million dollars. The balance of $140,500 would be paid by the Harris Entities;

- WCC and Pearson: $5 million gross less $200,000 bankruptcy fees equals $4.8 million. This amount is multiplied by 29.75% which equals $1,428,000. Plus four payments of $49,583.33 which equals $198,333.32 for a net recovery of $1,626,333.32; and

- Harris: $5 million less $200,000 for Attorney's fees, less $1,626,333.33 to WCC, for a net recovery of $3,173,666.67.

- All distributions of money shall be made to the Harris Entities, WCC and Pearson on a dollar for dollar pro rata basis.

The Harris Entities shall not compromise the $107 Million Judgment, or enter into any agreement with the Knight Entities relating in any way to the $107 Million Judgment without providing prior written notice to WCC through its counsel, Haight, Brown & Bonesteel, LLP. Such notice shall be given to WCC prior to the exchange of funds or any other consideration between the Knight Entities and the Harris Entities.

Notwithstanding the foregoing, neither WCC nor Pearson shall have any right to object or interfere with any settlement or compromise of the $107 Million Judgment or to object or interfere with any sale, transfer or assignment by the Harris Entities to any third party of their claims in either the Knight or DRR bankruptcy cases. WCC and Pearson further agree that upon the closing of a transfer or assignment of the $107 Million Judgment, in whole or in part, by the Harris Entities to any third party (other than Michael Harris) (a "Transfer/Assignment"), WCC and Pearson shall release and discharge any lien, claim or encumbrance in their favor on or with respect to the $107 Million Judgment or the portion thereof that is the subject of such Transfer/Assignment (each, a "Release"). WCC and Pearson agree to execute such documents and take all other actions as the Harris Entities reasonably request to effectuate any such Release.

WCC further agrees to provide an index of the Harris Entities' client files and turn over files identified by the Harris Entities within 10 days of such notice. Upon execution of this Agreement, WCC agrees to turn over to Lydia Harris $7,708.65, which is 70.25% of the money

WC 11-0000987
.l23(87.1

9

collected in connection with the Battlecat Judgment and remaining in the WCC Client Trust Account. The Harris Entities shall waive any and all claims to the remaining $3,264.52, or 29.75%. Neither WCC nor Pearson shall be responsible for any further collection efforts of the Battlecat Judgment, but WCC shall receive 29.75% of all amounts collected on the Battlecat Judgment, net of expenses, but not attorneys' fees. WCC and Pearson hereby release the Harris Entities from any further liability relating to the Discovery Order or the Injunction.

It is a condition hereof and it is the intention of the parties hereto, and each of them, in executing this Agreement, that the same shall be effective as a bar to each and every claim, demand, and cause of action hereinabove specified, and in furtherance of this intention WCC, Pearson, the Harris Entities and Michael Harris hereby expressly waive any and all rights and benefits conferred upon them by the provision of § 1542 of the California *Civil Code* which provides as follows:

> A general release does not extend to claims which the creditor
>
> does not know or suspect to exist in his or her favor at the time
>
> of executing the release, which if known by him or her must
>
> have materially affected his or her settlement with the debtor.

Each party to this Agreement hereby declares that he or she is executing this Agreement after having received advice from his or her legal counsel of record and understands and acknowledges the significance and consequences of this Agreement and of this specific waiver of § 1542 of the California *Civil Code*.

Subject to the right of the Harris Entities to sell, transfer or assign their rights to the $107 Million Judgment to a third party, as reflected in this Agreement, WCC, Pearson, the Harris Entities, and Michael Harris represent and warrant to one another that none of them has

WC11-0000007
3381657.1

10

336

heretofore assigned, settled, or transferred, or purported to assign, settle, or transfer, to any other

person or entity any claim or other matter herein released and any party who breaches this

warranty shall indemnify, defend, and hold harmless any other party against who such claim,

demand, or action is brought.

Except for the obligations arising under this Agreement, each party to this Agreement

shall bear all of his, her or its own costs and attorney's fees incurred in connection with the

Lawsuit, the Underlying Action, the $107 Million Judgment, the Battecat Judgment, the

Injunction and the Discovery Order.

If any action or proceeding is brought for the enforcement of this Agreement or any of its

provisions, or for a declaration of the rights and duties agreed to herein or because of an alleged

dispute, breach, default, or misrepresentation in connection with any provision of this

Agreement, the successful or prevailing party shall be entitled to recover reasonable attorney's

fees actually incurred and other costs incurred in connection with that action or proceeding, in

addition to any other relief to which the party may be entitled.

This Agreement shall not be construed against the party or its representative who drafted

this Agreement or any portion hereof.

This Agreement is, and shall be subject to, governed by, and construed and enforced

pursuant to the laws of the State of California.

This Agreement is the entire Agreement between the parties hereto with respect to the

subject matter hereof and supersedes all prior and contemporaneous oral and written agreements

and discussions. The Agreement may be amended only upon an amendment in writing and

signed by all parties to this Agreement. Additionally, each party to this Agreement agrees: (1)

that no provision or breach of this Agreement may be waived unless in writing signed by the

337

party to be charged; and (2) that the waiver of any one provision or breach of this Agreement shall not operate as a waiver of any other provision or breach of this Agreement. It is understood by WCC, Pearson, the Harris Entities, and Michael Harris that this Agreement is made without reliance upon any statement or representation made by the other, apart from what is expressly set forth in this Agreement.

If any term, provision, covenant, or condition of this Agreement is held by any court of competent jurisdiction to be invalid or unenforceable, the remainder of the provisions shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

WCC, through its counsel of record, shall file a request for dismissal of the Lawsuit with prejudice as to the claims against Lydia Harris, Lifestyle Records, Inc., and New Image Media Corp. only, within a reasonable amount of time after this Agreement has been fully executed, and any necessary court approval has been obtained (in both state and federal court). If necessary, WCC and/or Pearson shall also prepare and execute all necessary documents to effectuate the purpose of this Agreement, except that counsel for Lydia Harris shall prepare any necessary documents to be filed in the Knight Bankruptcy or DRR proceeding. Lydia Harris shall execute all necessary documents to effectuate the purpose of this Agreement.

Nothing in this Agreement shall prevent WCC from pursuing its claims against Knight, DRR or any other person or entity not released by this Agreement. Neither WCC nor Pearson shall be entitled, however, to pursue the $107 Million Judgment without the express written consent of the Harris Entities, including, but not limited to, the filing or prosecution of claims in the Knight or DRR bankruptcy cases. Harris shall reasonably cooperate in WCC's prosecution of any remaining unsettled claims from the Lawsuit.

WCU-0000007
3230087.1                              12

338

The masculine, feminine and neuter gender of any word shall be construed to include each of the other.

This Agreement is binding and shall inure to the benefit of the Parties hereto and to their respective successors, heirs, assigns and representatives. This Agreement and any release that may be contained herein are intended to be final and binding between the Parties hereto and are further to be effective as a full and final accord and satisfaction between the Parties to this Agreement, and each party expressly relies on the finality of this Agreement as a substantial, material factor inducing that party's execution of this Agreement.

In making this Agreement, no party is admitting the sufficiency of any claims, allegations, defenses, affirmative defenses or any other provisions taken against that party, or the lack of sufficiency of its own claims, allegations, defenses, affirmative defenses or any other provisions taken against any other party.

This Agreement may be executed in counterparts, all of which counterparts together shall be deemed to be one instrument.

Each person signing below represents and warrants that he or she has the authority to sign on behalf of each entity on whose behalf he or she signs this Agreement.

Wasserman, Comden & Casselman, LLP

Dated: _____    By: _____
                              Leonard J. Comden


Dated: _____    By: _____
                              Clifford H. Pearson, individually, and on
                              behalf of Pearson, Soter, Warshaw & Penny,
                              LLP

WC-11-0000007
323304\67.1                        13

339

The masculine, feminine and neuter gender of any word shall be construed to include each of the other.

This Agreement is binding and shall inure to the benefit of the Parties hereto and to their respective successors, heirs, assigns and representatives. This Agreement and any release that may be contained herein are intended to be final and binding between the Parties hereto and are further to be effective as a full and final accord and satisfaction between the Parties to this Agreement, and each party expressly relies on the finality of this Agreement as a substantial, material factor inducing that party's execution of this Agreement.

In making this Agreement, no party is admitting the sufficiency of any claims, allegations, defenses, affirmative defenses or any other provisions taken against that party, or the lack of sufficiency of its own claims, allegations, defenses, affirmative defenses or any other provisions taken against any other party.

This Agreement may be executed in counterparts, all of which counterparts together shall be deemed to be one instrument.

Each person signing below represents and warrants that he or she has the authority to sign on behalf of each entity on whose behalf he or she signs this Agreement.

