DAVID R. WEINSTEIN (State Bar No. 082881)
SHARON Z. WEISS (State Bar No. 169446)
BRYAN CAVE LLP
120 Broadway, Suite 300
Santa Monica, CA  90401
Telephone:   (310) 576-2100
Facsimile:    (310) 576-2200
david.weinstein@bryancave.com
sharon.weiss@bryancave.com

Attorneys for Plaintiff
Weinstein, Weiss & Ordubegian LLP

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re<br><br>LYDIA E. HARRIS,<br><br>               Debtor. | Bk. No. 1:96-bk-15521-GM<br>[Chapter 7] |
| WEINSTEIN, WEISS & ORDUBEGIAN LLP<br><br>               Plaintiff,<br><br>vs.<br><br>HELEN RYAN FRAZER, CHAPTER 7 TRUSTEE OF THE LYDIA E. HARRIS BANKRUPTCY ESTATE; LYDIA HARRIS, AN INDIVIDUAL, NEW IMAGE CORPORATION, A CALIFORNIA CORPORATION, MICHAEL RAY HARRIS, AN INDIVIDUAL, CONQUEST MEDIA GROUP, LLC, AND WASSERMAN, COMDEN & CASSLEMAN, LLP.<br>               Defendant. | Adv. No. 1:13-ap-01035-MT<br><br>FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT, EQUITABLE SUBORDINATION AND IMPOSITION OF A CONSTRUCTIVE TRUST<br><br><br>DATE:  November 6, 2013<br>TIME:   1:00 p.m.<br>PLACE: Courtroom 302<br>           21041 Burbank Boulevard<br>           Woodland Hills, CA 91367 |

SM01DOCS\981614.1

1

Plaintiff Weinstein, Weiss & Ordubegian LLP ("WWO"), alleges as follows:

## JURISDICTIONAL ALLIEGATION

1.    On or about May 20, 1996 ("Petition Date"), Lydia E. Harris filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Bankruptcy Code in the United States Bankruptcy Court, Central District of California, San Fernando Valley Division, case no. 1:96-bk-15521-GM, commencing this chapter 7 case (sometimes, the "Lydia Bankruptcy Case"). Helen Ryan Frazer was duly appointed as the chapter 7 trustee of the estate being administered in the Lydia Bankruptcy Case ("Lydia Bankruptcy Estate").

2.    On or about December 15, 1999, the Court entered an order closing the Lydia Bankruptcy Case without the administration of assets.

3.    By order entered on August 21, 2007, the Lydia Bankruptcy Case was re-opened and Helen Ryan Frazer was re-appointed as the Chapter 7 trustee. She continues in that role.

4.    The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 et seq.

5.    Defendant Frazer, in her capacity as chapter 7 trustee, claims an interest in various assets embodied in or derived from a judgment for $107 million entered on March 9, 2005 in favor of Lydia Harris by the Los Angeles Superior Court in case no. BC-268857 (the "$107M Judgment", Exhibit "1"). Plaintiff is informed and believes that, without limitation, Defendant Frazer, in her capacity as the chapter 7 trustee, claims as property of the Lydia Bankruptcy Estate: the $107M Judgment; proofs of claim filed by Lydia Harris and by Michael Harris in the Knight and Death Row bankruptcy cases (described and defined below) that are derived from the $107M Judgment; and payments to be made upon the $107M Judgment or those proofs of claim (sometimes, "Judgment Proceeds").

6.    This adversary proceeding is a core proceeding under 28 U.S.C. § 157 (b)(2)(A),(K) & (O). This adversary proceeding seeks to determine whether the $107M Judgment, proofs of claim based thereon and the Judgment Proceeds (sometimes, collectively, "Judgment Assets") are

2

property of the Lydia Bankruptcy Estate and how the competing rights in and to the Judgment Assets should be reconciled and prioritized.

## THE PARTIES

7. Plaintiff WWO is a California limited liability partnership. WWO is a law firm that represented Lydia Harris, in connection with the $107M Judgment and her asserted rights in and to the Judgment Assets, from approximately June 2006 through December 2008. WWO is owed in excess of $540,000, plus accruing interest and collection fees and costs, on account of that work, for which it has filed notices of attorney lien in this Lydia Bankruptcy Case and in the Knight and Death Row Records Bankruptcy Cases.

