EXHIBIT 1

EXHIBIT 1

*F.D.*

1  DAVID B. CASSELMAN (SBN 81657)
   I.DONALD WEISSMAN (SBN 67980)
2  WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
   5567 Reseda Boulevard, Suite 330
3  Post Office Box 7033
   Tarzana, California 91357-7033
4  Telephone:   (818) 705-6800 • (323) 872-0995
   Facsimile:    (818) 705-8147
5
   Attorneys for Plaintiffs
6  LYDIA HARRIS and NEW IMAGE MEDIA
   CORPORATION
7

**FILED**
LOS ANGELES SUPERIOR COURT
MAR 0 9 2005
JOHN A. CLARKE, CLERK
By: _____
   K. CASTLE

8               SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                     FOR THE COUNTY OF LOS ANGELES

10

11  LYDIA HARRIS, LIFESTYLE            )   CASE NO. BC 268857
    RECORDS, INC., AND NEW IMAGE       )
12  MEDIA CORP.,                       )   Case Assigned to:
                                       )   Judge Ronald M. Sohigian – Dept. 41
13          Plaintiffs,                )
                                       )   [Complaint Filed: February 26, 2002]
14      v.                             )
                                       )
15  KEVIN GILLIAM AKA BATTLECAT;       )
    MARION H. KNIGHT AKA SUGE          )   JUDGMENT
16  KNIGHT; DEATH ROW RECORDS;         )
    THA ROW, INC.; DAVID E. KENNER;    )
17  DAVID E. KENNER PROFESSIONAL       )
    LAW CORPORATION; DAVID E.          )
18  KENNER, A PROFESSIONAL             )
    CORPORATION; THE DAVID E.          )
19  KENNER TRUST; INTERSCOPE           )
    RECORDS; JIMMY IOVINE; JOHN T.     )
20  MCCLAIN, JR.; A&M RECORDS; ET      )
    AL.,                               )
21                                     )
            Defendants.                )
22

23      Upon the Order striking the Answer of MARION H. KNIGHT, aka SUGE KNIGHT,

24  DEATH ROW RECORDS, INC., ~~AND DEATH ROW RECORDS, L.L.C.~~ ~~AND THA ROW, INC.~~,

25  to Plaintiffs' Complaint and entering default thereon, consideration of the Plaintiffs' Application

26  for Default Prove-up Damages and the supporting declarations of Lydia Harris, I.Donald

27  Weissman, Michael Harris and Phil Ames; and good cause appearing therefor,

28

JUDGMENT

-2-

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
TARZANA, CALIFORNIA 91357-7033

Case 2:06-bk-11205-VZ    Doc 515-1    Filed 05/02/08    Entered 05/02/08 17:25:28    Desc
Exhibit 1    Page 4 of 19

1         IT IS HEREBY ADJUDGED that judgment is entered in favor of plaintiffs, LYDIA

2   HARRIS and NEW IMAGE MEDIA CORP., and against defendants, MARION H. KNIGHT

3   aka SUGE KNIGHT, DEATH ROW RECORDS, INC., the DEATH ROW RECORDS, L.C.,

4   and THA ROW, INC., in the sum of $ _45,000,00_ for economic damages,

5   $_2,000,000_ for non-economic damages, $ _60,000,000_ for punitive damages,

6

7         Further, PLAINTIFFS to recover costs pursuant to a memorandum of costs to be filed

8   pursuant to the statute _in the amount of $_____

9

10   Dated: _3-9-05_        _Rowell M. Sohigian_

11         JUDGE OF THE LOS ANGELES SUPERIOR COURT

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<table>
<tr><td>WASSERMAN, COMDEN, CASSELMAN &amp; PEARSON L.L.P.<br>5567 RESEDA BOULEVARD, SUITE 320<br>TARZANA, CALIFORNIA 91357-7033</td></tr>
</table>

2

*JUDGMENT*

~ 3 ~

# EXHIBIT 2

# EXHIBIT 2

*WASSERMAN, COMDEN & CASSELMAN L.L.P.*
*5567 Reseda Boulevard, Suite 330*
*Post Office Box 7033*
*Tarzana, California 91357-7033*
*(818) 705-6800  (323) 877-0995*
*Fax (818) 996-8266*

### *CONTINGENCY FEE AGREEMENT*

THIS IS AN AGREEMENT between  *Ludis Harris  and New Image Entertainment, Inc. and Lifestyle Records, Inc.*, hereinafter referred to as "Client," and Wasserman, Comden & Casselman L.L.P., hereinafter referred to as "Attorney." Unless a different Agreement is made *in writing*, this Agreement alone shall govern the respective rights and responsibilities of Client and Attorney.

*1.     Claims Covered by Agreement:* Client retains Attorney to represent Client in connection with *representation regarding matters concerning  Battlecat, Inyflow, but not limited to breach of licensing, publishing and all intellectual property issues.*

This Agreement does not cover other related claims that may arise and may require legal services. If such matters arise, separate agreements for legal services will be required if Client wishes Attorney to handle such matters.

*2.     Services to be Performed by Attorney:* Attorney agrees to perform the following legal services, if necessary, with respect to the claims described above:

—    investigation of claims;
—    determining responsible parties;
—    preparation and filing of lawsuits;
—    settlement procedures and negotiations;
—    prosecution of claim by arbitration or legal action until award or judgment is obtained;
    and
—    if judgment is obtained in Client's favor, opposing a motion for new trial by an opposing party.

Attorney is authorized to associate or employ, at Attorney's own expense, other counsel to assist in performing the services required by this Agreement, and to appear on Client's behalf in any proceeding or lawsuit.

*3.     Services Not Covered by This Agreement:* If additional services are necessary in connection with Client's claims, and Client requests Attorney to perform such services, fee arrangements for such additional services must be made between Attorney and Client. Such additional services may be required, for example:

—    If the judgment obtained is not in Client's favor, or the amount thereof is unsatisfactory
    to Client;
—    If the judgment obtained is in Client's favor, and an opposing party appeals from the
    judgment;
—    If a retrial is ordered after a motion for new trial or mistrial, or reversal of the judgment
    on appeal; or
—    in judgment enforcement proceedings.

*4.     No Guarantee as to Result:* Client acknowledges that Attorney has made no guarantee as to the outcome at the amounts recoverable in connection with Client's claims.

*5.     Litigation Costs and Expenses:* Attorney is authorized to incur reasonable costs and expenses in performing legal services under this Agreement. Client agrees to reimburse Attorney for such costs and expenses in addition to the contingency fee discussed below in the event of any recovery.

    (a)    *Particular Costs and Expenses:* The costs and expenses necessary in this case may include any or
        all of the following items (The list is not exclusive; other items may also be necessary, and the rates
        shown are subject to change on prior written notice to Client.)

—    court filing fees
—    process serving fees
—    fees to private investigators
—    fees to photographers or graphic artists
—    fees to experts for consultation and/or appearance at deposition or trial
—    jury fees
—    mail, messenger and other delivery charges
—    parking and other local travel at 31½¢/mile
—    transportation, meals, lodging and all other costs of necessary out-of-town travel
—    long distance telephone charges
—    photocopying (in office) at 30¢/page
—    word processing charges
—    computerized legal research
—    other computer time

    (b)    *Client's Responsibility re Costs:* Attorney may advance such costs and expenses on Client's behalf,
        but is not obligated to do so. Client agrees to reimburse Attorney out of any settlement or judgment
        proceeds as a priority payment.

*6.     Contingency Fee to Attorney:* Client acknowledges that he/she has been advised by Attorney and is aware that the contingency fee is a 40% arrangement and has been negotiated between Client and Attorney.

Based on such negotiations, Client agrees that the following fee arrangement is fair and reasonable, and to pay Attorney the following amount:

-1-

If th___ ___ is settled before a lawsuit is filed, the amount equal to for___ ___cent (40%) of any recovery obtained.

If the matter is settled after a lawsuit is filed, but before the case is first assigned a trial date, an amount equal to thirty three and forty percent (40%) of any recovery obtained.

Thereafter, an amount equal to forty percent (40%) of any recovery, whether by way of settlement, judgment or compromise.

(a)    *Costs and Expenses as Affecting Contingency Fee:* Attorney's fee shall be computed based on the gross recovery. Costs and expenses paid by Attorney in connection with Client's claim shall be reimbursed after the contingency fee is computed. Client's share of the recovery shall be the balance remaining after reimbursement of such costs and expenses and payment of the contingency fee.

(b)    *Form of Recovery as Affecting Contingency Fee:* If the recovery consists of payments to be made over a period of time, or other property not entirely cash or cash-equivalent, the contingency fee shall be based on the present cash value of the recovery as determined by generally recognized accounting and appraisal standards. (For example, if the recovery consists of $1,000 payable at $100/year over 10 years, its present value may be approximately $380, depending on prevalent interest rates.) The contingency fee shall be paid out of the first funds or property received by Client.

(c)    *Sanctions Awards as Part of Recovery:* Monetary sanctions awarded to Attorney during the course of this litigation shall not be considered part of Client's recovery in this action. Such sanctions shall be deemed compensation to counsel for extraordinary time and effort expended as a result of an opposing party's bad faith conduct or failure to comply with discovery demands, court orders or similar obligations. But if the sanctions award includes a costs item (such as the filing fee for making a motion), the amount thereof shall be credited to Client's costs account when received by Attorney.

7.    *Effect of Discharge by Client:* Client shall have the right to discharge Attorney at any time upon written notice to Attorney. Such discharge shall not affect Client's obligation to reimburse Attorney for costs incurred prior to such discharge. In addition, Attorney shall be entitled to the reasonable value of legal services performed prior to such discharge to be paid by Client from any subsequent recovery on claims covered by this Agreement.

8.    *Attorney's Lien:* To secure payment to Attorney of all sums due under this Agreement for services rendered or costs advanced, Client hereby grants Attorney a lien on Client's claim and any cause of action or lawsuit filed thereon, and to any recovery Client may obtain, whether by settlement, judgment or otherwise.

9.    *Insurance:* Wasserman, Comden & Casselman L.L.P. maintains errors-and-omissions insurance applicable to the services to be rendered under the terms of this Agreement.

10.    *Arbitration of Disputes:* If a dispute arises between Attorney and Client regarding fees or services in connection with the above-referenced transaction, such dispute shall be submitted to binding arbitration. This includes any claim for breach of contract, negligence, breach of fiduciary duty or other wrongdoing.

Such arbitration shall be conducted in accordance with the rules of the American Arbitration Association or Judicial Arbitration & Mediation Services, or CCP § 1280 et seq.

You acknowledge that we have explained to you that such binding arbitration may deprive you of various rights that you otherwise might have in a legal action, including without limitation, the right to a jury trial, the right to appeal, and full discovery rights.

INITIALING BELOW SIGNIFIES ACKNOWLEDGMENT OF THIS EXPLANATION:

_____        M S R
(CLIENT'S INITIALS)                    (WC&C)

11.    Client's Receipt of Agreement and Knowledge of Terms: Client acknowledges that he/she has read and fully understands all of the terms and conditions of this Agreement before signing it, and has received a copy of this Agreement upon execution thereof.

Executed at 5567 Reseda Blvd., Suite 330, Tarzana, CA 91357 _____ (place) on _January 25, 2001_

ATTORNEY:                            CLIENT:

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.      LYDIA HARRIS

BY: _____        _____
MARTIN S. RUDOY                    7010 W. Avenue K, Suite 624
                                Lancaster, CA 93534
5567 Reseda Boulevard, Suite 330
Tarzana, California 91357            Telephone:  (Cell) 310-531-2704

(818) 705-6800                    Facsimile:    323-291-7317

Facsimile: (818) 345-0162

EXHIBIT 3

EXHIBIT 3

**FILED**

LOS ANGELES SUPERIOR COURT

FEB 2 6 2002

JOHN A. CLARKE, CLERK

BY P. COOK, DEPUTY

1  DAVID B. CASSELMAN (Bar No. 81657)
   CATHERINE STEVENSON GARCIA (Bar No. 102909)
2  MARTIN S. RUDOY (Bar No. 201988)
   WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
3  5567 Reseda Boulevard, Suite 330
   Post Office Box 7033
4  Tarzana, California 91357-7033
   Telephone: (818) 705-6800 • (323) 872-0995
5  Facsimile: (818) 345-0162 • (818) 996-8266

*Case assigned to Judge David A. Workman*

6  Attorneys for Plaintiffs
   LYDIA HARRIS, LIFESTYLE RECORDS, INC., AND NEW
7  IMAGE MEDIA CORPORATION

**©COPY**

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                    FOR THE COUNTY OF LOS ANGELES

10

11  Lydia Harris, Lifestyle Records, Inc., and          CASE NO.    BC268857
    New Image Media Corp.,
12                                                       COMPLAINT FOR:
              Plaintiffs,
13                                                       1.  Intentional Interference With
      v.                                                     Contractual Relations and
14                                                           Prospective Economic Advantage;
    Kevin Gilliam aka Battlecat; Marion H.
15  Knight aka Suge Knight; Death Row                    2.  Breach of Contract;
    Records; Tha Row, Inc.; David E. Kenner;
16  David E. Kenner Professional Law                     3.  Intentional Interference With
    Corporation; David E. Kenner, a                          Prospective Economic Advantage;
17  Professional Corporation; The David E.
    Kenner Trust; Interscope Records; Jimmy             4.  Fraud and Conspiracy to Defraud;
18  Iovine; John T. McClain, Jr.; A&M Records;
    Arista; Artemis; Asylum; BadBoy; Beyond             5.  Defamation;
19  Records; Def Jam; Done Deal; D P G; Elektra;
    Hip-O Records; Hoobangin Records; Jive; J-          6.  Intentional Infliction of Emotional
20  Records; Loud Records; MCA; Polygram;                   Distress;
    Priority; RCA; S.F.B. Ent.; Sick Wit It; TVT
21  Records; The Orchard; Tommy Boy; Universal;         7.  Professional Malpractice;
    Warner Bros. Records; Zomba and Does 1-100,
22                                                       8.  Violation of Business & Professions
              Defendants.                                    Code §§ 17200; and
23
                                                         9.  Accounting
24

25

26

27  Plaintiffs LYDIA HARRIS, LIFESTYLE RECORDS, INC. and NEW IMAGE MEDIA

28  CORPORATION allege against defendants and each of them as follows:

320243.1        *COMPLAINT FOR INTENTIONAL INTERFERENCE, BREACH OF CONTRACT, ETC.*

                                                                              **000007**

1
2

## FACTUAL OVERVIEW

3    1.    Beginning in approximately 1989, plaintiff LYDIA HARRIS entered into a series

4    of legal relationships with DAVID E. KENNER and SUGE KNIGHT and the other KENNER

5    and KNIGHT defendants (identified more particularly below). DAVID KENNER agreed to act

6    as her attorney, counseling her and the corporate plaintiffs. In consideration for his services,

7    the KENNER defendants received ownership and partnership interests in various business

8    enterprises, including DEATH ROW RECORDS. In each and every venture, DAVID

9    KENNER served as plaintiffs' trusted counsel, partner, advisor and confidant. Despite his

10    fiduciary obligations, DAVID KENNER never disclosed his personal and conflicting interests,

11    motivation and actions to plaintiffs, as alleged herein.

12

13    2.    During the period when DEATH ROW RECORDS was formed, it was

14    understood and agreed that LYDIA HARRIS was a fifty percent owner and that DAVID

15    KENNER, as her legal representative, would represent her in the management of that new

16    company. The KENNER and KNIGHT defendants recognized the substantial value and

17    incredible potential of this new business as well as the financial benefits and feasibility of

18    excluding a fifty-percent owner who lacked their business acumen and greed. LYDIA HARRIS

19    was a skilled producer, capable of locating and signing new and exciting talents in the emerging

20    hip hop/rap music business. However, they knew that she lacked corporate business experience

21    or political insider skills. Accordingly, she was vulnerable to misdealings by her partners and

22    fiduciaries in such ventures.

23

24    3.    Plaintiff LYDIA HARRIS was the only female participant in the newly formed

25    DEATH ROW RECORD entities. The KENNER and KNIGHT defendants had no respect for

26    her person or position, consistent with the rap music industry perspective and practice of

27    demeaning and disparaging women. From the outset, the KENNER and KNIGHT defendants

28    conspired between themselves to take advantage of her skills, while depriving her of any of the

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
P.O. BOX 7033
TARZANA, CALIFORNIA 81357-7033

2

320242.1    *COMPLAINT FOR INTENTIONAL INTERFERENCE, BREACH OF CONTRACT, ETC.*

1   benefits of her efforts or the collective synergy she helped generate in forming and developing

2   DEATH ROW RECORDS.

3

4       4.   In furtherance of this conspiracy, the KENNER and KNIGHT defendants secretly

5   changed the status and legal existence of DEATH ROW RECORDS, carefully excluding

6   plaintiffs from their plans and actions. Despite her rights and ownership interests in the

7   DEATH ROW industry she helped to create, these defendants created confusion by forming

8   multiple, similarly named entities, diverting funds away from plaintiff HARRIS, while

9   simultaneously undermining each plaintiff in their independent ventures. All of these acts were

10   intended to weaken, discredit and emasculate plaintiffs' efforts to discover, pursue or vindicate

11   their rights.

12

13       5.   These actions have taken many forms over a decade. They have all been part of

14   a continuing, concealed, intentional effort in conscious disregard for the rights of plaintiffs. As

15   set forth below, the KENNER and KNIGHT defendants manipulated plaintiffs as well as

16   plaintiffs' relationships with other conspirators, Purporting to help plaintiffs, they created sham

17   transactions with industry executives and labels. Everyone involved in these conspiracies knew

18   that their goal was to divert plaintiff HARRIS away from her ownership and interests in

19   DEATH ROW RECORDS.

20

21       6.   With the knowledge and aid of industry executives including, but not limited to

22   defendants JIMMY IOVINE and JOHN T. McCLAIN, JR., and their labels, including

23   INTERSCOPE RECORDS, plaintiffs were deceived and induced to waste their time, efforts and

24   money pursuing contractual matters that none of the conspirators intended to honor or took

25   seriously. They knew their contracts were one-sided and illusory. At no time did plaintiffs

26   realize that they were being falsely induced to enter into such contracts by an entire group of

27   conspirators, secretly led by plaintiffs' own lawyer and fiduciary, defendant DAVID KENNER.

28

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
P.O. BOX 7033
TARZANA, CALIFORNIA 91357-7033

3

320243.1   *COMPLAINT FOR INTENTIONAL INTERFERENCE, BREACH OF CONTRACT, ETC.*

000009

7.   This conspiracy later expanded to include actions designed to actively induce others to disregard, avoid and breach their contracts with plaintiffs. Such actions included direct and indirect comments, threats and inducements to producers, writers, artists, labels and distributors under contract to plaintiffs to produce hip hop music. Such improper contacts and inducements directly lead to a series of ongoing contract breaches by defendant BATTLECAT and others.

8.   Ultimately, to impact plaintiffs' ability to continue to meet, identify and cultivate new and talented artists, SUGE KNIGHT publicly defamed LYDIA HARRIS personally. By consciously and falsely defaming her and denouncing her ability, he hoped to destroy her credibility within the music industry and with potential new talent. In so doing, he knew that he could inflict harm to each of the plaintiff entities owned and controlled by her. With this motive in mind, he repeatedly and maliciously defamed her both personally and professionally in the national public spotlight. He chose his words carefully to destroy her image and reputation with new writers, artists and producers. He has published and repeated these known falsehoods about her personally and her professional ability, as set forth below, all to accomplish these improper and unlawful objectives.

9.   Each of the defendants has damaged plaintiffs and deprived them of income and successes in the music industry. Each of these actions began as part of the larger plan and longstanding conspiracy of the KENNER and KNIGHT defendants to destroy her ability to lay claim to her rightful share of the ownership and profits of DEATH ROW RECORDS.

### THE PARTIES

10.   Plaintiff LYDIA HARRIS is an individual residing in Los Angeles County, California. For over a decade, she has made her living in the music entertainment industry. She is or has been a director, officer or managing agent and sole shareholder of LIFESTYLE

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
P.O. BOX 7033
TARZANA, CALIFORNIA 91357-7033

4

000010

1  RECORDS, INC., NEW IMAGE MEDIA CORPORATION, and Premier Entertainment, Inc.

2  She was also an officer and 50% shareholder of GFP, Inc., principally involved in the formation

3  and success of defendant DEATH ROW RECORDS.  Plaintiff also co-executive produced the

4  recently released documentary film, "Welcome to Death Row", which chronicles the history of

5  that record label.

6

7       11.    Plaintiffs LIFESTYLE RECORDS, INC. and NEW IMAGE MEDIA

8  CORPORATION are corporations organized and operating under the laws of the State of

9  California.  LYDIA HARRIS, LIFESTYLE RECORDS, INC. and/or NEW IMAGE MEDIA

10 CORPORATION are or have done business under the fictitious business names of Jail House

11 Entertainment, Jail House Records, K D A Distribution Group, Keeping The Dream Alive

12 Productions, Life Style Records, and Nubreed Promotions.  LYDIA HARRIS is also a partner

13 in the general partnership Allen Gordon Entertainment.

14

15      12.    Defendant DAVID E. KENNER resides and does business in Los Angeles

16 County, California.  At all times material, DAVID E. KENNER is and has been licensed to

17 practice law in the State of California.  DAVID E. KENNER was and is an officer, director or

18 managing agent of DEATH ROW RECORDS, DAVID E. KENNER, PROFESSIONAL LAW

19 CORPORATION and DAVID E. KENNER, A PROFESSIONAL CORPORATION, and has

20 been and is the trustee, trustor, or beneficiary of THE DAVID E. KENNER TRUST.

21

22      13.    DAVID E. KENNER, PROFESSIONAL LAW CORPORATION and DAVID

23 E. KENNER, A PROFESSIONAL CORPORATION are corporations organized and existing

24 under the laws of the state of California.  At all times material, DAVID E. KENNER,

25 PROFESSIONAL LAW CORPORATION, DAVID E. KENNER, A PROFESSIONAL

26 CORPORATION and THE DAVID E. KENNER TRUST are the alter egos of DAVID E.

27 KENNER (collectively, the "KENNER defendants").

28

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
TARZANA, CALIFORNIA 91357-7033

5

320243.1       COMPLAINT FOR INTENTIONAL INTERFERENCE, BREACH OF CONTRACT, ETC.

000011

14.    Defendant MARION H. KNIGHT is also known as SUGE KNIGHT ("SUGE KNIGHT"). He is a resident of and does business in Los Angeles County, California. SUGE KNIGHT was and is an officer, director or managing agent of DEATH ROW RECORDS and THA ROW, INC. At all times material, SUGE KNIGHT was acting in both his individual capacity and his capacity as an officer, director or managing agent of DEATH ROW RECORDS and THA ROW, INC. They are all collectively referred to as the "KNIGHT defendants".

15.    DEATH ROW RECORDS and THA ROW, INC. were and are corporations organized and existing under the laws of the State of California, with their principal place of business in Los Angeles County. Plaintiff is informed and believes that DEATH ROW RECORDS is also known as DEATH ROW RECORDS, L.L.C.

16.    Defendant KEVIN GILLIAM is professionally known as "Battlecat" and "DJ Battlecat" ("BATTLECAT"). He is a resident of and does business in Los Angeles County, California.

17.    Defendant INTERSCOPE RECORDS, INC. is a Delaware corporation doing business in Los Angeles County, California, and is the general partner of defendant INTERSCOPE RECORDS, a California general partnership (collectively, "INTERSCOPE"). Defendants JIMMY IOVINE ("IOVINE") and JOHN T. McCLAIN, JR. ("McCLAIN") are residents of Los Angeles County, California. IOVINE and McCLAIN were and/or are officers, directors and/or managing agents of INTERSCOPE. IOVINE, McCLAIN and INTERSCOPE are referred to collectively as the "INTERSCOPE defendants".

18.    Plaintiffs are informed and believe that defendants A&M RECORDS; ARISTA; ARTEMIS; ASYLUM; BADBOY; BEYOND RECORDS; DEF JAM; DONE DEAL; D P G; ELEKTRA; HIP-O RECORDS; HOOBANGIN RECORDS; JIVE; J-RECORDS; LOUD RECORDS; MCA; POLYGRAM; PRIORITY; RCA; S.F.E. ENT.; SICK WIT IT; TVT

6

320243.1     *COMPLAINT FOR INTENTIONAL INTERFERENCE, BREACH OF CONTRACT, ETC.*

000012

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
P.O. BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  RECORDS; THE ORCHARD; TOMMY BOY; UNIVERSAL; WARNER BROS.; and

2  ZOMBA (collectively, the "LABELS" or, individually, "LABEL") are corporations or other

3  entities doing business in Los Angeles County, California.

4

5      19.   Plaintiffs are informed and believe that each of the LABELS has contracted with

6  and paid compensation to BATTLECAT for his services as a producer, writer or artist on

7  albums, cassettes, CD's and/or DVD's which each such LABEL has released for national or

8  international sale to the public.

9

10      20.   Plaintiffs are informed and believe that each DOE defendant is a resident of or an

11  entity doing business in Los Angeles County, California. DOES 1 through 100 are producers,

12  writers, artists, labels or distributors residing or doing business in Los Angeles County,

13  California. The true names and capacities of these DOES are unknown to plaintiffs. Plaintiffs

14  therefore sue these defendants by such fictitious names. Plaintiffs will seek leave to amend this

15  complaint to insert the true names and capacities of these fictitiously named defendants when

16  they are ascertained. Each defendant designated as a "DOE" is responsible in some manner for

17  the acts, occurrences and liabilities hereinafter alleged.

18

19      21.   At all times material, defendants were the agents and employees of each other and

20  were acting within the course and scope of said agency and employment relationships.

21

22      **FIRST CAUSE OF ACTION**

23      **INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS**

24      **AND PROSPECTIVE ECONOMIC ADVANTAGE**

25      **(By Plaintiffs against the Kenner and Knight Defendants)**

26

27      22.   Plaintiffs incorporate all prior paragraphs and the allegations of the third, fourth

28  and seventh causes of action as though fully set forth herein.

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
P.O. BOX 7033
TARZANA, CALIFORNIA 91357-7033

7

23.    At all times material, the KENNER and KNIGHT defendants knew that plaintiffs had a legitimate ownership interest in DEATH ROW RECORDS and legitimate contractual relationships with various producers, writers, artists, labels and distributors. They included valid contracts with BATTLECAT, Dana Dane, Relativity, R.E.D./Sony, and Maverick. These relationships were cultivated and created by plaintiffs, together with DAVID KENNER acting as their counsel, in conjunction with SUGE KNIGHT and/or others. These relationships resulted in contracts, formation of business entities and various agreements, both written and oral, all related to development of hip hop music for sale and distribution to the public.

24.    In furtherance of the conspiracy outlined above, the KENNER and KNIGHT defendants intentionally induced various industry individuals and entities to breach or otherwise abandon their contracts, agreements and business promises to plaintiffs. These inducements were made by relying upon their substantial power and influence in the emerging field of rap music. Defendants were able to "convince" industry executives, labels, producers, writers, artists, distributors and others to avoid working with plaintiffs entirely, enter into sham transactions and/or disregard existing profitable contracts, all to the substantial damage of each plaintiff herein.

25.    As a proximate result of the conduct of defendants, and each of them, plaintiffs have sustained general and special damages, including but not limited to emotional distress (LYDIA HARRIS only), loss of the benefits of their contracts, lost profits, loss of earnings, loss of goodwill, and actual harm to plaintiffs' reputations, all in an amount to be proven at trial.

26.    By engaging in this conduct, defendants, and each of them, acted intentionally, maliciously, oppressively and with willful and conscious disregard for the rights of plaintiffs. DAVID KENNER and SUGE KNIGHT were officers, directors, and/or managing agents of defendant DEATH ROW RECORDS, which independently authorized and ratified their conduct herein. Punitive damages should be assessed against the KENNER and KNIGHT

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
P.O. BOX 7033
TARZANA, CALIFORNIA 91357-7033

8

000014

1    defendants and each of them for the sake of example and to punish these defendants.

2

3                  **SECOND CAUSE OF ACTION**

4                  **BREACH OF CONTRACT**

5             **(By Plaintiffs Against Battlecat)**

6

7      27.    Plaintiffs incorporate all prior paragraphs as though fully set forth herein.

8

9      28.    One of the contractual relationships created by plaintiffs, relying upon the

10   guidance and legal counsel of DAVID KENNER, involves an Exclusive Producer Agreement

11   with defendant BATTLECAT. This contract was drafted under the supervision of the KENNER

12   defendants and executed under circumstances known to the KENNER and KNIGHT

13   defendants.

14

15      29.    Effective September 11, 1993, plaintiffs LYDIA HARRIS and LIFESTYLE

16   RECORDS entered into this Exclusive Producer Agreement with BATTLECAT. A true and

17   correct copy of the contract is attached as **Exhibit A** and incorporated herein as though fully set

18   forth at length.

19

20      30.    Effective November 1, 1996, NEW IMAGE MEDIA CORPORATION acquired

21   all right, title and interest in and to all contracts entered into between BATTLECAT and

22   LIFESTYLE RECORDS. BATTLECAT acknowledged and agreed in writing to this

23   acquisition A copy of this agreement is attached as **Exhibit B** and incorporated herein as

24   though fully set forth at length.