Wasserman, Comden & Casselman, LLP

Dated: _____        By: _____
                                    Leonard J. Comden

Dated: 3/13                     By: _____
                                    Clifford H. Pearson, individually, and on
                                    behalf of Pearson, Soter, Warshaw & Penny,
                                    LLP

WC11-0006007
J230687.1                                13

340

Dated: 3-12-07                          By: _____
                                            Lydia Harris

Lifestyle Records, Inc.

Dated: 3-12-07                          By: _____
                                            Lydia Harris

New Image Media, Corp.

Dated: 3-12-07                          By: _____
                                            Lydia Harris

Dated: _____                  By: _____
                                            Michael Harris

WC11-0000007
3230687.1

14

341

Dated: _____          By: _____
                                    Lydia Harris

                               Lifestyle Records, Inc.

Dated: _____          By: _____
                                    Lydia Harris

                               New Image Media, Corp.

Dated: _____          By: _____
                                    Lydia Harris

Dated: 3-12-07                 By: _____
                                    Michael Harris

                               Alvin Brown Signing for
                               Michael Harris as Power
                               of Attorney as

WC-II-0000007
JC310057.1                              14

342

APPROVED AS TO FORM AND CONTENT:


Dated: _____        By: _____
                                   Peter Q. Ezzell
                                   Nancy E. Lucas
                                   Haight, Brown & Bonesteel, L.L.P.
                                   Attorneys for Plaintiff
                                   Wasserman, Comden, Casselman &
                                   Pearson, LLP


Dated: _____        By: _____
                                   Sharon Zemel Weiss
                                   Weinstein Weiss & Ordubegian LLP
                                   Attorneys for Defendants
                                   Lydia Harris, Lifestyle Records, Inc. and
                                   New Image Media, Corp.


Dated: _____        By: _____
                                   Steven M. Goldberg
                                   Russ, August & Kabat
                                   Attorneys for Michael Harris


WC1)-0000007
J3306R1.1                              15


**343**

BOULEVARD POSTAL STOP

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of Los Angeles

On March 12, 2007 before me, Denise Wolff, Notary Public,
personally appeared Alvin Brown

☐ personally known to me

☑ (or proved to me on the basis of satisfactory evidence)

to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

**DENISE WOLFF**
COMM. #1482301
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
My Comm. Exp. April 10, 2008

Place Notary Seal Above

_Signature of Notary Public_

─────────────── OPTIONAL ───────────────

_Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document._

**Description of Attached Document**

Title or Type of Document: Settlement Agreement And Mutual General Release Of All Claims

Document Date: Signed On March 12, 2007   Number of Pages: 15

Signer(s) Other Than Named Above: Leonard J. Camden, Clifford H. Pearson, Lychee Harris (three times), Peter Q. Ezzell, Nancy E. Lucas, Sharon Zemel Weiss and Steven M. Goldberg.

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: Alvin Brown
☐ Individual
☐ Corporate Officer — Title(s):
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☑ Other: Power of Attorney

Signer Is Representing: Michael Harris

Signer's Name:
☐ Individual
☐ Corporate Officer — Title(s):
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other:

Signer Is Representing:

© 2006 National Notary Association · 9350 De Soto Ave., P.O. Box 2402 · Chatsworth, CA 91313-2402   Item No. 5907   Reorder: Call Toll-Free 1-800-876-6827

344

# EXHIBIT 16

# EXHIBIT 16

## AGREEMENT AND MUTUAL RELEASE

This Agreement and Mutual Release (the "AGREEMENT") is made effective as of February 6, 2008 , by and between Richard K. Diamond, as Chapter 11 Trustee for the bankruptcy estate of Marion "Suge" Knight (the "KNIGHT TRUSTEE" and the "KNIGHT ESTATE") and R. Todd Neilson, as Chapter 11 Trustee for the bankruptcy estate of Death Row Records, Inc. (the "DEATH ROW TRUSTEE" and the "DEATH ROW ESTATE", respectively) (collectively the "TRUSTEES" and the "ESTATES", respectively), on the one hand; and LYDIA Harris ("LYDIA") and Michael Ray Harris ("MICHAEL") (collectively "M & L HARRIS"), Conquest Media Group, LLC ("CONQUEST") and any and all of their assignees or successors (CONQUEST and M & L HARRIS collectively are referred to hereinafter collectively as "CONQUEST/HARRIS") and Helen R. Frazer as Chapter 7 trustee for LYDIA (the "HARRIS CHAPTER 7 TRUSTEE"), on the other hand. The parties are sometimes hereafter referred to collectively as the "PARTIES" or each individually as a "PARTY".

### RECITALS

This AGREEMENT is entered into with reference to the following facts:

A.    On or about April 4, 2006, Marion "Suge" Knight, Jr. ("KNIGHT") filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code (the "BANKRUPTCY CODE"), which case is currently pending before the United States Bankruptcy Court for the Central District of California (the "BANKRUPTCY COURT"), Los Angeles Division, bearing case number 02:bk:06-11187-VZ (the "KNIGHT CASE"). Richard K. Diamond serves as the Chapter 11 Trustee for the estate of the KNIGHT CASE.

B.    On or about April 4, 2006, Death Row Records, Inc. ("DEATH ROW") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, which case is currently pending before the Los Angeles Division of the BANKRUPTCY COURT, bearing case number 02:bk:06-11205-VZ (the "DEATH ROW CASE"). R. Todd Neilson serves as the Chapter 11 Trustee for the estate of the DEATH ROW CASE.

C.    On or about February 26, 2002, LYDIA filed a complaint before the California Superior Court in Los Angeles against DEATH ROW and KNIGHT, commencing case no. BC 268857 (the "LAWSUIT"). In the LAWSUIT, LYDIA contended, among other things, that she owned 50% of an entity known as Godfather Entertainment, the parent company to Death Row Records, a company different from DEATH ROW, that DEATH ROW and KNIGHT had defrauded her of the prospective economic benefits of her interest in DEATH ROW , and that DEATH ROW and KNIGHT thereafter slandered her (collectively the "KNIGHT/DRR CLAIMS"). The Firm of Wasserman, Comden & Castleman, LLP (the "WASSERMAN FIRM") at all relevant times through approximately April or May 2005 represented LYDIA in the LAWSUIT.

D.    On or about March 9, 2005, the Superior Court entered a $107,000,000 judgment as a terminating sanction jointly against both DEATH ROW and KNIGHT (the "JUDGMENT"). The JUDGMENT consists of compensatory damages of $45 million of economic damages, $2 million of non-economic damages and $60 million of punitive damages. No appeal was taken from the JUDGMENT.

6205784 v3                                    1

345

E.     On or about May 17, 1996 ("LYDIA'S PETITION DATE"), LYDIA filed a voluntary petition for relief under Chapter 7 of the BANKRUPTCY CODE before the San Fernando Valley Division of the BANKRUPTCY COURT, which was assigned case no. 01:bk:96-15521-AG (the "HARRIS CHAPTER 7 CASE" and the "HARRIS ESTATE").

F.     The HARRIS CHAPTER 7 CASE was filed approximately 6 years prior to the filing of the LAWSUIT, and LYDIA did not list the KNIGHT/DRR CLAIMS on her bankruptcy schedules. The HARRIS CHAPTER 7 TRUSTEE later discovered that the HARRIS CHAPTER 7 CASE may have rights in and to the JUDGMENT at which time, the HARRIS CHAPTER 7 TRUSTEE was reappointed as trustee of the HARRIS CHAPTER 7 CASE, which was thereafter reassigned to Bankruptcy Judge Geraldine Mund in July 2007.

G.     M & L HARRIS are divorced, however, the family law court in Monterey has jurisdiction over the M & L HARRIS divorce case with respect to property issues still in dispute. The family law court entered a judgment in the family law matter declaring the JUDGMENT to be community property; however the issue of the allocation of the JUDGMENT between M & L HARRIS has not yet been adjudicated.

H.     On or about October 19, 2006, LYDIA filed a proof of claim in the DEATH ROW CASE in the sum of $107 million based on the JUDGMENT, which was assigned claim no. 23 ("LYDIA'S DEATH ROW POC"). On or about October 19, 2006, LYDIA filed a proof of claim in the KNIGHT CASE in the sum of $107 million, which was assigned claim no. 16 ( "LYDIA'S KNIGHT POC"). LYDIA'S DEATH ROW POC and LYDIA'S KNIGHT POC shall be referred to hereinafter collectively as "LYDIA'S POCS."

I.     On or about May 4, 2006, MICHAEL filed a proof of claim in the DEATH ROW CASE in the sum of $117,318,631.60 based on the JUDGMENT, which was assigned claim no. 3 (the "MICHAEL'S DEATH ROW POC"). On or about May 4, 2006, MICHAEL filed a proof of claim in the KNIGHT CASE in the sum of $117,318,631.60, which was assigned claim no.3 ( "MICHAEL'S KNIGHT POC"). MICHAEL'S DEATH ROW POC and MICHAEL'S KNIGHT POC shall be referred to hereinafter collectively as "MICHAEL'S POCS." LYDIA'S POCS and MICHAEL'S POCS shall be referred to hereinafter collectively as the "HARRIS POCS."