8. Defendant Helen Ryan Frazer is the duly appointed Chapter 7 Trustee in the Lydia Bankruptcy Case ("Lydia Trustee" or "Trustee Frazer"). Defendant Frazer is sued in her capacity as a trustee, only.

9. Defendant Lydia Harris is an individual and the debtor herein ("Lydia" or the "Debtor").

10. Plaintiff is informed and believes and thereon alleges that Defendant New Image Corporation is a California corporation owned and controlled by Lydia ("New Image").

11. Plaintiff is informed and believes and thereon alleges that Defendant Michael Ray Harris ("Michael") is an individual who is the ex-husband of Lydia Harris. Plaintiff believes and thereon alleges that Michael is currently incarcerated but is otherwise a resident of Marin County, California.

12. Plaintiff is informed and believes and thereon alleges that Defendant Conquest Media Group, LLC is a California limited liability company doing business in the State of California ("Conquest"). Plaintiff is informed and believes and thereon alleges that Defendant Conquest has disclaimed any right, title or interest in or to the Judgment Assets. Plaintiff names Conquest as a defendant in order to obtain a definitive, judicial determination of its rights, if any, in or to the Judgment Assets.

SM01DOCS\981614.1

13. Plaintiff is informed and believes and thereon alleges that Defendant Wasserman, Comden & Cassleman, LLP is a California limited liability partnership engaged in the practice of law (the "Wasserman Firm").

## GENERAL ALLEGATIONS

14. Plaintiff is informed and believes and thereon alleges that sometime prior to May 1996, Lydia became a 50% shareholder in Death Row Records.

15. By order of the Court entered on May 8, 1997 in the Lydia Bankruptcy Case, Lydia was denied a discharge. The Lydia Bankruptcy Case was closed on or about December 15, 1999.

16. After the Petition Date, on or about January 25, 2002, Lydia and the Wasserman Firm entered into a written contingency fee agreement for legal services pursuant to which the Wasserman Firm agreed to prosecute certain claims on Lydia's behalf against Death Row Records and Marion "Suge" Knight ("Knight"). In exchange, the Wasserman Firm was to be compensated by a 40% contingency fee and reimbursement of costs. A copy of the employment agreement between the Wasserman Firm and Lydia is attached hereto as Exhibit "2" ("Wasserman Retainer Agreement").

17. Plaintiff is informed and believes and thereon alleges that after the Petition Date, on or about February 26, 2002, the Wasserman Firm filed a complaint as Lydia's counsel and on her behalf against Death Row Records, Knight and others in the Los Angeles Superior Court, commencing case no. BC-268857 ("Lydia State Court Action"). A copy of the complaint in the Lydia State Court Action is attached hereto as Exhibit "3".

18. On March 9, 2005, judgment was entered in favor of Lydia in the Lydia State Court Action for $107,000,000 (the "$107M Judgment", above). Plaintiff is informed and believes and thereon alleges that the $107M Judgment was entered by default resulting from discovery sanctions issued against Death Row Records and Knight and that the court in the Lydia State Court Action made no findings of fact, nor did it issue conclusions of law, in connection with or in support of the $107M Judgment. The $107M Judgment awards $2 million for non-economic damage, $60 million for punitive damages and $45 million for economic damages. A copy of the $107M Judgment is attached as Exhibit "1".

4

19. Plaintiff is informed and believes and thereon alleges that Lydia discharged the Wasserman Firm on or about May 19, 2005.

20. Plaintiff is informed and believes and thereon alleges that after Lydia discharged the Wasserman Firm, it filed and served a Notice of Lien in the Lydia State Court Action. A copy of that Notice of Lien is attached as Exhibit "4".

21. Plaintiff is informed and believes and thereon alleges that Knight paid to Lydia $10,000 on or about May 20, 2005 and $990,000 on or about May 27, 2005, for a total of $1,000,000 (collectively, the "Knight $1M Payment"). Plaintiff is further informed and believes that neither Knight nor Lydia paid anything to the Wasserman Firm on account of the Knight $1M Payment.