25

26      31.    On or before September 11, 1998, LYDIA HARRIS, NEW IMAGE MEDIA

27   CORPORATION and BATTLECAT entered into a further written agreement which extended

28   the Exclusive Producer Agreement for an additional five years.

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
P.O. BOX 7033
TARZANA, CALIFORNIA 1357-7033

320243.1    *COMPLAINT FOR INTENTIONAL INTERFERENCE, BREACH OF CONTRACT, ETC.*

000015

1    32.    Plaintiffs have performed all covenants and conditions required of them under the

2    Exclusive Producer Agreement, except for those covenants and conditions which were excused,

3    BATTLECAT has waived or is estopped to assert, or which were rendered impossible due to

4    the conduct of others.

5

6    33.    Relying in part upon inducements and threats emanating from the KENNER and

7    KNIGHT defendants, BATTLECAT intentionally breached the Exclusive Producer Agreement.

8    His breaches include producing, writing, performing, re-mixing or otherwise contributing to the

9    production of musical recordings for the benefit of himself and others, without making any

10   payments to plaintiffs as contractually promised.    In addition, BATTLECAT failed to

11   acknowledge and even affirmatively denied plaintiffs' right, title and interest in and to his work

12   as well as the compensation paid to him as set forth in their Exclusive Producer Agreement.

13

14   34.    Plaintiffs are informed and believe that the following musical works were

15   produced, written, or performed by BATTLECAT, and that he received payments for this work

16   without making any payments to plaintiffs as required by their contract. Plaintiffs are informed

17   and believe that, collectively, more than five million copies of these recordings have been sold.

18   Plaintiffs are further informed and believe that BATTLECAT has or will receive up to $75,000

19   per master (i.e., a single song) for his involvement in each of these projects.

20

21       a.    A&M RECORDS: one or more songs on the albums *The Players*

22             *Club* and *The Players Club [Clean]*,  released on or about March

23             7, 1998.

24

25       b.    ARISTA: one or more songs on the album *Weekend*, released on

26             or about October 9, 2001.

27

28       c.    ARTEMIS: one or more songs on the albums *The Streetz Iz A . . .,*

10

000016

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 350
P.O. BOX 7033
TARZANA, CALIFORNIA 91357-7033

320243.1

1    released in or about 1999, and *"O"*, released on or about August

2    21, 2001.

3

4    d.    BADBOY: one or more songs on the album *Faithfully*, released on

5    or about November 6, 2001.

6

7    e.    BEYOND RECORDS: one or more songs on the album *Lucy*

8    *Pearl*, released on or about May 23, 2000.

9

10    f.    DEF JAM: one or more songs on the album *Def Jam Music Group*

11    *–Ten Year Anniversary*, released on or about November 21, 1995.

12

13    g.    DONE DEAL: one or more songs on the album *Heated Speeches*,

14    *Vol. 1*, released on or about April 10, 2001.

15

16    h.    D.P.G.: one or more songs on the album *Who Ride Wit Us*,

17    released on or about November 6, 2001.

18

19    i.    ELEKTRA/ASYLUM: one or more songs on the albums *Music*

20    *and Me* and *Music and Me [Clean]*, released on or about December

21    4, 2001.

22

23    j.    HIP-O RECORDS: one or more songs on the album *Love Hip-*

24    *Hop*, released on or about May 16, 2000.

25
26    k.    HOOBANGIN RECORDS/PRIORITY: The songs *Platinum*
27    *Game*, released on or about 1998, and *"Children of Da Ghetto*,
28    performed by BATTLECAT, and released in or about 1999.

11

*COMPLAINT FOR INTENTIONAL INTERFERENCE, BREACH OF CONTRACT, ETC.*

000017

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
P.O. BOX 7033
TARZANA, CALIFORNIA 91357-7033

l.  J-RECORDS:  The song, *"Do U Wanna Roll"* on the soundtrack *Dr. Doolittle 2*, released on or about June 19, 2001; and, one or more songs on the album *Genesis [Clean]*, released on or about November 27, 2001

m.  JIVE:  The song, *"Na, Na . . ."* on the album *Loyalty and Betrayal [Clean]*, released on or about October 24, 2000; and, one or more songs on the albums *Corruptor* [Original Soundtrack], released on or about March 9, 1999, and *Things in the Game Done Changed*, released on or about January 25, 2000;

n.  LOUD RECORDS:  one or more songs on the albums *Can You Feel Me*, released on or about September 6, 1996, *Restless* and *Restless [Clean]*, released on or about December 12, 2000;

o.  MCA:  The song, *"High Come Down"* on the album, *Wild 'n Tha West [Clean]*, released on or about June 19, 2001.

p.  POLYGRAM:  One or more songs on the following albums: *The Shadiest One*, released on or about April 28, 1998; *Def Jam 1985-2001: History of Hip Hop, Vol. 1*, and *Def Jam 1985-2001: History of Hip Hop, Vol. 1 [Clean]*, released on or about February 27, 2001.

q.  PRIORITY:  One or more songs on the following albums: *Thicker Than Water*, released on or about October 5, 1999;  *Strikes*, released on or about February 22, 2000; *Tha Last Meal*, released on or about December 19, 2000; *Nuthin' But a Gangsta Party, Vol. 2*,

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
P.O. BOX 7033
TARZANA, CALIFORNIA 91357-7033

12

1   released on or about July 3, 2001; *Personal Business*, released on

2   or about July 17, 2001; *Training Day*, released on or about

3   September 11, 2001; and *Bones*, released on or about October 9,

4   2001.

5

6       r.    RCA:  One or more songs on the albums *2000 Watts* and *2000*

7   *Watts [Clean]* albums, released on or about May 22, 2001.

8

9       s.    S.F.E. ENT.:  One or more songs on the album *Twisted Reality*,

10   released on or about January 30, 2001.

11

12       t.    SICK WIT IT/JIVE/ZOMBA:  One or more songs on the album

13   *Sophmore Release*, released in or about 2000.

14

15       u.    SONY RECORDS:  One or more songs on the album *Rap Life*,

16   released on or about November 23, 1999.

17

18       v.    THE ORCHARD:  One or more songs on the album *Expensive and*

19   *Dear*, released on or about March 28, 2000.

20

21       w.    TOMMY BOY:  One or more songs on the album *The Ride: Music*

22   *From Dimension*, released on or about February 17, 1998.

23

24       x.    TVT RECORDS: The songs *G'd Up [Single]*, released on or about

25   December 7, 1999, *"Baby if you're ready"* on the album,

26   *Pleezbaleevit!*, released in 2000, and *"Dollaz, drank & dank"* on

27   the album *Da Khop Shop*, released on or about March 21, 2001;

28   and one or more songs on the albums *Tha Eastsidaz* also known as

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
P.O. BOX 7033
TARZANA, CALIFORNIA 1357-7033

13

*Snoop Dogg Presents Tha Eastsidaz,* released on or about February 1, 2000; and *Duces n' Trays, The Old Fashioned Way* and *Duces n' Trays, The Old Fashioned Way [Clean],* released on or about July 31, 2001.

y.   UNIVERSAL:  The song *"Just a Baby Boy"* on *Baby Boy [Clean]* and *Baby Boy,* on or about June 19, 2001; and one or more songs on the albums *Waterbed Hev,* released on or about April 22, 1997, and *Superhero,* released on or about August 28, 2001.

z.   WARNER BROS.:  One or more songs on the album *Thin Line Between Love and Hate,* released on or about February 13, 1996.

35.   Plaintiffs are informed and believe that BATTLECAT also contracted to produce or produced musical recordings with DOE defendants 1 through 100.  Despite the requirements of their contract, defendant similarly failed to make any payments to plaintiffs for this work as required by their Exclusive Producer Agreement.  In addition, plaintiffs are informed and believe that JOHN T. McCLAIN, JR., acting as an officer, director and managing agent of DreamWorks Music Publishing L.L.C., has recently agreed to pay or has paid BATTLECAT approximately $600,000 as consideration for additional production, writing and/or artist services.  None of the funds paid to BATTLECAT has been paid to plaintiffs, as required by contract.

36.   In breach of his promises, BATTLECAT took all funds paid for each such production, composition, recording, including publishing rights and points owed to plaintiff, in violation of their Exclusive Producer Agreement.  This conduct was neither excused nor otherwise permitted pursuant to the terms of the agreement.

14

000020

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
P.O. BOX 7033
TARZANA, CALIFORNIA 91357-7033

37.    As a proximate result of the conduct of defendant, plaintiffs have sustained general and special damages, including loss of the benefits of the contract, loss of past and future profits, and loss of good will, all in an amount to be proven at trial, but which plaintiff reasonably estimates to exceed $10,000,000.

### THIRD CAUSE OF ACTION
### INTENTIONAL INTERFERENCE WITH PROSPECTIVE
### ECONOMIC ADVANTAGE

**(By Plaintiffs Against the Interscope Defendants, the Labels and Does 1-100)**

38.    Plaintiffs incorporate all prior paragraphs as though fully set forth herein.

39.    Fully aware of the contract between plaintiffs and BATTLECAT, defendants intentionally engaged in conduct which materially interfered with the performance of that contract. Specifically, each defendant knew that BATTLECAT was under exclusive contract to plaintiffs and that all funds paid for his services should have been paid to plaintiffs, for redistribution to producers, writers, artists, and others, as per their existing contractual agreements. Instead, defendants intentionally interfered with this contractual relationship by inducing, encouraging and permitting others to disregard and abandon their obligations under their contracts with plaintiffs. As a direct consequence, these individuals and entities paid none of the funds they knew were owed to plaintiffs. In short, defendants simply ignored their obligations to plaintiffs, forcing them to file this action to protect their contractual rights.

40.    As a proximate result of the conduct of defendants, and each of them, plaintiffs have sustained general and special damages, including but not limited to emotional distress (LYDIA HARRIS only), loss of the benefits of their contracts, lost profits, loss of earnings, loss of goodwill, and actual harm to plaintiffs' reputations, all in an amount to be proven at trial.

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
P.O. BOX 7033
TARZANA, CALIFORNIA 91357-7033

15

**000021**

41. By engaging in this conduct, the INTERSCOPE DEFENDANTS, and each of them, acted intentionally, maliciously, oppressively and with willful and conscious disregard for the rights of plaintiffs. IOVINE and McCLAIN were and/or are officers, directors, and/or managing agents of INTERSCOPE, which independently authorized and ratified their conduct herein. Punitive damages should be assessed against the INTERSCOPE DEFENDANTS and each of them for the sake of example and to punish these defendants.

## FOURTH CAUSE OF ACTION
## FRAUD AND CONSPIRACY TO DEFRAUD
### (By Plaintiffs Against the Kenner, Knight and
### Interscope Defendants, and Does 1-100)

42. Plaintiffs incorporate all prior paragraphs as though fully set forth herein.

43. Commencing in or about 1989, the KENNER and KNIGHT defendants began enlisting the aid of industry executives and entities for the purpose of furthering their plan to exclude plaintiff LYDIA HARRIS from involvement with and enjoyment of the profits from DEATH ROW RECORDS and its successors and related entities. Using their increasing cachet in the industry, they obtained the assistance of significant executives who would agree to join in their plan. These executives and their companies were motivated to participate in this improper scheme in order to obtain a lucrative position vis-a-vis the emerging hip hop industry centered around the newly created entity known as DEATH ROW RECORDS.

44. These executives and their labels agreed to participate by coordinating with the KENNER and KNIGHT defendants to confuse plaintiffs and divert the assets flowing to DEATH ROW RECORDS, divert plaintiffs' energies and attention away from this deception, and induce plaintiffs to enter into contractual relationships which superficially appeared to provide plaintiffs with substantial rights and interests. The INTERSCOPE defendants, among

16

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
P.O. BOX 7033
TARZANA, CALIFORNIA 91357-7033

320243.1    *COMPLAINT FOR INTENTIONAL INTERFERENCE, BREACH OF CONTRACT, ETC.*

000022

1   others, participated in this conspiracy by entering into lengthy, intentionally confusing and

2   illusory contracts with plaintiffs. These contracts were drafted in conspiracy with plaintiffs'

3   own counsel, the KENNER defendants.

4

5        45.   These contracts required plaintiffs to perform countless tasks and fulfill substantial

6   obligations. At the same time, they imposed no meaningful or enforceable obligations upon the

7   other contracting parties. However, because these contracts were lengthy and/or unintelligible

8   to all but experienced attorneys, plaintiffs were unaware of the illusory nature of the promises

9   contained therein and the absence of meaningful remedies for plaintiffs in the event (and

10   eventuality) that such contracts were later abandoned, ignored or simply dishonored.

11

12        46.   The KENNER defendants intended that plaintiffs would rely upon and follow

13   their advice concerning the entities with whom plaintiffs should contract and the terms of those

14   contracts. However, the KENNER defendants knew that the advice they were giving plaintiffs

15   was adverse and harmful to plaintiffs' interests, leaving them with monumental obligations and

16   duties without any true recourse against breaches by the other contracting parties.

17

18        47.   The KENNER and KNIGHT defendants knew that these contracts would defraud

19   plaintiffs and had the desired effect of (1) diverting LYDIA HARRIS from her personal

20   involvement in DEATH ROW RECORDS, (2) yielding no benefits, profits or value for

21   plaintiffs, and thus, (3) effectively preventing plaintiff HARRIS from financially exerting any

22   meaningful claim when she eventually discovered that she had been defrauded out of her

23   interests in DEATH ROW RECORDS.

24

25        48.   Plaintiffs are informed and believe that the KENNER and KNIGHT defendants

26   persuaded the INTERSCOPE defendants to participate in their conspiracy. Plaintiffs are

27   informed and believe that the KENNER and KNIGHT defendants initiated or participated in

28   this conspiracy in their individual capacities and as officers, directors or managing agents of

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
P.O. BOX 7033
TARZANA, CALIFORNIA 91357-7033

17

000023

1 DEATH ROW RECORDS.

2

3    49.    Plaintiffs are further informed and believe that the KENNER defendants

4 participated in drafting and approving the onerous and illusory contract with defendant

5 INTERSCOPE, and with respect to her interests in DEATH ROW RECORDS. At no time did

6 defendants have any intention of fulfilling their obligations under these agreements. Rather,

7 they intended to immediately "bury" and divert plaintiffs by altering the legal status of DEATH

8 ROW RECORDS and by assigning the INTERSCOPE-LIFESTYLE contract to a record label

9 with little or no experience in rap music, which would never release the masters for public sale.

10 The impact upon plaintiffs was known to be substantial by virtue of the tremendous time, energy

11 and expense which would be required to develop the master recordings, which the defendants

12 knew would never be released for sale. As a result, plaintiffs would receive no benefit from

13 their efforts and suffer substantial distress and financial damage.

14

15    50.    Plaintiff LYDIA HARRIS, acting on her own behalf and on behalf of her solely-

16 owned corporation, LIFESTYLE RECORDS, reasonably believed that DAVID KENNER was

17 acting as her attorney, partner, fiduciary, and confidante. As such, she reasonably and

18 justifiably relied heavily upon his advice. Plaintiffs also reasonably relied upon the affirmative

19 representations and significant industry reputations of the KNIGHT and INTERSCOPE

20 defendants when they promised to work with her in good faith and to fulfill their promises and

21 contractual obligations. Plaintiffs were unaware of the falsity of or ulterior motives underlying

22 the advice, representations and promises made by these defendants.

23

24    51.    As a proximate result of the conduct of defendants, and each of them, plaintiffs

25 have sustained general and special damages, including but not limited to emotional distress

26 (LYDIA HARRIS only), loss of the benefits of their contracts, lost profits, loss of earnings, loss

27 of goodwill, and actual harm to plaintiffs' reputations, all in an amount to be proven at trial.

28

<div style="text-align:center">18</div>

320243.1    *COMPLAINT FOR INTENTIONAL INTERFERENCE, BREACH OF CONTRACT, ETC.*

000024

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
P.O. BOX 7033
TARZANA, CALIFORNIA 91357-7033

1      52.   By engaging in this conduct, defendants, and each of them, acted intentionally,

2  maliciously, oppressively and with willful and conscious disregard for the rights of plaintiffs.

3  IOVINE and McCLAIN were officers, directors, and/or managing agents of defendant

4  INTERSCOPE, which independently authorized and ratified their conduct herein. KENNER

5  was an officer, director, trustee or managing agent of DAVID E. KENNER, PROFESSIONAL

6  LAW CORPORATION, DAVID E. KENNER, A PROFESSIONAL CORPORATION,

7  DAVID E. KENNER TRUST and DEATH ROW RECORDS, which independently authorized

8  and ratified his conduct herein. KNIGHT was an officer, director or managing agent of

9  DEATH ROW RECORDS, which independently authorized and ratified his conduct herein.

10  Punitive damages should be assessed against these defendants and each of them for the sake of

11  example and to punish these defendants, in an amount to be proven at the time of trial.

12

13                     **FIFTH CAUSE OF ACTION**

14                     **FOR DEFAMATION**

15        (By Plaintiffs Against the Knight Defendants and Does 1-100)

16

17      53.   Plaintiff incorporates all prior paragraphs as though fully set forth herein.

18

19      54.   SUGE KNIGHT, acting in his individual capacity and on behalf of DEATH ROW

20  RECORDS and THA ROW, INC., intentionally defamed plaintiff LYDIA HARRIS by making

21  false and unprivileged publications, disseminated both orally and in writing.

22

23      55.   SUGE KNIGHT represented that plaintiff was and is lying about her professional

24  accomplishments; lying about her involvement in the formation and history of Death Row

25  Records; a false FBI and/or government informant, using her position and contacts with new

26  rap artists, producers and writers to falsely accuse them of crimes to get them arrested and

27  convicted of crimes they did not commit; lying about her marital status; marital infidelity; a

28  willing participant in repeated and wanton sexual intercourse with numerous men at DEATH

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5847 RESEDA BOULEVARD, SUITE 200
P.O. BOX 7033
TARZANA, CALIFORNIA 91357-7033

19

000025

1  ROW RECORDS studio, on the same day, all in order to convince them to give her a recording

2  contract.

3

4      56.    Between approximately March 2001 and February 2002, the following false and

5  unprivileged publications were made about plaintiff by the KNIGHT defendants and were made

6  available for world-wide viewing on the internet site of BET.com:

7

8      "[By BET.com] I'm sure you've heard about this new documentary film,

9      'Welcome to Death Row', which claims to tell the real story behind the

10     rise and fall of your record label [Death Row Records].

11

12     [by Knight] I haven't seen it, but I heard a bunch of conversations about

13     the character whose putting it out {laughs}.

14

15     [By BET.com] What do you think about it?

16

17     [By Knight]  As for the film, that movie . . . they know they're lying. .

18     . . I don't like rats and I'm not going to participate in that. Realistically,

19     can't nobody make a film about Death Row but Suge Knight. One of the

20     things, you don't have to take my word that they're lying. You can take

21     the grand jury and the government's word that they're lying. . . . As

22     far as the Mike guy . . . , this guy has told on almost every drug dealer,

23     lied on them, Columbians and anybody else just to try to get freedom.

24     Then he turned around and lied about Death Row to try to gain his

25     freedom . . . But most of all, [Harry O] is a rat, his wife's a rat. They go

26     around setting people up and think the more they tell on them, that

27     that will get him home. . . . As for anybody saying they had anything

28     to do with Death Row, nobody ever gave me a penny. . . . And for

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
P.O. BOX 7033
TARZANA, CALIFORNIA 91357-7033

20

000026

1    people to go around and say they had something to do with Death

2    Row or they helped start Death Row? If that's the case, start another

3    label. If it was so easy and if it was so true. When you get desperate

4    people looking for attention and trying to make some money, they'll

5    say anything. When I first found out about [Michael and Lydia Harris],

6    they said they owned Rap-a-Lot Records. The whole concept about it

7    is, if you look at it, don't take just me and Death Row. These are the

8    same people who say they started Rap-A-Lot. These are same people

9    who say they paid for Denzel Washington and made him the actor he

10   is today and took care of him and his wife with drug money.

11

12   [By BET.com] The Michael Harris and Denzel Washington connection

13   is mentioned in the film.

14

15   [By Knight] Yea. {laughs} ... If it's Suge Knight and Death Row, they

16   say, 'Okay, it's a big deal.' and we have to prove that they were lying. .

17   . . If a person turns around and say, 'Well, I did this for Denzel

18   Washington with drug money, I did this with Rap-a-Lot with drug money,

19   I did this with Death Row with drug money and I'm doing this for my

20   wife, my family, with drug money', it doesn't take a rocket scientist to

21   figure it out. If they admitting they did all this stuff with drug money,

22   why hasn't the government taken their shit? It's because they're just

23   informants and they're just lying." (Parentheses in original.) (Emphasis

24   added.)

25
26   57.    On or about January 28, 2002, the KNIGHT defendants also made the following

27   false and unprivileged publications about plaintiff during a widely disseminated broadcast radio

28   show on WBLS Radio Station 107.5 FM in New York City, New York. Plaintiff is informed

21

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 300
TARZANA, CALIFORNIA #1357-7035

1    and believes that the entirety of the broadcast was aired at least twice.

2

3    58.    Specifically, Mr. Knight said:

4

5    Knight:  So, we like, what would you do to sing.  She said anything.

6    Interviewer:  Uh oh.

7    Knight:  So, we all look, anything.  Right.  She said anything.  So, you

8    know, like most, all my home boys.  You got to realize one thing.  Most

9    of them just got out of the penitentiary.

10    Interviewer:  Yes.

11    Knight:  You know, so, doing 5 years, 7 years, 8 years, 10 years, no

12    woman.

13    Interviewer:  Commit the rudest of acts.

14                                    * * *

15    Knight:  All right.  So, anyway, we was like, she was like.  We're like

16    anything, she like anything.  So, what end up happening was, right.

17    What happened.  She was willing to do anything.  So, before you knew

18    it, you are looking at like from anywhere from 12 guys to 15 guys in

19    the studio.

20    Interviewer:  Okay.

21    Knight:  Every person had their way with her.

22    Interviewer:  Shut up, Suge, shut up.

23    Knight:  No, every person had their way with her, right.  So, all, any

24    of you could think of, right.  So, then after all that finished - - she came

25    and she was hollering at me and she was like -- I sing, you know, some

26    of these guys - I gone and did everybody you want, some guys three

27    times, some guys four.  I lost count.  So, she like, what's up with this

28    record.  I said, you know, you still can't sing to me.  She said, well, you

                                    22

320243.1    COMPLAINT FOR INTENTIONAL INTERFERENCE, BREACH OF CONTRACT, ETC.

000028

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
P.O. BOX 7033
TARZANA, CALIFORNIA #1357-7023

1  know, I'm married.

2  Interviewer:  What.

3  Knight:  So, you know, I was, so I was like, damn, you're married like

4  that. She said like, yeah.

5  Interviewer:  Ok, ok

6  Knight:  Then she been around.  She said, well look, we own Rap A

7  Lot, we got the Ghetto Boys, we got Scar Face, we got Willy B.  You

8  know, she wanted to name them.

9  Interviewer:  Right.

10  Knight;  We own Denzel Washington.  I said well, damn.  If your

11  husband owns Rap A Lot, that mean you own Rap A Lot.

12  Interviewer:  Right.

13  Knight:  That mean you trying to get down.

                                    * * * *

15  Knight:  . . . I'm a business man.  So, she was like, okay, I'm going to talk

16  to him.  So, she talk to him and then he wanted to holler.  So, I was like,

17  okay, look.  This was – I went – I said check this out.  If you say you got

18  Rap A Lot, you say you got the Ghetto Boys, give them to me.  She

19  said you can have them.

                                    * * * *

21  Knight:  Lydia goes around, pose as wife and set people up, trying to

22  knock off time for him to come home.  So, she go, she goes around and

23  act like she is still doing something.

24  Interviewer:  Got you, got you.

25  Knight:  And then she goes and set him up, because she's a rat. . . .  So,
26  I call the meeting with everybody.  And I said look, Lydia, that's a rat.
27  She a rat.  Her husband a rat.  Pay no Ghetto Boys and Rap A Lot and
28  Denzel Washington is all lies. . . .  they go around and saying doing

                                    23

000029

1    something illegal to be in business and help businesses, why do we

2    mess with these people, why don't go and say, okay, how you guys, now

3    let me take yours. . . . Because they are informers, they're snitches. .

4    . . Man, that woman works for the FBI, the government. . . . I mean

5    that's some powerful thing for her to be an informer for the

6    government, a stray snitch." (Emphasis added.)

7

8        59.    These publications are unambiguous and libelous on their face.    The

9    representations and actions which defendants have attributed to plaintiff are all untrue. They

10   have exposed plaintiff to embarrassment, contempt, ridicule and disgrace, both personally and

11   professionally.

12

13       60.    Defendants have imputed to plaintiff qualities, including but not limited to, low

14   morality, untrustworthiness, dishonesty and incompetence. Each false statement had a natural

15   tendency to injure her personally and professionally, and which, by natural consequences, have

16   caused actual damage.  As a result of these false, unprivileged and defamatory statements,

17   defendants have caused LYDIA HARRIS personally and the businesses with which she is

18   involved, including but not limited to NEW IMAGE MEDIA PRODUCTIONS, to be shunned

19   or avoided by members of the entertainment industry.

20

21       61.    These publications were malicious and motivated by personal and professional

22   ill will and greed.  Defendant's intentions, both personally and on behalf of DEATH ROW

23   RECORDS and THA ROW, INC., were designed to debase and discredit plaintiffs personally

24   and professionally in the eyes of the new and developing hip hop artists, producers and writers.

25

26       62.    Plaintiff timely and properly demanded that the owner, operator and general

27   manager of WBLS Radio Station 107.5 FM retract each and every one of the slanderous

28   statements made by SUGE KNIGHT. Plaintiff is informed and believes that no retraction has

24

*2 of 11*

*06 - 11205*

1    been issued.

2

3    63.    As a proximate result of the conduct of defendants, and each of them, plaintiffs

4    have  sustained general and special damages, including but not limited to emotional distress

5    (LYDIA HARRIS only), loss of the benefits of their contracts, lost profits, loss of earnings, loss

6    of goodwill, and actual harm to plaintiffs' reputations, all in an amount to be proven at trial.

7

8    64.    By engaging in this conduct, the KNIGHT defendants, and each of them, acted

9    intentionally, maliciously, oppressively and with willful and conscious disregard for the rights

10    of plaintiffs. SUGE KNIGHT was and is an officer, director or managing agent of DEATH

11    ROW RECORDS and THA ROW, INC., which independently authorized and ratified his

12    conduct herein. Punitive damages should be assessed against the KNIGHT defendants and each

13    of them for the sake of example and to punish these defendants in an amount to be proven at

14    trial.

15

16    **SIXTH CAUSE OF ACTION**

17    **FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

18    **(By Lydia Harris Against the Kenner, Knight and**

19    **Interscope Defendants and Does 1-100)**

20

21    65.    Plaintiffs incorporate all prior paragraphs as though fully set forth herein.

22

23    66.    The KENNER, KNIGHT and INTERSCOPE defendants and Does 1-100 engaged

24    in all of the above-described outrageous and unprivileged conduct with the intention to cause

25    plaintiff LYDIA HARRIS to suffer severe emotional distress.

26

27    67.    As a proximate result of the conduct of defendants, and each of them, as alleged

28    above, plaintiff suffered severe emotional distress and sustained general and special damages,

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 350
P.O. BOX 7033
TARZANA, CALIFORNIA 91357-7033

25

320243.1    *COMPLAINT FOR INTENTIONAL INTERFERENCE, BREACH OF CONTRACT, ETC.*

**000031**

1   including but not limited to severe emotional distress, loss of the benefits of her contracts, lost

2   profits, loss of earnings, loss of goodwill, and actual harm to plaintiff's reputation, all in an

3   amount to be proven at trial.

4

5       68.   By engaging in this conduct, the KENNER, KNIGHT and INTERSCOPE

6   defendants, and each of them, acted intentionally, maliciously, oppressively and with willful and

7   conscious disregard for the rights of plaintiffs. IOVINE and McCLAIN are or were officers,

8   directors, and/or managing agents of defendant INTERSCOPE, which independently authorized

9   and ratified their conduct herein. KENNER was and is an officer, director, trustee, or managing

10  agent of DAVID E. KENNER, PROFESSIONAL LAW CORPORATION, DAVID E.

11  KENNER, A PROFESSIONAL CORPORATION, DAVID E. KENNER TRUST and DEATH

12  ROW RECORDS, which independently authorized and ratified his conduct herein. KNIGHT

13  was and is an officer, director or managing agent of DEATH ROW RECORDS, which

14  independently authorized and ratified his conduct herein. Punitive damages should be assessed

15  against these defendants and each of them for the sake of example and to punish the defendants

16  in an amount to be proven at trial.

17

18                          **SEVENTH CAUSE OF ACTION**

19                       **FOR PROFESSIONAL MALPRACTICE**

20                  **(By Plaintiffs Lydia Harris and Lifestyle Records**

21                        **Against the Kenner Defendants)**

22

23      69.   Plaintiffs incorporate all prior paragraphs as though fully set forth herein.

24

25      70.   The KENNER defendants, acting as plaintiffs' partner, confidant and counsel,

26  assisted LYDIA HARRIS in the formation of DEATH ROW RECORDS, then continuously

27  represented her with respect to a series of claims, contracts and business dealings as set forth

28  herein. As plaintiffs' counsel, the KENNER defendants owed plaintiffs the highest degree of

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
P.O. BOX 7033
TARZANA, CALIFORNIA 91357-7033

320243.1      *COMPLAINT FOR INTENTIONAL INTERFERENCE, BREACH OF CONTRACT, ETC.*

000032

1  fiduciary duty and care. As her partner and confidant, the KENNER defendants intentionally

2  cultivated a similarly high degree of trust and confidence. Plaintiffs relied on their relationship

3  with the KENNER defendants to their detriment.