J.     On or about October 31, 2006, the WASSERMAN FIRM filed a proof of claim against the DEATH ROW ESTATE in the sum of $60,418,315.00, which was assigned claim no. 38 (the "WASSERMAN DEATH ROW POC"). On or about October 31, 2006, the WASSERMAN FIRM filed a proof of claim against the KNIGHT ESTATE in the sum of $60,418,315.00, which was assigned claim no. 34 (the "WASSERMAN KNIGHT POC"). The WASSERMAN DEATH ROW POC and the WASSERMAN KNIGHT POC shall be referred to hereinafter collectively as the "WASSERMAN POCS."

K.     On or about June 6, 2006, KNIGHT as Debtor-In-Possession and DEATH ROW as Debtor-in-Possession jointly filed a complaint against M & L HARRIS before the BANKRUPTCY COURT in the KNIGHT CASE, commencing adversary proceeding no. 02:bk:06-AP-01660-VZ (the "ADVERSARY PROCEEDING"). In the ADVERSARY PROCEEDING, KNIGHT and DEATH ROW sought to, among other things: (1) declare that the JUDGMENT had been compromised and fully resolved by one of several alternative

settlements; (2) disallow or reduce the HARRIS POCS under various theories, including judicial estoppel; (3) subordinate the compensatory damage component of the JUDGMENT relating to LYDIA's ownership in DEATH ROW pursuant to section 506(c) of the BANKRUPTCY CODE; (4) subordinate the punitive damages component of the JUDGMENT as a penalty pursuant to section 726(a)(4) of the BANKRUPTCY CODE; (5) avoid and recover a $1 million payment made under the JUDGMENT as a preference pursuant to section 547 of the BANKRUPTCY CODE and as a fraudulent conveyance pursuant to sections 544 and 548 of the BANKRUPTCY CODE; and (6) disallow the HARRIS POCS pursuant to section 502(d) of the BANKRUPTCY CODE. M & L HARRIS filed a motion to dismiss the ADVERSARY PROCEEDING which resulted in the BANKRUPTCY COURT abstaining from ruling on certain state law claims for relief, granting dismissal with leave to amend other claims, and staying all claims pending before the BANKRUPTCY COURT.

L.       On or about July 3, 2006, M & L HARRIS filed a complaint against KNIGHT commencing adversary proceeding no. 02-bk:06-AP-01809-VZ, seeking to determine that the JUDGMENT represents a non-dischargeable debt under section 523 of the BANKRUPTCY CODE (the "HARRIS 523 PROCEEDING"). Thereafter, the BANKRUPTCY COURT stayed the HARRIS 523 PROCEEDING to track the ADVERSARY PROCEEDING.

M.       M & L HARRIS state that they assigned the JUDGMENT to CONQUEST, and M & L HARRIS each filed notices of the assignment of the HARRIS POCS in both of the Cases to CONQUEST and filed Notice of the Assignment of the JUDGMENT in the Los Angeles Superior Court case.

N.       The TRUSTEES substituted into the Adversary Proceeding as co-plaintiffs.

O.       In or about August 2007, the BANKRUPTCY COURT ordered the PARTIES to participate in mediation, and the PARTIES since then have participated in numerous mediation sessions before United States Bankruptcy Judge Mitchel R. Goldberg.

P.       In order to eliminate the need for further litigation costs, the PARTIES stipulated and stated on the record on February 6, 2008 before the Honorable Mitchell R. Goldberg terms and conditions of settlement in order to settle completely and forever all disputes, claims, actions, causes of action, demands, damages and liabilities between them. The PARTES set forth in this AGREEMENT the formal terms of their settlement.

Q.       NOW THEREFORE, in consideration of the promises, mutual obligations and undertakings set forth herein and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the PARTIES agree as follows:

1.       Recitals: The Recitals are intended to be and are a part of the AGREEMENT and are incorporated herein.

2.       Settlement Effective Date and Approval Process:

a.       After execution of this AGREEMENT, the TRUSTEES and the HARRIS CHAPTER 7 TRUSTEE shall each file motions seeking entry of orders in their respective cases approving the AGREEMENT (collectively the "Approval Orders"). Each of the

PARTIES shall fully and actively support the respective motions for entry of the Approval Orders.

   b. The effective date of this AGREEMENT (the "Effective Date") shall mean the first day that is not less than eleven calendar days following the date of entry of the last of the Approval Orders to be entered that is not a Saturday, Sunday or legal holiday as defined in Federal Rule of Bankruptcy Procedure 9006 (a "Business Day"). If an appeal is taken and a stay issued, the Effective Date shall be the first Business day following the date on which the last of the Approval Orders to be entered becomes final, i.e., the date on which no further appeals or other review of the Approval Orders can be taken. In the event that the TRUSTEES or the HARRIS CHAPTER 7 TRUSTEE are unable to obtain the entry of Approval Orders in their respective cases, (a) the AGREEMENT shall automatically be deemed void *ab initio*, and (b) all rights, claims and defenses shall be preserved as they existed on February 6, 2008, and (c) the PARTIES reserve and retain all rights, claims and/or defenses each of them might have had prior to entry into this AGREEMENT.

   3. <u>Terms of Settlement</u>:

   a. <u>HARRIS Allowed Claim</u>. The HARRIS POCS will be allowed in both the KNIGHT CASE and the DEATH ROW CASE as general unsecured claims in the amount of $30 million (collectively the "HARRIS ALLOWED CLAIM") and subordinated claims in the amount of $15 million at the priority level provided in section 726(a)(4) of the BANKRUPTCY CODE (collectively the "HARRIS SUBORDINATED CLAIM"). Any claim of CONQUEST/HARRIS in excess of the HARRIS ALLOWED CLAIM and the HARRIS SUBORDINATED CLAIM is disallowed in its entirety.

   b. <u>Limitation on Distributions on Account of HARRIS ALLOWED CLAIM.</u> For the purpose of this settlement, references to "distributions" are to the total distributions from both the DEATH ROW ESTATE and the KNIGHT ESTATE, whether or not the Cases later are substantively consolidated. If the Cases are not substantively consolidated, the allocation of distributions from the ESTATES on account of the HARRIS ALLOWED CLAIM, as provided herein, will be coordinated to assure that CONQUEST/HARRIS receives the same economic value as contemplated herein.

   i. The HARRIS ALLOWED CLAIM (Phase 1) will share pari passu with all other allowed general unsecured claims, to the extent of the first $10 million of distributions to holders of all general unsecured claims ("PHASE 1 UNSECURED CLAIM DISTRIBUTIONS"), provided, however, that in no event shall distributions on account of the HARRIS ALLOWED CLAIM (Phase 1) exceed 50% of PHASE 1 UNSECURED CLAIM DISTRIBUTIONS; and <u>provided,</u> further, that notwithstanding anything to the contrary contained herein, distributions on account of the HARRIS ALLOWED CLAIM (Phase 1) will not exceed $3.5 million.

   ii. To the extent of distributions to general unsecured claims in excess of $10 million up to $20 million ("PHASE 2 UNSECURED CLAIM DISTRIBUTIONS"), the HARRIS ALLOWED CLAIM (Phase 2) shall share pari passu with all other allowed general unsecured claims (reduced, in each case, by the amount of distributions received on account of PHASE 1 UNSECURED CLAIMS DISTRIBUTIONS); provided,

however, that in no event shall distributions on account of the HARRIS ALLOWED CLAIM
(Phase 2) exceed 50% of PHASE 2 UNSECURED CLAIM DISTRIBUTIONS, and provided,
further, that, notwithstanding anything to the contrary contained herein, until all other allowed
general unsecured claims have been paid in full, not including surplus interest, the distribution on
account of the HARRIS ALLOWED CLAIM (Phase 2) will not exceed $2 million in addition to
the distribution applicable to the HARRIS ALLOWED CLAIM (Phase 1).

       iii.     To the extent of distributions to general unsecured claims
in excess of $20 million ("Phase 3 Unsecured Claim Distributions"), the HARRIS ALLOWED
CLAIM (Phase 3) shall share distributions pari passu with all other allowed general unsecured
claims (reduced, in each case, by the amount of distributions received on account of PHASE 1
UNSECURED CLAIM DISTRIBUTIONS and PHASE 2 UNSECURED CLAIM
DISTRIBUTIONS), provided, however, that in no event shall distributions on account of the
HARRIS ALLOWED CLAIM (Phase 3) exceed 50% the Phase 3 Unsecured Claim
Distributions. When all other allowed general unsecured claims have been paid in full, not
including pre-petition or post-petition interest, the HARRIS ALLOWED CLAIM (Phase 3) shall
receive 100% (or shall share pari passu in the event of other similarly negotiated claims) of the
remaining Phase 3 Unsecured Claim Distributions until the HARRIS ALLOWED CLAIM are
paid in full (exclusive of surplus interest).