22. The Wasserman Firm filed a complaint in the Los Angeles Superior Court against Lydia and others on September 21, 2005 to recover on its alleged rights to fees in connection with the $107M Judgment and the Knight $1M Payment (the "Wasserman State Court Action"). A copy of the first amended complaint in the Wasserman State Court Action is attached as Exhibit "5".

23. On or about April 4, 2006, Knight filed a voluntary petition under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court, Central District of California, Los Angeles Division, commencing case no. 2:06-bk-11187-VZ (the "Knight Bankruptcy Case"). The Knight Bankruptcy Case was converted to one under chapter 7 on or about November 25, 2009. R. Todd Neilson is the duly appointed and acting chapter 7 trustee in the Knight Bankruptcy Case (the "Knight Trustee").

24. On or about April 4, 2006, Death Row Records filed a voluntary petition under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court, Central District of California, Los Angeles Division, commencing case no. 2:06-bk-11205-VZ (the "Death Row Bankruptcy Case"). The Death Row Bankruptcy Case was converted to one under chapter 7 on or about November 25, 2009. R. Todd Neilson is currently the duly appointed and acting chapter 7 trustee in the Death Row Bankruptcy Case ("Death Row Trustee").

5

SM01DOCS\981614.1

25. On or about May 4, 2006, Michael filed a proof of claim in each of the Knight and Death Row Bankruptcy Cases, alleging rights derived from the $107M Judgment (the "Michael Harris Proofs of Claim"). Copies of the Michael Harris Proofs of Claim are attached as Exhibits "6A" and "6B".

26. On or about June 6, 2006, Knight and Death Row Records, each as a debtor-in-possession, together initiated an adversary proceeding against Lydia and Michael regarding their asserted claims in the Knight and Death Row Records Bankruptcy Cases. The adversary proceeding bears case no. 01:bk:06-ap-01660-VZ (the "DIP Adversary Proceeding").

27. On or about June 12, 2006, by means of a written and counter-signed retainer letter (the "WWO Retainer Agreement"), Lydia retained WWO to, without limitation, represent her rights and interests in and to the Judgment Assets, to defend her in the DIP Adversary Proceeding and to otherwise represent her in connection with her expectation of receiving money from the Death Row and Knight Bankruptcy Cases on account of the $107M Judgment.

28. The WWO Retainer Agreement provides for a contractual attorneys' lien in favor of WWO and against Lydia Harris's interests in any monetary recovery she might obtain from either of the Knight or Death Row Bankruptcy Cases, whether by judgment, arbitration award or otherwise, specifically including, without limitation, any recovery on or derived from the $107M Judgment. The WWO Retainer Agreement provides for compensation to WWO to be determined on an hourly basis plus reimbursement for out-of-pocket costs, and further provides for the payment of interest on Lydia Harris's unpaid account with WWO, as well as fees and costs WWO might incur in negotiating over or collecting upon its account with Lydia Harris, all of which is secured by the attorneys' lien. A copy of the WWO Retainer Agreement has been filed under seal in this adversary proceeding and is designated as, and sometimes referred to as Exhibit "7".

29. At the time the WWO Retainer Agreement was executed and counter-signed, the Lydia Bankruptcy Case was closed. At the time the WWO Retainer Agreement was executed and counter-signed, WWO had no knowledge that the Lydia Bankruptcy Case had been filed (and subsequently closed). WWO did not learn of the existence of the Lydia Bankruptcy Case until in or about the second calendar quarter of 2007 when counsel for Knight obtained information

SM01DOCS\981614.1

leading him to believe that a bankruptcy case by Lydia Harris had been filed and he communicated that information to WWO. Had WWO known of the Lydia Bankruptcy Case in June 2006, it would not have proposed or proceeded under the WWO Retainer Agreement absent substantial, additional inquiry and investigation into the material circumstances.

30. On or about October 19, 2006, Lydia filed a proof of claim in each of the Knight and Death Row Records Bankruptcy Cases, alleging rights derived from the $107M Judgment (the "Lydia Harris Proofs of Claim"). Copies of the Lydia Harris Proofs of Claim are attached as Exhibits "8A" and "8B".