4

5  71.  The KENNER defendants continuously breached their fiduciary duties to

6  plaintiffs, and abused the trust and confidence that plaintiffs placed in them. They concealed

7  their conflicts and motives from plaintiffs, including  the fact that they did not intend to

8  represent plaintiffs' interests, but instead intended to harm plaintiffs and advance their own

9  adverse interests. As a result, defendants consistently refused and failed to protect her interests

10  where required.

11

12  72.  From the outset of their legal representation of plaintiffs, the KENNER defendants

13  operated below the standard of care required of an attorney in the community. Such acts

14  included defendants' refusals or failures to properly document and protect the legal ownership

15  interest of plaintiff HARRIS in the newly formed DEATH ROW RECORDS entities.

16

17  73.  LYDIA HARRIS continues to believe she is entitled to one half of the profits and

18  ownership of the DEATH ROW entities. Plaintiff has only recently been advised that there is

19  a serious omission in the existing documentation which the KENNER defendants should have

20  prepared and maintained to legally document plaintiff's involvement and ownership interests.

21

22  74.  In the absence of full disclosure and awareness of these issues, plaintiffs were

23  incapable of giving free or intelligent consent to defendants' conduct and pursuit of adverse

24  positions and conflicting interests. The KENNER defendants concealed all of their actions

25  intended to injure plaintiffs. Instead, they assured plaintiffs that they were doing all that was

26  within their power to assist plaintiffs. But, at all times, the KENNER defendants were using

27  confidential information obtained during their attorney-client relationship to harm plaintiffs'

28  interests and advance their own.

<div style="text-align:center">27</div>

320243.1    *COMPLAINT FOR INTENTIONAL INTERFERENCE, BREACH OF CONTRACT, ETC.*

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
P.O. BOX 7033
TARZANA, CALIFORNIA 91357-7033

000033

75.    At all times material, defendants DAVID KENNER and SUGE KNIGHT were officers, directors or managing agents of DEATH ROW RECORDS. DEATH ROW RECORDS acted as a secret competitor of LIFESTYLE RECORDS in the music industry. In an effort to advance conflicting interests in DEATH ROW RECORDS, the KENNER defendants persuaded plaintiffs to enter into the above-referenced contract with INTERSCOPE involving the work of BATTLECAT and Dana Dane. In doing so, the KENNER defendants purported to act in their capacity as attorney for plaintiffs. In reality, this conduct was part of a conspiracy with the KNIGHT and INTERSCOPE defendants to defraud plaintiffs.

76.    The KENNER defendants thus conspired with the KNIGHT and INTERSCOPE defendants to draft the INTERSCOPE contract so that numerous duties were imposed only upon plaintiffs concerning their duty to produce the subject masters. INTERSCOPE would receive sole ownership and control of the masters if plaintiffs could live up to their obligations. Yet, pursuant to their contract, INTERSCOPE had no duty to release the albums once produced. Plaintiffs were thus left with no effective remedy to compel their release or to otherwise obtain the masters to be released by other distributors.

77.    The KENNER defendants drafted and/or affirmatively approved these provisions, which were intended to insure that, when INTERSCOPE refused to release the albums, plaintiffs could not require them to do so. Thus, plaintiffs would never receive royalties, goodwill, or otherwise profit from any album developed under this agreement. Such acts were both intentional and below the standard of care for any attorney in such a situation.

78.    Upon execution of the contract between plaintiffs and INTERSCOPE, the KENNER defendants and others then immediately arranged and convinced plaintiffs to agree to the assignment by INTERSCOPE of this contract to Maverick Records. As a result of that assignment, plaintiffs then owed Maverick the duties imposed upon plaintiffs, with the same, intentionally one-sided terms drafted by KENNER with INTERSCOPE. Maverick thus

*WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.*
*5567 RESEDA BOULEVARD, SUITE 330*
*P.O. BOX 7033*
*TARZANA, CALIFORNIA 91357-7033*

28

1  received such benefits, with essentially no obligation to release or distribute anything produced
2  by plaintiffs and no risk if they chose not to do so.

3

4      79.    The KENNER defendants told plaintiffs that, as a condition of entering into this
5  agreement with Maverick, plaintiffs had to abandon a lucrative distribution agreement they had
6  already entered into with another label and distributor, Relativity and R.E.D./Sony. Plaintiffs
7  are informed and believe that Relativity and R.E.D./Sony was interested in pursuing additional
8  distribution agreements with plaintiffs. However, relying upon the intentionally misleading and
9  harmful advice of the KENNER defendants, plaintiffs abandoned their relationship with
10  Relativity and R.E.D./Sony in order to enter into the assignment the KENNER defendants and
11  others arranged with Maverick. Maverick has now refused to distribute the BATTLECAT
12  album, to allow its release by any other distributor, or to otherwise return the masters produced
13  by plaintiffs to them. Plaintiffs have no contractual recourse, due directly to the negligent or
14  intentional omissions of the KENNER defendants.

15

16      80.    Plaintiffs placed full confidence and reliance in the KENNER defendants until on
17  or about February 2002. Only then did plaintiffs begin to discover some of the true facts
18  concerning the long-standing disloyalty and breaches by the KENNER defendants. Only at that
19  time, while current counsel for plaintiffs were investigating potential claims against others, were
20  the facts giving rise to the liability of the KENNER defendants discovered. Until this discovery
21  was disclosed to plaintiff, LYDIA HARRIS, she reasonably had been led to believe that DAVID
22  KENNER had great affection and professional loyalty to her. For those reasons, she did not
23  believe he would harm her or her business relationships. Defendants relied on that deception
24  to deprive plaintiff HARRIS of her rights to DEATH ROW RECORDS and pursuant to the
25  INTERSCOPE contract described herein.
26

27      81.    As a proximate result of the conduct of defendants, and each of them, plaintiffs
28  have sustained general and special damages, including but not limited to emotional distress

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 200
P.O. BOX 7033
TARZANA, CALIFORNIA 91357-7033

29

320243.1        COMPLAINT FOR INTENTIONAL INTERFERENCE, BREACH OF CONTRACT, ETC.

000035

## NINTH CAUSE OF ACTION

## FOR ACCOUNTING

### (By Plaintiffs Against Battlecat, the Interscope Defendants, the Labels and Does 1-100)

85.   Plaintiffs incorporate all prior paragraphs as though fully set forth herein.

86.   The amount of money contractually due from each such defendant is presently unknown to plaintiffs and cannot be ascertained without an accounting of the amounts paid by the INTERSCOPE defendants, the LABELS, and Does 1-100, for the services of BATTLECAT as a producer, writer or artist.

WHEREFORE, plaintiffs pray for the following relief:

1.   For general and special damages according to proof;

2.   For restitution and disgorgement of profits according to proof;

3.   For punitive damages pursuant to California Civil Code § 3294 et seq.;

4.   For accountings;

5.   For payment to plaintiffs of the amounts due from defendants as a result of each accounting;

6.   For costs of suit; and

7.   For such further relief which is just and appropriate.

DATED: February 26, 2002     WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.

By: _____

DAVID B. CASSELMAN
Attorneys for Plaintiffs
LYDIA HARRIS, LIFESTYLE RECORDS, INC., AND
NEW IMAGE MEDIA CORPORATION

31

#320143 v1 - Combined.Line.For.Intentional Interference, Breach of Contract, etc

000037

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
P.O. BOX 7033
TARZANA, CALIFORNIA 91357-7033

LIFESTYLE RECORDS
c/o David E. Kenner, Esq.
Fifth Floor
16000 Ventura Boulevard
Encino, CA 91436


September 11, 1993


Mr. Kevin Gilliam
p/k/a "Battle Cat"


Re:    Exclusive Producer Agreement

Dear Mr. Gilliam:

The following shall constitute your and our agreement with respect to your producing for us, during the Term hereof, master recordings ("Masters") embodying performances of various artists (each such artist being referred to as "Artist") and rendering such other services as may be related thereto:

1.    TERM

The term hereof (the "Term") shall commence on the date hereof and shall continue for a period of one year. You hereby grant to us (4) irrevocable options to extend the Term for periods of one (1) year each. Each such option shall be deemed automatically exercised by us unless we give you written notice to the contrary prior to the date that the then current period of the Term would otherwise expire.

2.    RECORDING OBLIGATION

During each one-year period of the Term, you shall record a for us, as a minimum, four (4) L.P. Masters. We shall have the right to require you to record additional Masters in each one-year period at our discretion.

3.    RECORDING PROCEDURES AND BUDGET

LIF/EXPROD/BATTLECA
DEK/9.11.93                              1

EXH A    000038

(a)    The Masters recorded by you hereunder shall be recorded in a recording studio selected or approved by us. Each Master hereunder shall consist of newly recorded studio performances of material selected or approved by us. Each Master shall be subject to our approval as commercially and technically satisfactory. Upon our request, you shall re-record any selection until a commercially and technically satisfactory Master shall have been obtained.

(b)    We shall determine the recording budget for each Master to be produced hereunder after consultation with you. We shall pay all recording costs up to the approved budget. All recording costs paid by us shall be deemed advances against and shall be recouped from all monies becoming payable to the Artist.

4.    COPYRIGHT AND OWNERSHIP OF MASTERS

All Masters recorded by you during the Term hereof shall be entirely our property and we shall be the owner of all rights of copyright in the Masters. Such Masters shall be deemed "works made for hire" under the U.S. Copyright Act and all other copyright laws throughout the world. We shall have the sole, exclusive, worldwide and perpetual right to use the Masters in any manner we see fit.

5.    MECHANICAL ROYALTIES

You hereby grant us and/or our designees mechanical licenses for the United States for all musical compositions which you have written (directly or indirectly) on in which you own the copyright (in whole or in part) and which are produced by you hereunder ("Controlled Compositions") at the rate of 75% of the then-current minimum statutory rate (without regard to playing time) set forth in the Copyright Act of the United States. With respect to the aforesaid mechanical licenses issued to us for such Controlled Compositions, we shall be required to pay mechanical royalties only on Records for which Record royalties are payable to you hereunder, in the same manner and at the same times as such Record royalties are payable. If the Distribution Agreement referred to in Paragraph 7 below shall contain different or additional provisions concerning "Controlled Compositions", then this paragraph shall automatically be deemed amended to comply with the terms of such Distribution Agreement.

6.    ADVANCES

We shall pay to you the following sums which shall be advances against you and recoupable by us out of all royalties becoming payable to you pursuant to this or any other agreement between you and us:

(a)    Two Thousand Dollars ($2,000) upon the execution of this agreement; and

LIP/EX/PROD/BATTLE.CA
DEK/9.11.93

2

000039

(b)    Fifty percent (50%) of the net advances received by us from distributors on account of your services covering the Masters hereunder.

7.    ROYALTIES

Conditioned upon your full and faithful performance of each and all of the terms hereof, we shall pay you the following royalties in respect of records subject to this Agreement:

(a)    A royalty of fifty percent of the net royalties received by us from distributors on account of your services covering the Masters hereunder ("Basic Royalty Rate").

(b)    The aforesaid royalties shall be paid and computed in the same manner as royalties are paid and computed to the Artist pursuant to the terms of the Agreement between us and Artist and, accordingly, shall be subject to all reductions, deductions, and category variations set forth therein with respect to the exploitation of the Masters, including, but not limited to, reductions and deductions for mid-priced, budget and other reduced price sales, PX and other governmental and institutional sales, mail order, premiums and other special sales, multiple albums, so-called compact discs, singles, tape sales, licensee sales, flat fee exploitations, packaging charges, taxes, records distributed as "free" or "no charge" records (whether for promotional purposes or for resale), discounts and reserves.

(c)    We shall have the right to license the Masters to third parties for record and/or all other types of use on a flat-fee basis.  We shall credit your royalty account with twenty percent (20%) of the "net amount" received by us under each such license.  The term "net amount" shall mean the gross amount less the amounts payable to any other individual producer(s) of the Masters.

(d)    As to Masters produced by you together with another producer, the royalty rate otherwise payable hereunder with respect to sales of any record derived from any such Master and the recording costs and/or advances otherwise payable by us hereunder with respect to any such Master shall be prorated by multiplying such royalty rate or recording costs and/or advances by a fraction, the numerator of which is "1" and the denominator of which is the total number of producers who performed services in connection with such Master.

8.    ACCOUNTING STATEMENTS

(a)    Statements together with payments of accrued royalties, if any, earned by you during the preceding semi-annual period, shall be sent by us to you on or before March 31 each year for the six (6) month period ending December 31 of the previous year, and on or before September 30 of each year for the six (6) month period ending the preceding June 30. We shall have the right to retain a reasonable reserve in your royalty account against subsequent charges, credits, or returns. but in no event more than 22½%.

LEE/EXPROD/BATTLECA
DEK/9.11.93

3

000040

(b)    No royalties shall be payable to you on any records sold hereunder unless we have received payment for such record or have received a credit against a previous advance.

(c)    You shall be deemed to have consented to all royalty statements and other accountings rendered by us hereunder and each such royalty statement or other accounting shall be final and binding, and shall not be subject to any objection for any reason whatsoever unless specific objection in writing, stating the basis thereof, is given by you to us within two (2) years after the date rendered.

(d)    We shall maintain books of accounts concerning the sale of records hereunder. You or your attorney or a certified public accountant, in your behalf, may, at your sole expense, examine our said books relating to the sale of records hereunder during our normal business hours, upon reasonable written notice and only once during any year. Our books of accounts relating to any particular royalty statement may be examined as aforesaid only once per statement and within one (1) year after the date rendered.

9.    YOUR WARRANTIES AND REPRESENTATIONS

You hereby warrant and represent that:

(a)    You are under no disability, restriction, or prohibition, whether contractual or otherwise, with respect to your right to execute this Agreement, to grant the rights granted by you to us hereunder, and to perform each and every term and provision hereof.

(b)    You hereby grant to us the right to use and to allow others to use your name and any professional name adopted by you, as well as your biography and all likenesses for phonograph record and related purposes.

(c)    All Controlled Compositions together with all other selections embodied in the Masters which are furnished or selected by you as well as any other materials, ideas, or other properties furnished or selected by you and contained in or used in connection with the master, the packaging therefor, or the advertising thereof, will not violate or infringe upon any common law or statutory rights or any person, firm or corporation.

(e)    You understand that you have the right to seek the advice of independent counsel concerning your rights, the provisions hereof, and the advisability of executing this agreement. Further, you represent and warrant that you have been advised by us, and given me the opportunity, to seek the advice of independent counsel, and acknowledge that you are executing this agreement voluntarily after consultation with independent counsel or after intentionally deciding not to seek advice of independent counsel.

10.    EXCLUSIVITY: RE-RECORDING RESTRICTION

LSV/EXPROD/BATTLECA
DEK/9.11.95

4

000041

(a)    "Masters" and "Master Recordings" -- every recording of sound, whether or not coupled with the visual image, by any method and on any substance or material, whether now or hereafter known, which is used or useful in the recording, production and/or manufacture of phonograph records;

(b)    "Records" and "Phonograph Records" -- all forms of reproduction of masters now or hereafter known, whether in compact disc, vinyl disc, tape form or any other form, manufactured or distributed primarily for home use, school use, juke box use, or use in meas of transportation, embodying (i) sound alone or (ii) sound coupled with visual images, e.g., "sight and sound" devices;

(c)    "Recording Costs" -- wages, fees, advances and payments of any nature to or in respect of all musicians, vocalists, conductors, arrangers, orchestrators, engineers, producers, copyists, etc.; payments to a trustee or fund based on wages to the extent required by any agreement between us and any labor organization or trustee; all studio, tape, editing, mixing, remixing, mastering and engineering costs; all costs of trade, per diems, rehearsal halls, non-studio facilities and equipment, dubdown, rental and transportation of instruments; all costs occasioned by the cancellation of any scheduled recording session; and all other costs and expenses incurred in producing the master recordings hereunder which are then customarily recognized as recording costs in the recording industry.

14.    FINANCIAL GUARANTIES.

(a)    Notwithstanding anything to the contrary contained in this Agreement, we hereby guarantees payment to you of not less than $6,000.00 for each full twelve (12) month period hereunder. The balance, if any, of each such payment (i.e., to the extent such guaranteed payment is less than the aggregate of all other monies paid to you or on your behalf in the applicable annual period) shall be paid by us prior to the end of the of each consecutive twelve (12) month period during the term of this agreement. All payments made pursuant to this paragraph 14 shall constitute a prepayment in advance against all monies payable to you under this agreement. In the event you do not receive said sum, you shall give written notice to us of the amount outstanding and we shall have thirty (30) days to cure said failure to pay.

(b)    You acknowledges and confirms that the guaranteed payment set forth in paragraph 14(a) hereof is intended to preserve our right to injunctive relief to prevent the breach of this agreement by you and accordingly it is the parties' mutual intention that said guarantee be intended and construed in such manner as to comply with the provisions of California Code of Civil Procedure Section 3423(5th) and California Code of Civil Procedure Section 526 confirming the availability of injunctive relief to prevent the breach of a contract in writing for the rendition or furnishing of personal services.

If the foregoing accurately reflects your understanding and agreement with us, please indicate by signing below. You and we intend to enter into a more formal agreement but until such

LIF/EXPROD/BATTLECA
DEK/9.11.93

6

000043

agreement is executed, this letter agreement shall constitute a valid and binding agreement between you and us.

Very truly yours,

Lifestyle Records

By: _Lydia Narni/Pres_

AGREED AND ACCEPTED:

_Kevin Gilliam_

Kevin Gilliam, p/k/a "Battle Cat"
Social Security No. 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

LB/EXPROD/BATTLECA
DEK/9.11.93

7

000044

New Image Media Corp.
1609 South Robertson Blvd.
Los Angeles, CA 90035

Dated:  As of November 1, 1996

Mr. Kevin Gilliam
p/k/a "Battlekat"

Dear Kevin:

Please be advised that effective as of November 1, 1996, New
Image Media Corp. ("New Image") has acquired ownership and
control of all right, title and interest in and to all contracts
entered into between you and Lifestyle Records and/or Lifestyle
Records, Inc. (collectively "Lifestyle"), and all of the results
and proceeds therefrom, including, but not limited to, all
musical compositions and master recordings created thereunder.

New Image will account to you in connection with all
receipts, income, or revenues derived therefrom and received by
New Image.

Please mark your records accordingly and direct all future
correspondence to New Image.

Please acknowledge receipt of this notification by signing
and returning the enclosed copy of this letter.

Very truly yours,

NEW IMAGE MEDIA CORP.

By:
Its:

ACCEPTED AND AGREED:

Kevin Gilliam, p/k/a "Battle Cat"
Social Security No. 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

000045

EXHIBIT 4

EXHIBIT 4

1  DAVID B. CASSELMAN (SBN 81657)
   I.DONALD WEISSMAN (SBN 67980)
2  HOWARD S. BLUM (SBN 60609)
   WASSERMAN, COMDEN, CASSELMAN & PEARSON
3  5567 Reseda Boulevard, Suite 330
   Post Office Box 7033
4  Tarzana, California 91357-7033
   Telephone:  (818) 705-6800 • (323) 872-0995
5  Facsimile:  (818) 705-8147

6  Attorneys for Plaintiffs
   LYDIA HARRIS and NEW IMAGE MEDIA
7  CORPORATION

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

MAY 19 2005

John A. Clarke, Executive Officer/Clerk

By _____, Deputy
        R. Arriaga

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                 FOR THE COUNTY OF LOS ANGELES

10

11 LYDIA HARRIS, LIFESTYLE          )   CASE NO. BC 268857
   RECORDS, INC., AND NEW IMAGE     )
12 MEDIA CORP.,                     )
                                    )   Case Assigned to:
13          Plaintiffs,             )   Judge Ronald M. Sohigian - Dept. 41
                                    )
14      v.                          )   [Complaint Filed: February 26, 2002]
                                    )
15 KEVIN GILLIAM AKA BATTLECAT;     )
   MARION H. KNIGHT AKA SUGE        )
16 KNIGHT; DEATH ROW RECORDS;       )   NOTICE OF ATTORNEY LIEN
   THA ROW, INC.; DAVID E. KENNER;  )
17 DAVID E. KENNER PROFESSIONAL     )
   LAW CORPORATION; DAVID E.        )
18 KENNER, A PROFESSIONAL           )
   CORPORATION; THE DAVID E.        )
19 KENNER TRUST; INTERSCOPE         )
   RECORDS; JIMMY IOVINE; JOHN T.   )
20 MCCLAIN, JR.; A&M RECORDS; ET    )
   AL.,                             )
21                                  )
            Defendants.             )
22 _____ )

23 TO: JUDGMENT CREDITORS LYDIA HARRIS AND NEW IMAGE MEDIA CORP.;

24 JUDGMENT DEBTORS MARION H. KNIGHT AKA SUGE KNIGHT and DEATH ROW

25 RECORDS, INC.; DERMOT DAMIAN GIVENS AND ALL INTERESTED PARTIES:

26

27     PLEASE TAKE NOTICE that the law firm of Wasserman, Comden Casselman &

28 Pearson L.L.P. (hereinafter the "Firm"), hereby gives notice of its lien equal to forty percent

402921.1                      NOTICE OF ATTORNEY LIEN

EXHIBIT 3 PAGE 79

1  (40%) of any and all gross recovery, payments, or consideration of any kind or nature paid or

2  transferred in satisfaction, in whole or in part, of the judgment entered in the above-referenced

3  action in the principal sum of $107,000,000.00, plus interest accruing at the rate of $29,315.00

4  per day. Said percentage is to be applied after priority payment to the Firm of costs expended

5  in the sum of $213,890.27

6

7      PLEASE TAKE FURTHER NOTICE that Wasserman, Comden, Casselman &

8  Pearson L.L.P. must be named as a co-payee on any instrument or WRITING satisfying, in

9  whole or in part, said judgment. Failure to include Wasserman, Comden, Casselman & Pearson

10  L.L.P. as a co-payee will subject the payor to liability for duplicate payment of the sums

11  transferred.

12

13      PLEASE TAKE FURTHER NOTICE that the judgment creditors must notify any

14  transferee or assignee of the judgment, or anyone claiming an interest in said judgment, of the

15  content and existence of this lien.

16

17  DATED: May 18, 2005                WASSERMAN, COMDEN, CASSELMAN &
18                                                      PEARSON L.L.P.

19

20                          By: _David Casselman_____
                                                    DAVID B. CASSELMAN
21                                      Attorneys for Plaintiffs
                                              LYDIA HARRIS and NEW IMAGE MEDIA
22                                              CORPORATION

23

24

25

26

27

28

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 230
P.O. BOX 7033
TARZANA, CALIFORNIA 91357-7033

---

2

402923.1                          *NOTICE OF ATTORNEY LIEN*

EXHIBIT __3__ PAGE __80__

**PROOF OF SERVICE**
*Lydia Harris v. Kevin Gilliam, et al.*
(LASC Case No. BC 268857)

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:

I am employed in the County of LOS ANGELES, STATE OF CALIFORNIA. My business address is: 5567 Reseda Boulevard, Suite 330, Post Office Box 7033, Tarzana, California 91357-7033. I am over the age of 18 years and am not a party to this action

On May 19, 2005, I served the following document(s) entitled NOTICE OF ATTORNEY LIEN on ALL INTERESTED PARTIES in this action:

SEE ATTACHED LIST

☒    BY MAIL: By placing a true co___ ____ in a sealed envelope addressed as above, and placi__ __ collect__ __n__ __ollowing ordinary business practices. I am readily 1__ __ practice of collection and processing correspon___ __er matters for mailing with the United States Postal Serv___ ___ce, pleadings and other matters are deposited with the United Sta___ __ Service with postage thereon fully prepaid in Tarzana, California, on the same day in the ordinar__ course of business. I am aware that on motion of the party served, service is p___ ___med invalid if the postal cancellation date or postage meter d___ __ more___ __lay after date of deposit for mailing in affidavit.

☐    BY OVERN___ ___ed the ___ove-referenced document(s) to be delivered to___ _____ ____ ___ ___livery to the above address(es).

☐    BY FAX: ___ __d a copy of the foregoing document(s) this date via telecopier to the facsi___ ___ers shown above.

☐    BY PERS___ __. ___RVICE: I served such envelope to be delivered by hand to the offices of the addressee(s).

☒    [State] I declar__ __der penalty of perjury under the laws of the State of California that t__ __egoing is true and correct.

☐    [Feder_] I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

May 19, 2005, at Tarzana, California.

_Leslie Adler_

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
P.O. BOX 7033
TARZANA, CALIFORNIA 91357-7033

3

3185522    *NOTICE OF ATTORNEY LIEN*

EXHIBIT 3 PAGE 81

Case 2:06-bk-11205-VZ    Doc 515-3    Filed 05/02/08    Entered 05/02/08 17:25:28    Desc
Exhibit 3    Page 42 of 62

<div style="writing-mode: vertical">WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
P.O. BOX 7033
TARZANA, CALIFORNIA 91357-7033</div>

SERVICE LIST
*Lydia Harris v. Kevin Gilliam, et al.*
(LASC Case No. BC226857)

1
2
3
4  Lydia Harris                                           New Image Media Corp.
   3910 Daphne Street                                     c/o Lydia Harris
5  Houston, TX 77021                                      3910 Daphne Street
                                                          Houston, TX 77021
6  Hayes F. Michel, Esq.                                  Alan S. Gutman, Esq.
   PROSKAUER ROSE LLP                                     LAW OFFICES OF ALAN S. GUTMAN
7  2049 Century Park East, Suite 3200                     9401 Wilshire Boulevard, Suite 575
   Los Angeles, California  90067-3206                    Beverly Hills, California  90212-2918
8  Tel.:   (310) 557-2900                                 Tel:    (310) 385-0700
   Fax:    (310) 557-2193                                 Fax:    (310) 385-0710
9  *Counsel for Kevin Gilliam, p/k/a Battlecat*           *Counsel for Sony Music Entertainment, Inc.,*
                                                          *Relativity Entertainment, Inc. fka Relativity*
10 Bart H. Williams, Esq.                                 *Records, Inc., Loud Records, LLC and*
   Megan M. LaBelle, Esq.                                 *Loud Records, Inc.*
11 MUNGER, TOLLES & OLSON, L.L.P.
   355 South Grand Avenue, 35th Floor                     Joseph Golden, Esq.
12 Los Angeles, California  90071-1560                    Law Offices of Joseph Golden
   Tel:    (213) 683-9295                                 10100 Santa Monica Boulevard, Suite 800
13 Fax:    (213) 687-3702                                 Los Angeles, CA  90067-4100
   *Counsel for Interscope Records; Jimmy Iovine,*        Tel.: (310) 772-2260
14 *John A. McClain, III, Aftermath Records and*          Fax: (310) 772-2299
   *Andre Young*                                          *Counsel for TVT Records LLC and TVT Music,*
15                                                        *Inc.*
   Neil C. Erickson, Esq.
16 Katherine J. Kuneberger, Esq.
   JEFFER,  MANGELS,  BUTLER  &                           George L. Mallory, Jr., Esq.
17 MARMARO LLP                                            MALLORY & ASSOCIATES
   1900 Avenue of the Stars, Seventh Floor                1925 Century Park East, Suite 2000
18 Los Angeles, CA 90067-4308                             Los Angeles, CA  90067-2701
   Tel.: (310) 203-8080                                   Tel: (310) 788-5555
19 Fax: (310) 203-0567                                    Fax: (310) 788-5570
   *Counsel for Marion H. Knight aka Suge Knight;*        *Counsel for Hollywood Records, Inc.*
20 *Death Row Records; Tha Row Records*
                                                          Marion H. Knight
21 Death Row Records                                      aka Suge Knight
   8200 Wilshire Boulevard                                c/o Death Row Records
22 P.O. Box 3037                                          8200 Wilshire Boulevard
   Beverly Hills, CA 90212                                P.O. Box 3037
23                                                        Beverly Hills, CA 90212
   Tha Row
24 8200 Wilshire Boulevard                                Suge Publishing
   P.O. Box 3037                                          c/o Death Row Records
25 Beverly Hills, CA 90212                                8200 Wilshire Boulevard
                                                          P.O. Box 3037
26 Joseph A. Davis, Esq.                                  Beverly Hills, CA 90212
   DAVIS AND WINSTON
27 9911 West Pico Boulevard
   Suite 1400
28 Los Angeles, CA  900035
   Tel: (310) 277-4662
   *Counsel for Bad Boy Entertainment, Inc.*              4

403964.1                          *NOTICE OF ATTORNEY LIEN*

EXHIBIT  3  PAGE  42

1   Peter J. Anderson, Esq.
    LAW OFFICES OF PETER J. ANDERSON
2   100 Wilshire Boulevard, Suite #2010
    Santa Monica, California 90401
3   Tel:   (310) 260-6030
    Fax:   (310) 260-6040
4   Counsel for Zomba Recording Corp.