       iv.     The HARRIS SUBORDINATED CLAIM shall be paid
pursuant to the priority afforded by § 726(a)(4) of the BANKRUPTCY CODE.

       c.    Wasserman POCS. CONQUEST/HARRIS will have
responsibility for informing the WASSERMAN FIRM of the settlement. Unless the
WASSERMAN FIRM consents to a distribution agreement with CONQUEST/HARRIS and
withdraws the Wasserman POCS, CONQUEST/HARRIS, the TRUSTEES and/or the HARRIS
CHAPTER 7 TRUSTEE may file an objection to the Wasserman POCS. The Wasserman POCS
and any other claim filed by the WASSERMAN FIRM against either of the ESTATES shall
either be disallowed in their entirety or, if the Court enters an order allowing the Wasserman
POCS, any distribution thereon shall be the responsibility of CONQUEST/HARRIS, and
CONQUEST/HARRIS agrees to indemnify the ESTATES and the TRUSTEES against any
claims by the WASSERMAN FIRM for which the ESTATES would otherwise be responsible
upon entry of a Court order to that effect. Any distribution from the ESTATES due the
WASSERMAN FIRM shall be credited against the distributions due CONQUEST/HARRIS
pursuant to this AGREEMENT.

       d.    Other Related Proofs of Claim. CONQUEST/HARRIS will have
responsibility for any amounts due Mark Friedman and any other person or entity whose claim is
based upon, derivative of or measured by the JUDGMENT (including without limitation current
and former counsel for M & L HARRIS and CONQUEST and any purported assignment of the
JUDGMENT) (collectively "Friedman") which shall be payable, if at all, from their respective
shares of the proceeds of the claims and JUDGMENT. CONQUEST/HARRIS agrees to
indemnify the ESTATES and the TRUSTEES against any claims by any such party for which
the ESTATES would otherwise be responsible upon entry of a Court order to that effect. Any
distributions from the ESTATES due Friedman shall be credited against the amounts due
CONQUEST/HARRIS pursuant to this AGREEMENT.

C:\Documents and Settings\Patrick K. McClellan\Local Settings\Temporary Internet
Files\OLKB0\KNIGHT  FINAL HARRIS SETTLEMENT STIPULATION.DOC     5

349

      e.    <u>Avoidance of Liens</u>. If there are any judgment or other liens on property of either or both of the ESTATES in favor of CONQUEST/HARRIS, the HARRIS CHAPTER 7 TRUSTEE, Friedman or the WASSERMAN FIRM (or any of their successors or assignees), such liens are deemed avoided. CONQUEST/HARRIS and the HARRIS CHAPTER 7 TRUSTEE agree that they will not, sell, transfer, assign or encumber, in whole or in part, the HARRIS ALLOWED CLAIM or the HARRIS SUBORDINATED CLAIM unless agreed upon in writing by all three of them and the TRUSTEES, or by order of the Court.

      f.    <u>Rights of HARRIS CHAPTER 7 TRUSTEE.</u> The HARRIS CHAPTER 7 TRUSTEE will promptly seek approval of the settlement as set forth herein by the BANKRUPTCY COURT in the HARRIS CHAPTER 7 CASE. The HARRIS CHAPTER 7 TRUSTEE will receive such portion of the distribution on account of the HARRIS ALLOWED CLAIM (and the HARRIS SUBORDINATED CLAIM) as set forth above as shall be independently agreed by the HARRIS CHAPTER 7 TRUSTEE and CONQUEST/HARRIS. The Harris Chapter 7 Estate will have no independent claim in either of the Cases, although it is acknowledged that the HARRIS CHAPTER 7 TRUSTEE shall remain a party in interest in both cases.

      g.    <u>Dismissal of 523 Claims against KNIGHT</u>. Within 15-business day after the Effective Date, M & L HARRIS agree to dismiss with prejudice the HARRIS 523 PROCEEDING.

      h.    <u>No Credit Bidding for HARRIS ALLOWED CLAIM</u>. Neither the HARRIS ALLOWED CLAIM nor the HARRIS SUBORDINATED CLAIM may be used by CONQUEST/HARRIS as part of the consideration for any bid for or acquisition of any of the assets of either or both of the ESTATES.

      4.    <u>Dismissal of the Adversary Proceeding</u>. Within 15 business days after the Effective Date, the ADVERSARY PROCEEDING will be dismissed with prejudice by the parties thereto, with said parties to bear their own attorneys' fees and costs.

      5.    <u>Right to Object to Claims</u>. CONQUEST/HARRIS, or their successors or assignees, shall have the right to object to other claims and oppose any proposed settlement of other proofs of claims. CONQUEST/HARRIS (including whoever among M & L HARRIS, CONQUEST, any successor or assignee is then the holder of the HARRIS POCS) shall vote affirmatively for any plan of reorganization or plan of liquidation that provides for the treatment of the HARRIS ALLOWED CLAIM and the HARRIS SUBORDINATED CLAIM as provided in this AGREEMENT; <u>provided, however</u> that M & L HARRIS may vote against any plan of reorganization under which pre-petition holders of equity in the DEATH ROW CASE or the KNIGHT CASE retain or receive any interest in either Estate on account of such pre-petition equity before the HARRIS ALLOWED CLAIM and the HARRIS SUBORDINATED CLAIM have been paid in full. For purposes of this paragraph, the retention by KNIGHT or DEATH ROW of the following shall not relieve M & L HARRIS of their obligation to vote to accept the plans: (a) exempt property; (b) that portion of the post-petition income described under that certain Order (1) on Motion of Child Support Services Department Interstate Division to Dismiss Debtor's Chapter 11 Case; and (2) Approving Settlement Stated on Record entered in the KNIGHT CASE on or about November 28, 2007; (c) property abandoned by either of the

C:\Documents and Settings\Patrick K. McClellan\Local Settings\Temporary Internet Files\OLKB0\KNIGHT FINAL HARRIS SETTLEMENT STIPULATION.DOC    6

350

TRUSTEES; (d) claims sold by the KNIGHT TRUSTEE or the DEATH ROW TRUSTEE on or before April 4, 2008 with Court approval; and/or (e) the proceeds of any of the above.

6.    <u>Representations.</u>  CONQUEST/HARRIS represent and warrant that:

a.    Subject to paragraph 8 below, CONQUEST holds all right, title and interest in the HARRIS POCS and the JUDGMENT subject to the Assignment and Assumption Agreement between CONQUEST and LYDIA dated March 13, 2007, and the Assignment and Assumption Agreement between CONQUEST and MICHAEL dated March 13, 2007, and the agreement between CONQUEST, LYDIA and MICHAEL entered on February 5, 2008 which, includes, among other things a reservation of rights between MICHAEL, LYDIA and CONQUEST.

b.    each of the CONQUEST/HARRIS parties has full authority to enter into this AGREEMENT;

c.    there are no liens or claims against the HARRIS POCS or the JUDGMENT, except for those held by the WASSERMAN FIRM, Mark Friedman, and current and prior counsel for M & L HARRIS and CONQUEST, all of which will be deemed satisfied as against both of the ESTATES under the terms of this AGREEMENT; and

d.    it is not necessary for M & L HARRIS to obtain approval of this AGREEMENT from the Monterey County Superior Court in the M & L HARRIS marital dissolution proceeding bearing case no. DR 43369 (the "MARITAL DISSOLUTION ACTION").

7.    <u>Signatures.</u>  The signatures of all PARTIES to this AGREEMENT, including the signatures of M & L HARRIS, shall be notarized.

8.    <u>Future Assignments.</u>

a.    Notwithstanding any provisions in any claim assignment agreements between M & L HARRIS and CONQUEST, in the event of any reversion of the HARRIS POCS and/or the JUDGMENT from CONQUEST (or its successor or assignee) to M & L HARRIS or either of them, M & L HARRIS will be deemed to be successors to CONQUEST and will be bound in the same manner as CONQUEST pursuant to the terms of this AGREEMENT.

b.    In the event that the court in the MARITAL DISSOLUTION ACTION has any jurisdiction to determine the allocation between M & L HARRIS of any distributions on account of the HARRIS POCS from the ESTATES pursuant to this AGREEMENT, M & L HARRIS agree that M & L HARRIS shall have sole responsibility to obtain approval of that allocation, and that the TRUSTEES and the ESTATES shall not have any obligations in that regard.  M & L HARRIS further agree that this AGREEMENT is fully enforceable and binding regardless of any possible requirement that said court in the marital

C:\Documents and Settings\Patrick K. McClellan\Local Settings\Temporary Internet Files\OLKB0\KNIGHT  FINAL HARRIS SETTLEMENT STIPULATION.DOC                7

351

dissolution action allocate said distributions or otherwise approve this AGREEMENT in any
manner whatsoever.