31. On or about October 31, 2006, the Wasserman Firm filed a proof of claim in each of the Knight and Death Row Records Bankruptcy Cases, alleging rights derived from the $107M Judgment and the $1M Knight Payment (the "Wasserman Proofs of Claim"). Copies of the Wasserman Proofs of Claim are attached as Exhibits "9A" and "9B".

32. On or about March 3, 2007, the Wasserman Firm entered into a settlement agreement with Lydia (and others) which settled the Wasserman State Court Action ("Wasserman Action Settlement Agreement"). Without limitation, under the Wasserman Action Settlement Agreement, the Wasserman Law Firm reduced its 40% contingency claim to 29.75%, and agreed to pay 29.75% of any fees it recovered to WWO, subject to terms provided in the Wasserman Action Settlement Agreement. A copy of the Wasserman Action Settlement Agreement is attached hereto as Exhibit "10".

33. On or about March 13, 2007, Lydia and Michael each assigned their respective rights in the Judgment Assets to Conquest.

34. In or about July 2007, this Court reopened the Lydia Bankruptcy Case and Helen Ryan Frazer was reappointed as chapter 7 trustee in the reopened Lydia Bankruptcy Case.

35. In or about May and June 2008, the bankruptcy courts presiding over the Knight, Death Row Records and Lydia Bankruptcy Cases approved a multi-party, multi-faceted compromise that included, among other things, settlement of the DIP Adversary Proceeding and resolution of certain disputes about the Lydia Harris and Michael Harris Proofs of Claim. The compromise motions sought approval of two agreements that were attached as exhibits to the

motions. A copy of the compromise motion filed in the Knight Bankruptcy Case is attached as Exhibit "11A"; a copy of the compromise motion filed in the Death Row Bankruptcy Case is attached as Exhibit "12A"; a copy of the compromise motion filed in the Lydia Bankruptcy Case is attached as Exhibit "13A". Copies of the orders approving those motions are attached as Exhibits "11B", "12B" and "13B", respectively. Those motions include copies of an *Agreement and Mutual Release* dated February 6, 2008 to which the parties are the Knight and Death Row Trustees on the one hand, and Lydia, Michael, Conquest and Trustee Frazer on the other; and an *Agreement Regarding Recovery of Assets From Death Row Records, Inc. and Marion "Suge" Knight Chapter 11 Cases* to which the parties are Trustee Frazer, Lydia, Michael and Conquest. The compromise motions and the court orders that approved the compromise motions (Exhibits "11A, B", "12A, B" and "13A, B"), together with resultant rights, responsibilities and actions, are sometimes collectively referred to as the "Three Trustee Settlement".

36. Plaintiff is informed and believes and thereon alleges that at the times when the agreements attached to the compromise motions (Exhibits "11A", "12A" and "13A") were made, all or substantially all the parties to those agreements were aware of, or are charged with awareness of, the lien rights Lydia Harris had granted to WWO in the WWO Retainer Agreement (sometimes, "WWO Lien Rights"). Lydia Harris was aware of the WWO Lien Rights because she counter-signed the WWO Retainer Agreement. WWO is informed and believes and thereon alleges that Lydia Harris discussed the WWO Lien Rights with Michael Harris during the time period mentioned here; and WWO discussed the WWO Lien Rights with counsel for all or substantially all the Defendants during that time period.

37. Plaintiff is informed and believes and thereon alleges that, among other things, the Three Trustee Settlement effectively consolidated and allowed the Lydia Harris and Michael Harris Proofs of Claim as a unified "Harris Allowed Claim", limited Trustee Frazer's recovery from the Judgment Proceeds to $500,000 and acknowledged that certain portions of the Judgment Proceeds, including all amounts in excess of $500,000, are not property of the Lydia Bankruptcy Estate. No determination was made as to whether the $500,000 of Judgment Proceeds potentially to be paid to Trustee Frazer was (or would be) property of the Lydia Bankruptcy Estate.