    James H. Turken, Esq.
    Sharon A. Urias, Esq.
    THELEN, REID & PRIEST LLP
    333 South Hope Street, Suite 2900
    Los Angeles, California 90071-3048
    Tel:   (213) 576-8000
    Fax:   (213) 576-8080
    Counsel for Priority Records, LLC

5   Daniel J. Aaron, Esq.
    DANIEL J. AARON, P.C.
6   11 Madison Avenue, 12ᵗʰ Floor
    New York, New York 10010
7   Tel:   (212) 684-4466
    Fax:   (212) 684-5566
8   Co-Counsel for Koch Entertainment
    Distribution

    Eve H. Wagner, Esq.
    SAUER & WAGNER LLP
    1801 Century Park East, Suite 520
    Los Angeles, California 90067
    Tel:   (310) 712-8100
    Fax:   (310) 712-8108
    Co-Counsel for Koch Entertainment
    Distribution

9
    Dermot Damian Givens, Esq.
10  433 North Camden Drive, #600
    Beverly Hills, CA 90210

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
P.O. BOX 7033
TARZANA, CALIFORNIA 91357-7033

5

NOTICE OF ATTORNEY LIEN

3185322.2

EXHIBIT 3 PAGE 8ᴰ

# EXHIBIT 5

EXHIBIT 5

1  Peter Q. Ezzell (Bar No. 53497)
   Nancy E. Lucas (Bar No. 126854)
2  HAIGHT BROWN & BONESTEEL LLP
   6080 Center Drive, Suite 800
3  Los Angeles, CA 90045-1574
   Telephone:  310.215.7100
4  Facsimile:  310.215.7300

5  David B. Casselman (Bar No. 91657)
   Leonard J. Comden (Bar No. 56775)
6  Howard S. Blum (Bar No. 60603)
   WASSERMAN, COMDEN & CASSELMAN, L.L.P.
7  5567 Reseda Boulevard, Suite 330
   Post Office box 7033
8  Tarzana, CA  91357-7033
   Telephone:  (818) 705-6800 * (323) 872-0995
9  Facsimile:  (818) 345-0162

10 Associated Attorneys for Plaintiff
   WASSERMAN, COMDEN, CASSELMAN & PEARSON, L.L.P.

11

12              SUPERIOR COURT OF THE STATE OF CALIFORNIA

13        FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT

14

15 WASSERMAN, COMDEN,              )  Case No. BC 340196
   CASSELMAN & PEARSON, L.L.P.,    )
16                                 )  [Assigned to Judge Ronald M. Sohigian,
              Plaintiff,           )  Dept. 41]
17                                 )
        v.                         )  FIRST AMENDED COMPLAINT
18                                 )
   LYDIA HARRIS; LIFESTYLE         )
19 RECORDS, INC.; NEW IMAGE MEDIA  )
   CORP.; MARION H. KNIGHT, aka SUGE )
20 KNIGHT; DEATH ROW RECORDS,      )
   INC.; DEATH ROW RECORDS, L.L.C.; )  Complaint Filed:  September 21, 2005
   THA ROW, INC.; DERMOT GIVENS;   )  Trial Date:      April 17, 2006
21 KEVIN GILLIAM aka BATTLECAT;    )
   AND DOES 1 through 100, Inclusive, )
22                                 )
              Defendants.          )
23

24                     GENERAL ALLEGATIONS

25        1.     Plaintiff, WASSERMAN, COMDEN, CASSELMAN & PEARSON, L.L.P.

26 (hereinafter "WCCP") is a limited liability partnership organized and existing under the

27 laws of the State of California with its principal place of business in Tarzana, California.

28

LAW OFFICES                                    1
HAIGHT, BROWN &    WC11-0000007
BONESTEEL, L.L.P.  3123884.1        FIRST AMENDED COMPLAINT
Los Angeles

EXHIBIT __3__ PAGE __46__    4/3/06

1  The law firm of Wasserman, Comden, Casselman & Pearson, L.L.P., changed its name

2  effective January 1, 2006. It is now known as Wasserman, Comden & Casselman, L.L.P.

3      2.  Defendants LYDIA HARRIS (hereinafter "HARRIS"), MARION H.

4  KNIGHT, aka SUGE KNIGHT (hereinafter "KNIGHT"), DERMOT GIVENS (hereinafter

5  "GIVENS") and KEVIN GILLIAM aka BATTLECAT (hereinafter "GILLIAM") are

6  individuals who, at all material times resided in Los Angeles County, California.

7      3.  Plaintiff is informed and believes and thereon alleges that the remaining

8  defendants, LIFESTYLE RECORDS, INC., NEW IMAGE MEDIA CORP., DEATH

9  ROW RECORDS, INC., DEATH ROW RECORDS, L.L.C., and THA ROW, INC. are

10  business entities who were or are authorized to transact business in the State of California.

11      4.  Plaintiff is ignorant of the true names and capacities of defendants sued

12  herein as Does 1 through 100 and therefore sues these defendants by such fictitious names.

13  Plaintiff will amend this pleading to allege the true names and capacities of such Does

14  when ascertained. The conduct of Does 1 through 100 proximately caused damages to

15  plaintiff as alleged herein. DOES 1 through 25 are the alter egos of LYDIA HARRIS,

16  LIFESTYLE RECORDS, INC. and NEW IMAGE MEDIA CORP. (hereinafter "The

17  HARRIS Defendants"). DOES 26 through 50 are the alter egos of MARION H. KNIGHT,

18  aka SUGE KNIGHT and DEATH ROW RECORDS, INC. (hereinafter "The KNIGHT

19  Defendants"). DOES 51 through 75 are the alter egos of GILLIAM. Does 76-100 are the

20  persons and entities that knowingly interfered with plaintiffs contractual lien rights.

21      5.  On or about January 25, 2002, plaintiff and defendant HARRIS entered into

22  a written Contingency Fee Agreement in Los Angeles County, California whereby plaintiff

23  agreed to represent HARRIS in connection with liability claims against MARION H.

24  KNIGHT, aka SUGE KNIGHT and his related entity DEATH ROW RECORDS, INC, and

25  in connection with liability claims against GILLIAM. A copy of that written retainer

26  agreement is attached as Exhibit F, and is incorporated herein by this reference.

27      6.  Some of the material terms of the Contingency Fee Agreement include that

28  WCCP was authorized to incur reasonable costs and expenses in performing legal services

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Los Angeles

WCI11-0000007
3123384.1

2

FIRST AMENDED COMPLAINT

EXHIBIT 3 PAGE 47

1  and that "[HARRIS] agrees to reimburse [WCCP] for such costs and expenses in addition

2  to the contingency fee. . ."

3      7.    HARRIS discussed and agreed to a forty percent (40%) contingency fee and

4  acknowledged that the fee arrangement was fair and reasonable.

5      8.    HARRIS specifically negotiated a contingency fee arrangement and agreed

6  to allow a lien upon any recovery for payment of attorneys' fees, "to secure payment to

7  Attorney of all sums due under this Agreement for services rendered or costs advanced,

8  Client hereby grants Attorney a lien on Client's claim and any cause of action or lawsuit

9  filed thereon, and to any recovery Client may obtain, whether by settlement, judgment or

10  otherwise."

11     9.    Plaintiff has performed all conditions, covenants and promises of the

12  Agreement, and represented HARRIS vigorously and competently in her litigation against

13  the KNIGHT Defendants. On February 26, 2002, plaintiff prepared and filed a complaint

14  for damages on behalf of The HARRIS Defendants, Los Angeles Superior Court Case

15  Number BC268857.

16     10.   Plaintiff prosecuted the HARRIS lawsuit from February 26, 2002, through

17  March 9, 2005 when the Court entered a money judgment in favor of HARRIS and her

18  related business entity NEW IMAGE MEDIA CORP. and against The KNIGHT

19  Defendants in the sum of $107 million ($45 million for economic damages, $2 million for

20  non-economic damages and $60 million for punitive damages). A copy of the Judgment is

21  attached hereto and incorporated herein by reference as Exhibit A. In addition, on March

22  26, 2004, the Court entered judgment in favor of HARRIS and her related business entity

23  NEW IMAGE MEDIA CORP. and against GILLIAM in the sum of $760,000 plus interest

24  (attached as Exhibit C).

25     11.   On or about May 19, 2005, HARRIS discharged plaintiff as her attorney. On

26  or about May 20, 2005, HARRIS filed a Substitution of Attorney with the Court indicating

27  that she was representing herself.

28

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Los Angeles

WC11-0000007
3123884.1

3

FIRST AMENDED COMPLAINT

EXHIBIT 3  PAGE 48

1       12.   On May 19, 2005, plaintiff filed and served on defendants a Notice of

2   Attorney Lien equal to forty percent (40%) of any and all gross recovery, payments or

3   consideration of any kind or nature paid or transferred in satisfaction, in whole or in part,

4   of the Judgment against KNIGHT, et al., entered in LASC Case No. BC268857 (40% of

5   $107 million, plus interest accruing at the rate of $29,315.00 per day), plus costs expended

6   in the sum of $213,890.27. (Exhibit C.)  On September 9, 2005, plaintiff filed and served

7   on GILLIAM a Notice of Lien in the sum of $304,000.00 plus interest. (Exhibit D.)

8       13.   On June 17, 2005, HARRIS filed with the Court a "Notice of Settlement"

9   which represents that HARRIS and KNIGHT had agreed to a conditional settlement on

10  "specified terms that are not to be performed within 45 days of the settlement." The Notice

11  states that a Request for Dismissal will be filed no later than May 27, 2005 (40 days

12  earlier).  By the terms of the "Notice of Settlement," the negotiations and settlement itself

13  occurred before a Substitution of Attorney was filed.  None of the defendants notified

14  plaintiff of any such negotiations or settlement and the defendants have, affirmatively

15  concealed the fact of such negotiations and the settlement terms.

16      14.   It was reported on August 29, 2005 in the Los Angeles Times that HARRIS

17  has received the sum of $1.2 million as a result of the lawsuit.  A "settlement" in the sum

18  of $1 million is reported by counsel for KNIGHT in this action.  Plaintiff has received no

19  compensation for professional services rendered.

20      15.   Plaintiff has requested and defendants have refused to disclose the material

21  terms of the settlement or make any payment to the plaintiff.  Plaintiff is informed and

22  believes and thereon alleges that HARRIS and The KNIGHT Defendants conspired to

23  conceal the true terms of any settlement agreement (if any), and the true sum(s) of any

24  payment(s) from plaintiff, and that the defendants willfully and intentionally executed one

25  or more settlement agreements, all in disregard of plaintiff's valid lien rights.  Plaintiff is

26  informed and believes and thereon alleges that HARRIS and The KNIGHT Defendants

27  deliberately chose not to file a Partial Satisfaction of Judgment in order to conceal the

28  material terms of the settlement from plaintiff.

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Los Angeles

WC11-0000007
3123884.1

4

FIRST AMENDED COMPLAINT

EXHIBIT 3 PAGE 49

16.    Plaintiff is informed, and thereon alleges, that HARRIS negotiated a secret settlement agreement with the KNIGHT defendants that resulted in HARRIS being paid at least $1 million by the KNIGHT defendants. (HARRIS and the KNIGHT Defendants have since disagreed on whether that payment effectuated a full or partial payment under their settlement agreement, or whether a meeting of the minds occurred at all, so as to create a binding settlement agreement. Both parties have admitted that the $1 million was transferred from the KNIGHT Defendants to HARRIS to satisfy, in full or in part, the Judgment.) HARRIS claims, or has claimed, that she, through other counsel, Dermot Damien Givens, negotiated a purported settlement with the KNIGHT Defendants that would result in the KNIGHT Defendants paying her consideration including, among other things, the greater of $5.8 million paid to her annually on a specified date over five years, or the income generated from certain specified songs or intellectual properties owned by the KNIGHT Defendants.

17.    On further information and belief, plaintiff alleges that HARRIS has received other sums and assets from the KNIGHT Defendants, in partial satisfaction of the Judgment, the value of which is subject to proof at trial but which is believed to total not less than $2 million. Accordingly, plaintiff claims damage against HARRIS in the sum of 40 percent of any gross recoveries she obtained, or may obtain in the future, from all or any of the KNIGHT Defendants.

18.    As a result of this, plaintiff has been damaged by HARRIS' failure and refusal to pay for all or part the attorneys' fees called for in the Retainer Agreement, including but not limited to payment of forty percent (40%) of any and all gross recovery, payments or consideration of any kind paid to HARRIS to date. Other defendants have similarly caused damage by failing and refusing to acknowledge plaintiff's lien rights, or to actually pay or reserve any of the funds paid to HARRIS to satisfy the lien for attorneys' services properly put into place by plaintiff.

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Los Angeles

WC11-0000007
3123884.1

5
FIRST AMENDED COMPLAINT

EXHIBIT 3 PAGE 60

## FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT

### (Against Lydia Harris, Lifestyle Records, Inc., New Image Media Corp. and
### Does 1 through 25, Inclusive)

19.     Plaintiff incorporates by this reference all allegations and facts alleged in paragraphs 1 through 18, above.

20.     On or about January 25, 2002, plaintiff and defendant HARRIS entered into a written Contingency Fee Agreement in Los Angeles County, California whereby plaintiff agreed to represent HARRIS in connection with liability claims against MARION H. KNIGHT, aka SUGE KNIGHT and his related entity DEATH ROW RECORDS, INC, and in connection with liability claims against GILLIAM.  A copy of that written retainer agreement, attached as Exhibit F, is incorporated herein in full by this reference.

21.     Some of the material terms of the Contingency Fee Agreement include that WCCP is authorized to incur reasonable costs and expenses in performing legal services and that "[HARRIS] agrees to reimburse [WCCP] for such costs and expenses in addition to the contingency fee. . ."  The contingency fee negotiated by HARRIS was for forty percent (40%); HARRIS acknowledged that the fee arrangement is fair and reasonable.

22.     The Contingency Fee Agreement negotiated by HARRIS further specifically included language granting plaintiff a lien upon any recovery, for payment of plaintiff's attorneys' fees, "to secure payment to Attorney of all sums due under this Agreement for services rendered or costs advanced, Client hereby grants Attorney a lien on Client's claim and any cause of action or lawsuit filed thereon, and to any recovery Client may obtain, whether by settlement, judgment or otherwise."

23.     Plaintiff has performed all conditions, covenants and promises of the Agreement.  On February 26, 2002, plaintiff prepared and filed a complaint for damages on behalf of The HARRIS Defendants, Los Angeles Superior Court Case Number BC268857.

24.     Plaintiff prosecuted the HARRIS lawsuit from February 26, 2002 through March 9, 2005 when the Court entered a money judgment in favor of HARRIS and her

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Los Angeles

WC11-0000007
3123884.1

6

FIRST AMENDED COMPLAINT

EXHIBIT 3 PAGE 57

1  related business entity NEW IMAGE MEDIA CORP. and against The KNIGHT

2  Defendants in the sum of $107 million ($45 million for economic damages, $2 million for

3  non-economic damages and $60 million for punitive damages).  A copy of the Judgment is

4  attached hereto and incorporated herein by reference as Exhibit A.  In addition, on March

5  26, 2004, the Court entered judgment in favor of HARRIS and her related business entity

6  NEW IMAGE MEDIA CORP. and against GILLIAM in the sum of $760,000 plus interest.

7  (Exhibit B.)

8      25.    On or about May 19, 2005, HARRIS discharged plaintiff as her attorney.  On

9  or about May 20, 2005, HARRIS filed a Substitution of Attorney with the Court indicating

10  that she was representing herself.

11      26.    On May 19, 2005, plaintiff filed and served on defendants a Notice of

12  Attorney Lien equal to forty percent (40%) of any and all gross recovery, payments or

13  consideration of any kind or nature paid or transferred in satisfaction, in whole or in part,

14  of the Judgment against KNIGHT, et al., entered in LASC Case No. BC268857 (40% of

15  $107 million plus interest accruing at the rate of $29,315.00 per day) plus costs expended

16  in the sum of $213,890.27.  (Exhibit C.)  On September 9, 2005, plaintiff filed and served

17  on GILLIAM a Notice of Lien in the sum of $304,000.00 plus interest.  (Exhibit D.)

18      27.    On June 17, 2005, HARRIS filed with the Court a "Notice of Settlement"

19  which represents that HARRIS and KNIGHT had agreed to a conditional settlement on

20  "specified terms that are not to be performed within 45 days of the settlement."  The

21  Notice states that a Request for Dismissal will be filed no later than May 27, 2005 (40 days

22  earlier).  By the terms of the "Notice of Settlement," the negotiations and settlement itself

23  occurred before a Substitution of Attorney was filed.  None of the defendants notified

24  plaintiff of any such negotiations or settlement and the defendants have, affirmatively

25  concealed the fact of such negotiations and the settlement terms.

26      28.    The HARRIS Defendants have breached the material terms of the

27  Contingency Fee Agreement by, among other things, failing and refusing to pay plaintiff

28  for professional legal services rendered on her behalf.

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Los Angeles

WC11-0000007
31231884.1

7

FIRST AMENDED COMPLAINT

EXHIBIT 3   PAGE 52

1    29.    As a result of HARRIS' breach of contract, plaintiff has been damaged by

2   HARRIS' failure and refusal to pay for all or part the attorneys' fees called for in the

3   Retainer Agreement, including but not limited to payment of forty percent (40%) of any

4   and all gross recovery, payments or consideration of any kind paid to HARRIS to date.

5    30.    Plaintiff is informed, and thereon alleges, that its damages include, but are

6   not limited to, HARRIS's failure and refusal to pay anything at all to plaintiff out of the $1

7   million secret purported settlement paid by or through the KNIGHT Defendants to

8   HARRIS in or about June 2005. Refusal to pay any sum at all to the plaintiff out of that $1

9   million violates plaintiff's lien rights, and is a breach of HARRIS' Retainer Fee

10  Agreement with plaintiff. No other payments have been made by HARRIS to plaintiff

11  from any other payments or transfers made to HARRIS by or on behalf of the KNIGHT

12  Defendants (if any), in further violation of plaintiff's lien rights and in further breach of

13  HARRIS' Retainer Fee Agreement with plaintiff.

14    ## SECOND CAUSE OF ACTION

15    ### QUANTUM MERUIT

16    (Plaintiff vs. The HARRIS Defendants and DOES 1 Through 25, Inclusive)

17    31.    Plaintiff incorporates herein by reference paragraphs 1 through 18 of this

18  First Amended Complaint as though fully set forth herein.

19    32.    Within the past two years, plaintiff rendered legal services to The HARRIS

20  Defendants and incurred costs in connection with those legal services at the special request

21  of the HARRIS Defendants. The HARRIS Defendants promised to pay plaintiff for those

22  legal services and costs. Neither the HARRIS Defendants nor plaintiff reasonably

23  expected or believed that plaintiff would provide legal services, and prepay legal costs, on

24  behalf of the HARRIS Defendants for no compensation at all.

25    33.    Upon plaintiff's information and belief, the reasonable value of the services

26  and unpaid costs incurred by plaintiff for the benefit of The HARRIS Defendants may

27  exceed $10 million.

28

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Los Angeles

WC11-0000007
31121814.1

8

FIRST AMENDED COMPLAINT

EXHIBIT 3  PAGE 53

1  <u>Plaintiff has repeatedly demanded from the HARRIS Defendants information</u>

2  <u>concerning any purported settlement with The KNIGHT Defendants, or the receipt</u>

3  <u>of payments from or on behalf of the KNIGHT Defendants. The HARRIS</u>

4  <u>Defendants have refused and continue to refuse to provide completely and accurately</u>

5  <u>any such information, or pay any sums for the reasonable value of professional</u>

6  <u>services rendered on behalf of HARRIS.</u>THIRD CAUSE OF ACTION

7  FOR MONEY HAD AND RECEIVED

8  <u>(Plaintiff vs. The HARRIS Defendants and DOES 1 Through 25, Inclusive)</u>

9      35.    Plaintiff incorporates herein by reference paragraphs 1 through 18 of this

10  First Amended Complaint as though fully set forth herein.

11      36.    Plaintiff is informed and believes and thereon alleges that as a proximate

12  result of professional legal services performed by plaintiff on behalf of The HARRIS

13  Defendants, The HARRIS Defendants received payments or other consideration in full or

14  partial satisfaction of the $107 million judgment against The KNIGHT Defendants.

15      37.    In equity and in good conscience, forty percent (40%) of any recovery to

16  HARRIS should be paid to plaintiff.

17      38.    The HARRIS Defendants have refused to pay anything to plaintiff for the

18  attorneys' fees it incurred, in good faith, on her behalf, and in reliance on HARRIS'

19  written promise to pay plaintiff forty (40) percent of any recovery she obtained against the

20  KNIGHT Defendants. One or more of The HARRIS Defendants received a sum of money

21  from or on behalf of the KNIGHT Defendants, in full or partial satisfaction of the

22  Judgment; upon information and belief, plaintiff contends that this sum was at least $1

23  million. HARRIS, the KNIGHT Defendants, and Dermot Damien Givens concede that at

24  least $1 million was paid by or on behalf of the KNIGHT Defendants to HARRIS, and that

25  no notice of that settlement or payment was given to plaintiff. No fees have been paid to

26  plaintiff from any other transfer of money or assets to or on behalf of the HARRIS

27  Defendants by or on behalf of the KNIGHT Defendants, with the actual knowledge and

28  assistance of their attorney, Dermot Damien Givens, in full or partial satisfaction of the

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Los Angeles

WC11-0000007
3123884.1

9
FIRST AMENDED COMPLAINT

EXHIBIT 3 PAGE 54

1   Judgment.  The HARRIS Defendants have instead concealed the terms of any purported

2   settlement with the KNIGHT Defendants from plaintiff, or has hidden the fact of payments

3   made to or on behalf of the HARRIS Defendants from or on behalf of the KNIGHT

4   Defendants.

5

6                       FOURTH CAUSE OF ACTION

7                        FOR AN ACCOUNTING

8                      (Plaintiff vs. All Defendants)

9        39.    Plaintiff incorporates herein by reference paragraphs 1 through 18, and 36

10   through 38 of this First Amended Complaint as though fully set forth herein.

11        40.    Plaintiff has demanded an accounting of any and all gross recovery,

12   payments or consideration of any kind or nature paid or transferred in satisfaction, in

13   whole or in part, of the Judgment entered in LASC Case No. BC268857.  The defendants,

14   and each of them, have refused to provide any accounting of the consideration agreed to or

15   paid.  Plaintiff therefore now requests that this court order a full and complete accounting

16   of all sums or assets received by or on behalf of any of The HARRIS Defendants, or any of

17   their agents or persons acting on their behalf, from or on behalf of any of the KNIGHT

18   Defendants, or from any other entity or source, in partial or full satisfaction of the

19   Judgment.

20

21                       FIFTH CAUSE OF ACTION

22                    INTERFERENCE WITH CONTRACT

23        (Plaintiff vs. The KNIGHT Defendants, THA ROW RECORDS, LLC,

24   THA ROW, INC., DERMOT GIVENS and DOES 26 Through 100, Inclusive)

25        41.    Plaintiff incorporates herein by reference paragraphs 1 through 18 of this

26   First Amended Complaint as though fully set forth herein.

27        42.    Defendants MARION H. KNIGHT, aka SUGE KNIGHT, DEATH ROW

28   RECORDS, INC., DEATH ROW RECORDS, LLC, THA ROW, INC., DERMOT

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.    WC11-0000007
Los Angeles          3123814.1

                                   10
                          FIRST AMENDED COMPLAINT

                                   EXHIBIT 3 PAGE 55

1  GIVENS, LYDIA HARRIS, LIFESTYLE RECORDS, INC., NEW IMAGE MEDIA

2  CORP. and DOES 26 through 100 were served with notice of plaintiffs lien on May 19,

3  2005. Defendant GILLIAM and DOES 70 through 80 were served with Notice of Lien on

4  the GILLIAM Judgment on September 9, 2005. The defendants, and each of them, by and

5  through their authorized representatives, had actual knowledge of plaintiffs valid contract

6  and lien.

7      43.    Plaintiff is informed and believes and thereon alleges that the judgment

8  debtors (The KNIGHT Defendants) and their attorney, DERMOT GIVENS, conspired

9  with HARRIS to deprive plaintiff of its lien rights. Plaintiff is informed and believes and

10  thereon alleges that The KNIGHT Defendants, DERMOT GIVENS and Does 26 through

11  100 caused payments or other consideration to be made to HARRIS pursuant to the

12  judgment without notice to plaintiff and without satisfying any portion of plaintiffs valid

13  lien. The Knight defendants and GIVENS made it more difficult, expensive or

14  burdensome to collect fees and costs which were earned. The Knight defendants and

15  GIVENS either intended to prevent Harris from performing her contractual obligations to

16  plaintiff or knew that collection of fees and costs would be more expensive or burdensome

17  as a result of their conduct.

18      44.    The KNIGHT Defendants, GIVENS and Does 26 through 100 intentionally

19  interfered with plaintiffs valid contractual and/or equitable lien in an amount equal to the

20  payment or other consideration which has passed or will pass between KNIGHT and

21  GILLIAM on the one hand and HARRIS on the other hand.

22      45.    Plaintiff is informed and believes and thereon alleges that The KNIGHT

23  Defendants have provided payments or other consideration to HARRIS with a value in

24  excess of $2 million. Accordingly, plaintiff alleges that, to date, said defendants'

25  intentional interference with plaintiff's contractual lien rights has caused damage to

26  plaintiff in a sum exceeding $1,013,890.27, or forty (40) percent of any actual payments

27  made by or on behalf of the KNIGHT Defendants to the HARRIS Defendants, plus

28  interest.

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, LLP.
Los Angeles

WCI11-0000007
3123884.1

11

FIRST AMENDED COMPLAINT

EXHIBIT 3    PAGE 50

## SIXTH CAUSE OF ACTION

### FOR ORDER GRANTING EQUITABLE ASSIGNMENT OF JUDGMENTS

### (Plaintiff vs. The KNIGHT Defendants, GILLIAM, Lydia Harris, and

### DOES 1 Through 25

### and DOES 50 through 75, Inclusive)

46.    Plaintiff incorporates herein by reference paragraphs 1 through 18 and 36 through 38 of this First Amended Complaint as though fully set forth herein.

47.    HARRIS discharged plaintiff without cause after entry of judgment in the sum of $107 million against The KNIGHT Defendants.

48.    Plaintiff is informed and believes and thereon alleges that HARRIS discharged plaintiff for the primary purpose of concealing payments and violating plaintiffs contractual right to collect a contingency fee based upon any recovery in the underlying lawsuit, as well as in violation of its rights as set forth in the May 19, 2005 Notice of Lien, as well as violating plaintiffs rights to a contingent fee from any recovery against GILLIAM.

49.    Plaintiffs contract with HARRIS created a lien upon the recovery whether by settlement or judgment. By reason of the professional services rendered, plaintiff is an equitable assignee of the judgments or settlements to the extent of fees and costs which are due plaintiff for services. [*Siciliano v. Fireman's Fund Ins. Co.* (1976) 62 Cal.App.3d 745.]

50.    Plaintiff is informed and believes and thereon alleges that it is entitled to an equitable assignment of forty (40) percent of the judgments against The KNIGHT Defendants and GILLIAM, and/or forty (40) percent of any settlement or other recoveries obtained by or on behalf of the HARRIS Defendants from or on behalf of the KNIGHT Defendants.

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Los Angeles

WC11-0000007
3123884.1

12
FIRST AMENDED COMPLAINT

EXHIBIT 3   PAGE 51

## SEVENTH CAUSE OF ACTION FOR DECLARATORY RELIEF

### (Plaintiff vs. All Defendants)

51.     Plaintiff incorporates herein by reference paragraphs 1 through 18 and 36 through 38 of this First Amended Complaint as though fully set forth herein.

52.     Plaintiff alleges that it has a valid lien on any and all recovery, payments, or consideration of any kind or nature paid in satisfaction of the judgment against The KNIGHT Defendants for forty percent (40%) of $107 million plus interest at the rate of $29,315.00 per day plus costs expended in the sum of $213,890.27. Plaintiff alleges that it has a valid lien on any and all recovery, payments, or consideration of any kind or nature paid in satisfaction of the judgment against GILLIAM for forty percent (40%) of $760,000.00 plus interest at the rate of $208.22 per day plus costs as aforementioned. Plaintiff is informed and believes and thereon alleges that defendants contend that they had or have the right to disregard plaintiffs lien and that KNIGHT and/or GILLIAM can make payments in partial or total satisfaction of the judgment without paying anything to plaintiff. Plaintiff contends to the contrary:

53.     Plaintiff contends that any settlement agreement between The KNIGHT Defendants and HARRIS and/or any settlement between GILLIAM and HARRIS is void to the extent that it purports to release, extinguish, impair or modify plaintiffs vested rights to recover forty percent (40%) of the judgment plus costs as reflected in the attorney liens served on May 19, 2005 and September 9, 2005.

54.     Plaintiff is informed and believes and thereon alleges that defendants contend that they have or had the right to disregard, impair, release, diminish or extinguish the lien rights of plaintiff.

55.     Plaintiff contends that any agreement between the defendants that was made without the consent of plaintiff is a nullity as to plaintiff because any such agreement was a fraud upon plaintiff, was made with unclean hands and without any consideration to plaintiffs vested interests. Plaintiff is informed and believes and thereon alleges that defendants contend to the contrary.