9.    Releases:

a.    The KNIGHT TRUSTEE's Release.  In consideration of the terms
and provisions of and subject to this AGREEMENT, the sufficiency of which is acknowledged
by the execution of this AGREEMENT, as of the Effective Date, the KNIGHT TRUSTEE, on
behalf of the KNIGHT ESTATE, does hereby fully and forever relieve, release, and discharge
CONQUEST/HARRIS, the HARRIS ESTATE, and the HARRIS CHAPTER 7 TRUSTEE, and
any and all representatives thereof, of any and all debts, liabilities, demands, obligations,
assertions, contentions, arbitrations, promises, acts, contracts, costs, expenses, attorneys' fees,
claims, damages, actions, causes of actions, claims for relief, and/or lawsuits, in law or in equity
that were made or could have been made in or in response to the Adversary Proceeding, from the
beginning of time through the Effective Date of this AGREEMENT, known or unknown,
suspected or unsuspected, fixed or contingent.

b.    The DEATH ROW TRUSTEE's Release.  In consideration of the
terms and provisions of and subject to this AGREEMENT, the sufficiency of which is
acknowledged by the execution of this AGREEMENT, as of the Effective Date, the DEATH
ROW TRUSTEE, on behalf of the DEATH ROW ESTATE, does hereby fully and forever
relieve, release, and discharge CONQUEST/HARRIS, the HARRIS ESTATE and the HARRIS
CHAPTER 7 TRUSTEE, and any and all representatives thereof, of any and all debts, liabilities,
demands, obligations, assertions, contentions, arbitrations, promises, acts, contracts, costs,
expenses, attorneys' fees, claims, damages, actions, causes of actions, claims for relief, and/or
lawsuits, in law or in equity that were made or could have been made in or in response to the
Adversary Proceeding, from the beginning of time through the Effective Date of this
AGREEMENT, known or unknown, suspected or unsuspected, fixed or contingent.  The release
hereby granted is effective only as of the Effective Date, and expressly subject to the term
provisions and conditions stated in this AGREEMENT, and shall not be effective until each of
those conditions is satisfied.

c.    The CONQUEST/HARRIS Releases.  In consideration of the
terms and provisions of and subject to this AGREEMENT, the sufficiency of which is
acknowledged by the execution of this AGREEMENT, as of the Effective Date,
CONQUEST/HARRIS does hereby fully and forever relieve, release, and discharge the DEATH
ROW TRUSTEE, the DEATH ROW ESTATE, the KNIGHT TRUSTEE, the KNIGHT
ESTATE, the HARRIS ESTATE and the HARRIS CHAPTER 7 TRUSTEE, and any and all
representatives thereof, of any and all debts, liabilities, demands, obligations, assertions,
contentions, arbitrations, promises, acts, contracts, costs, expenses, attorneys' fees, claims,
damages, actions, causes of actions, claims for relief, and/or lawsuits, in law or in equity, from
the beginning of time through the Effective Date of this AGREEMENT, known or unknown,
suspected or unsuspected, fixed or contingent.

d.    The HARRIS CHAPTER 7 TRUSTEE's Release.  In
consideration of the terms and provisions of and subject to this AGREEMENT, the sufficiency
of which is acknowledged by the execution of this AGREEMENT, as of the Effective Date, the
HARRIS CHAPTER 7 TRUSTEE does hereby fully and forever relieve, release, and discharge

the DEATH ROW TRUSTEE, the DEATH ROW ESTATE, the KNIGHT TRUSTEE and the
KNIGHT ESTATE, and any and all representatives thereof, of any and all debts, liabilities,
demands, obligations, assertions, contentions, arbitrations, promises, acts, contracts, costs,
expenses, attorneys' fees, claims, damages, actions, causes of actions, claims for relief, and/or
lawsuits, in law or in equity, from the beginning of time through the Effective Date of this
AGREEMENT, known or unknown, suspected or unsuspected, fixed or contingent.

        e.    Effect of Releases.  The releases granted above in sub-paragraphs
9(a) through (d) are effective only as of the Effective Date, and expressly subject to the term
provisions and conditions stated in this AGREEMENT, and shall not be effective until each of
those conditions is satisfied.

        f.    General Release:  The PARTIES expressly waive any and all rights
under Section 1542 of the Civil Code of the State of California, or any other federal or state
statutory or common law rights or rules similar to Section 1542.  Section 1542 provides as
follows:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE
> CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER
> FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF
> KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS
> OR HER SETTLEMENT WITH THE DEBTOR."

The PARTIES expressly waive and release any right or benefit which they have or may
have under Section 1542, or any similar law or rule of any jurisdiction, to the full extent that they
may waive all such right and benefits pertaining to the matters released in this AGREEMENT.
In connection with such waiver and relinquishment, the PARTIES acknowledge that they are
aware that they may subsequently discover claims presently unknown or unsuspected, or facts in
addition to or different from those which they now know or believe to be true with respect to the
matters released in this AGREEMENT.  Nevertheless, it is the intention of each PARTY to this
AGREEMENT, through this AGREEMENT, and with the advice of counsel, fully, finally, and
forever to settle and release all such matters and all such claims relative to these matters which
do now exist, may exist, or previously have existed between the PARTIES.  In furtherance of
such intention, the releases given by this AGREEMENT shall be and remain in effect as full and
complete releases of such matters notwithstanding the discovery or existence of any such
additional different claims or facts relative to such matters.

        10.    Continuing Jurisdiction of the BANKRUPTCY COURT:  This
AGREEMENT is subject to and contingent upon the approval by the BANKRUPTCY COURT
in the DEATH ROW CASE, the KNIGHT CASE, and the HARRIS CHAPTER 7 CASE.  The
BANKRUPTCY COURT shall have exclusive jurisdiction to determine as a core proceeding any
dispute or controversy with respect to the interpretation or enforcement of this AGREEMENT.

        11.    Attorney's Fees:  The PARTIES to this AGREEMENT agree to bear all of
their own attorney's fees and costs incurred in connection with the Adversary Proceeding and the
negotiation, preparation, execution, delivery, and performance of this AGREEMENT.

C:\Documents and Settings\Patrick K. McClellan\Local Settings\Temporary Internet
Files\OLKB0\KNIGHT  FINAL HARRIS SETTLEMENT STIPULATION.DOC       9

353

12.  Disputes:  In the event any PARTY to this AGREEMENT makes a claim or raises a defense against the other PARTY involving the interpretation or enforcement of this AGREEMENT and/or the obligations hereunder, the prevailing party shall be entitled to its reasonable attorneys' fees, expenses, and costs incurred in enforcing this AGREEMENT.

13.  Severability:  If any paragraph, term, or provision of this AGREEMENT shall be held or determined to be unenforceable by a court or tribunal of competent jurisdiction, the same shall be deemed severable from this AGREEMENT and the balance of this AGREEMENT shall continue in full force and effect. The PARTIES agree that if such paragraph, term, or provision is deemed invalid as written, it shall be deemed valid and enforceable to the fullest extent permitted by law.

14.  Entire Agreement:  This AGREEMENT, with its Exhibits, constitutes a single, integrated written contract expressing the entire agreement of the PARTIES hereto concerning subject matter hereof.  No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any PARTY to this AGREEMENT, except as specifically set forth herein. All prior agreements, discussions, and negotiations, whether oral or written, have been and are merged and integrated into, and are entirely superseded by this AGREEMENT.

15.  Joint Preparation:  The PARTIES agree that this AGREEMENT shall be deemed to have been prepared by all of the PARTIES jointly, and no ambiguity shall be resolved against any PARTY on the premise that it was responsible for drafting this AGREEMENT, in whole or in part.

16.  Representations and Warranties:  The PARTIES hereto represent and warrant that each signatory hereto has the full right and authority to enter into this AGREEMENT and bind the PARTY on whose behalf he or it has executed this AGREEMENT, except for constraints imposed upon the TRUSTEES and the HARRIS CHAPTER 7 TRUSTEE by the BANKRUPTCY CODE.

17.  Binding Agreement:  This AGREEMENT shall bind and shall inure to the benefit of successors and assigns of each PARTY.  With respect to each of the individual PARTIES, this AGREEMENT shall also bind and inure to the benefit of his or her heirs and assigns.  With respect to each of the entity PARTIES, this AGREEMENT shall also bind and inure to the benefit of any parent, affiliate, predecessor-in-interest, successor-in-interest, or assign.  With respect to each of the PARTIES that are bankruptcy trustees, this AGREEMENT shall also inure to the benefit of and bind any successor or assignee, whether by sale, assignment, transfer under a plan of reorganization or conversation of the DEATH ROW CASE and/or the KNIGHT CASE to a Chapter 7 case under the BANKRUPTCY CODE, or otherwise.