8

SM01DOCS\981614.1

38.     Plaintiff is informed and believes and thereon alleges that on or about August 22, 2008, Trustee Frazer filed an adversary complaint in the Lydia Bankruptcy Case against Lydia to recover the Knight $1M Payment, adversary proceeding no. 1:08:ap-01488-GM (sometimes, "Adversary 1488").  On or about September 15, 2009, Trustee Frazer obtained a default money judgment against Lydia in Adversary 1488.  A copy of the judgment in Adversary 1488 is attached hereto as Exhibit "14" (the "$1M Judgment").  Plaintiff is informed and believes, and thereon alleges, that on April 3, 2013, Trustee Frazer obtained an Abstract of Judgment related to the $1M Judgment, and recorded a copy of the $1M Judgment in the Official Records of Los Angeles County on April 9, 2013.  Copies of the Abstract of Judgment and the Recorded $1M Judgment are attached as Exhibits "15A" and "15B", respectively.  Plaintiff is informed and believes and thereon alleges that Trustee Frazer has no lien against any of the Judgment Assets.

39.     Plaintiff is informed and believes and thereon alleges that on or about August 22, 2008, Trustee Frazer filed an adversary complaint in the Lydia Bankruptcy Case against Lydia Harris, New Image Corp, a California Corporation, Michael Ray Harris, Conquest Media Group, LLC, and Wasserman Comden & Casselman LLP, seeking a determination whether the Judgment Assets are property of the estate in the Lydia Bankruptcy Case, adversary proceeding no.1:08:ap-01489-GM ("Adversary 1489").  Adversary 1489 has been dismissed.  Copies of defaults and an order of dismissal in Adversary 1489 are attached hereto as Exhibits "16A", "16B" and "16C".

40.     Plaintiff is informed and believes and thereon alleges that Conquest has released all claims to the Judgment Assets, including proofs of claims it filed in the Knight and Death Row Records Bankruptcy Cases.

41.     During approximately 27 months beginning June 12, 2006 and ending no earlier than September 9, 2008, WWO performed legal services for Lydia Harris under and pursuant to the WWO Retainer Agreement.  These legal services consisted of hundreds of professional hours, including professional hours rendered by the law firm Richardson & Patel, LLP, the rights to which have been assigned to WWO.  These professional services (sometimes, the "WWO Legal Services") all related to or were derived from Lydia Harris's rights and obligations in connection with the Judgment Assets and how they relate to or are affected by:

9

SM01DOCS\981614.1

      (a)      the Knight Bankruptcy Case;

      (b)      the Death Row Bankruptcy Case;

      (c)      the Lydia Bankruptcy Case;

      (d)      Adversary proceeding no. 1:08-ap-01424-GM, entitled *Conquest Media, et al. v. Lydia Harris, et al.*, which was filed in the Lydia Bankruptcy case; and

      (e)      State court lawsuit no. BC 268857, entitled *Harris v. Knight*.

42. The WWO Legal Services included, without limitation: communications with Lydia Harris; legal research and drafting memoranda, pleadings and other papers filed in the various cases; propounding and responding to discovery and addressing discovery disputes; attendance at meetings with persons interested in the various cases and their affected counsel; negotiations arising from the foregoing, including participation in mediation; and defending and responding to allegations, motions and proceedings commenced against Lydia Harris.

43. Following execution of the WWO Retainer Agreement on or about June 12, 2006, and pursuant to the WWO Retainer Agreement and other oral and written agreements between WWO and Lydia Harris, by no later than September 2006, WWO and Lydia Harris agreed to modify the WWO Retainer Agreement such that Lydia Harris's payment obligations to WWO would be deferred, and Lydia Harris would have no payment obligation to WWO, until money was otherwise paid or due to be paid to her on account of the Judgment Assets. Without limitation, WWO came to believe that Lydia Harris was unable to pay for the WWO Legal Services until she realized or was about to realize money on account of the Judgment Assets. Furthermore, WWO came to believe that Lydia Harris would use money otherwise to be paid to her on account of the Judgment Assets, or money actually paid to her on account of the Judgment Assets, to pay WWO's legal fees and costs accrued on account of the WWO Legal Services. The fees to which WWO was entitled under the WWO Retainer Agreement continued on an hourly accrual basis, plus reimbursements of costs.