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Los Angeles

WC11-0000007
3123884.1

13

FIRST AMENDED COMPLAINT

EXHIBIT 3 PAGE 58

1    56.   Plaintiff requests a judicial declaration that plaintiff may recover judgment

2  against The KNIGHT Defendants and its related entities and alter egos in the sum of forty

3  percent (40%) of $107 million plus interest at the rate of $27,315.00 per day from March

4  9, 2005.  Plaintiff also requests a judicial declaration that plaintiff may recover judgment

5  against GILLIAM in the sum of forty percent (40%) of $760,000 plus interest at the rate of

6  $208.22 per day from February 5, 2004.

7    WHEREFORE, plaintiff prays for judgment as follows:

8    1.    For special damages in the sum of $42,800,000.00 plus interest jointly and

9  severally against The HARRIS Defendants, The KNIGHT Defendants and DERMOT

10  GIVENS, or according to proof;

11    2.    For special damages in the sum of $304,000.00 plus interest from GILLIAM,

12  or according to proof, and

13    3.    For a judgment assigning to plaintiff forty percent (40%) of the March 9,

14  2005 judgment against MARION H. KNIGHT and DEATH ROW RECORDS, INC.,

15  and/or;

16    4.    For a judgment assigning to plaintiff forty percent (40%) of the March 26,

17  2004 judgment against GILLIAM.  Further, plaintiff requests:

18    5.    A judicial declaration that any agreement by and between the defendants

19  which purports to affect the rights of the plaintiff is void;

20    6.    The imposition of a constructive trust upon any proceeds paid to The

21  HARRIS Defendants in satisfaction of the judgments;

22    7.    An accounting, requiring the defendants to disclose to plaintiff the exact

23  arms of any and all settlement agreements reached between the defendants and any

24  consideration paid in satisfaction of the judgment;

25    8.    A temporary restraining order, preliminary injunction and/or permanent

26  injunction freezing and/or attaching the assets of the defendants up to plaintiffs interest in

27  the underlying judgments;

28    9.    Its costs of suit;

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Los Angeles

WCl1-0000007
3123884.1

14

FIRST AMENDED COMPLAINT

EXHIBIT 3 PAGE 59



1    10.    Prejudgment interest, as provided by law;  and

2    11.    Such further relief which is just and proper.

3    Dated: April 3, 2006                    HAIGHT BROWN & BONESTEEL LLP;
                                            WASSERMAN, COMDEN &
4                                           CASSELMAN, L.L.P.

5

6                                    By: _____
7                                        Peter Q. Ezzell
                                         Nancy E. Lucas
8                                        Stephen M. Caine;
                                         David B. Casselman
9                                        Leonard J. Comden
                                         Attorneys for Plaintiff WASSERMAN,
10                                       COMDEN, CASSELMAN &
                                         PEARSON, L.L.P.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
HAIGHT, BROWN &                                         15
BONESTEEL, L.L.P.     WC11-0000007
    Los Angeles        3123886.1        FIRST AMENDED COMPLAINT

EXHIBIT 3  PAGE 60

## LIST OF EXHIBITS

A.  Judgment in favor of HARRIS and NEW IMAGE MEDIA CORP. and against MARION H. KNIGHT, aka SUGE KNIGHT and DEATH ROW RECORDS, INC.

B.  March 26, 2004, Court judgment in favor of HARRIS and her related business entity NEW IMAGE MEDIA CORP. and against GILLIAM in the sum of $760,000 plus interest.

C.  May 19, 2005 Notice of Attorney Lien equal to forty percent (40%) of any and all gross recovery, payments or consideration of any kind or nature paid or transferred in satisfaction, in whole or in part, of the Judgment against KNIGHT, et al. entered in LASC Case No. BC268857 (40% of $107 million plus interest accruing at the rate of $29,315.00 per day) plus costs expended in the sum of $213,890.27.

D.  September 9, 2005 Notice of Attorney Lien filed September 9, 2005 in the sum of $304,000.00, plus interest.

E.  Notice of Settlement, filed June 17, 2005.

F.  Contingency Fee Agreement.

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Los Angeles

WCI1-0000007
31233884.1

16

FIRST AMENDED COMPLAINT

EXHIBIT 3 PAGE 21

## PROOF OF SERVICE BY MAIL

STATE OF CALIFORNIA       )
                                )    ss.:

COUNTY OF LOS ANGELES    )

*WASSERMAN v. LYDIA HARRIS; LIFESTYLE RECORDS*
*BC 340196*

      I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 6080 Center Drive, Suite 800, Los Angeles, CA 90045-1574.

      On April 3, 2006, I served on interested parties in said action the within:

FIRST AMENDED COMPLAINT

[X]    (MAIL) by placing a true copy thereof in sealed envelope(s) addressed as stated on the attached service list.

      I am readily familiar with this firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

      Executed on April 3, 2006, at Los Angeles, California.

      I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

| Theresa Welsch | (Signature) |
|---|---|
| (Type or print name) | |

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Los Angeles

WC11-0000007
3123884.1

17

FIRST AMENDED COMPLAINT

EXHIBIT 3 PAGE 02

MAILING LIST
WASSERMAN v. LYDIA HARRIS; LIFESTYLE RECORDS
BC 340196

| | |
|---|---|
| David B. Casselman<br>Wasserman Comden, Casselman & Pearson<br>5567 Reseda Blvd., #330<br>Tarzana, CA  91357<br><br>Tel:    818-705-6800<br>Fax:   818-705-8634<br>hhlum@wcclaw.com | Gary S. Soter<br>Pearson, Soter, Warshaw & Penny<br>15165 Ventura Blvd., #400<br>Sherman Oaks, CA  91403<br><br>Tel:    818-788-8300<br>Fax:   818-788-8104<br>gsoter@pswplaw.com |
| Kevin Gilliam<br>1502 South Alpine Dr.<br>West Covina, CA  91791<br><br>[Pro Per] | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Los Angeles

WC11-0000007
3123884.1

18

FIRST AMENDED COMPLAINT

EXHIBIT 3 PAGE 63



## PROOF OF SERVICE BY OVERNIGHT DELIVERY

STATE OF CALIFORNIA     )   ss.:

COUNTY OF LOS ANGELES     )

*WASSERMAN v. LYDIA HARRIS; LIFESTYLE RECORDS*
*BC 340196*

   I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 6080 Center Drive, Suite 800, Los Angeles, CA 90045-1574.

   On April 3, 2006, I served on interested parties in said action the within:

FIRST AMENDED COMPLAINT

   I deposited in a box or other facility regularly maintained by Federal Express, an express service carrier, or delivered to a courier or driver authorized by said express service carrier to receive documents, a true copy of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed as stated on the attached service list, with fees for overnight delivery paid or provided for.

   Executed on April 3, 2006, at Los Angeles, California.

   I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

| Theresa Welsch | |
|---|---|
| (Type or print name) | (Signature) |

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Los Angeles

WC11-0000007
3123884.1

23

FIRST AMENDED COMPLAINT

03/24/06 4:18 PM
Draft

EXHIBIT 3 PAGE 64



MAILING LIST
WASSERMAN v. LYDIA HARRIS; LIFESTYLE RECORDS
BC 340196

Rex Julian Beaber
1546 Calmar Court
Los Angeles, CA 90024

Tel:    557-1198
Fax:
Xerxers@aol.com

Debra V. Crawford
P.O. Box 373, SW Mission & 4th, #5
Carmel, CA 93921-0373

Tel:    831-624-2422
Fax:    831-624-2428
ddvcrawford@earthlink.net

Laurence D. Strick
Law Office of Laurence D. Strick
339 N. Sycamore Ave., # 2
Los Angeles, CA 90036

Tel: (323) 964-5231
Fax: (323) 964-8135

larrystrick@yahoo.com

Dermot Damian Givens
433 North Camden Dr., #600
Beverly Hills, CA 90210

Tel:    310-854-8823
Fax:    323-878-0416
dermotg@aol.com

Steven M. Goldberg
Russ, August & Kabat
12424 Wilshire Blvd., 12th Floor
Los Angeles, CA 90025

Tel:    310-979-8274
Fax:    310-826-6991

Larry Nagelberg
Nagelberg & Associates
The Tower, Suite 2150
10940 Wilshire Blvd.
Los Angeles, CA 90024

Tel: (310) 208-3220
Fax: (310) 208-3830

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Los Angeles

WC11-0000007
3123384.1

23

FIRST AMENDED COMPLAINT

03/24/06 4:18 PM
Draft

EXHIBIT 3 PAGE 05

# EXHIBIT 6 A

EXHIBIT 6A

Form B10 (Official Form 10) (10/05)

| **United States Bankruptcy Court**    Central District of California | | **PROOF OF CLAIM** |
|---|---|---|

| Name of Debtor<br>MARION H. KNIGHT, JR. | Case Number<br>LA06-11187 EC | |
|---|---|---|

**NOTE:** This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br><br>MICHAEL RAY HARRIS | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. | **FILED**<br>MAY. - 4 2006<br>CLERK, U.S. BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY_____ Deputy Clerk |
|---|---|---|
| Name and address where notices should be sent:<br>Steven M. Goldberg, Esq.<br>Russ August & Kabat<br>12424 Wilshire Bl #1200<br>Los Angeles, CA 90025<br>Telephone number:<br>(310) 826-7474 | ☐ Check box if you have never received any notices from the bankruptcy court in this case.<br><br>☐ Check box if the address differs from the address on the envelope sent to you by the court. | F42cc<br><br>This space is for Court use only. |

| Last four digits of account or other number by which creditor identifies debtor: | Check here ☐ replaces<br>if this claim ☐ amends    a previously filed claim, dated: _____ |
|---|---|

| 1. **Basis for Claim**<br>☐ Goods sold<br>☐ Services performed<br>☐ Money loaned<br>☐ Personal injury/wrongful death<br>☐ Taxes<br>☒ Other  Court Judgment | ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)<br>☐ Wages, salaries, and compensation (Fill out below)<br><br>Last four digits of your Social Security number: _____<br><br>Unpaid compensation for services performed<br>from _____ to _____<br>    (date)        (date) |
|---|---|

2. **Date debt was incurred:** March 9, 2005     3. **If court judgment, date obtained:** March 9, 2005

4. **Total Amount of Claim at Time Case Filed:** $117,318,631.50
    $117,318,631.50
$_____    $_____    $_____    $117,318,631.50
(unsecured)    (secured)    (priority)    (Total)

If all or part of your claim is secured or entitled to priority, also complete item 5 or 7 below.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

| 5. **Secured Claim.**<br>☐ Check this box if your claim is secured by collateral (including a right of setoff).<br><br>Brief Description of Collateral:<br>☐ Real Estate    ☐ Motor Vehicle<br>☐ Other _____<br><br>Value of Collateral: $_____<br><br>Amount of arrearage and other charges *at time case filed* included in secured claim, if any $_____ | 7. **Unsecured Priority Claim.**<br>☐ Check this box if you have an unsecured priority claim, all or part of which is entitled to priority.<br>Amount entitled to priority $_____<br>Specify the priority of the claim:<br>☐ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).<br>☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).<br>☐ Up to $2,225* of deposits toward purchase, lease or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).<br>☐ Domestic support obligations under - 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).<br>☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).<br>☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(____).<br>*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. $10,000 and 180-day limits apply to cases filed on or after 4/20/06. Pub. L. 109-8 |
|---|---|
| 6. **Unsecured Nonpriority Claim.**  $ 117,318,631.50<br>☒ Check this box if (a) there is no collateral or lien securing your claim, or (b) your claim exceeds the value of the property securing it or (c) none or only part of your claim is entitled to priority. | |

| 8. **Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.<br>9. **Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.<br>10. **Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim. | This space is for Court use only. |
|---|---|

| Date<br>5/3/06 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any)<br>_(signature)_ STEVEN M. GOLDBERG ESQ | |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## ITEMIZATION OF ADDITIONAL CHARGES

Original Judgment: $107,000,000 (see attached Judgment in LASC Case No. BC 268857)

Statutory Interest: 10% per annum as follows—

> $29,315.07 per day from entry of judgment (March 9, 2005) through payment of
> $1,000,000 on May 27, 2005 = $2,315,890.50.

> $29,041.10 (daily rate of interest on reduced amount of judgment ($106,000,000))
> per day from May 27, 2005 to date case filed, April 04, 2006 = $9,002,741.00.

Total Statutory Interest: $11,318,631.50.

Total payments against judgment by debtor: $1,000,000.

**Total claim as of date case filed: $117,318,631.50**

*F.O.*

1    DAVID B. CASSELMAN (SBN 81657)
     I.DONALD WEISSMAN (SBN 67980)

**FILED**
LOS ANGELES SUPERIOR COURT

2    WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
     5567 Reseda Boulevard, Suite 330

MAR 0 9 2005

3    Post Office Box 7033
     Tarzana, California 91357-7033

JOHN A. CLARKE, CLERK

4    Telephone:   (818) 705-6800 • (323) 872-0995
     Facsimile:    (818) 705-8147

By:_____
H. CASTLE

5

6    Attorneys for Plaintiffs
     **LYDIA HARRIS and NEW IMAGE MEDIA**
     **CORPORATION**

7

8           SUPERIOR COURT OF THE STATE OF CALIFORNIA

9             FOR THE COUNTY OF LOS ANGELES

10

11    **LYDIA HARRIS, LIFESTYLE**        )    CASE NO. BC 268857
     **RECORDS, INC., AND NEW IMAGE**    )

12    **MEDIA CORP..**                )    Case Assigned to:

13          Plaintiffs,       )    Judge Ronald M. Sohigian – Dept. 41
                             )

14    v.                       )    [Complaint Filed: February 26, 2002]
                             )

15    **KEVIN GILLIAM AKA BATTLECAT;**   )
     **MARION H. KNIGHT AKA SUGE**     )    **JUDGMENT**

16    **KNIGHT; DEATH ROW RECORDS;**     )
     **THA ROW, INC.; DAVID E. KENNER;**   )

17    **DAVID E. KENNER PROFESSIONAL**   )
     **LAW CORPORATION; DAVID E.**     )

18    **KENNER, A PROFESSIONAL**      )
     **CORPORATION; THE DAVID E.**      )

19    **KENNER TRUST; INTERSCOPE**     )
     **RECORDS; JIMMY IOVINE; JOHN T.**   )

20    **McCLAIN, JR.; A&M RECORDS; ET**   )
     **AL.,**                                 )

21          Defendants.      )

22

23        Upon the Order striking the Answer of MARION H. KNIGHT, aka SUGE KNIGHT, and

24    DEATH ROW RECORDS, INC., ~~dba DEATH ROW RECORDS L.L.C., aka THA ROW, INC.,~~

25    to Plaintiffs' Complaint and entering default thereon, consideration of the Plaintiffs' Application

26    for Default Prove-up Damages and the supporting declarations of Lydia Harris, I.Donald

27    Weissman, Michael Harris and Phil Ames, and good cause appearing therefor,

28

*WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.*
*5567 RESEDA BOULEVARD, SUITE 330*
*P.O. BOX 7033*
*TARZANA, CALIFORNIA 91357-7033*

---
*JUDGMENT*

1     **IT IS HEREBY ADJUDGED** that judgment is entered in favor of plaintiffs, LYDIA

2  HARRIS and NEW IMAGE MEDIA CORP., and against defendants, MARION H. KNIGHT

3  aka SUGE KNIGHT, DEATH ROW RECORDS, INC., ~~Aka DEATH ROW RECORDS, LLC.,~~

4  ~~and THA ROW, INC.,~~ in the sum of $ *45,000,000* for economic damages,

5  $ *2,000,000* for non-economic damages, $ *60,000,000* for punitive damages,

6

7     Further, PLAINTIFFS to recover costs pursuant to a memorandum of costs to be filed

8  pursuant to the statute *in the amount of $* _____

9

10  Dated: *3-9-05*     *Ronald M. Sohigian*

11                JUDGE OF THE LOS ANGELES SUPERIOR COURT

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.*
*5567 RESEDA BOULEVARD, SUITE 330*
*P.O. BOX 7033*
*TARZANA, CALIFORNIA 91357-7033*

2

FL-180

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
DEBRA VANIMAN CRAWFORD, SBN 116222
LAW OFFICES OF CRAWFORD & CRAWFORD
P.O. Box 373
SW Mission & 4th
Carmel, California 93921-0373
TELEPHONE NO.: 831-624-2422    FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name): LYDIA HARRIS

SUPERIOR COURT OF CALIFORNIA, COUNTY OF MONTEREY
STREET ADDRESS: 1200 Aguajito Road
MAILING ADDRESS: 1200 Aguajito Road
CITY AND ZIP CODE: Monterey, CA 93940
BRANCH NAME: MONTEREY

MARRIAGE OF
PETITIONER: MICHAEL RAY HARRIS

RESPONDENT: LYDIA HARRIS

**FILED**

DEC 2 3 2005

LISA M. GALDOS
CLERK OF THE SUPERIOR COURT
C.J. CAMACHO          DEPUTY

JUDGMENT
[X] DISSOLUTION    [ ] LEGAL SEPARATION    [ ] NULLITY
[ ] Status only
[ ] Reserving jurisdiction over termination of
    marital or domestic partnership status
[ ] Judgment on reserved issues          DEC 2 3 2005
Date marital or domestic partnership status ends: DATE OF FILE STAMP

CASE NUMBER:
DR 43369

1. [ ] This judgment [ ] contains personal conduct restraining orders [ ] modifies existing restraining orders.
   The restraining orders are contained on page(s) _____ of the attachment. They expire on (date): _____

2. This proceeding was heard as follows: [ ] Default or uncontested [ ] By declaration under Family Code section 2336
   [X] Contested
   a. Date: 11-14-05       Dept.: 13      Room: _____
   b. Judicial officer (name): ADRIENNE M. GROVER        [ ] Temporary judge
   c. [X] Petitioner present in court       [X] Attorney present in court (name): STEVEN M. GOLDBERG
   d. [X] Respondent present in court      [X] Attorney present in court (name): DEBRA V. CRAWFORD
   e. [ ] Claimant present in court (name): _____         [ ] Attorney present in court (name): _____
   f. [X] Other (specify name): Attorney for
          Petitioner:  DAN GOLDMAN

3. The court acquired jurisdiction of the respondent on (date): June 9, 2005
   a. [X] The respondent was served with process.
   b. [ ] The respondent appeared.

THE COURT ORDERS, GOOD CAUSE APPEARING
4. a. [X] Judgment of dissolution is entered. Marital or domestic partnership status is terminated and the parties are restored to the
         status of single persons
         (1) [X] on (specify date): SAME DATE AS FILE STAMP  DEC 2 3 2005
         (2) [ ] on a date to be determined on noticed motion of either party or on stipulation.
   b. [ ] Judgment of legal separation is entered.
   c. [ ] Judgment of nullity is entered. The parties are declared to be single persons on the ground of (specify):

   d. [ ] This judgment will be entered nunc pro tunc as of (date):
   e. [ ] Judgment on reserved issues.
   f. The [ ] petitioner's [ ] respondent's former name is restored to (specify):
   g. [ ] Jurisdiction is reserved over all other issues, and all present orders remain in effect except as provided below.
   h. [ ] This judgment contains provisions for child support or family support. Each party must complete and file with the court a
         Child Support Case Registry Form (form FL-191) within 10 days of the date of this judgment. The parents must notify the
         court of any change in the information submitted within 10 days of the change, by filing an updated form. The Notice
         of Rights and Responsibilities—Health Care Costs and Reimbursement Procedures and Information Sheet on Changing a
         Child Support Order (form FL-192) is attached.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
FL-180 [Rev. January 1, 2005]

JUDGMENT
(Family Law)

Legal
Solutions
Plus

Family Code, §§ 2024, 2340,
2343, 2346

DEC. 13. 2005 10:21AM RUSS AUGUST&KABAT        CRAWFORD & CRAWFORD        NO. 8028    P. 2/4

1   PURSUANT TO STIPULATION OF THE PARTIES RECITED IN COURT, IT IS HEREBY

2   ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

3

4       1.    Of the monies received by Respondent from Marion Knight to date, Sixty

5   Thousand ($60,000) shall be paid to an individual per agreement of the parties.  One

6   Hundred and Seventy-Nine Thousand Dollars ($179,000) shall be given to Petitioner

7   and Two Hundred Thousand Dollars ($200,000) shall be retained by Respondent.

8       Each party shall pay one-half of the copying costs for the Xenon case out of said

9   money.

10      Respondent shall put Two Hundred Six Thousand Dollars ($206,000) in escrow

11  for potential fees or costs in LASC Case BC 288857.

12      Each party shall pay taxes, if any, on their share of said money.

13      2.    Each party is awarded one-half of the net profits of the DVD on the

14  documentary "Welcome to Death Row."

15      3.    Any and all major decisions on the lawsuit regarding the "Welcome to Death

16  Row" documentary versus Xenon shall be made by the parties jointly.  The net proceeds

17  of said lawsuit shall be divided equally by the parties.  The costs shall be shared equally

18  by the parties and shall be advanced, if possible.  Respondent will keep Petitioner

19  advised of all developments in the case, and shall provide him with copies of all filed

20  documents to date at Petitioner's expense.

21      4.    Each party shall receive one-half of the net proceeds from the Battlecat

22  Judgment in LASC Case BC 288857, which was an arbitrated judgment.

23      Petitioner is awarded the Battlecat masters.  Respondent shall arrange for

24  shipment of said masters to Petitioner at his cost and direction.

25      Petitioner shall license the songs from the Battlecat masters in the documentary

26  "Married to the Game" to Respondent at no cost.  Each party shall be awarded one-half

27  of the net proceeds of the "Married to the Game" DVD, but Respondent shall have

28

Judgment; Marriage of Harris; DR 43369

DEC. 13. 2005 10:21AM RUSS AUGUST&KABAT    CRAWFORD & CRAWFORD    NO. 8029    P. 3/4

1  management and control over the "Married to the Game" DVD.  No salary shall be paid
2  to Respondent in determining net proceeds.

3      5.    The corporation KDA is awarded to Respondent.

4      6.    The restaurant Dasha's Soul Food is awarded to Respondent.

5      7.    The proceeds from the "Married to the Game" book is awarded to
6  Respondent.

7      8.    O Lydia, a company, is awarded to Respondent.  However, one-half of the
8  net proceeds from the "Married to the Game" DVD is awarded to each party.

9      9.    The parties shall cooperate to consolidate their ongoing business concerns
10 which are community property and from which they are each getting profits into a
11 company to be created called Harris Enterprises.

12     10.    The company Dream On Production is awarded to Respondent, except for
13 one-half of the net royalties from "Married to the Game" DVD shall be awarded to each
14 party.

15     11.    Petitioner's life story is awarded to Petitioner.

16     12.    Nu Image Media is awarded to Petitioner after the One Hundred Seven
17 Million Dollar judgment in LASC Case BC 288857 has been collected or compromised to
18 the satisfaction of Petitioner and Respondent.

19     13.    The proceeds of Los Angeles Superior Court Case BC 288857 are
20 community property.  The allocation to the parties is reserved as to how much of said
21 proceeds shall be awarded to each party.

22     The fees and costs to Casselmans' firm when they are determined shall be
23 divided between the parties on an equal basis.  Each party shall pay their own fees and
24 costs in the case of Casselman versus Harris which is Los Angeles Superior Court case
25 BC 340196.

26     14.    The issue of child support is reserved.

27     15.    Child custody jurisdiction is in the State of Texas.  The parties have stated

28

Judgment; Marriage of Harris; DR 43369                                      2

DEC. 13. 2005 10:22AM RUSS AUGUST&KABAT          CRAWFORD & CRAWFORD          NO. 9028    P. 4/404/04

1    their intent that Respondent will bring the child of the parties to visit Petitioner once

2    every two months until the child is 18 years of age.

3        16.    The parties jointly support a motion for the appointment of a receiver for the

4    collection of the judgment in LASC Case BC 268857.

5        17.    Each party shall pay their own attorneys fees and costs in this case to date.

6        18.    The Court reserves jurisdiction over the executory portions of this Judgment

7    including the formation of Harris Enterprises.

8        19.    The trial on the issue of the allocation of the proceeds of LASC Case BC

9    268857 is set for January 30, 2006, at 9:00 a.m. in Department 13 of this Court.

10       20.    The parties shall exchange Preliminary Declarations of Disclosure forthwith.

11   The Final Declarations of Disclosure are waived.

12   APPROVED AS TO FORM AND CONTENT:

13

14

15   STEVEN M. GOLDBERG,
     Attorney for Petitioner,
16   MICHAEL HARRIS

17

18

19   DEBRA VANIMAN CRAWFORD,
     Attorney for Respondent,
20   LYDIA HARRIS

21       12-23-05                    ADRIENNE M. GROVER,
22                                   Judge of the Superior Court

23

24

25

26

27

28

Judgment; Marriage of Harris; DR 43369                    3

1   Hon. Stephen E. Haberfeld, Discovery Referee
2   JAMS
    707 Wilshire Blvd., 46th Fl.
3   Los Angeles, CA 90017
    Tel.:    213-353-9711
4   Fax:    213-620-0100
    E-Mail: judgehaberfeld@comcast.net
5
6
7
8
9
10
11                      SUPERIOR COURT OF CALIFORNIA
12                          COUNTY OF MONTEREY
13
14   MICHAEL RAY HARRIS,                    Case No. DR 43369
15                      Petitioner,         REFEREE'S ORDER GRANTING
                                            PETITIONER'S MOTION TO COMPEL
16   vs.                                    MARION H. "SUGE" KNIGHT TO
                                            PRODUCE DOCUMENTS RESPONSIVE
17                                          TO PETITIONER'S FIRST SET OF
                                            REQUESTS FOR PRODUCTION OF
18   LYDIA HARRIS,                          DOCUMENTS
19                      Respondent.         Hearing
20                                          Date:    January 5, 2006
                                            Time:    5:15 p.m.
21                                          Place:   Via Conference Call
                                            Referee: Hon. Stephen E. Haberfeld
22
23
24       Petitioner Michael Ray Harris's ("Petitioner's") motion to compel Marion H. "Suge"
25   Knight ("Mr. Knight") to respond and produce documents responsive to Petitioner's first set
26   of requests for production of documents ("Motion") was expressly and specifically referred to
27   the undersigned discovery referee ("Referee") by the Court's Order, dated December 13, 2005 —
28   which also appointed the Referee.   Steven M. Goldberg, Esq. and Dan Goldman, Esq. of the

Referee1                                    1
                                  [PROPOSED] ORDER

1  law firm of Russ August & Kabat appeared and participated with the Referee in a telephonic

2  hearing on the Motion --- which hearing was set by stipulation, including the agreement of

3  Dermot D. Givens, Esq. counsel for Mr. Knight, during a telephonic Status Conference held on

4  January 4, 2006. Debra Crawford, Esq. of the law firm of Crawford & Crawford, counsel for

5  Respondent Lydia Harris in this proceeding --- having been apprised of the stipulated and

6  ordered telephonic hearing during the aforesaid Status Conference --- stated  that she did not

7  intend to participate in the hearing on the Motion.

8       Mr. Givens did not appear or participate in the hearing on the Motion, as agreed and

9  accordingly so ordered, or communicate with either the Referee or Petitioner's counsel after the

10 January 4, 2006 Status Conference and before or during the hearing on the Motion concerning

11 that hearing or at all.

12      All participants in the January 4, 2006 Status Conference knew the date, time and call-in

13 information for the hearing on the Motion.   Messrs. Goldberg and Goldman dialed in for the

14 telephonic hearing, as agreed and ordered, shortly after 5:15 p.m. (PT).  The Referee was already

15 on the line. After waiting for Mr. Givens for approximately five minutes, at approximately 5:20

16 p.m. (PT), the Referee stated that the Referee would go off line until the earlier of being

17 contacted that Mr. Givens had joined the conference call or 5:30 p.m. (PT), at which time the

18 Referee would dial back into the conference call and discuss with whoever was on the line at that

19 time what next to do.

20      At approximately 5:30 p.m. (PT) --- not having been contacted by anyone concerning that

21 or whether Mr. Givens had joined the conference call for the hearing --- the Referee dialed back

22 into the conference call and ascertained that Mr. Givens was not on the line.  Petitioner's

23 counsel, Mr. Goldberg, represented to the Referee that Mr. Givens had not joined the conference

24 call at any time prior to the Referee's re-joining the conference call at 5:30 p.m. (PT) and that

25 Mr. Goldberg had unsuccessfully tried to contact Mr. Givens about his joining the telephonic

26 hearing on the Motion during the approximately ten minute (5:20-5:30 p.m. (PT)) interval when

27 the Referee was off-line.  Mr. Goldberg represented that he had called Mr. Givens' cell phone

28 and that Mr. Givens did not answer, and Mr. Goldberg left a message, and that Mr. Goldberg

Referee

2

[PROPOSED] ORDER

1 additionally sent Mr. Givens an e-mail, but Mr. Givens did not respond or call in to the

2 conference call.

3     At approximately 5:35 p.m. (PT), the Referee ruled that --- in view of the above-

4 referenced facts and circumstances, and good cause appearing --- the stipulated and ordered

5 telephonic hearing on the Motion would go forward, and the Referee made the following ruling

6 and order concerning the Motion during the hearing which lasted until approximately 5:45 p.m.

7 (PT).

8     Based on careful consideration of the papers submitted by Petitioner and Mr. Knight in

9 support of and in opposition to Petitioner's motion to compel Mr. Knight to produce, without

10 objection, all documents responsive to Petitioner's First Set of Requests for Production of

11 Documents ("document request") and, after a hearing and good cause appearing, it is hereby

12 ORDERED as follows. Petitioner's motion to compel is granted as to the production of all

13 documents requested to be produced by Mr. Knight in Petitioner's document request. Mr.