18.  Governing Law:  This AGREEMENT shall be governed by, and construed in accordance with, the laws of the State of California and any disputes arising out of this AGREEMENT shall be brought only in BANKRUPTCY COURT, which shall have exclusive jurisdiction of any and all such disputes as a core matter.

19.  Counterparts:  This AGREEMENT may be executed and delivered in two or more counterparts, each of which, when so executed and delivered, shall be an original, but

C:\Documents and Settings\Patrick K. McClellan\Local Settings\Temporary Internet Files\OLKB0\KNIGHT  FINAL HARRIS SETTLEMENT STIPULATION.DOC          10

354

such counterparts together shall constitute but one and the same instrument and agreement. Facsimile signatures may be used and shall be deemed to be original signatures for all purposes.

        THE PARTIES TO THIS AGREEMENT FURTHER STATE THAT THEY HAVE CAREFULLY READ THIS AGREEMENT, THAT IT HAS BEEN FULLY EXPLAINED TO THEM BY THEIR ATTORNEYS, THAT THEY FULLY UNDERSTAND ITS FULL AND BINDING EFFECT, THAT THE ONLY PROMISES MADE TO THEM TO INDUCE THEM TO SIGN THIS AGREEMENT ARE THOSE CONTAINED IN THIS AGREEMENT, AND THAT THEY ARE SIGNING THIS AGREEMENT VOLUNTARILY.

        IN WITNESS OF THIS AGREEMENT, the PARTIES and their respective counsel have approved and executed this AGREEMENT on the dates set forth opposite their respective signatures.

Dated: April _, 2008

CHAPTER 11 TRUSTEE OF THE MARION "SUGE" KNIGHT ESTATE

By: _____
  Richard K. Diamond, Chapter 11 Trustee
  of the Marion "Suge" Knight, Jr. Estate

Dated: April __, 2008

CHAPTER 11 TRUSTEE OF THE DEATH ROW RECORDS, INC. ESTATE

By: _____
  R. Todd Neilson, Chapter 11 Trustee of the
  Death Row Records, Inc. Estate

Dated: April __, 2008

LYDIA HARRIS

_____
Lydia Harris

Dated: April __, 2008

MICHAEL RAY HARRIS

_____
Michael Ray Harris

C:\Documents and Settings\RKD\Local Settings\Temporary Internet Files\OLK6\KNIGHT FINAL HARRIS SETTLEMENT STIPULATION_v3.DOC11

such counterparts together shall constitute but one and the same instrument and agreement.
Facsimile signatures may be used and shall be deemed to be original signatures for all purposes.

THE PARTIES TO THIS AGREEMENT FURTHER STATE THAT THEY
HAVE CAREFULLY READ THIS AGREEMENT, THAT IT HAS BEEN FULLY
EXPLAINED TO THEM BY THEIR ATTORNEYS, THAT THEY FULLY
UNDERSTAND ITS FULL AND BINDING EFFECT, THAT THE ONLY
PROMISES MADE TO THEM TO INDUCE THEM TO SIGN THIS AGREEMENT
ARE THOSE CONTAINED IN THIS AGREEMENT, AND THAT THEY ARE
SIGNING THIS AGREEMENT VOLUNTARILY.

IN WITNESS OF THIS AGREEMENT, the PARTIES and their respective counsel have
approved and executed this AGREEMENT on the dates set forth opposite their respective
signatures.

Dated: April __, 2008          CHAPTER 11 TRUSTEE OF THE MARION
                               "SUGE" KNIGHT ESTATE


                               By:_____
                                  Richard K. Diamond, Chapter 11 Trustee
                                  of the Marion "Suge" Knight, Jr. Estate

Dated: April __, 2008          CHAPTER 11 TRUSTEE OF THE DEATH
                               ROW RECORDS, INC. ESTATE

                               By:_____
                                  R. Todd Neilson, Chapter 11 Trustee of the
                                  Death Row Records, Inc. Estate

Dated: April __, 2008          LYDIA HARRIS

                               _____
                               Lydia Harris

Dated: April __, 2008          MICHAEL RAY HARRIS

                               _____
                               Michael Ray Harris

356

2812421744          Sugar Creek                                    02:07.01 p.m.      05-02-2008        2 /3

such counterparts together shall constitute but one and the same instrument and agreement.
Facsimile signatures may be used and shall be deemed to be original signatures for all purposes.

THE PARTIES TO THIS AGREEMENT FURTHER STATE THAT THEY
HAVE CAREFULLY READ THIS AGREEMENT, THAT IT HAS BEEN FULLY
EXPLAINED TO THEM BY THEIR ATTORNEYS, THAT THEY FULLY
UNDERSTAND ITS FULL AND BINDING EFFECT, THAT THE ONLY
PROMISES MADE TO THEM TO INDUCE THEM TO SIGN THIS AGREEMENT
ARE THOSE CONTAINED IN THIS AGREEMENT, AND THAT THEY ARE
SIGNING THIS AGREEMENT VOLUNTARILY.

IN WITNESS OF THIS AGREEMENT, the PARTIES and their respective counsel have
approved and executed this AGREEMENT on the dates set forth opposite their respective
signatures.

Dated: April __, 2008                    CHAPTER 11 TRUSTEE OF THE MARION
                                         "SUGE" KNIGHT ESTATE


                              By:_____
                                   Richard K. Diamond, Chapter 11 Trustee
                                   of the Marion "Suge" Knight, Jr. Estate

Dated: April __, 2008                    CHAPTER 11 TRUSTEE OF THE DEATH
                                         ROW RECORDS, INC. ESTATE


                              By:_____
                                   R. Todd Neilson, Chapter 11 Trustee of the
                                   Death Row Records, Inc. Estate

Dated: April __, 2008                    LYDIA HARRIS

                                         _____
                                         Lydia Harris

Dated: April __, 2008                    MICHAEL RAY HARRIS

                                         _____
                                         Michael Ray Harris

Macintosh HD:Users:nikki:Documents:QuickMail Pro Data:~Attachments:KNIGHT FINAL HARRI--
1005076106:KNIGHT FINAL HARRIS SETTLEM.DO                                            11

357

Apr 16 2008 9:21    HP LASERJET FAX    8180179411    p.12

Dated: April _15_, 2008

CONQUEST MEDIA GROUP, LLC

By: _____

Title: _Chairman_

Its Duly Authorized Representative
*See attached for notary*

Dated: April __, 2008

CHAPTER 7 TRUSTEE OF THE LYDIA
HARRIS ESTATE

By: _____
Helen Ryan Frazer, Chapter 7 Trustee of the
Lydia Harris Estate

APPROVED AS TO FORM:

Dated: April __, 2008

KAYE SCHOLER LLP

By: _____
Ronald L. Leibow, Esq.
Counsel to R. Todd Neilson as Chapter 11
Trustee for Death Row Records, Inc.

Dated: April __, 2008

DANNING, GILL, DIAMOND & KOLLITZ,
LLP

By: _____
Eric P. Israel, Esq.
Counsel to Richard K. Diamond as Chapter
11 Trustee for Marion "Suge" Knight, Jr.

Dated: April _5_, 2008

AKIN, GUMP, STRAUS, HAUER & FELD,
LLP

By: _____
Peter J. Gurfein, Esq.
Counsel to Conquest Media Group, LLC

C:\Documents and Settings\Owner\Local Settings\Temporary Internet
Files\Content.IE5\BG3QRE2R\KNIGHT__FINAL_HARRIS_SETTLEMENT_STIPULATION[1].DOC12

358

Dated: April __, 2008

CONQUEST MEDIA GROUP, LLC

By:_____

Title: _____
Its  Duly Authorized Representative

Dated: April __, 2008

CHAPTER 7 TRUSTEE OF THE LYDIA
HARRIS ESTATE

By:_____
   Helen Ryan Frazer, Chapter 7 Trustee of the
   Lydia Harris Estate

APPROVED AS TO FORM:

Dated: April 10, 2008

KAYE SCHOLER LLP

By: _____
   ~~Ronald L. Leibow, Esq.~~  PETER  HAVILAND
   Counsel to R. Todd Neilson as Chapter 11
   Trustee for Death Row Records, Inc.

Dated: April 30, 2008

DANNING, GILL, DIAMOND & KOLLITZ,
LLP

By: _____
   Eric P. Israel, Esq.
   Counsel to Richard K. Diamond as Chapter
   11 Trustee for Marion "Suge" Knight, Jr.