44. By September 9, 2008, the attorney-client relationship between WWO and Lydia Harris had deteriorated. On September 9, 2008, WWO sent Lydia Harris a letter via e-mail, first class U.S. mail and overnight mail detailing the deterioration in the professional relationship,

advising her of WWO's obligation to withdraw as counsel, providing prospective substitutions of counsel and advising Lydia Harris that the firm would move to withdraw as her counsel if the substitutions were not timely executed and processed appropriately (the "WWO Resignation Letter"). The WWO Resignation Letter included, without limitation, copies of certain of the billing statements that reflected some of the WWO Legal Services. Other billing statements had been previously sent to Lydia Harris. A copy of the WWO Resignation Letter has been filed under seal in this adversary proceeding and is designated as, and is sometimes referred to as, Exhibit "17".

45. On or about October 29, 2008, the WWO moved to be relieved as counsel for Lydia in the Lydia Bankruptcy Case and in the Knight and Death Row Records Bankruptcy Cases.

46. On or about December 10, 2008, this Court entered its order permitting the withdrawal of WWO as counsel for Lydia, and WWO thereupon withdrew from that engagement.

47. On or about January 23, 2009, WWO filed Notices of Lien in the Lydia, Knight and Death Row Records Bankruptcy Cases. Copies are attached as Exhibits "18", "19" and "20".

## FIRST CLAIM FOR RELIEF

## (AGAINST ALL DEFENDANTS TO DETERMINE ENFORCEABILITY OF WWO LIEN RIGHTS)

48. Plaintiff incorporates paragraphs 1 through 47 of this First Amended Complaint as if fully set forth here.

49. A controversy exists between WWO and Defendants as to the present enforceability of the WWO Lien Rights. WWO contends and represents that the WWO Lien Rights exist and are presently enforceable against the Judgment Assets, based on the following, without limitation:

(a) The representations made in this First Amended Complaint and the documents attached as exhibits to this First Amended Complaint which are incorporated into this First Claim for Relief;

(b) WWO's claim for relief to enforce Lydia Harris's obligation to pay for the WWO Legal Services does not accrue under applicable California law until she receives money

upon, or is otherwise imminently entitled to receive money upon the Judgment Assets or under the "Claims" defined in the WWO Retainer Agreement. This contingency has not yet occurred.

(c) WWO's claim for relief to enforce the WWO Lien Rights does not accrue until assets materialize against which the WWO Lien Rights may be enforced. This contingency has not yet occurred.

(d) If one or both of WWO's claims to enforce Lydia Harris's obligation to pay for WWO Legal Services or WWO's claim to enforce the WWO Lien Rights have accrued, the deadline by which to take enforcement actions was extended, and has not expired, by reason of statements and actions by Lydia Harris in and after September 2006, which statements and actions will be detailed when authorized by the Court.

(e) Defendant Lydia Harris is estopped to deny that WWO's claims for relief (subparagraphs 49(b), (c) of this First Amended Complaint) have not yet accrued, and hence have not expired, based upon information reflected in the WWO Resignation Letter and in other communications with Lydia Harris that will be detailed when authorized by the Court; and based on actions and inactions by Lydia Harris.

(f) Defendant Trustee Frazer is estopped to deny that WWO's claims for relief (subparagraphs 49(b), (c) of this First Amended Complaint) have not expired on the grounds that, without limitation, WWO made Trustee Frazer expressly aware of the WWO Lien Rights in direct conversation; and Trustee Frazer advised WWO on at least two occasions, including in October 2012, that she expected the Death Row and Knight Bankruptcy Cases to issue dividends which would be sufficient to, and could be used to, pay WWO's Lien Rights.

(g) Defendant Michael Harris is estopped to deny that WWO's claims for relief (subparagraphs 49(b), (c) of this First Amended Complaint) have not expired on the grounds that, without limitation, WWO is informed and believes and thereon alleges that Michael Harris or his counsel reviewed the WWO Retainer Agreement at or about the time Lydia Harris counter-signed it and were then made aware that Lydia Harris did counter-sign it; WWO advised various persons, including Michael Harris or his counsel, in or around the summer of 2007 that WWO would no longer advance expenses on behalf of Lydia Harris because it had already had become necessary

12

SM01DOCS\981614.1

for WWO to rely on the WWO Lien Rights for recovery of fees and expenses; and Michael Harris took neither action nor legal position denying or putting into question the vitality of the WWO Lien Rights, with knowledge that WWO continued to work in reliance thereon.