14 Knight is hereby ordered to produce, without objection, all documents in his possession, custody

15 and/or control which are responsive to Petitioner's document request, immediately prior to the

16 commencement of the taking of Mr. Knight's ordered deposition on Tuesday, January 10, 2006

17 at 10:00 a.m., at JAMS, 707 Wilshire Boulevard, 46th Floor, Los Angeles, California 90017.

18 Petitioner's request for monetary sanctions in connection with the Motion is reserved.

19     Immediately prior to the conclusion of the hearing on the Motion, the Referee requested

20 that Petitioner's counsel prepare, submit to the Referee and disseminate to all participants in the

21 discovery reference, including the Wasserman Comden firm, a proposed form of order for the

22 Referee's review and signature, reflecting the Referee's rulings and orders made during the

23 hearing on the Motion.

24

25 DATED: January 6, 2006
                                       STEPHEN E. HABERFELD

26                                         Discovery Referee

27

28

PROOF OF SERVICE
STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 707 Wilshire Blvd. 46th Floor, Los Angeles, CA 90017.

On January 6, 2006, I served the foregoing document described as REFEREE'S ORDER GRANTING PETITIONER'S MOTION TO COMPEL MARION H. "SUGE" KNIGHT TO PRODUCE DOCUMENTS RESPONSIVE TO PETITIONER'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS in the matter of <u>MICHAEL RAY HARRIS V. LYDIA HARRIS</u> to interested parties in this action, as follows:

ORIGINAL FILED TO: (Via fax & mail)

Hon. Adrienne Grover
Monterey Courthouse
1200 Aguajito Road
Courtroom #13
Monterey, CA 93940
Fax: 831-647-5897

( SEE ATTACHED SERVICE LIST )

(X ) BY MAIL:  as follows: I am "readily familiar"  with the firm's practice of collection and processing of correspondence for mailing with the United States Postal Service.  I know that the correspondence was deposited with the United States Postal Service on the same day this declaration was executed in the ordinary course of business.  I know that the envelope was sealed and, with postage thereon fully prepaid, placed for collection and mailing on this date in the United States mail at Los Angeles, California.

(X )BY FACSIMILE TRANSMISSION:  I caused the above-referenced document(s)  to  be  transmitted  to  the  above-named person(s) at the telecopy numbers on the attached list.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on January 6, 2006.

_Geraldine C Yulo_
Geraldine C. Yulo

CA001 - JAMS, Inc.    Service List                                          1/6/2006

**THE RESOLUTION EXPERTS**

Reference # :        1220034123
Case Name :         Harris, Michael Ray vs. Harris, Lydia
Case Type:          FAMI
Referring Judge:
Panelist:           Haberfeld, Stephen R.,

---

**2        Goldberg, Steven M.**
Steven M. Goldberg                      ( Active )
Russ, August & Kabat                    PETI  Petitioner
12424 Wilshire Blvd.                         Main Phone # 310-826-7474
Suite 1200                                   Direct Phone #
Los Angeles, CA 90025                        FAX # 310-826-6991
sgoldberg@raklaw.com
Party Represented :

    Michael Ray Harris

---

**3        Givens, Dermot**
Dermot Givens                           ( Active )
L/O Dermot Givens                       RESP  Respondent
433 Camden Dr.                               Main Phone # 310-854-8823
Suite 600                                    Direct Phone #
Beverly Hills, CA 90210                      FAX # 323-878-0416
dermotg@aol.com
Party Represented :

    Marion Knight
    Death Row Records Inc.

---

**4        Crawford, Debra Vaniman**
Debra Vaniman Crawford                   ( Active )
Crawford & Crawford                      RESP  Respondent
P.O. Box 373                                 Main Phone # 831-624-2422
SW Mission & 4th                             Direct Phone #
Carmel, CA  93921                            FAX # 831-624-2428
Debra@Divorce-123.com
Party Represented :

    Lydia Harris

---

**5        Goldman, Dan**
Dan  Goldman                             ( Active )
Russ, August & Kabat                     PETI  Petitioner
12424 Wilshire Blvd.                         Main Phone # 310-826-7474
Suite 1200                                   Direct Phone #
Los Angeles, CA  90025                       FAX # 310-826-6991
dwgoldman@raklaw.com
Party Represented :

    Michael Ray Harris

---



**CA001 - JAMS, Inc.**    Service List                                    1/6/2006

6        **Comden, Leonard J.**        THE RESOLUTION EXPERTS
Leonard J. Comden                       ( Active )
Wasserman, Comden, Casselman & Pearson   RESP  Respondent
5567 Reseda Blvd., Suite 330                        Main Phone # 818-705-6800
PO Box 7033                                          Direct Phone #
Tarzana, CA  91357-7033                                  FAX # 818-345-0162
lcomden@wccplaw.com
Party Represented :

    Wasserman, Comden, Casselman & Pearson

P. 1

* * * Transmission Result Report(MemoryTX) ( Jan. 6. 2006  2:49PM ) * * *

Date/Time: Jan. 6. 2006  2:13PM

| File No. Mode | Destination | Pg(s) | Result | Page No! Sent |
|---|---|---|---|---|
| 4540 Memory TX | 18315475891 — REFAXED to CourT | P. 7 | E-3) 3) | |
| | Judge Haberfeld | | OK | |
| | 13108266991 | | OK | |
| | 13238780416 — CORRECT # GIVENS | | E-2) 2) 2) 2) 2) | P. 1-7 |
| | 18316242428 — CRAWFORD | | E-3) 3) | P. 1-7 |
| | 13108266991 | | OK | |
| | 18183450162 | | OK | |

------------------------------------------------------------------
Reason for error
  E. 1) Hang up or line fail          E. 2) Busy
  E. 3) No answer                     E. 4) No facsimile connection



January 6, 2006                                    Total Pages: 7
                                                   VIA FAX & U.S. MAIL

Hon. Adrienne Grover
Monterey Courthouse
1200 Aguajito Road
Courtroom #13
Monterey, CA 93940
Fax: 831-647-5837

    Re:   Harris, Michael Ray v. Harris Lydia
    Case: DR 43269
    JAMS: 1220034123

Dear Judge Grover:

    Attached please find Judge Stephen Haberfeld's Referee's Order for your review and would fax to One.

    Due to the production date and time of this coming Tuesday morning, the attached Order is being faxed and mailed to you and all counsel.

    Thank you for your attention. Please feel free to contact me should you have any questions at 213-253-9711.

Sincerely,

Owanleye Yola
Sr. Case Manager to -
Judge Stephen Haberfeld, Discovery Referee
oyola@jamsadr.com

    cc:   all counsel

### PROOF OF SERVICE

STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

     I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is:  12424 Wilshire Boulevard, 12th Floor, Los Angeles, California 90025.

     On May 4, 2006 I caused to be served the foregoing document described as PROOF OF CLAIM on interested parties in this action

☑    by placing true copies thereof enclosed in sealed envelopes addressed as stated on the attached mailing list.

☐    by placing ☐ the original ☐ a true copy thereof enclosed in sealed envelopes addressed as follows:

**SERVICE NAME/ADDRESS**

☑    BY MAIL

☐    I deposited such in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

☑    As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with U.S. Postal Service on same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☑    Federal: I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

     Executed on May 4, 2006 at Los Angeles, California.

NICOLE JONES

2714-01 POS-DR-special

## SERVICE LIST

| | |
|---|---|
| Daniel McCarthy, Esq.<br>Hill, Farrer & Burrill LLP<br>300 S. Grand Avenue, 37th floor<br>Los Angeles, CA 90071 | *Attorney for Debtor, Marion H. Knight, Jr.* |
| Marion H. Knight, Jr.<br>PO Box 3037<br>Beverly Hills, CA 90212 | *Debtor* |
| Alvin Mar, Esq.<br>Office of the US Trustee<br>725 S. Figueroa Street, 26th floor<br>Los Angeles, CA 90017 | *Trustee* |

2714-01 POS-DR-special

EXHIBIT 6B

EXHIBIT 6B

Form B10 (Official Form 10) (10/05)

| **United States Bankruptcy Court**    Central District of California | | **PROOF OF CLAIM** |
|---|---|---|

| Name of Debtor<br><br>DEATH ROW RECORDS, | Case Number<br><br>2:06-bk-11205 EC | |

**NOTE:** This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br><br>MICHAEL RAY HARRIS | ❏ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. | **FILED**<br><br>MAY - 4 2006<br><br>CLERK U.S. BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA<br>Deputy Clerk |
| Name and address where notices should be sent:<br>Steven M. Goldberg, Esq.<br>Russ August & Kabat<br>12424 Wilshire Bl., #1200<br>Los Angeles, CA 90025<br>Telephone number: | ❏ Check box if you have never received any notices from the bankruptcy court in this case. | |
| | ❏ Check box if the address differs from the address on the envelope sent to you by the court. | This space is for Court use only. |

| Last four digits of account or other number by which creditor identifies debtor:    (310) 826-7474 | Check here ❏ replaces<br>if this claim ❏ amends    a previously filed claim, dated: _____ |

| **1. Basis for Claim**<br>❏ Goods sold<br>❏ Services performed<br>❏ Money loaned<br>❏ Personal injury/wrongful death<br>❏ Taxes<br>☒ Other Court Judgment | ❏ Retiree benefits as defined in 11 U.S.C. § 1114(a)<br>❏ Wages, salaries, and compensation (Fill out below)<br>Last four digits of your Social Security number: _____<br>Unpaid compensation for services performed<br>from _____ to _____<br>     (date)     (date) |

| **2. Date debt was incurred:**    3/9/2005 | **3. If court judgment, date obtained:** March 9, 2005 |

**4. Total Amount of Claim at Time Case Filed:**    $117,318,631.50    $_____    $_____    $117,318,631.50
                                            (unsecured)      (secured)     (priority)     (Total)

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 6 below.
❏ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

| **5. Secured Claim.**<br>❏ Check this box if your claim is secured by collateral (including a right of setoff).<br><br>Brief Description of Collateral:<br>❏ Real Estate    ❏ Motor Vehicle<br>❏ Other _____<br><br>Value of Collateral:    $_____<br><br>Amount of arrearage and other charges at time case filed included in secured claim, if any $_____<br>**6. Unsecured Nonpriority Claim.**    $117,318,631.50<br>☒ Check this box if (a) there is no collateral or lien securing your claim, or (b) your claim exceeds the value of the property securing it or (c) none or only part of your claim is entitled to priority. | **7. Unsecured Priority Claim.**<br>❏ Check this box if you have an unsecured priority claim, all or part of which is entitled to priority.<br>Amount entitled to priority  $_____<br>Specify the priority of the claim:<br>❏ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).<br>❏ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).<br>❏ Up to $2,225* of deposits toward purchase, lease or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).<br>❏ Domestic support obligations under - 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).<br>❏ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).<br>❏ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).<br>*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. $10,000 and 180-day limits apply to cases filed on or after 4/20/05. Pub. L. 109-8 |

| **8.** **Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.<br>**9.** **Supporting Documents:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.<br>**10.** **Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim. | This space is for Court use only. |

| Date | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): |

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## ITEMIZATION OF ADDITIONAL CHARGES

Original Judgment: $107,000,000 (see attached Judgment in LASC Case No. BC 268857)

Statutory Interest: 10% per annum as follows—

$29,315.07 per day from entry of judgment (March 9, 2005) through payment of $1,000,000 on May 27, 2005 = $2,315,890.50.

$29,041.10 (daily rate of interest on reduced amount of judgment ($106,000,000)) per day from May 27, 2005 to date case filed, April 04, 2006 = $9,002,741.00.

Total Statutory Interest: $11,318,631.50.

Total payments against judgment by debtor: $1,000,000.

Total claim as of date case filed: $117,318,631.50

F.D.

1  DAVID B. CASSELMAN (SBN 81657)
   I. DONALD WEISSMAN (SBN 67980)
2  WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
   5567 Reseda Boulevard, Suite 330
3  Post Office Box 7033
   Tarzana, California 91357-7033
4  Telephone:  (818) 705-6800 • (323) 872-0995
   Facsimile:  (818) 705-8147
5
   Attorneys for Plaintiffs
6  LYDIA HARRIS and NEW IMAGE MEDIA
   CORPORATION
7

**FILED**
LOS ANGELES SUPERIOR COURT

MAR 0 9 2005

JOHN A. CLARKE, CLERK

By: _____
R. CASTLE

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                   FOR THE COUNTY OF LOS ANGELES

10

11  LYDIA HARRIS, LIFESTYLE            )    CASE NO. BC 268857
    RECORDS, INC., AND NEW IMAGE      )
12  MEDIA CORP.,                      )
                                      )    Case Assigned to:
13              Plaintiffs,           )    Judge Ronald M. Sohigian - Dept. 41
                                      )
14      v.                            )    [Complaint Filed:  February 26, 2002]
                                      )
15  KEVIN GILLIAM AKA BATTLECAT;      )
    MARION H. KNIGHT AKA SUGE         )
16  KNIGHT; DEATH ROW RECORDS;        )          JUDGMENT
    THA ROW, INC.; DAVID E. KENNER;   )
17  DAVID E. KENNER PROFESSIONAL      )
    LAW CORPORATION; DAVID E.         )
18  KENNER, A PROFESSIONAL            )
    CORPORATION; THE DAVID E.         )
19  KENNER TRUST; INTERSCOPE          )
    RECORDS; JIMMY IOVINE; JOHN T.    )
20  MCCLAIN, JR.; A&M RECORDS; ET     )
    AL.,                              )
21                                    )
               Defendants.            )
22  _____  )

23      Upon the Order striking the Answer of MARION H. KNIGHT, aka SUGE KNIGHT, and

24  DEATH ROW RECORDS, INC., ~~AND DEATH ROW RECORDS, L.L.C., AND THA ROW, INC.,~~

25  to Plaintiffs' Complaint and entering default thereon, consideration of the Plaintiffs' Application

26  for Default Prove-up Damages and the supporting declarations of Lydia Harris, I. Donald

27  Weissman, Michael Harris and Phil Ames, and good cause appearing therefor,

28

JUDGMENT

1       IT IS HEREBY ADJUDGED that judgment is entered in favor of plaintiffs, LYDIA

2   HARRIS and NEW IMAGE MEDIA CORP., and against defendants, MARION H. KNIGHT

3   aka SUGE KNIGHT/DEATH ROW RECORDS, INC., aka DEATH ROW RECORDS, L.C.,

4   and THA ROW, INC., in the sum of $ 45,000,000 for economic damages,

5   $ 2,000,000 for non-economic damages, $ 60,000,000 for punitive damages,

6

7       Further, PLAINTIFFS to recover costs pursuant to a memorandum of costs to be filed

8   pursuant to the statute in the amount of $ _____

9

10  Dated: 3-9-05

11                          JUDGE OF THE LOS ANGELES SUPERIOR COURT

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
P.O. BOX 7033
TARZANA, CALIFORNIA 91357-7033

2

FL-180

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
DEBRA VANIMAN CRAWFORD, SBN 116222
LAW OFFICES OF CRAWFORD & CRAWFORD
P.O. Box 373
SW Mission & 4th
Carmel, California 93921-0373
TELEPHONE NO.: 831-624-2422        FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name): LYDIA HARRIS

SUPERIOR COURT OF CALIFORNIA, COUNTY OF MONTEREY
STREET ADDRESS: 1200 Aguajito Road
MAILING ADDRESS: 1200 Aguajito Road
CITY AND ZIP CODE: Monterey, CA 93940
BRANCH NAME: MONTEREY

MARRIAGE OF
PETITIONER: MICHAEL RAY HARRIS

RESPONDENT: LYDIA HARRIS

FOR COURT USE ONLY

**FILED**

DEC 23 2005

LISA M. GALDOS
CLERK OF THE SUPERIOR COURT
C.I. CAMACHO        DEPUTY

| JUDGMENT | CASE NUMBER: |
|---|---|
| [X] DISSOLUTION    [ ] LEGAL SEPARATION    [ ] NULLITY | |
| [ ] Status only | DR 43369 |
| [ ] Reserving jurisdiction over termination of marital or domestic partnership status | |
| [ ] Judgment on reserved issues    DEC 23 2005 | |
| Date marital or domestic partnership status ends: DATE OF FILE STAMP | |

1. [ ] This judgment [ ] contains personal conduct restraining orders. [ ] modifies existing restraining orders.
   The restraining orders are contained on page(s) _____ of the attachment. They expire on (date):

2. This proceeding was heard as follows: [ ] Default or uncontested [ ] By declaration under Family Code section 2336
   [X] Contested
   a. Date: 11-14-05        Dept.: 13        Room:
   b. Judicial officer (name): ADRIENNE M. GROVER        [ ] Temporary judge
   c. [X] Petitioner present in court        [X] Attorney present in court (name): STEVEN M. GOLDBERG
   d. [X] Respondent present in court        [X] Attorney present in court (name): DEBRA V. CRAWFORD
   e. [ ] Claimant present in court (name):        [ ] Attorney present in court (name):
   f. [X] Other (specify name): Attorney for
      Petitioner: DAN GOLDMAN

3. The court acquired jurisdiction of the respondent on (date): June 9, 2005
   a. [X] The respondent was served with process.
   b. [ ] The respondent appeared.

THE COURT ORDERS, GOOD CAUSE APPEARING

4. a. [X] Judgment of dissolution is entered. Marital or domestic partnership status is terminated and the parties are restored to the status of single persons
      (1) [X] on (specify date): SAME DATE AS FILE STAMP    DEC 23 2005
      (2) [ ] on a date to be determined on noticed motion of either party or on stipulation.
   b. [ ] Judgment of legal separation is entered.
   c. [ ] Judgment of nullity is entered. The parties are declared to be single persons on the ground of (specify):

   d. [ ] This judgment will be entered nunc pro tunc as of (date):
   e. [ ] Judgment on reserved issues.
   f. The [ ] petitioner's [ ] respondent's former name is restored to (specify):
   g. [ ] Jurisdiction is reserved over all other issues, and all present orders remain in effect except as provided below.
   h. [ ] This judgment contains provisions for child support or family support. Each party must complete and file with the court a Child Support Case Registry Form (form FL-191) within 10 days of the date of this judgment. The parents must notify the court of any change in the information submitted within 10 days of the change, by filing an updated form. The Notice of Rights and Responsibilities—Health Care Costs and Reimbursement Procedures and Information Sheet on Changing a Child Support Order (form FL-192) is attached.

Page 1 of 2

| Form Adopted for Mandatory Use Judicial Council of California FL-180 [Rev. January 1, 2005] | JUDGMENT (Family Law) | Legal Solutions Plus | Family Code, §§ 2024, 2340, 2343, 2346 |

DEC. 13. 2005 10:21AM RUSS AUGUST&KABAT    CRAWFORD & CRAWFORD    NO. 8028    P. 2/4

PURSUANT TO STIPULATION OF THE PARTIES RECITED IN COURT, IT IS HEREBY
ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1.    Of the monies received by Respondent from Marion Knight to date, Sixty
Thousand ($60,000) shall be paid to an individual per agreement of the parties. One
Hundred and Seventy-Nine Thousand Dollars ($179,000) shall be given to Petitioner
and Two Hundred Thousand Dollars ($200,000) shall be retained by Respondent.

Each party shall pay one-half of the copying costs for the Xenon case out of said
money.

Respondent shall put Two Hundred Six Thousand Dollars ($206,000) in escrow
for potential fees or costs in LASC Case BC 288857.

Each party shall pay taxes, if any, on their share of said money.

2.    Each party is awarded one-half of the net profits of the DVD on the
documentary "Welcome to Death Row."

3.    Any and all major decisions on the lawsuit regarding the "Welcome to Death
Row" documentary versus Xenon shall be made by the parties jointly. The net proceeds
of said lawsuit shall be divided equally by the parties. The costs shall be shared equally
by the parties and shall be advanced, if possible. Respondent will keep Petitioner
advised of all developments in the case, and shall provide him with copies of all filed
documents to date at Petitioner's expense.

4.    Each party shall receive one-half of the net proceeds from the Battlecat
Judgment in LASC Case BC 288857, which was an arbitrated judgment.

Petitioner is awarded the Battlecat masters. Respondent shall arrange for
shipment of said masters to Petitioner at his cost and direction.

Petitioner shall license the songs from the Battlecat masters in the documentary
"Married to the Game" to Respondent at no cost. Each party shall be awarded one-half
of the net proceeds of the "Married to the Game" DVD, but Respondent shall have

Judgment; Marriage of Harris; DR 43369

DEC. 13. 2005 10:21AM RUSS AUGUST&KABAT    CRAWFORD & CRAWFORD    NO. 8028    P. 3/4

1    management and control over the "Married to the Game" DVD. No salary shall be paid
2    to Respondent in determining net proceeds.
3        5.    The corporation KDA is awarded to Respondent.
4        6.    The restaurant Dasha's Soul Food is awarded to Respondent.
5        7.    The proceeds from the "Married to the Game" book is awarded to
6    Respondent.
7        8.    O Lydia, a company, is awarded to Respondent. However, one-half of the
8    net proceeds from the "Married to the Game" DVD is awarded to each party.
9        9.    The parties shall cooperate to consolidate their ongoing business concerns
10   which are community property and from which they are each getting profits into a
11   company to be created called Harris Enterprises.
12       10.    The company Dream On Production is awarded to Respondent, except for
13   one-half of the net royalties from "Married to the Game" DVD shall be awarded to each
14   party.
15       11.    Petitioner's life story is awarded to Petitioner.
16       12.    Nu Image Media is awarded to Petitioner after the One Hundred Seven
17   Million Dollar judgment in LASC Case BC 288857 has been collected or compromised to
18   the satisfaction of Petitioner and Respondent.
19       13.    The proceeds of Los Angeles Superior Court Case BC 268857 are
20   community property. The allocation to the parties is reserved as to how much of said
21   proceeds shall be awarded to each party.
22       The fees and costs to Casselmans' firm when they are determined shall be
23   divided between the parties on an equal basis. Each party shall pay their own fees and
24   costs in the case of Casselman versus Harris which is Los Angeles Superior Court case
25   BC 340196.
26       14.    The issue of child support is reserved.
27       15.    Child custody jurisdiction is in the State of Texas. The parties have stated
28

Judgment; Marriage of Harris; DR 43369    2

DEC. 13. 2005 10:22AM LAW OFFICES RUSS AUGUST & KABAT    CRAWFORD & CRAWFORD    NO. 9028    P. 4/484/84

1    their intent that Respondent will bring the child of the parties to visit Petitioner once

2    every two months until the child is 18 years of age.

3        16.    The parties jointly support a motion for the appointment of a receiver for the

4    collection of the judgment in LASC Case BC 268857.

5        17.    Each party shall pay their own attorneys fees and costs in this case to date.

6        18.    The Court reserves jurisdiction over the executory portions of this Judgment

7    including the formation of Harris Enterprises.

8        19.    The trial on the issue of the allocation of the proceeds of LASC Case BC

9    268857 is set for January 30, 2006, at 8:00 a.m. in Department 13 of this Court.

10        20.    The parties shall exchange Preliminary Declarations of Disclosure forthwith.

11    The Final Declarations of Disclosure are waived.

12    APPROVED AS TO FORM AND CONTENT:

13

14

15    STEVEN M. GOLDBERG,
    Attorney for Petitioner,
16    MICHAEL HARRIS

17

18

19    DEBRA VANIMAN CRAWFORD,
    Attorney for Respondent,
20    LYDIA HARRIS

21    12-23-05                    ADRIENNE M. GROVER,

22                        Judge of the Superior Court

23

24

25

26

27

28

Judgment; Marriage of Harris; DR 43369                    3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Hon. Stephen E. Haberfeld, Discovery Referee
JAMS
707 Wilshire Blvd., 46th Fl.
Los Angeles, CA 90017
Tel.:   213-353-9711
Fax:    213-620-0100
E-Mail: judgehaberfeld@comcast.net

## SUPERIOR COURT OF CALIFORNIA

## COUNTY OF MONTEREY

| | |
|---|---|
| MICHAEL RAY HARRIS, | Case No. DR 43369 |
| Petitioner, | **REFEREE'S ORDER GRANTING PETITIONER'S MOTION TO COMPEL MARION H. "SUGE" KNIGHT TO PRODUCE DOCUMENTS RESPONSIVE TO PETITIONER'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS** |
| vs. | |
| LYDIA HARRIS, | |
| Respondent. | |

Hearing
Date:   January 5, 2006
Time:   5:15 p.m.
Place:  Via Conference Call
Referee: Hon. Stephen E. Haberfeld

Petitioner Michael Ray Harris's ("Petitioner's") motion to compel Marion H. "Suge" Knight ("Mr. Knight") to respond and produce documents responsive to Petitioner's first set of requests for production of documents ("Motion") was expressly and specifically referred to the undersigned discovery referee ("Referee") by the Court's Order, dated December 13, 2005 -- which also appointed the Referee.   Steven M. Goldberg, Esq. and Dan Goldman, Esq. of the

Referral                                    1
                                  [PROPOSED] ORDER

1    law firm of Russ August & Kabat appeared and participated with the Referee in a telephonic

2    hearing on the Motion --- which hearing was set by stipulation, including the agreement of

3    Dermot D. Givens, Esq. counsel for Mr. Knight, during a telephonic Status Conference held on

4    January 4, 2006. Debra Crawford, Esq. of the law firm of Crawford & Crawford, counsel for

5    Respondent Lydia Harris in this proceeding --- having been apprised of the stipulated and

6    ordered telephonic hearing during the aforesaid Status Conference --- stated that she did not

7    intend to participate in the hearing on the Motion.

8        Mr. Givens did not appear or participate in the hearing on the Motion, as agreed and

9    accordingly so ordered, or communicate with either the Referee or Petitioner's counsel after the

10    January 4, 2006 Status Conference and before or during the hearing on the Motion concerning

11    that hearing or at all.

12        All participants in the January 4, 2006 Status Conference knew the date, time and call-in

13    information for the hearing on the Motion. Messrs. Goldberg and Goldman dialed in for the

14    telephonic hearing, as agreed and ordered, shortly after 5:15 p.m. (PT). The Referee was already

15    on the line. After waiting for Mr. Givens for approximately five minutes, at approximately 5:20

16    p.m. (PT), the Referee stated that the Referee would go off line until the earlier of being

17    contacted that Mr. Givens had joined the conference call or 5:30 p.m. (PT), at which time the

18    Referee would dial back into the conference call and discuss with whoever was on the line at that

19    time what next to do.

20        At approximately 5:30 p.m. (PT) --- not having been contacted by anyone concerning that

21    or whether Mr. Givens had joined the conference call for the hearing --- the Referee dialed back

22    into the conference call and ascertained that Mr. Givens was not on the line. Petitioner's

23    counsel, Mr. Goldberg, represented to the Referee that Mr. Givens had not joined the conference

24    call at any time prior to the Referee's re-joining the conference call at 5:30 p.m. (PT) and that

25    Mr. Goldberg had unsuccessfully tried to contact Mr. Givens about his joining the telephonic

26    hearing on the Motion during the approximately ten minute (5:20-5:30 p.m. (PT)) interval when

27    the Referee was off-line. Mr. Goldberg represented that he had called Mr. Givens' cell phone

28    and that Mr. Givens did not answer, and Mr. Goldberg left a message, and that Mr. Goldberg

2

[PROPOSED] ORDER

1    additionally sent Mr. Givens an e-mail, but Mr. Givens did not respond or call in to the

2    conference call.

3        At approximately 5:35 p.m. (PT), the Referee ruled that --- in view of the above-

4    referenced facts and circumstances, and good cause appearing --- the stipulated and ordered

5    telephonic hearing on the Motion would go forward, and the Referee made the following ruling

6    and order concerning the Motion during the hearing which lasted until approximately 5:45 p.m.

7    (PT).

8        Based on careful consideration of the papers submitted by Petitioner and Mr. Knight in

9    support of and in opposition to Petitioner's motion to compel Mr. Knight to produce, without

10    objection, all documents responsive to Petitioner's First Set of Requests for Production of

11    Documents ("document request") and, after a hearing and good cause appearing, it is hereby

12    ORDERED as follows. Petitioner's motion to compel is granted as to the production of all

13    documents requested to be produced by Mr. Knight in Petitioner's document request. Mr.

14    Knight is hereby ordered to produce, without objection, all documents in his possession, custody

15    and/or control which are responsive to Petitioner's document request, immediately prior to the

16    commencement of the taking of Mr. Knight's ordered deposition on Tuesday, January 10, 2006

17    at 10:00 a.m., at JAMS, 707 Wilshire Boulevard, 46th Floor, Los Angeles, California 90017.

18    Petitioner's request for monetary sanctions in connection with the Motion is reserved.

19        Immediately prior to the conclusion of the hearing on the Motion, the Referee requested

20    that Petitioner's counsel prepare, submit to the Referee and disseminate to all participants in the

21    discovery reference, including the Wasserman Comden firm, a proposed form of order for the

22    Referee's review and signature, reflecting the Referee's rulings and orders made during the

23    hearing on the Motion.

24

25    DATED: January 6, 2006

                                     STEPHEN E. HABERFELD

26                                       Discovery Referee

27

28

   Refusal                         3

                     [PROPOSED] ORDER

## PROOF OF SERVICE
### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 707 Wilshire Blvd. 46th Floor, Los Angeles, CA 90017.