Dated: April __, 2008

AKIN, GUMP, STRAUS, HAUER & FELD,
LLP

By:_____
   Peter J. Gurfein, Esq.
   Counsel to Conquest Media Group, LLC

C:\Documents and Settings\epi\Local Settings\Temporary Internet Files\OLK49\KNIGHT FINAL
HARRIS SETTLEMENT STIPULATION_v3.DOC12

359

05/02/2008  13:00     9498511          PATRICK K MCCLE                                    PAGE  02/02

Dated: April ___, 2008                        WEINSTEIN, WEISS & ORDUBEGIAN LLP


                                              By:_____
                                                   Sharon Z. Weiss, Esq.
                                                   Counsel to Lydia Harris

Dated: April 30 2008                          RUSS AUGUST & KABAT, LLP


                                              By: _____
                                                   Steven M. Goldberg,
                                                   Counsel to Michael Ray Harris

Dated: April 2, 2008                          LAW OFFICES OF PATRICK K.
                                              McCLELLAN

                                              By: _____

                                              Patrick K. McClellan.
                                              Counsel to Helen Ryan Frazer, Chapter 7
                                              Trustee of the Lydia Harris bankruptcy estate

C:\Documents and Settings\epi\Local Settings\Temporary Internet Files\OLK49\KNIGHT FINAL
HARRIS SETTLEMENT STIPULATION.DOC   13

360

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _Los Angeles_

On _April 21, 2008_ before me, _C, Blair Notary Public_
         Date                                    Here Insert Name and Title of the Officer

personally appeared _Richard K. Diamond_
                                      Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**C. BLAIR**
Commission # 1690864
Notary Public - California
Los Angeles County
My Comm. Expires Aug 31, 2010

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _C. Blair_
                    Signature of Notary Public

Place Notary Seal Above

———————— **OPTIONAL** ————————
*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: _____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____
_____

Signer Is Representing: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

Signer's Name: _____
☑ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____
_____

Signer Is Representing: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

©2007 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org   Item #5907   Reorder: Call Toll-Free 1-800-876-6827

361

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**

State of California

County of Los Angeles }ss.

On April 24, 2008 before me, Victoria Lynn Doran
Date                              Name and Title of Officer (e.g. "Jane Doe, Notary Public")

personally appeared R. Todd Neilson
                                  Name(s) of Signer(s)

☐ personally known to me
☑ proved to me on the basis of satisfactory evidence

to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**VICTORIA LYNN DORAN**
Commission # 1513196
Notary Public - California
Los Angeles County
My Comm. Expires Sep 29, 2008

WITNESS my hand and official seal.

_____
Signature of Notary Public

──────────────── **OPTIONAL** ────────────────
*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: Agreement & Mutual Release

Document Date: _____   Number of Pages: 14

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer**

Signer's Name: R. Todd Neilson

☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney-in-Fact
☑ Trustee
☐ Guardian or Conservator
☐ Other: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

Signer Is Representing: Bankruptcy Estate of Death Row Records

© 1999 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.nationalnotary.org   Prod. No. 5907   Reorder: Call Toll-Free 1-800-876-6827

362

2812421744        Sugar Creek

02:07:16 p.m.     05-02-2008        3/3

## TEXAS ORDINARY CERTIFICATE OF ACKNOWLEDGMENT

CIVIL PRACTICE & REMEDIES CODE § 121.007

State of Texas

County of Fort Bend }

Before me, Christopher K Oconnor , on this
Name and Character of Attesting Officer, e.g., "John Smith, Notary Public"

day personally appeared LYDIA HARRIS
Name of Signer

☐ known to me
☐ proved to me on the oath of _____

☒ proved to me through TDL 13264639
Description of Identity Card or Document

to be the person whose name is subscribed to the foregoing
instrument and acknowledged to me that he/she executed the
same for the purposes and consideration therein expressed.

Given under my hand and seal of office this

2 day of May A.D. 2008
Day        Month        Year

Christopher K O'Connor
Signature of Notarizing Officer

CHRISTOPHER K OCONNOR
My Commission Expires
December 31, 2011

RIGHT THUMBPRINT
(Optional)
Top of thumb here

**OPTIONAL**

Though the information in this section is not required by law, it may prove valuable to persons relying on the
document and could prevent fraudulent removal and reattachment of this form to another document.

Description of Attached Document

Title or Type of Document: Agreement and Mutual Release

Document Date: May 2, 2008          Number of Pages: 14

Signer(s) Other Than Named Above: _____

© 2005 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.nationalnotary.org          Prod. No. 5243          Reorder: Call Toll-Free 1-800-876-6827

363

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _Marin_

On _April 11, 2008_ before me, _Johanna D. Hoffmann_
　　　　Date　　　　　　　　　　　Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally appeared _Michael Ray Harris_
　　　　　　　　　　　　　　　　　Name(s) of Signer(s)

☑ personally known to me

☑ (or proved to me on the basis of satisfactory evidence)

to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_[signature]_
Signature of Notary Public

> JOHANNA DANIELLE HOFFMANN
> Commission # 1683060
> Notary Public - California
> Alameda County
> My Comm. Expires Jul 22, 2010

Place Notary Seal Above

─────────────── OPTIONAL ───────────────
*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**
Title or Type of Document: _Agreement and Mutual Release_

Document Date: _April 11, 2008_　　　　　Number of Pages: _13_

Signer(s) Other Than Named Above: _Richard K. Diamond, R. Todd Neilson, Lydia Harris, Chippert Media Group, Helen Ryan Frazer, Ronald L. Leibow, Eric P. Braul, Peter J. Gurfein, Sharon Z. Weiss_

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _Michael Ray Harris_
☑ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

Signer Is Representing: _____

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

Signer Is Representing: _____

© 2006 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402    Item No. 5907    Reorder: Call Toll-Free 1-800-876-6827

364

Apr 16 2008 9:21     HP LASERJET FAX          8188179411          p.13

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _Los Angeles_ }

On _4/15/08_ before me, _Sam Jazayeri, Notary Public_
                Date              Here Insert Name and Title of the Officer

personally appeared _Alvin G. Brown_
                         Name(s) of Signer(s)

[Notary Seal:
SAM JAZAYERI
COMM. #1783266
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires Dec. 2, 2011]

who proved to me on the basis of satisfactory evidence to
be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws
of the State of California that the foregoing paragraph is
true and correct.

WITNESS my hand and official seal.

Signature _____
Place Notary Seal Above        Signature of Notary Public

—————————— OPTIONAL ——————————
Though the information below is not required by law, it may prove valuable to persons relying on the document
and could prevent fraudulent removal and reattachment of this form to another document.

Description of Attached Document

Title or Type of Document: _Agreement and Mutual Release_

Document Date: _4/15/08_                              Number of Pages: _14_

Signer(s) Other Than Named Above: _____

Capacity(ies) Claimed by Signer(s)

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

[RIGHT THUMBPRINT OF SIGNER
Top of thumb here]

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

[RIGHT THUMBPRINT OF SIGNER
Top of thumb here]

© 2007 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org   Item #5907   Reorder: Call Toll-Free 1-800-876-6827

365

### ACKNOWLEDGMENT

STATE OF CALIFORNIA           )
                             )
COUNTY OF LOS ANGELES         )

    On May 1, 2008 before me, Sharon A. Woodard, Notary Public, personally appeared Helen Ryan Frazer, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

    I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

SHARON A. WOODARD
Commission # 1708744
Notary Public - California
Los Angeles County
My Comm. Expires Dec 5, 2010

SIGNATURE OF NOTARY

(Seal)

# EXHIBIT 17

EXHIBIT 17

## AGREEMENT REGARDING RECOVERY

## OF ASSETS FROM DEATH ROW RECORDS, INC.

## AND MARION "SUGE" KNIGHT CHAPTER 11 CASES

This agreement is entered into between Helen Ryan Frazer, Chapter 7 Trustee of the

bankruptcy estate of Lydia E. Harris ("Trustee"), Lydia E. Harris, Debtor ("Lydia"), Michael Ray

Harris ("Michael") and Conquest Media Group, LLC ("Conquest").