50. Plaintiff is informed and believes, and thereon alleges, that Defendants dispute the WWO contentions set forth above and otherwise contend that the WWO Lien Rights are not enforceable.

51. As a result of these disputed contentions, rights to the Judgment Assets remain indeterminate and cannot be realized by any of the disputants. This adversely impacts all parties to this adversary proceeding and the Lydia Bankruptcy Case. A present and justiciable controversy exists that this Court can and should resolve.

## SECOND CLAIM FOR RELIEF

## (AGAINST TRUSTEE FRAZER TO DETERMINE WHETHER THE JUDGMENT ASSETS ARE PROPERTY OF THE ESTATE IN THE LYDIA BANKRUPTCY CASE)

52. Plaintiff incorporates paragraphs 1 through 47 and 49-51 of this First Amended Complaint as if fully set forth here.

53. A controversy exists between WWO and Trustee Frazer as to whether rights to the Judgment Assets are property of the Lydia Bankruptcy Estate. Plaintiff contends that the rights to the Judgment Assets are not property of the Lydia Bankruptcy Estate, based on the following, without limitation:

(a) The $107M Judgment did not exist on the Petition Date and is not rooted in assets or rights of action which Lydia Harris owned on the Petition Date.

(b) By reason of the claims alleged in the complaint in the Lydia State Court Action (Exhibit "3"), the $107M Judgment is not predicated on equity ownership Lydia Harris held in Death Row Records prior to the Petition Date. To the contrary, the $107M Judgment is predicated, substantially if not entirely, on torts and breaches of contract allegedly committed against Lydia Harris by the defendants identified in the Lydia State Court Complaint.

SM01DOCS\981614.1

    (c) Of the $107 million awarded to Lydia Harris in the $107M Judgment, $60 million is for punitive damages which cannot be imposed, under applicable law, for breach of contract but can be imposed only on account of tortious conduct.

    (d) Plaintiff is informed and believes, and thereon alleges that inasmuch as the Lydia State Court Complaint was not dismissed on statute of limitation grounds, and no effort to do so was made, the torts and breaches of contract alleged in the Lydia State Court Complaint arose or occurred on or after February 26, 1998, which is at least 21 months after the Petition Date.

    (e) Rights of action arising from torts and breaches of contract that accrue in favor of a person who has filed a voluntary chapter 7 petition after that petition is filed are "post-petition assets" that are not property of the bankruptcy estate that was created by that person's earlier petition.

  54. Trustee Frazer disputes these contentions and asserts that all or some of the rights to the Judgment Assets are property of the Lydia Bankruptcy Estate and are subject to Trustee Frazer's exclusive administration.

  55. As a result of these disputed contentions, rights to the Judgment Assets remain indeterminate and cannot be realized by any of the disputants. This adversely impacts all parties to this adversary proceeding and the Lydia Bankruptcy Case. A present and justiciable controversy exists that this Court can and should resolve.

## THIRD CLAIM FOR RELIEF
## (AGAINST ALL DEFENDANTS TO DETERMINE
## RELATIVE PRIORITIES TO THE JUDGMENT ASSETS)

  56. Plaintiff incorporates paragraphs 1 through 47. 49-51 and 52-55 of this First Amended Complaint as though fully set forth here.

  57. Plaintiff contends that the WWO Lien Rights are senior to the alleged lien rights of the Wasserman Firm with respect to the Judgment Assets. Alternatively, WWO contends that the WWO Lien Rights are *pari passu* with the rights of the Wasserman Firm, in that WWO is entitled to at least 29.75% of any money the Wasserman Firm receives on account of or derived from the Judgment Assets.

SM01DOCS\981614.1

58. Plaintiff contends that the WWO Lien Rights are senior to the alleged lien rights of Trustee Frazer with respect to the Judgment Assets, based on the following, without limitation:

(a) Plaintiff contends that the WWO Lien Rights are fully enforceable and that Trustee Frazer has no lien rights in or to the Judgment Assets at all.