On January 6, 2006, I served the foregoing document described as REFEREE'S ORDER GRANTING PETITIONER'S MOTION TO COMPEL MARION H. "SUGE" KNIGHT TO PRODUCE DOCUMENTS RESPONSIVE TO PETITIONER'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS in the matter of MICHAEL RAY HARRIS V. LYDIA HARRIS to interested parties in this action, as follows:

ORIGINAL FILED TO: (Via fax & mail)

Hon. Adrienne Grover
Monterey Courthouse
1200 Aguajito Road
Courtroom #13
Monterey, CA 93940
Fax: 831-647-5897

( SEE ATTACHED SERVICE LIST )

(X ) BY MAIL: as follows: I am "readily familiar" with the firm's practice of collection and processing of correspondence for mailing with the United States Postal Service. I know that the correspondence was deposited with the United States Postal Service on the same day this declaration was executed in the ordinary course of business. I know that the envelope was sealed and, with postage thereon fully prepaid, placed for collection and mailing on this date in the United States mail at Los Angeles, California.

(X )BY FACSIMILE TRANSMISSION: I caused the above-referenced document(s) to be transmitted to the above-named person(s) at the telecopy numbers on the attached list.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on January 6, 2006.

_Geraldine C. Yulo_
Geraldine C. Yulo

**CA001 - JAMS, Inc.**    Service List

JAMS

THE RESOLUTION EXPERTS

1/6/2006

| | |
|---|---|
| Reference # : | 1220034123 |
| Case Name : | Harris, Michael Ray vs. Harris, Lydia |
| Case Type: | FAMI |
| Referring Judge: | |
| Panelist: | Haberfeld, Stephen E., |

---

**2      Goldberg, Steven M.**

Steven M. Goldberg                     ( Active )
Russ, August & Kabat                   PETI   Petitioner
12424 Wilshire Blvd.                                Main Phone # 310-826-7474
Suite 1200                                          Direct Phone #
Los Angeles, CA  90025                              FAX # 310-826-6991
sgoldberg@rakiaw.com
Party Represented :

    Michael Ray Harris

---

**3      Givens, Dermot**

Dermot Givens                          ( Active )
L/O Dermot Givens                      RESP   Respondent
433 Camden Dr.                                      Main Phone # 310-854-8823
Suite 600                                           Direct Phone #
Beverly Hills, CA  90210                            FAX # 323-878-0416
dermotg@aol.com
Party Represented :

    Marion Knight
    Death Row Records Inc.

---

**4      Crawford, Debra Vaniman**

Debra Vaniman Crawford                 ( Active )
Crawford & Crawford                    RESP   Respondent
P.O. Box 373                                        Main Phone # 831-624-2422
SW Mission & 4th                                    Direct Phone #
Carmel, CA  93921                                   FAX # 831-624-2428
Debra@Divorce-123.com
Party Represented :

    Lydia Harris

---

**5      Goldman, Dan**

Dan  Goldman                           ( Active )
Russ, August & Kabat                   PETI   Petitioner
12424 Wilshire Blvd.                                Main Phone # 310-826-7474
Suite 1200                                          Direct Phone #
Los Angeles, CA  90025                              FAX # 310-826-6991
dwgoldman@rakiaw.com
Party Represented :

    Michael Ray Harris

---

**CA001 - JAMS, Inc.**    Service List

1/6/2006

THE RESOLUTION EXPERTS

6        **Comden, Leonard J.**
Leonard J. Comden
Wasserman, Comden, Casselman & Pearson
5567 Reseda Blvd., Suite 330
PO Box 7033
Tarzana, CA 91357-7033
lcomden@wccplaw.com
Party Represented :

( Active )
RESP  Respondent
        Main Phone # 818-705-6800
        Direct Phone #
        FAX # 818-345-0162

    Wasserman, Comden, Casselman & Pearson

## PROOF OF SERVICE

STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

     I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 12424 Wilshire Boulevard, 12th Floor, Los Angeles, California 90025.

     On May 4, 2006 I caused to be served the foregoing document described as PROOF OF CLAIM on interested parties in this action

☑    by placing true copies thereof enclosed in sealed envelopes addressed as stated on the attached mailing list.

☐    by placing ☐ the original ☐ a true copy thereof enclosed in sealed envelopes addressed as follows:

**SERVICE NAME/ADDRESS**

☑    BY MAIL

☐    I deposited such in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

☑    As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☑    Federal: I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

     Executed on May 4, 2006 at Los Angeles, California.

_____
NICOLE JONES

2714-01 POS-DR-special

1

2

### SERVICE LIST

3     Robert S. Altagen, Esq.                    *Attorney for Debtor, Death Row*
      111 Corporate Center Drive, Ste. 201       *Records*
      Monterey Park, CA 91754

4

5     Death Row Records, Inc.                     *Debtor*
      PO Box 3037
      Beverly Hills, CA 90212

6

7     Office of the US Trustee                    *Trustee*
      725 S. Figueroa Street, 26th floor
      Los Angeles, CA 90017

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2714-01 POS-DR-special

EXHIBIT 7

(Filed Under Seal 08/08/2013 ECF Docket No. 63)

EXHIBIT 7

(Filed Under Seal 08/08/2013 ECF Docket No. 63)

EXHIBIT 8 A

EXHIBIT 8 A

Case 2:06-bk-11187-VZ    Claim 16-1    Filed 10/19/06    Desc Main Document    Page 1
of 16

**ORIGINAL**

Form B10 (Official Form 10) (10/05)

| United States Bankruptcy Court    Central District of California | PROOF OF CLAIM |
|---|---|

| Name of Debtor  MARION KNIGHT, JR. aka SUGE KNIGHT | Case Number LA 06-11187-EC |
|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| Name of Creditor (The person or other entity to whom the debtor owes money or property): LYDIA HARRIS | ☒ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. | FILED OCT 1 9 2006 CLERK, U.S. CENTRAL DIS... BY |
|---|---|---|
| Name and address where notices should be sent: SHARON Z. WEISS (State Bar No. 169446) WEINSTEIN, WEISS & ORDUBEGIAN LLP 1925 Century Park East, Suite 1150 Los Angeles, CA 90067-2712 Telephone number: (310) 203-9393 | ☐ Check box if you have never received any notices from the bankruptcy court in this case. ☐ Check box if the address differs from the address on the envelope sent to you by the court. | This space is for Court use only. |
| Last four digits of account or other number by which creditor identifies debtor: | Check here ☐ replaces if this claim ☐ amends    a previously filed claim, dated: _____ | |

| 1. Basis for Claim ☐ Goods sold ☐ Services performed ☐ Money loaned ☒ Personal Injury/wrongful death ☐ Taxes ☐ Other _____ | ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a) ☐ Wages, salaries, and compensation (Fill out below) Last four digits of your Social Security number: _____ Unpaid compensation for services performed from _____ to _____ (date)       (date) |
|---|---|

| 2. Date debt was incurred:  Dec. 15, 1992 - Feb. 26, 2002 | 3. If court judgment, date obtained:  March 9, 2005 |
|---|---|

**4. Total Amount of Claim at Time Case Filed:**   $ 107 million*   $_____   $_____   $_____
                                                            (unsecured)   (secured)   (priority)   (Total)

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.  * In excess of $107 million - some or all may be secured.

| 5. Secured Claim. ☐ Check this box if your claim is secured by collateral (including a right of setoff). Brief Description of Collateral: ☐ Real Estate    ☐ Motor Vehicle ☐ Other _____ Value of Collateral:  $_____ Amount of arrearage and other charges at time case filed included in secured claim, if any $_____ 6. Unsecured Nonpriority Claim.    $107 million ☒ Check this box if (a) there is no collateral securing your claim, or (b) your claim exceeds the value of the property securing it or (c) none or only part of your claim is entitled to priority. • See above. | 7. Unsecured Priority Claim. ☐ Check this box if you have an unsecured priority claim, all or part of which is entitled to priority. Amount entitled to priority  $_____ Specify the priority of the claim: ☐ Wages, salaries, or commissions (up to $10,000), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4). ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5). ☐ Up to $2,225* of deposits toward purchase, lease or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7). ☐ Domestic support obligations under - 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8). ☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(_____). *Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. $10,000 and 180-day limits apply to cases filed on or after 4/20/05. Pub. L. 109-8 |
|---|---|

| 8. Credits: The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim. 9. Supporting Documents: Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary. 10. Date-Stamped Copy: To receive an acknowledgment of the filing of your proof of claim, enclose a stamped, self-addressed envelope and copy of this proof of claim. | This space is for Court use only. |
|---|---|

| Date Sep ____, 2006 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): LYDIA HARRIS |
|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

*F.O.*

1  DAVID B. CASSELMAN (SBN 81657)
   I.DONALD WEISSMAN (SBN 67980)
2  WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
   5567 Reseda Boulevard, Suite 330
3  Post Office Box 7033
   Tarzana, California 91357-7033
4  Telephone:   (818) 705-6800 • (323) 872-0995
   Facsimile:    (818) 705-8147
5
6  Attorneys for Plaintiffs
   LYDIA HARRIS and NEW IMAGE MEDIA
7  CORPORATION

**FILED**
LOS ANGELES SUPERIOR COURT

MAR 0 9 2005

JOHN A. CLARKE, CLERK
By: _____
     R. CASTLE

8        SUPERIOR COURT OF THE STATE OF CALIFORNIA

9            FOR THE COUNTY OF LOS ANGELES

10

11  LYDIA HARRIS, LIFESTYLE          )  CASE NO. BC 268857
    RECORDS, INC., AND NEW IMAGE     )
12  MEDIA CORP..                     )  Case Assigned to:
                                     )  Judge Ronald M. Schigian - Dept. 41
13          Plaintiffs,              )
                                     )  [Complaint Filed: February 26, 2002]
14      v.                           )
                                     )
15  KEVIN GILLIAM AKA BATTLECAT;     )  JUDGMENT
    MARION H. KNIGHT AKA SUGE        )
16  KNIGHT; DEATH ROW RECORDS;       )
    THA ROW, INC.; DAVID E. KENNER;  )
17  DAVID E. KENNER PROFESSIONAL     )
    LAW CORPORATION; DAVID E.        )
18  KENNER, A PROFESSIONAL           )
    CORPORATION; THE DAVID E.        )
    KENNER TRUST; INTERSCOPE         )
19  RECORDS; JIMMY IOVINE; JOHN T.   )
    MCCLAIN, JR.; A&M RECORDS; ET    )
20  AL..                             )
                                     )
21          Defendants.              )
                                     )

22

23      Upon the Order striking the Answer of MARION H. KNIGHT, aka SUGE KNIGHT, and

24  DEATH ROW RECORDS, INC., ~~DEATH ROW RECORDS L.L.C.~~, ~~THA ROW, INC.~~,

25  to Plaintiffs' Complaint and entering default thereon, consideration of the Plaintiffs' Application

26  for Default Prove-up Damages and the supporting declarations of Lydia Harris, I.Donald

27  Weissman, Michael Harris and Phil Ames, and good cause appearing therefor,

28

*JUDGMENT*

1        IT IS HEREBY ADJUDGED that judgment is entered in favor of plaintiffs, LYDIA

2  HARRIS and NEW IMAGE MEDIA CORP., and against defendants, MARION H. KNIGHT

3  aka SUGE KNIGHT, DEATH ROW RECORDS, INC., ~~aka DEATH ROW RECORDS, L.C.,~~

4  ~~and THA ROW, INC.,~~ in the sum of $ _45,000,000_ for economic damages,

5  $ _2,000,000_ for non-economic damages, $ _60,000,000_ for punitive damages.

6

7        Further, PLAINTIFFS to recover costs pursuant to a memorandum of costs to be filed

8  pursuant to the statute _in the amount of $_ _____

9

10  Dated: _3-9-05_ _____

11          JUDGE OF THE LOS ANGELES SUPERIOR COURT

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
P.O. BOX 7033
TARZANA, CALIFORNIA 91357-1033

2

JUDGMENT

— 8 —

FL-180

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| DEBRA VANIHAN CRAWFORD, SBN 116222<br>LAW OFFICES OF CRAWFORD & CRAWFORD<br>P.O. Box 373<br>SW Mission & 4th<br>Carmel, California 93921-0373<br>TELEPHONE NO: 831-624-2422    FAX NO. *(Optional):*<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* LYDIA HARRIS | **FILED**<br>DEC 2 3 2005<br>LISA M. GALDOS<br>CLERK OF THE SUPERIOR COURT<br>C.N. CAMACHO    DEPUTY |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF MONTEREY
STREET ADDRESS: 1200 Aguajito Road
MAILING ADDRESS: 1200 Aguajito Road
CITY AND ZIP CODE: Monterey, CA 93940
BRANCH NAME: MONTEREY

MARRIAGE OF
PETITIONER: MICHAEL RAY HARRIS

RESPONDENT: LYDIA HARRIS

| JUDGMENT | CASE NUMBER: |
|---|---|
| [X] DISSOLUTION    [ ] LEGAL SEPARATION    [ ] NULLITY<br>[ ] Status only<br>[ ] Reserving jurisdiction over termination of<br>    marital or domestic partnership status<br>[ ] Judgment on reserved issues<br>Date marital or domestic partnership status ends: DATE OF FILE STAMP    DEC 2 3 2005 | DR 43369 |

1. [ ] This judgment    [ ] contains personal conduct restraining orders.    [ ] modifies existing restraining orders.
   The restraining orders are contained on page(s) _____ of the attachment. They expire on *(date):*

2. This proceeding was heard as follows: [ ] Default or uncontested    [ ] By declaration under Family Code section 2336
   [X] Contested
   a. Date: 11-14-05    Dept.: 13    Room: _____
   b. Judicial officer *(name):* ADRIENNE M. GROVER    [ ] Temporary Judge
   c. [X] Petitioner present in court    [X] Attorney present in court *(name):* STEVEN M. GOLDBERG
   d. [X] Respondent present in court    [X] Attorney present in court *(name):* DEBRA V. CRAWFORD
   e. [ ] Claimant present in court *(name):*    [ ] Attorney present in court *(name):*
   f. [X] Other *(specify name):* Attorney for
      Petitioner: DAN GOLDMAN

3. The court acquired jurisdiction of the respondent on *(date):* June 9, 2005
   a. [X] The respondent was served with process.
   b. [ ] The respondent appeared.

THE COURT ORDERS, GOOD CAUSE APPEARING

4. a. [X] Judgment of dissolution is entered. Marital or domestic partnership status is terminated and the parties are restored to the
         status of single persons
         (1) [X] on *(specify date):* SAME DATE AS FILE STAMP    DEC 2 3 2005
         (2) [ ] on a date to be determined on noticed motion of either party or on stipulation.
   b. [ ] Judgment of legal separation is entered.
   c. [ ] Judgment of nullity is entered. The parties are declared to be single persons on the ground of *(specify):*

   d. [ ] This judgment will be entered nunc pro tunc as of *(date):*
   e. [ ] Judgment on reserved issues.
   f. The [ ] petitioner's [ ] respondent's    former name is restored to *(specify):*
   g. [ ] Jurisdiction is reserved over all other issues, and all present orders remain in effect except as provided below.
   h. [ ] This judgment contains provisions for child support or family support. Each party must complete and file with the court a
         *Child Support Case Registry Form* (form FL-191) within 10 days of the date of this judgment. The parents must notify the
         court of any change in the information submitted within 10 days of the change, by filing an updated form. The *Notice
         of Rights and Responsibilities—Health Care Costs and Reimbursement Procedures and Information Sheet on Changing a
         Child Support Order* (form FL-192) is attached.

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>FL-180 [Rev. January 1, 2005] | JUDGMENT<br>(Family Law) | Legal<br>Solutions<br>Plus | Family Code, §§ 2024, 2340,<br>2343, 2346 |

— 4 —

DEC. 13. 2005 10:21AM LESLGRUSS AUGUST&KABAT    CRAWFORD & CRAWFORD    NO. 8028    P. 1/4 82/84

PURSUANT TO STIPULATION OF THE PARTIES RECITED IN COURT, IT IS HEREBY
ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1.    Of the monies received by Respondent from Marion Knight to date, Sixty
Thousand ($60,000) shall be paid to an individual per agreement of the parties.  One
Hundred and Seventy-Nine Thousand Dollars ($179,000) shall be given to Petitioner
and Two Hundred Thousand Dollars ($200,000) shall be retained by Respondent.

Each party shall pay one-half of the copying costs for the Xenon case out of said
money.

Respondent shall put Two Hundred Six Thousand Dollars ($206,000) in escrow
for potential fees or costs in LASC Case BC 288857.

Each party shall pay taxes, if any, on their share of said money.

2.    Each party is awarded one-half of the net profits of the DVD on the
documentary "Welcome to Death Row."

3.    Any and all major decisions on the lawsuit regarding the "Welcome to Death
Row" documentary versus Xenon shall be made by the parties jointly.  The net proceeds
of said lawsuit shall be divided equally by the parties.  The costs shall be shared equally
by the parties and shall be advanced, if possible.  Respondent will keep Petitioner
advised of all developments in the case, and shall provide him with copies of all filed
documents to date at Petitioner's expense.

4.    Each party shall receive one-half of the net proceeds from the Battlecat
Judgment in LASC Case BC 288857, which was an arbitrated judgment.

Petitioner is awarded the Battlecat masters.  Respondent shall arrange for
shipment of said masters to Petitioner at his cost and direction.

Petitioner shall license the songs from the Battlecat masters in the documentary
"Married to the Game" to Respondent at no cost.  Each party shall be awarded one-half
of the net proceeds of the "Married to the Game" DVD, but Respondent shall have

Judgment; Marriage of Harris; DR 43369

DEC. 13. 2005 10:21AM RUSS AUGUST&KABAT    CRANFORD & CRANFORD    NO. 8028    P. 3/4

1  management and control over the "Married to the Game" DVD.   No salary shall be paid
2  to Respondent in determining net proceeds.
3    5.  The corporation KDA is awarded to Respondent.
4    6.  The restaurant Dasha's Soul Food is awarded to Respondent.
5    7.  The proceeds from the "Married to the Game" book is awarded to
6  Respondent.
7    8.  O Lydia, a company, is awarded to Respondent. However, one-half of the
8  net proceeds from the "Married to the Game" DVD is awarded to each party.
9    9.  The parties shall cooperate to consolidate their ongoing business concerns
10  which are community property and from which they are each getting profits into a
11  company to be created called Harris Enterprises.
12    10.  The company Dream On Production is awarded to Respondent, except for
13  one-half of the net royalties from "Married to the Game" DVD shall be awarded to each
14  party.
15    11.  Petitioner's life story is awarded to Petitioner.
16    12.  Nu Image Media is awarded to Petitioner after the One Hundred Seven
17  Million Dollar judgment in LASC Case BC 268857 has been collected or compromised to
18  the satisfaction of Petitioner and Respondent.
19    13.  The proceeds of Los Angeles Superior Court Case BC 268857 are
20  community property. The allocation to the parties is reserved as to how much of said
21  proceeds shall be awarded to each party.
22    The fees and costs to Casselmans' firm when they are determined shall be
23  divided between the parties on an equal basis. Each party shall pay their own fees and
24  costs in the case of Casselman versus Harris which is Los Angeles Superior Court case
25  BC 340196.
26    14.  The issue of child support is reserved.
27    15.  Child custody jurisdiction is in the State of Texas. The parties have stated
28

<div align="center">Judgment; Marriage of Harris; DR 43369    2</div>

DEC. 13. 2005 10:22AM ROSS ROSS ROSS & CRAWFORD    CRAWFORD & CRAWFORD    NO. 8028    P. 4/04/04

1  their intent that Respondent will bring the child of the parties to visit Petitioner once

2  every two months until the child is 18 years of age.

3      16.    The parties jointly support a motion for the appointment of a receiver for the

4  collection of the judgment in LASC Case BC 268857.

5      17.    Each party shall pay their own attorneys fees and costs in this case to date.

6      18.    The Court reserves jurisdiction over the executory portions of this Judgment

7  including the formation of Harris Enterprises.

8      19.    The trial on the issue of the allocation of the proceeds of LABC Case BC

9  268857 is set for January 30, 2006, at 8:00 a.m. in Department 13 of this Court.

10     20.    The parties shall exchange Preliminary Declarations of Disclosure forthwith.

11  The Final Declarations of Disclosure are waived.

12  APPROVED AS TO FORM AND CONTENT:

13

14

15  STEVEN M. GOLDBERG,
    Attorney for Petitioner,
    MICHAEL HARRIS

16

17

18

19  DEBRA VANIMAN CRAWFORD,
    Attorney for Respondent,
    LYDIA HARRIS

20

21  12-23-05                              ADRIENNE M. GROVER,
                                          Judge of the Superior Court
22

23

24

25

26

27

28

    Judgment; Marriage of Harris; DR. 43369                                          3

1  Hon. Stephen E. Haberfeld, Discovery Referee
2  JAMS
   707 Wilshire Blvd., 46th Fl.
3  Los Angeles, CA 90017
   Tel.:    213-353-9711
4  Fax:    213-620-0100
   E-Mail: judgehaberfeld@comcast.net
5

6

7

8

9

10

11                 SUPERIOR COURT OF CALIFORNIA

12                    COUNTY OF MONTEREY

13

14  MICHAEL RAY HARRIS,                 Case No. DR 43369

15            Petitioner,               REFEREE'S ORDER GRANTING
                                        PETITIONER'S MOTION TO COMPEL
16  vs.                                 MARION H. "SUGE" KNIGHT TO
                                        PRODUCE DOCUMENTS RESPONSIVE
17                                      TO PETITIONER'S FIRST SET OF
18  LYDIA HARRIS,                       REQUESTS FOR PRODUCTION OF
                                        DOCUMENTS
19            Respondent.
                                        Hearing
20                                      Date:    January 5, 2006
                                        Time:    5:15 p.m.
21                                      Place:   Via Conference Call
                                        Referee: Hon. Stephen E. Haberfeld
22

23

24      Petitioner Michael Ray Harris's ("Petitioner's) motion to compel Marion H. "Suge"

25  Knight ("Mr. Knight") to respond and produce documents responsive to Petitioner's first set

26  of requests for production of documents ("Motion") was expressly and specifically referred to

27  the undersigned discovery referee ("Referee") by the Court's Order, dated December 13, 2005 –

28  – which also appointed the Referee.   Steven M. Goldberg, Esq. and Dan Goldman, Esq. of the

                                    1
                              [PROPOSED] ORDER

1  law firm of Russ August & Kabat appeared and participated with the Referee in a telephonic

2  hearing on the Motion --- which hearing was set by stipulation, including the agreement of

3  Dermot D. Givens, Esq., counsel for Mr. Knight, during a telephonic Status Conference held on

4  January 4, 2006. Debra Crawford, Esq. of the law firm of Crawford & Crawford, counsel for

5  Respondent Lydia Harris in this proceeding --- having been apprised of the stipulated and

6  ordered telephonic hearing during the aforesaid Status Conference --- stated  that she did not

7  intend to participate in the hearing on the Motion.

8      Mr. Givens did not appear or participate in the hearing on the Motion, as agreed and

9  accordingly so ordered, or communicate with either the Referee or Petitioner's counsel after the

10  January 4, 2006 Status Conference and before or during the hearing on the Motion concerning

11  that hearing or at all.

12      All participants in the January 4, 2006 Status Conference knew the date, time and call-in

13  information for the hearing on the Motion.   Messrs. Goldberg and Goldman dialed in for the

14  telephonic hearing, as agreed and ordered, shortly after 5:15 p.m. (PT). The Referee was already

15  on the line. After waiting for Mr. Givens for approximately five minutes, at approximately 5:20

16  p.m. (PT), the Referee stated that the Referee would go off line until the earlier of being

17  contacted that Mr. Givens had joined the conference call or 5:30 p.m. (PT), at which time the

18  Referee would dial back into the conference call and discuss with whoever was on the line at that

19  time what next to do.

20      At approximately 5:30 p.m. (PT) --- not having been contacted by anyone concerning that

21  or whether Mr. Givens had joined the conference call for the hearing --- the Referee dialed back

22  into the conference call and ascertained that Mr. Givens was not on the line.  Petitioner's

23  counsel, Mr. Goldberg, represented to the Referee that Mr. Givens had not joined the conference

24  call at any time prior to the Referee's re-joining the conference call at 5:30 p.m. (PT) and that

25  Mr. Goldberg had unsuccessfully tried to contact Mr. Givens about his joining the telephonic

26  hearing on the Motion during the approximately ten minute (5:20-5:30 p.m. (PT)) interval when

27  the Referee was off-line.  Mr. Goldberg represented that he had called Mr. Givens' cell phone

28  and that Mr. Givens did not answer, and Mr. Goldberg left a message, and that Mr. Goldberg

Kabat

2

[PROPOSED] ORDER

1  additionally sent Mr. Givens an e-mail, but Mr. Givens did not respond or call in to the

2  conference call.

3        At approximately 5:35 p.m. (PT), the Referee ruled that — in view of the above-

4  referenced facts and circumstances, and good cause appearing — the stipulated and ordered

5  telephonic hearing on the Motion would go forward, and the Referee made the following ruling

6  and order concerning the Motion during the hearing which lasted until approximately 5:45 p.m.

7  (PT).

8        Based on careful consideration of the papers submitted by Petitioner and Mr. Knight in

9  support of and in opposition to Petitioner's motion to compel Mr. Knight to produce, without

10  objection, all documents responsive to Petitioner's First Set of Requests for Production of

11  Documents ("document request") and, after a hearing and good cause appearing, it is hereby

12  ORDERED as follows. Petitioner's motion to compel is granted as to the production of all

13  documents requested to be produced by Mr. Knight in Petitioner's document request. Mr.

14  Knight is hereby ordered to produce, without objection, all documents in his possession, custody

15  and/or control which are responsive to Petitioner's document request, immediately prior to the

16  commencement of the taking of Mr. Knight's ordered deposition on Tuesday, January 10, 2006

17  at 10:00 a.m., at JAMS, 707 Wilshire Boulevard, 46th Floor, Los Angeles, California 90017.

18  Petitioner's request for monetary sanctions in connection with the Motion is reserved.

19        Immediately prior to the conclusion of the hearing on the Motion, the Referee requested

20  that Petitioner's counsel prepare, submit to the Referee and disseminate to all participants in the

21  discovery reference, including the Wasserman Comden firm, a proposed form of order for the

22  Referee's review and signature, reflecting the Referee's rulings and orders made during the

23  hearing on the Motion.

24

25  DATED: January 6, 2006

       STEPHEN E. HABERFELD
       Discovery Referee

26

27

28

                                    3
                          [PROPOSED] ORDER

## PROOF OF SERVICE
### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 707 Wilshire Blvd. 46th Floor, Los Angeles, CA 90017.

On January 6, 2006, I served the foregoing document described as REFEREE'S ORDER GRANTING PETITIONER'S MOTION TO COMPEL MARION H. "SUGE" KNIGHT TO PRODUCE DOCUMENTS RESPONSIVE TO PETITIONER'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS in the matter of MICHAEL RAY HARRIS V. LYDIA HARRIS to interested parties in this action, as follows:

ORIGINAL FILED TO: (Via fax & mail)

Hon. Adrienne Grover
Monterey Courthouse
1200 Aguajito Road
Courtroom #13
Monterey, CA 93940
Fax: 831-647-5897


( SEE ATTACHED SERVICE LIST )


(X ) BY MAIL: as follows: I am "readily familiar" with the firm's practice of collection and processing of correspondence for mailing with the United States Postal Service. I know that the correspondence was deposited with the United States Postal Service on the same day this declaration was executed in the ordinary course of business. I know that the envelope was sealed and, with postage thereon fully prepaid, placed for collection and mailing on this date in the United States mail at Los Angeles, California.

(X )BY FACSIMILE TRANSMISSION: I caused the above-referenced document(s) to be transmitted to the above-named person(s) at the telecopy numbers on the attached list.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on January 6, 2006.

Geraldine C. Yalo

Geraldine C. Yalo

**CA001 - JAMS, Inc.**    Service List

THE RESOLUTION EXPERTS

1/6/2006

Reference # :        1220034123
Case Name :        Harris, Michael Ray vs. Harris, Lydia
Case Type:        FAMI
Referring Judge:
Panelist:        Haberfeld, Stephen K.,

---

**2        Goldberg, Steven M.**

Steven M. Goldberg                ( Active )
Russ, August & Kabat            PETI    Petitioner
12424 Wilshire Blvd.                    Main Phone # 310-826-7474
Suite 1200                        Direct Phone #
Los Angeles, CA 90025                    FAX # 310-826-6991
sgoldberg@raklaw.com
Party Represented :

        Michael Ray Harris

---

**3        Givens, Dermot**

Dermot Givens                    ( Active )
L/O Dermot Givens            RESP    Respondent
433 Camden Dr.                    Main Phone # 310-854-8823
Suite 600                        Direct Phone #
Beverly Hills, CA 90210                FAX # 323-878-0416
dermotg@aol.com
Party Represented :

        Marion Knight
        Death Row Records Inc.