### RECITALS

**WHEREAS,** Lydia Harris ("Lydia") filed a Chapter 7 petition in the Central District

of California on May 20, 1996 (SVG96-1552 1-GM). Helen Ryan Frazer ("Trustee Frazer") was the

Chapter 7 Trustee in the case. Lydia's case was closed on December 15, 1999 without the

administration of any assets; and

**WHEREAS** Lydia filed a complaint in Los Angeles County Superior Court on

February 26, 2002, case number BC 268857, asserting various claims for relief against Death Row

Records, Inc. ("DRR"), Marion "Suge" Knight, Jr., ("Knight") and others; and

**WHEREAS** on March 9, 2005 Lydia was awarded a judgment in the Superior Court

case in the amount of $107,000,000.00 against DRR and Knight; and

**WHEREAS,** Michael Ray Harris ("Michael"), the Debtor's ex-husband, asserts a

community property interest in the Judgment and any proceeds flowing therefrom; and

**WHEREAS,** on April 4, 2006 DRR and Knight filed Voluntary Petitions under

Chapter 11 on or about April 4, 2006; and

**WHEREAS** Lydia and Michael each filed proofs of claim in the DRR and Knight

chapter 11 cases based on the respective interest in the Judgment (the "Proofs of Claim"), which

Proofs of Claim Lydia and Michael states were sold and assigned to Conquest Media Group, LLC

367

on or about March 15, 2007 (the "Assignment"); and

WHEREAS by Order filed August 21, 2007, Lydia's case was re-opened; and

WHEREAS, Trustee Frazer contends that the Judgment is based on claims arising prior to Lydia's bankruptcy case and which belong to Lydia's bankruptcy estate, which contention is disputed by Lydia, Michael and Conquest; and

WHEREAS Trustee Frazer contends that the purported assignment of the Judgment by Lydia to Conquest is invalid and/or void, which contention is disputed by Lydia, Michael and Conquest; and

WHEREAS, on February 6, 2008 the parties hereto entered into a separate settlement proposal with the trustees of the DRR and Knight Chapter 11 cases which settlement proposal, if approved, will give the parties to this agreement an allowed claim (the "Harris Allowed Claim") in the DRR and Knight Chapter 11 cases on terms more specifically provided for in that settlement proposal (the "Chapter 11 Settlement"); and

WHEREAS the within agreement is reached to resolve the dispute between the parties as to their respective rights in the judgment and any recovery resulting therefrom.

## AGREEMENT

NOW THEREFORE, in consideration of the covenants contained herein, it is agreed as follows by the Parties, subject to the approval of the United States Bankruptcy Court in case SVG96-1552 1-GM, that:

1.      In the event, and only in the event, the Chapter 11 Settlement is finalized and approved by the court in both the DRR and Knight estates, then Trustee Frazer agrees to look solely to distributions, if any, from the DRR and/or Knight bankruptcy estates for satisfaction of Lydia Harris Chapter 7 estate's interest in the Judgment, as provided for in this Agreement.

6225601 v1                                    2

368

2.      The Parties agree that, until the first to occur of either (i) all allowed claims, including allowed administrative claims, in the Lydia Harris chapter 7 case are paid in full, or (ii) the total of Proceeds paid to Helen Ryan Frazer Trustee pursuant to this agreement reaches $500,000, from the Proceeds distributed from the Knight and/or DRR cases on account of the Harris Allowed Claim the DRR and/or Knight Trustees (or their authorized agent, as the case may be), shall pay directly to Trustee Frazer, the following:

a)      80% of the first $100,000 to be distributed on account of the Harris Allowed Claim;

b)      70% of the second $100,000 to be distributed on account of the Harris Allowed Claim;

c)      60% of the third $100,000 to be distributed on account of the Harris Allowed Claim;

d)      50% of any and all additional funds to be distributed on account of the Harris Allowed Claim.

e)      Trustee Frazer shall account to Lydia Harris, Michael Harris, and Conquest upon receipt of each distribution from the Trustee, which accounting shall set forth the amount received; the application of such funds, and the total remaining claims (including administrative claims) to be paid in the Lydia Harris Chapter 7 estate.

f)      Trustee Frazer shall notify the DRR and Knight estates when all amounts due hereunder have been received by the Lydia Harris Chapter 7 estate, and shall thereafter direct that further payments from the DRR estate of the Knight estate be paid to the holder of the Harris Allowed Claims under the Chapter 11 Settlement. Thereafter, any distributions paid to Trustee Frazer shall be held in trust by Trustee Frazer in favor of, and promptly remitted by Trustee Frazer to, the holder of the Harris Allowed Claims.

g)      The parties agree that the claims of Wasserman, Comden, Casselman & Pearson ("Wassermann Firm") and Mark Friedman ("Friedman") are post petition obligations in the Lydia Harris Chapter 7 case and the sole responsibility of Lydia Harris, not her bankruptcy estate. Lydia Harris agrees to hold the Trustee and her bankruptcy estate harmless from any diminution in payments to her estate that occur because of disbursements made from the Knight and/or DRR Chapter 11 cases on account of Proofs of Claims filed therein by Wasserman and/or Friedman.

3.      Effective upon the entry of a final order approving the Chapter 11 Settlement in both the DRR and Knight chapter 11 cases that is not subject to stay pending appeal, and upon the entry of a final order approving this Agreement that is not subject to stay pending appeal, Trustee Frazer, on behalf of herself, her agents, employees, attorneys, officers and directors hereby releases and discharges Lydia E. Harris, Michael Ray Harris and Conquest Media Group, LLC, their respective agents, employees, attorneys, officers and directors (in their capacities as representatives of the Lydia Harris, Michael Ray Harris and/or Conquest Media Group, LLC) from any and all claims, counterclaims, rights, demands, costs, damages, losses, liabilities, attorneys' fees, actions and causes of action whatsoever, whether known or unknown, liquidated, unliquidated, fixed, contingent, material, immaterial, disputed, undisputed, legal or equitable, which the Trustee now has or hereafter may have against Lydia Harris, Michael Ray Harris and/or Conquest Media Group, LLC, arising from or related to this chapter 7 proceeding and the Judgment.

4.      Effective upon the entry of a final order approving the Chapter 11 Settlement in both the DRR and Knight chapter 11 cases that is not subject to stay pending appeal, and upon the entry of a final order approving this Agreement that is not subject to stay pending appeal Lydia Harris, Michael Ray Harris and Conquest Media Group, LLC, by and on behalf of themselves, their agents, employees, attorneys, officers and directors hereby release and discharge Helen Ryan Frazer Trustee and her respective agents, employees, attorneys, officers and directors (in their capacities as representatives of the Trustee) from any and all claims, counterclaims, rights, demands, costs, damages, losses, liabilities, attorneys' fees, actions and causes of action whatsoever, whether known or unknown, liquidated, unliquidated, fixed, contingent, material, immaterial, disputed, undisputed, legal or equitable, which they now have or hereafter may have against the Trustee arising from or related to this chapter 7 proceeding and the Judgment.

370

5.      Each of the Parties further understands that California Civil Code section 1542 provides as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

6.      Each of the Parties hereto expressly waives the provisions and protections of Section 1542 of the California Civil Code. Each of the Parties hereto acknowledges that it has been advised by counsel as to the significance of a waiver of Section 1542 as it applies to unknown claims, and that the waivers herein are made knowingly and voluntarily. Each of the Parties hereto further acknowledges that, to the extent it has not fully investigated or does not know about any facts, events or circumstances occurring at any time in the past through the Effective Date of this Agreement, those unknown facts, events and circumstances, and in particular, any and all unknown claims arising out of them, are hereby expressly waived and released.

7.      Lydia, Michael and Conquest agree that they shall not use the Harris Allowed Claim as a credit in any way in an effort to acquire the assets of the DRR and/or Knight bankruptcy estates without Trustee Frazer's prior written consent.

8.      Each party shall bear its own attorneys' fees and costs incurred in connection with this settlement. If either party becomes involved in further legal proceedings against the other to enforce such parties' respective rights or interests under this Agreement, the prevailing party will be entitled to receive reasonable attorneys' fees incurred in connection with any such proceeding from the other party.

9.      This agreement, including all covenants and agreements contained herein, shall inure to and be binding upon the heirs, representatives, executors, successors and assigns of

371

the respective parties.

10.    This Agreement embodies the entire agreement between the parties with respect to the transactions contemplated hereby.

11.    The provisions of this Agreement cannot be waived except by a written agreement of the party against whom a waiver shall be asserted.

12.    This Agreement shall be governed by and construed in accordance with the laws of the State of California. The Parties hereby expressly consent to the personal jurisdiction of the District Court of California, Central District of California.

13.    Time is of the essence in the performance of this Agreement.

14.    This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument.

15.    Each individual signing this agreement on behalf of an entity represents and warrants that he is authorized to sign this agreement by such.


Dated:

_____
LYDIA E. HARRIS


Dated:

_____
MICHAEL RAY HARRIS


Dated: 5-1-08

CONQUEST MEDIA GROUP, LLC

By: _____


Dated: 5/2/8

_____
HELEN RYAN FRAZER
Chapter 7 Trustee


8223601 v1                                6

APPROVED AS TO FORM:

Dated:                          WEINSTEIN, WEISS & ORDUBEGIAN, LLP


                                By: _____
                                    SHARON Z. WEISS
                                    Attorneys for Lydia Harris



Dated:                          RUSS AUGUST & KABAT


                                By: _____
                                    STEVEN M. GOLDBERG
                                    Attorneys for Michael Ray Harris


Dated: 5/2/08                   AKIN GUMP STRAUSS HAUER & FELD, LLP

                                By: _____
                                    PETER J. GURFEIN
                                    Attorneys for Conquest Media Group, LLC


Dated: 5-2-08                   LAW OFFICE OF PATRICK K. McCLELLAN

                                By: _____
                                    PATRICK K. McCLELLAN
                                    Attorney for Helen Ryan Frazer, Trustee


6225601 v1                              7

373