(b) Alternatively, Plaintiff contends that the WWO Lien Rights are first in the time and senior in priority to any lien rights Trustee Frazer may establish against the Judgment Assets.

59. Plaintiff alleges that the compromises reached between Defendants Trustee Frazer, Lydia Harris and Michael Harris in connection with the Three Trustee Settlement (Exhibits "11A, B", "12A, B" and "13A, B") eroded or derogated the WWO Lien Rights and WWO's interests in and to the Judgment Assets.  Absent the Three Trustee Settlement, WWO was entitled to realize from the Judgment Assets sufficient funds to satisfy the WWO Lien Rights in full.  WWO is informed and believes and thereon alleges that by virtue of alterations to payment obligations that previously existed with respect to the Judgment Assets, the Knight and Death Row Trustees will restrict payments on the Judgment Assets such that the WWO Lien Rights will be or may be adversely impacted.

60. WWO was not party to the Three Trustee Settlement but the material participants in the Three Trustee Settlement knew or should have known of the WWO Lien Rights and the adverse effects the Three Trustee Settlement would or might have on the WWO Lien Rights.

61. Plaintiff contends that by reason of the foregoing, WWO is entitled to a judicial decree that (a) establishes a constructive trust in favor of WWO over any interests Defendants may have in the Judgment Assets; and (b) equitably subordinates to the WWO Lien Rights any interests Defendants may have in the Judgment Assets.

62. Plaintiff contends that it has priority over all Defendants as to any amounts to which any of them may be entitled from the Judgment Assets, by virtue of the WWO Lien Rights.

63. Plaintiff is informed and believes that the Defendants dispute WWO's contentions.

64. As a result of these disputed contentions, rights to the Judgment Assets remain indeterminate and cannot be realized by any of the disputants.  This adversely impacts all parties to

15

SM01DOCS\981614.1

this adversary proceeding and the Lydia Bankruptcy Case. A present and justiciable controversy exists that this Court can and should resolve.

WHEREFORE, Plaintiff prays for judgment as follows:

1. On the First Claim for Relief:

   (a) For a judicial determination that the WWO Lien Rights are fully enforceable against the Judgment Assets;

   (b) For a judicial determination that Lydia Harris, Trustee Frazer and Michael Harris are estopped to assert the contrary; and

   (c) For a judicial determination fixing that portion of the Judgment Assets to which the WWO Lien Rights attach.

2. On the Second Claim for Relief:

   (a) For a judicial determination that the Judgment Assets are not property of the Lydia Bankruptcy Estate; and

   (b) If the Judgment Assets are, in any part, property or the Lydia Bankruptcy Estate, for a judicial determination apportioning the Judgment Assets as property of the estate and not property of the estate.

3. On the Third Claim for Relief:

   (a) For a judicial determination that the WWO Lien Rights are senior to the alleged lien rights of the Wasserman Firm; or alternatively are *pari passu,* in that WWO is entitled to at least 29.75% of any money the Wasserman Firm receives in connection with or derived from the Judgment Assets;

   (b) For a judicial determination that Trustee Frazer has no lien rights in or to the Judgment Assets and that Trustee Frazer has no entitlement thereto by virtue of her status as a chapter 7 trustee;

   (c) For a judicial determination that the WWO Lien Rights have priority over any lien rights which Trustee Frazer may have in or to the Judgment Assets;

   (d) For a judicial determination that WWO is entitled to a constructive trust over any interests which any of the Defendants may have in or to the Judgment Assets; and

SM01DOCS\981614.1

      (e)    For a judicial determination that any interests the Defendants may have in or to the Judgment Assets are subordinated to the WWO Lien Rights.

4.    On all Claims for Relief:

      (a)    For attorneys' fees and costs of suit incurred herein as permitted by law.

      (b)    For such other and further relief as the Court may deem property and just.

Dated: August 12, 2013                    BRYAN CAVE LLP

By: */s/ David R. Weinstein*
DAVID R. WEINSTEIN
SHARON Z. WEISS
Attorneys for Weinstein, Weiss & Ordubegian LLP

SM01DOCS\981614.1