---

**4        Crawford, Debra Vaniman**

Debra Vaniman Crawford                ( Active )
Crawford & Crawford            RESP    Respondent
P.O. Box 373                        Main Phone # 831-624-2422
SW Mission & 4th                    Direct Phone #
Carmel, CA 93921                    FAX # 831-624-2428
Debra@Divorce-123.com
Party Represented :

        Lydia Harris

---

**5        Goldman, Dan**

Dan  Goldman                    ( Active )
Russ, August & Kabat            PETI    Petitioner
12424 Wilshire Blvd.                    Main Phone # 310-826-7474
Suite 1200                        Direct Phone #
Los Angeles, CA 90025                    FAX # 310-826-6991
dwgoldman@raklaw.com
Party Represented :

        Michael Ray Harris

---

707 WILSHIRE BLVD.    46TH FLOOR    LOS ANGELES, CA 90017    TEL 213-620-1133    FAX 213-620-0100        Page        1

$-/2-$

CA001 - JAMS, Inc.    Service List

1/6/2006

**JAMS**
THE RESOLUTION EXPERTS

6    Comden, Leonard J.
Leonard J. Comden
Wasserman, Comden, Casselman & Pearson
5567 Reseda Blvd., Suite 330
PO Box 7033
Tarzana, CA  91357-7033
lcomden@wacplaw.com
Party Represented :

( Active )
RESP  Respondent
Main Phone #  818-705-6800
Direct Phone #
FAX #  818-345-0162

Wasserman, Comden, Casselman & Pearson

707 WILSHIRE BLVD.   46TH FLOOR   LOS ANGELES, CA 90017   TEL 213-620-1133   FAX 213-620-0100    Page    2

- 13 -

P. 1

* * * Transmission Result Report (MemoryTX) ( Jan. 6. 2006  2:49PM ) * * *

Date/Time: Jan. 6. 2006  2:13PM

| File No. Mode | Destination | Pg(s) | Result | Page Not Sent |
|---|---|---|---|---|
| 4540 Memory TX | 18315475891 — RETURNED to court | P. 7 | E-3) 3) | P. 1-7 |
| | Judge Haberfeld | | OK | |
| | 13108266991 | | OK | |
| | 13298780416 — CORRECT # GIVENS | | E-2) 2) 2) 2) 2) | P. 1-7 |
| | 18316242428 — CRAWFORD | | E-3) 3) | P. 1-7 |
| | 13108266991 | | OK | |
| | 18183450162 | | OK | |

-----------------------------------------------------------------------
Reason for error
E. 3) Hang up or line fail          E. 2) Busy
E. 3) No answer                     E. 4) No facsimile connection



—14—

**PROOF OF SERVICE**

STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

    I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 12424 Wilshire Boulevard, 12ᵗʰ Floor, Los Angeles, California 90025.

    On May 4, 2006 I caused to be served the foregoing document described as PROOF OF CLAIM on interested parties in this action

☑  by placing true copies thereof enclosed in sealed envelopes addressed as stated on the attached mailing list.

☐  by placing ☐ the original ☐ a true copy thereof enclosed in sealed envelopes addressed as follows:

**SERVICE NAME/ADDRESS**

☑  BY MAIL

☐  I deposited such in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

☑  As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☑  Federal: I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on May 4, 2006 at Los Angeles, California.

_____
NICOLE JONES

2714-01 POS-DK-special

- /5 -

| | |
|---|---|
| | **SERVICE LIST** |
| 1 | |
| 2 | Daniel McCarthy, Esq.          *Attorney for Debtor, Marion H. Knight,* |
| 3 | Hill, Farrer & Burrill LLP     *Jr.* |
| | 300 S. Grand Avenue, 37th floor |
| 4 | Los Angeles, CA 90071 |
| 5 | Marion H. Knight, Jr.          *Debtor* |
| | PO Box 3037 |
| 6 | Beverly Hills, CA 90212 |
| 7 | Alvin Mar, Esq.                *Trustee* |
| | Office of the US Trustee |
| 8 | 725 S. Figueroa Street, 26th floor |
| | Los Angeles, CA 90017 |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

2714-01 POS-DR-special

- 16 -

EXHIBIT 8 B

EXHIBIT 8 B

**ORIGINAL**

Form B10 (Official Form 10) (10/05)

| United States Bankruptcy Court    Central District of California | | PROOF OF CLAIM |
|---|---|---|

Name of Debtor  DEATH ROW RECORDS, INC. | Case Number  LA 06-11205-EC

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Name of Creditor (The person or other entity to whom the debtor owes money or property):
**LYDIA HARRIS**

☒ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

Name and address where notices should be sent:
SHARON Z. WEISS (State Bar No. 169446)
WEINSTEIN, WEISS & ORDUBEGIAN LLP
1925 Century Park East, Suite 1150
Los Angeles, CA  90067-2712
Telephone number:  (310) 203-9393

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

**OCT 19 2006**

This space is for Court use only.

Last four digits of account or other number by which creditor identifies debtor:
Check here ☐ replaces
if this claim ☐ amends    a previously filed claim, dated: _____

1. **Basis for Claim**
   ☐ Goods sold
   ☐ Services performed
   ☐ Money loaned
   ☒ Personal injury/wrongful death
   ☐ Taxes
   ☐ Other _____

   ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
   ☐ Wages, salaries, and compensation (Fill out below)
   Last four digits of your Social Security number: _____
   Unpaid compensation for services performed
   from _____ to _____
   (date)           (date)

2. **Date debt was incurred:**  Dec. 15, 1992 - Feb. 26, 2002    3. **If court judgment, date obtained:** March 9, 2005

4. **Total Amount of Claim at Time Case Filed:**    $ 107 million*    $_____    $_____    $_____
   (unsecured)    (secured)    (priority)    (Total)
   If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.
   ☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.  * In excess of $107 million - some or all may be secured.

5. **Secured Claim.**
   ☐ Check this box if your claim is secured by collateral (including a right of setoff).

   Brief Description of Collateral:
   ☐ Real Estate    ☐ Motor Vehicle
   ☐ Other _____

   Value of Collateral:  $_____

   Amount of arrearage and other charges at time case filed included in secured claim, if any $_____

6. **Unsecured Nonpriority Claim.**    $ 107 million
   ☒ Check this box if (a) there is no collateral or lien securing your claim, or (b) your claim exceeds the value of the property securing it or (c) none or only part of your claim is entitled to priority. * See above.

7. **Unsecured Priority Claim.**
   ☐ Check this box if you have an unsecured priority claim, all or part of which is entitled to priority.
   Amount entitled to priority $_____
   Specify the priority of the claim:
   ☐ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
   ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
   ☐ Up to $2,225* of deposits toward purchase, lease or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
   ☐ Domestic support obligations under - 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
   ☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
   ☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(_____).
   *Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. $10,000 and 180-day limits apply to cases filed on or after 4/20/05. Pub. L. 109-8

8. **Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

9. **Supporting Documents:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

10. **Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

This space is for Court use only.

Date
Sep ___, 2006

Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):
LYDIA HARRIS

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

F.D.

1   DAVID B. CASSELMAN (SBN 81657)
    I.DONALD WEISSMAN (SBN 67980)
2   WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
    5567 Reseda Boulevard, Suite 330
3   Post Office Box 7033
    Tarzana, California 91357-7033
4   Telephone:  (818) 705-6800 • (323) 872-0995
    Facsimile:   (818) 705-8147
5
    Attorneys for Plaintiffs
6   LYDIA HARRIS and NEW IMAGE MEDIA
    CORPORATION
7

**FILED**
LOS ANGELES SUPERIOR COURT
MAR 0 9 2005
JOHN A. CLARKE, CLERK
By: _____
K. CASTLE

8          SUPERIOR COURT OF THE STATE OF CALIFORNIA

9            FOR THE COUNTY OF LOS ANGELES

10

11  LYDIA HARRIS, LIFESTYLE    )  CASE NO. BC 268857
    RECORDS, INC., AND NEW IMAGE )
12  MEDIA CORP.,         )  Case Assigned to:
                   )  Judge Ronald M. Sohigian - Dept. 41
13        Plaintiffs,    )
                   )  [Complaint Filed: February 26, 2002]
14      v.             )
                   )
15  KEVIN GILLIAM AKA BATTLECAT; )
    MARION H. KNIGHT AKA SUGE  )    JUDGMENT
16  KNIGHT; DEATH ROW RECORDS; )
    THA ROW, INC.; DAVID E. KENNER; )
    DAVID E. KENNER PROFESSIONAL )
17  LAW CORPORATION; DAVID E.  )
    KENNER, A PROFESSIONAL   )
18  CORPORATION; THE DAVID E.  )
    KENNER TRUST; INTERSCOPE  )
19  RECORDS; JIMMY IOVINE; JOHN T. )
    McCLAIN, JR.; A&M RECORDS; ET )
20  AL.,                  )
                   )
21        Defendants.    )

22

23       Upon the Order striking the Answer of MARION H. KNIGHT, aka SUGE KNIGHT,

24  DEATH ROW RECORDS, INC., ~~and DEATH ROW RECORDS, L.L.C. and THA ROW, INC.,~~

25  to Plaintiffs' Complaint and entering default thereon, consideration of the Plaintiffs' Application

26  for Default Prove-up Damages and the supporting declarations of Lydia Harris, I.Donald

27  Weissman, Michael Harris and Phil Ames, and good cause appearing therefor,

28

                   JUDGMENT

- 2 -

1      IT IS HEREBY ADJUDGED that judgment is entered in favor of plaintiffs, LYDIA

2  HARRIS and NEW IMAGE MEDIA CORP., and against defendants, MARION H. KNIGHT

3  aka SUGE KNIGHT, DEATH ROW RECORDS, INC., ~~aka DEATH ROW RECORDS, LLC,~~

4  ~~and THA ROW, INC.~~ in the sum of $ _45,000,000_ for economic damages,

5  $ _2,000,000_ for non-economic damages, $ _60,000,000_ for punitive damages.

6

7      Further, PLAINTIFFS to recover costs pursuant to a memorandum of costs to be filed

8  pursuant to the statute _in the amount of $ _____._

9

10  Dated: _3-9-05_      _Ronald M. Sohigian_

11           JUDGE OF THE LOS ANGELES SUPERIOR COURT

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

*JUDGMENT*

- 3 -

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
P.O. BOX 7033
TARZANA, CALIFORNIA 91357-7033

FL-180

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State bar number, and address):
DEBRA VANIMAN CRAWFORD, SBN 116222
LAW OFFICES OF CRAWFORD & CRAWFORD
P.O. Box 373
SW Mission & 4th
Carmel, California 93921-0373
TELEPHONE NO: 831-624-2422    FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name): LYDIA HARRIS

SUPERIOR COURT OF CALIFORNIA, COUNTY OF MONTEREY
STREET ADDRESS: 1200 Aguajito Road
MAILING ADDRESS: 1200 Aguajito Road
CITY AND ZIP CODE: Monterey, CA 93940
BRANCH NAME: MONTEREY

MARRIAGE OF
PETITIONER: MICHAEL RAY HARRIS

RESPONDENT: LYDIA HARRIS

**FILED**

DEC 2 3 2005

LISA M. GALDOS,
CLERK OF THE SUPERIOR COURT
C.J. CAMACHO_____DEPUTY

| JUDGMENT | CASE NUMBER: |
|---|---|
| [X] DISSOLUTION  [ ] LEGAL SEPARATION  [ ] NULLITY | DR 43369 |

[ ] Status only
[ ] Reserving jurisdiction over termination of
marital or domestic partnership status
[ ] Judgment on reserved issues

Date marital or domestic partnership status ends: DATE OF FILE STAMP    DEC 2 3 2005

1. [ ] This judgment  [ ] contains personal conduct restraining orders  [ ] modifies existing restraining orders.
The restraining orders are contained on page(s)        of the attachment. They expire on (date):

2. This proceeding was heard as follows: [ ] Default or uncontested  [ ] By declaration under Family Code section 2336
[X] Contested
a. Date: 11-14-05        Dept: 13        Room:
b. Judicial officer (name): ADRIENNE M. GROVER    [ ] Temporary judge
c. [X] Petitioner present in court    [X] Attorney present in court (name): STEVEN M. GOLDBERG
d. [X] Respondent present in court    [X] Attorney present in court (name): DEBRA V. CRAWFORD
e. [ ] Claimant present in court (name):    [ ] Attorney present in court (name):
f. [X] Other (specify name): Attorney for
Petitioner:  DAN GOLDMAN

3. The court acquired jurisdiction of the respondent on (date): June 9, 2005
a. [X] The respondent was served with process.
b. [ ] The respondent appeared.

THE COURT ORDERS, GOOD CAUSE APPEARING

4. a. [X] Judgment of dissolution is entered. Marital or domestic partnership status is terminated and the parties are restored to the
status of single persons
(1) [X] on (specify date): SAME DATE AS FILE STAMP    DEC 2 3 2005
(2) [ ] on a date to be determined on noticed motion of either party or on stipulation.
b. [ ] Judgment of legal separation is entered.
c. [ ] Judgment of nullity is entered. The parties are declared to be single persons on the ground of (specify):

d. [ ] This judgment will be entered nunc pro tunc as of (date):
e. [ ] Judgment on reserved issues.
f. The [ ] petitioner's [ ] respondent's    former name is restored to (specify):
g. [ ] Jurisdiction is reserved over all other issues, and all present orders remain in effect except as provided below.
h. [ ] This judgment contains provisions for child support or family support. Each party must complete and file with the court a
Child Support Case Registry Form (form FL-191) within 10 days of the date of this judgment. The parents must notify the
court of any change in the information submitted within 10 days of the change, by filing an updated form. The Notice
of Rights and Responsibilities—Health Care Costs and Reimbursement Procedures and Information Sheet on Changing a
Child Support Order (form FL-192) is attached.

Form Adopted for Mandatory Use
Judicial Council of California
FL-180 [Rev. January 1, 2005]    JUDGMENT
(Family Law)    Legal
Solutions
Ca. Plus    Page 1 of 2
Family Code, §§ 2024, 2340,
2343, 2344

DEC. 13. 2005 10:21AM   RUSS AUGUST&KABAT    CRAWFORD & CRAWFORD    NO. 8028   P. 2/4

1  PURSUANT TO STIPULATION OF THE PARTIES RECITED IN COURT, IT IS HEREBY

2  ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

3

4      1.    Of the monies received by Respondent from Marion Knight to date, Sixty

5  Thousand ($60,000) shall be paid to an individual per agreement of the parties. One

6  Hundred and Seventy-Nine Thousand Dollars ($179,000) shall be given to Petitioner

7  and Two Hundred Thousand Dollars ($200,000) shall be retained by Respondent.

8      Each party shall pay one-half of the copying costs for the Xenon case out of said

9  money.

10     Respondent shall put Two Hundred Six Thousand Dollars ($206,000) in escrow

11  for potential fees or costs in LASC Case BC 288857.

12     Each party shall pay taxes, if any, on their share of said money.

13     2.    Each party is awarded one-half of the net profits of the DVD on the

14  documentary "Welcome to Death Row."

15     3.    Any and all major decisions on the lawsuit regarding the "Welcome to Death

16  Row" documentary versus Xenon shall be made by the parties jointly. The net proceeds

17  of said lawsuit shall be divided equally by the parties. The costs shall be shared equally

18  by the parties and shall be advanced, if possible. Respondent will keep Petitioner

19  advised of all developments in the case, and shall provide him with copies of all filed

20  documents to date at Petitioner's expense.

21     4.    Each party shall receive one-half of the net proceeds from the Battlecat

22  Judgment in LASC Case BC 288857, which was an arbitrated judgment.

23     Petitioner is awarded the Battlecat masters. Respondent shall arrange for

24  shipment of said masters to Petitioner at his cost and direction.

25     Petitioner shall license the songs from the Battlecat masters in the documentary

26  "Married to the Game" to Respondent at no cost. Each party shall be awarded one-half

27  of the net proceeds of the "Married to the Game" DVD, but Respondent shall have

28

Judgment; Marriage of Harris; DR 43369

DEC. 13. 2005 10:21AM RUSS AUGUSTRABAT    CRAWFORD & CRAWFORD    NO. 8028    P. 3/4

1   management and control over the "Married to the Game" DVD.   No salary shall be paid

2   to Respondent in determining net proceeds.

3       5.   The corporation KDA is awarded to Respondent.

4       6.   The restaurant Dasha's Soul Food is awarded to Respondent.

5       7.   The proceeds from the "Married to the Game" book is awarded to

6   Respondent.

7       8.   O Lydia, a company, is awarded to Respondent.  However, one-half of the

8   net proceeds from the "Married to the Game" DVD is awarded to each party.

9       9.   The parties shall cooperate to consolidate their ongoing business concerns

10  which are community property and from which they are each getting profits into a

11  company to be created called Harris Enterprises.

12      10.  The company Dream On Production is awarded to Respondent, except for

13  one-half of the net royalties from "Married to the Game" DVD shall be awarded to each

14  party.

15      11.  Petitioner's life story is awarded to Petitioner.

16      12.  Nu Image Media is awarded to Petitioner after the One Hundred Seven

17  Million Dollar judgment in LASC Case BC 288857 has been collected or compromised to

18  the satisfaction of Petitioner and Respondent.

19      13.  The proceeds of Los Angeles Superior Court Case BC 288857 are

20  community property.  The allocation to the parties is reserved as to how much of said

21  proceeds shall be awarded to each party.

22      The fees and costs to Casselmans' firm when they are determined shall be

23  divided between the parties on an equal basis.  Each party shall pay their own fees and

24  costs in the case of Casselman versus Harris which is Los Angeles Superior Court case

25  BC 340196.

26      14.  The issue of child support is reserved.

27      15.  Child custody jurisdiction is in the State of Texas.  The parties have stated

28

Judgment; Marriage of Harris; DR 43369                                  2

-6-



their intent that Respondent will bring the child of the parties to visit Petitioner once
every two months until the child is 18 years of age.

16.    The parties jointly support a motion for the appointment of a receiver for the
collection of the judgment in LASC Case BC 268857.

17.    Each party shall pay their own attorneys fees and costs in this case to date.

18.    The Court reserves jurisdiction over the executory portions of this Judgment
including the formation of Harris Enterprises.

19.    The trial on the issue of the allocation of the proceeds of LASC Case BC
268857 is set for January 30, 2006, at 9:00 a.m. in Department 13 of this Court.

20.    The parties shall exchange Preliminary Declarations of Disclosure forthwith.
The Final Declarations of Disclosure are waived.

APPROVED AS TO FORM AND CONTENT:

STEVEN M. GOLDBERG,
Attorney for Petitioner
MICHAEL HARRIS

DEBRA VANMAN CRAWFORD,
Attorney for Respondent,
LYDIA HARRIS

12-23-05

ADRIENNE M. GROVER,
Judge of the Superior Court

Judgment; Marriage of Harris; DR. 43369

-7-

1  Hon. Stephen E. Haberfeld, Discovery Referee
2  JAMS
   707 Wilshire Blvd., 46th Fl.
3  Los Angeles, CA 90017
   Tel.:    213-353-9711
4  Fax:    213-620-0100
   E-Mail: judgehaberfeld@comcast.net
5

6

7

8

9

10

11                    SUPERIOR COURT OF CALIFORNIA

12                        COUNTY OF MONTEREY

13

14  MICHAEL RAY HARRIS,                 Case No. DR 43369

15                  Petitioner,         REFEREE'S ORDER GRANTING
                                        PETITIONER'S MOTION TO COMPEL
16  vs.                                 MARION H. "SUGE" KNIGHT TO
                                        PRODUCE DOCUMENTS RESPONSIVE
17                                      TO PETITIONER'S FIRST SET OF
    LYDIA HARRIS,                       REQUESTS FOR PRODUCTION OF
18                                      DOCUMENTS
                    Respondent.
19                                      Hearing
                                        Date:    January 5, 2006
20                                      Time:    5:15 p.m.
                                        Place:   Via Conference Call
21                                      Referee: Hon. Stephen E. Haberfeld

22

23

24       Petitioner Michael Ray Harris's ("Petitioner's) motion to compel Marion H. "Suge"

25  Knight ("Mr. Knight") to respond and produce documents responsive to Petitioner's first set

26  of requests for production of documents ("Motion") was expressly and specifically referred to

27  the undersigned discovery referee ("Referee") by the Court's Order, dated December 13, 2005 –

28  – which also appointed the Referee.    Steven M. Goldberg, Esq. and Dan Goldman, Esq. of the

    Referral                      1
                          [PROPOSED] ORDER

1   law firm of Russ August & Kabat appeared and participated with the Referee in a telephonic

2   hearing on the Motion --- which hearing was set by stipulation, including the agreement of

3   Dermot D. Givens, Esq. counsel for Mr. Knight, during a telephonic Status Conference held on

4   January 4, 2006. Debra Crawford, Esq. of the law firm of Crawford & Crawford, counsel for

5   Respondent Lydia Harris in this proceeding --- having been apprised of the stipulated and

6   ordered telephonic hearing during the aforesaid Status Conference --- stated  that she did not

7   intend to participate in the hearing on the Motion.

8        Mr. Givens did not appear or participate in the hearing on the Motion, as agreed and

9   accordingly so ordered, or communicate with either the Referee or Petitioner's counsel after the

10  January 4, 2006 Status Conference and before or during the hearing on the Motion concerning

11  that hearing or at all.

12       All participants in the January 4, 2006 Status Conference knew the date, time and call-in

13  information for the hearing on the Motion.   Messrs. Goldberg and Goldman dialed in for the

14  telephonic hearing, as agreed and ordered, shortly after 5:15 p.m. (PT).  The Referee was already

15  on the line.  After waiting for Mr. Givens for approximately five minutes, at approximately 5:20

16  p.m. (PT), the Referee stated that the Referee would go off line until the earlier of being

17  contacted that Mr. Givens had joined the conference call or 5:30 p.m. (PT), at which time the

18  Referee would dial back into the conference call and discuss with whoever was on the line at that

19  time what next to do.

20       At approximately 5:30 p.m. (PT) --- not having been contacted by anyone concerning that

21  or whether Mr. Givens had joined the conference call for the hearing --- the Referee dialed back

22  into the conference call and ascertained that Mr. Givens was not on the line.   Petitioner's

23  counsel, Mr. Goldberg, represented to the Referee that Mr. Givens had not joined the conference

24  call at any time prior to the Referee's re-joining the conference call at 5:30 p.m. (PT) and that

25  Mr. Goldberg had unsuccessfully tried to contact Mr. Givens about his joining the telephonic

26  hearing on the Motion during the approximately ten minute (5:20-5:30 p.m. (PT)) interval when

27  the Referee was off-line.  Mr. Goldberg represented that he had called Mr. Givens' cell phone

28  and that Mr. Givens did not answer, and Mr. Goldberg left a message, and that Mr. Goldberg

2

[PROPOSED] ORDER

1   additionally sent Mr. Givens an e-mail, but Mr. Givens did not respond or call in to the

2   conference call.

3       At approximately 5:35 p.m. (PT), the Referee ruled that --- in view of the above-

4   referenced facts and circumstances, and good cause appearing --- the stipulated and ordered

5   telephonic hearing on the Motion would go forward, and the Referee made the following ruling

6   and order concerning the Motion during the hearing which lasted until approximately 5:45 p.m.

7   (PT).

8       Based on careful consideration of the papers submitted by Petitioner and Mr. Knight in

9   support of and in opposition to Petitioner's motion to compel Mr. Knight to produce, without

10  objection, all documents responsive to Petitioner's First Set of Requests for Production of

11  Documents ("document request") and, after a hearing and good cause appearing, it is hereby

12  ORDERED as follows.  Petitioner's motion to compel is granted as to the production of all

13  documents requested to be produced by Mr. Knight in Petitioner's document request.  Mr.

14  Knight is hereby ordered to produce, without objection, all documents in his possession, custody

15  and/or control which are responsive to Petitioner's document request, immediately prior to the

16  commencement of the taking of Mr. Knight's ordered deposition on Tuesday, January 10, 2006

17  at 10:00 a.m., at JAMS, 707 Wilshire Boulevard, 46th Floor, Los Angeles, California 90017.

18  Petitioner's request for monetary sanctions in connection with the Motion is reserved.

19      Immediately prior to the conclusion of the hearing on the Motion, the Referee requested

20  that Petitioner's counsel prepare, submit to the Referee and disseminate to all participants in the

21  discovery reference, including the Wasserman Comden firm, a proposed form of order for the

22  Referee's review and signature, reflecting the Referee's rulings and orders made during the

23  hearing on the Motion.

24

25  DATED: January 6, 2006                    STEPHEN E. HABERFELD
                                             Discovery Referee

26

27

28

3
[PROPOSED] ORDER

- /0 -

## PROOF OF SERVICE
### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 707 Wilshire Blvd. 46th Floor, Los Angeles, CA 90017.

On January 6, 2006, I served the foregoing document described as REFEREE'S ORDER GRANTING PETITIONER'S MOTION TO COMPEL MARION H. "SUGE" KNIGHT TO PRODUCE DOCUMENTS RESPONSIVE TO PETITIONER'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS in the matter of MICHAEL RAY HARRIS V. LYDIA HARRIS to interested parties in this action, as follows:

ORIGINAL FILED TO: (Via fax & mail)

Hon. Adrienne Grover
Monterey Courthouse
1200 Aguajito Road
Courtroom #13
Monterey, CA 93940
Fax: 831-647-5897

( SEE ATTACHED SERVICE LIST )

(X ) BY MAIL: as follows: I am "readily familiar" with the firm's practice of collection and processing of correspondence for mailing with the United States Postal Service. I know that the correspondence was deposited with the United States Postal Service on the same day this declaration was executed in the ordinary course of business. I know that the envelope was sealed and, with postage thereon fully prepaid, placed for collection and mailing on this date in the United States mail at Los Angeles, California.

(X )BY FACSIMILE TRANSMISSION: I caused the above-referenced document(s) to be transmitted to the above-named person(s) at the telecopy numbers on the attached list.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on January 6, 2006.

_Geraldine C Yalo_
Geraldine C. Yalo

- // -

CA001 - JAMS, Inc.    Service List    JAMS    1/6/2006

THE RESOLUTION EXPERTS

| | |
|---|---|
| Reference # : | 1220034123 |
| Case Name : | Harris, Michael Ray vs. Harris, Lydia |
| Case Type : | FAMI |
| Referring Judge: | |
| Panelist: | Haberfeld, Stephen E. |

**2        Goldberg, Steven M.**
Steven M. Goldberg                          ( Active )
Russ, August & Kabat                        PETI  Petitioner
12424 Wilshire Blvd.                              Main Phone #  310-826-7474
Suite 1200                                           Direct Phone #
Los Angeles, CA  90025                              FAX # 310-826-6991
sgoldberg@raklaw.com
Party Represented :

    Michael Ray Harris

**3        Givens, Dermot**
Dermot  Givens                               ( Active )
L/O Dermot Givens                            RESP  Respondent
433 Camden Dr.                                    Main Phone #  310-854-8823
Suite 600                                            Direct Phone #
Beverly Hills, CA  90210                            FAX # 323-878-0416
dermotg@aol.com
Party Represented :

    Marion Knight
    Death Row Records Inc.

**4        Crawford, Debra Vaniman**
Debra Vaniman Crawford                       ( Active )
Crawford & Crawford                          RESP  Respondent
P.O. Box 373                                      Main Phone #  831-624-2422
SW Mission & 4th                                   Direct Phone #
Carmel, CA  93921                                  FAX # 831-624-2428
Debra@Divorce-123.com
Party Represented :

    Lydia Harris

**5        Goldman, Dan**
Dan  Goldman                                 ( Active )
Russ, August & Kabat                         PETI  Petitioner
12424 Wilshire Blvd.                              Main Phone #  310-826-7474
Suite 1200                                           Direct Phone #
Los Angeles, CA  90025                              FAX # 310-826-6991
dwgoldman@raklaw.com
Party Represented :

    Michael Ray Harris

-12-

CA001 - JAMS, Inc.     Service List                                    1/6/2006

6        Comden, Leonard J.          THE RESOLUTION EXPERTS
Leonard J. Comden                    ( Active )
Wasserman, Comden, Casselman & Pearson    RBSP   Respondent
5567 Reseda Blvd., Suite 330                  Main Phone # 818-705-6800
PO Box 7033                                   Direct Phone #
Tarzana, CA 91357-7033                        FAX # 818-345-0162
lcomden@wocplaw.com
Party Represented :
      Wasserman, Comden, Casselman & Pearson

707 WILSHIRE BLVD.   46TH FLOOR   LOS ANGELES, CA 90017   TEL 213-620-1133   FAX 213-620-0100   Page   2

-13-

## PROOF OF SERVICE

STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

 I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 12424 Wilshire Boulevard, 12th Floor, Los Angeles, California 90025.

 On May 4, 2006 I caused to be served the foregoing document described as PROOF OF CLAIM on interested parties in this action

☑ by placing true copies thereof enclosed in sealed envelopes addressed as stated on the attached mailing list.

☐ by placing ☐ the original ☐ a true copy thereof enclosed in sealed envelopes addressed as follows:

**SERVICE NAME/ADDRESS**

☑ BY MAIL

☐ I deposited such in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

☑ As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☑ Federal: I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on May 4, 2006 at Los Angeles, California.

_____
NICOLE JONES

3714.01 POS-GR-special

— 14 —

1

## SERVICE LIST

2

3    Robert S. Altagen, Esq.              *Attorney for Debtor, Death Row*
     111 Corporate Center Drive, Ste. 201   *Records*
     Monterey Park, CA 91754

4

5    Death Row Records, Inc.              *Debtor*
     PO Box 3037
     Beverly Hills, CA 90212

6

7    Office of the US Trustee             *Trustee*
     725 S. Figueroa Street, 26th floor
     Los Angeles, CA 90017

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3714-01 POS-DK-special