# EXHIBIT 11 A

EXHIBIT 11 A

1 | ERIC P. ISRAEL (State Bar No. 132426)
  | JOHN N. TEDFORD, IV (State Bar No. 205537)
2 | DANNING, GILL, DIAMOND & KOLLITZ, LLP
  | 2029 Century Park East, Third Floor
3 | Los Angeles, California 90067-2904
  | Telephone: (310) 277-0077
4 | Facsimile: (310) 277-5735

5 | Attorneys for Richard K. Diamond, Chapter 11 Trustee

6

7

8 | **UNITED STATES BANKRUPTCY COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA**

10 | **LOS ANGELES DIVISION**

11

12 | In re ) Case No. 2:06-11187-VZ
13 | MARION KNIGHT, JR., ) Chapter 11
14 | Debtor. ) **NOTICE OF MOTION AND CHAPTER**
15 | ) **11 TRUSTEE'S MOTION FOR**
   | ) **APPROVAL OF SETTLEMENT WITH**
16 | ) **LYDIA HARRIS, MICHAEL HARRIS,**
   | ) **CONQUEST MEDIA GROUP, LLC, AND**
17 | ) **HELEN FRAZER AS THE CHAPTER 7**
   | ) **TRUSTEE FOR THE ESTATE OF**
18 | ) **LYDIA HARRIS; AND MEMORANDUM**
   | ) **OF POINTS AND AUTHORITIES,**
19 | ) **DECLARATION OF RICHARD K.**
   | ) **DIAMOND, AND REQUEST FOR**
20 | ) **JUDICIAL NOTICE IN SUPPORT**
   | ) **THEREOF**
21 | )
   | ) Date:    May 27, 2008
22 | ) Time:    11:00 a.m.
   | ) Place:   Courtroom 1368
23 | )          255 E. Temple St.
   | )          Los Angeles, CA

24 | **PLEASE TAKE NOTICE** that on May 27, 2008, at 11:00 a.m., or as soon thereafter as the
25 | matter may be heard, in Courtroom "1368" of the United States Bankruptcy Court located at 255
26 | East Temple Street, Los Angeles, California, Richard K. Diamond, the Chapter 11 trustee (the
27 | "Knight Trustee") for the estate of Marion Knight, Jr. ("Knight"), will and does hereby move for an
28 | order approving the proposed settlement between the Knight Trustee and R. Todd Neilson, the

321941.02 [XP] 0611187A

1  Chapter 11 trustee (the "DRR Trustee") for the estate of Death Row Records, Inc. ("Death Row"),

2  on the one hand, and Lydia Harris, Michael Harris, Conquest Media Group, LLC

3  ("Conquest/Harris"), and Helen Frazer, as the Chapter 7 trustee (the "Harris Trustee") for the estate

4  of Lydia Harris, on the other hand.

5       This motion is made on the following grounds:  On or about April 4, 2006 (the "Petition

6  Date"), the Debtor and Death Row filed separate voluntary petitions for relief under Chapter 11 of

7  Title 11 of the United States Code.  In July 2006, the DRR Trustee was appointed as the Chapter 11

8  trustee for the Death Row estate.  In March 2007, the Knight Trustee was appointed as the Chapter

9  11 trustee for the Knight estate.

10      In both the Knight and Death Row cases, Lydia Harris and Michael Harris separately filed

11  proofs of claims relating to a Superior Court judgment entered in favor of Lydia Harris as a

12  terminating sanction against both Knight and Death Row in the principal amount of $107 million

13  (the "Judgment"), consisting of compensatory damages of $45 million of economic damages and

14  $2 million of non-economic damages, plus $60 million of punitive damages.  In a separate Superior

15  Court judgment in Lydia and Michael Harris' marital dissolution proceeding, the Judgment was

16  found to be a community property asset of their marital estate.  Lydia and Michael Harris have

17  represented that they subsequently assigned their interests in the Judgment to Conquest Media

18  Group, LLC ("Conquest").

19      Litigation relating to the Judgment is pending before the Bankruptcy Court.  The Knight

20  Trustee and the DRR Trustee are plaintiffs in an adversary proceeding originally filed by Knight

21  and Death Row seeking, among other things, (a) a declaration that the Judgment has been settled

22  and fully resolved, (b) disallowance, reduction and/or subordination of the claims filed by Lydia

23  Harris and Michael Harris, and (c) avoidance of a $1 million payment made by Knight prior to the

24  Petition Date.  Also, Lydia Harris and Michael Harris filed an adversary proceeding against Knight

25  seeking a determination that their claims against Knight under the Judgment are non-dischargeable

26  under 11 U.S.C. § 523.

27      In August 2007, the Bankruptcy Court ordered the parties to mediation.  Since then, the

28  parties have engaged in substantial settlement discussions, frequently with the assistance of the

-2-

321941.02 [XP] 0611187A

1  mediator, the Honorable Mitchel R. Goldberg, a judge (now retired) for the United States

2  Bankruptcy Court for the Central District of California, Riverside Division.  After substantial

3  settlement negotiations, and subject to approval of the Bankruptcy Court in the Knight and Death

4  Row cases, as well as the Bankruptcy Court in Lydia Harris' personal bankruptcy case, the parties

5  have agreed to the terms of a global settlement which has been memorialized in a written

6  settlement agreement (the "Agreement") which is attached as Exhibit "1" to the Declaration of

7  Richard K. Diamond appended hereto.

8       Under the Agreement, Lydia and Michael Harris' claims against both the Knight and Death

9  Row estates will be allowed as general unsecured claims in the amount of $30 million and a

10  subordinated unsecured claim in the amount of $15 million.  The general unsecured claim will be

11  paid in the aggregate in three phases, with the maximum amount to be paid to Conquest/Harris

12  capped in the first two phases to ensure that other allowed general unsecured claims receive certain

13  minimum distributions from and to the extent of available funds.[1]  Also, the subordinated claim

14  will be paid pursuant to the priority afforded by § 726(a)(4) of the Bankruptcy Code, again from

15  and to the extent of available funds.  The manner which such distributions are allocated as between

16  Conquest/Harris and the Harris Trustee will be determined amongst themselves.

17       The Agreement also contains provisions relating to the payment of other claims asserted

18  against the Knight and Death Row estates.  For example, proofs of claims have been filed against

19  the Knight and Death Row estates by the law firm of Wasserman, Comden & Casselman, LLP (the

20  "Wasserman Firm"), which represented Lydia Harris in connection with her Superior Court lawsuit

21  _____

22  [1] Pursuant to the settlement, of the first $10 million of distributions collectively made by the
Knight Trustee and the DRR Trustee to general unsecured creditors, the amount paid to the Lydia
23  and Michael Harris will not exceed 50% of all such distributions and, in any event, will not exceed
$3.5 million.  Of the next $10 million of distributions collectively made by the Knight Trustee and
24  the DRR Trustee to general unsecured creditors, the amount paid to Lydia and Michael Harris will
not exceed 50% of all such distributions and, in any event, will not exceed $2 million until other
25  claims are paid in full.  Of the next $10 million of distributions collectively made by the Knight
Trustee and the DRR Trustee to general unsecured creditors, the amount paid to Lydia and Michael
26  Harris will not exceed 50% of all such distributions until other general unsecured claims have been
paid in full (exclusive of surplus interest).  Once all other allowed general unsecured claims have
27  been paid in full (not including surplus interest), Lydia and Michael Harris will receive 100% of
further distributions until their claim has been paid in full (exclusive of surplus interest).

28

321941.02 [XP] 0611187A

1  against Knight and Death Row. To the extent the Wasserman Firm (or any other creditor whose

2  claim is based upon, derivative of or measured by the Judgment) is entitled to a distribution on

3  account of such claims, Conquest/Harris will indemnify the Knight and Death Row estates for such

4  distributions, and any such distributions will be credited against the distributions that would

5  otherwise be paid to Conquest/Harris.

6       With respect to the pending litigation, the Agreement provides that the Knight Trustee and

7  the DRR Trustee will dismiss the adversary proceeding against Lydia and Michael Harris. In

8  addition, the non-dischargeability proceeding by Lydia and Michael Harris against Knight

9  personally will be dismissed. Upon the effective date of the Agreement, the parties will release one

10  another of all known and unknown claims, and any judgment liens are avoided and preserved for

11  the benefit of the estates.

12       The Knight Trustee believes that the proposed settlement is a fair and reasonable settlement

13  of his claims against Conquest/Harris and the Harris Trustee, and is in the best interests of the

14  Knight estate and its creditors. The Official Committee of Unsecured Creditors (the "Committee")

15  appointed in the Knight case was heavily involved in the negotiation of the terms set forth in the

16  proposed settlement, and the Knight Trustee understands that the Committee supports this motion

17  and approval of the Agreement. Accordingly, the Knight Trustee is requesting approval of his

18  proposed settlement on the terms set forth in the Agreement.

19       The motion is based upon the separate notice, this notice and motion, the accompanying

20  Memorandum of Points and Authorities, Declaration of Richard K. Diamond, and Request for

21  Judicial Notice, the DRR Trustee's motion filed or to be filed in the Death Row case for approval

22  of the proposed settlement in that case, the papers and pleadings on file in this case, and such other

23  evidence as may be presented to the Court.

24       **PLEASE TAKE FURTHER NOTICE** that pursuant to Local Bankruptcy Rule 9013-

25  1(a)(7), any party opposing the relief sought by the motion must file a response in writing, filed

26  with the Clerk of the Court and served upon the following not less than fourteen (14) days prior to

27  the hearing on the motion:

28  ///

321941.02 (XP) 0611187A

1

*Counsel for the Knight Trustee*
Eric P. Israel, Esq.

2 | John N. Tedford, IV, Esq.
Danning, Gill, Diamond & Kollitz, LLP

3 | 2029 Century Park East, Third Floor
Los Angeles, CA 90067

4

*Office of the United States Trustee*

5 | Office of the United States Trustee
ATTN: Alvin Mar, Esq.

6 | 725 S. Figueroa St., 26th Floor
Los Angeles, California 90017

7

8

*Counsel for Conquest Media Group, LLC*

9 | Peter J. Gurfein, Esq.
Akin, Gump, Straus, Hauer & Feld, LLP

10 | 2029 Century Park East, Suite 2400
Los Angeles, CA 90067

11

*Counsel for Michael Harris*

12 | Steven M. Goldberg, Esq.
Russ August & Kabat, LLP

13 | 12424 Wilshire Blvd., 12th Floor
Los Angeles, CA 90025

14

*Counsel for Knight*

15 | Dan McCarthy, Esq.
Hill, Farrer & Burrill, LLP

16 | 300 S. Grand Ave., 37th Floor
Los Angeles, CA 90071

*Counsel for the DRR Trustee*
Ronald L. Leibow, Esq.
Ashleigh A. Danker, Esq.
Kaye Scholer LLP
1999 Ave. of the Stars, 17th Floor
Los Angeles, CA 90067

*Counsel for the Official Committee of Unsecured Creditors*
Debra Grassgreen, Esq.
Pachulski Stang Ziehl & Jones LLP
150 California Street, 15th Floor
San Francisco, CA 94111

*Counsel for Lydia Harris*
Sharon Z. Weiss, Esq.
Weinstein, Weiss & Ordubegian, LLP
1925 Century Park East, Suite 1150
Los Angeles, CA 90067

*Counsel for the Harris Trustee*
Patrick K. McClellan, Esq.
Law Offices of Patrick K. McClellan
2600 Michelson Dr., Suite 700
Irvine, CA 92612

17 | Any response not timely filed and served may be deemed by the Court to be consent to the granting

18 | of the motion. If you do not have any objection to the motion, you do not need to take any further

19 | action.

20

21 | Dated: May 2, 2008                    DANNING, GILL, DIAMOND & KOLLITZ, LLP

22

23

24 | By: _____ IV
          John N. Tedford, IV

25 | Attorneys for Richard K. Diamond,
Chapter 11 Trustee

26

27

28

-5-

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### STATEMENT OF FACTS

A.    BANKRUPTCY BACKGROUND

    1.    IN RE MARION KNIGHT, JR., CASE NO. 2:06-11187-VZ

On or about April 4, 2006 (the "Petition Date"), Marion Knight, Jr. ("Knight"), filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Code"). On or about March 7, 2007, on motion of the United States Trustee, the Court entered its order directing the appointment of a Chapter 11 trustee. On or about March 9, 2007, the Court entered its order approving the appointment of Richard K. Diamond (the "Knight Trustee") as the Chapter 11 trustee. Thereafter, the Knight Trustee accepted appointment as the Chapter 11 trustee for the Knight estate and continues to act in such capacity for the benefit of the estate and its creditors.

    2.    IN RE DEATH ROW RECORDS, INC., CASE NO. 2:06-11205-VZ

Death Row Records, Inc. ("Death Row") is a rap and hip-hop record label founded by, among others, Knight. Prior to the Petition Date, Death Row ceased business operations. On the Petition Date, Death Row also filed a voluntary petition for relief under Chapter 11 of the Code. On or about July 11, 2006, the Court entered its order directing the appointment of a Chapter 11 trustee. R. Todd Neilson (the "DRR Trustee") was appointed as the Chapter 11 trustee for the Death Row estate and continues to act in such capacity for the benefit of the Death Row estate and its creditors.

    3.    IN RE LYDIA HARRIS, CASE NO. 1:96-15521-GM

On or about May 17, 1996, Lydia Harris filed a voluntary petition for relief under Chapter 7 of the Code. Helen Frazer was appointed as the Chapter 7 trustee (the "Harris Trustee") for Lydia Harris' estate. On or about December 15, 1999, Lydia Harris' case was closed. However, during 2007 the Harris Trustee became aware of Lydia Harris' alleged claims against the Knight and

321941.02 [XP] 0611187A

1   Death Row estates, which claims arose prior to Lydia Harris' bankruptcy filing.  On or about

2   August 23, 2007, pursuant to a stipulation between Lydia Harris and the Harris Trustee, the Court

3   in Lydia Harris' case reopened the case and re-appointed the Harris Trustee.

4

5   B.    CLAIMS BY LYDIA HARRIS AND MICHAEL HARRIS AGAINST THE KNIGHT

6         AND DEATH ROW ESTATES

7          In February 2002, Lydia Harris filed a complaint against Knight and Death Row in the Los

8   Angeles Superior Court.  In her lawsuit, Lydia Harris alleged, among other things, that Knight and

9   Death Row had defrauded her of the prospective economic benefits from her interest in Death Row.

10  Lydia Harris was represented in the action by the law firm of Wasserman, Comden & Casselman,

11  LLP (the "Wasserman Firm").  On or about March 9, 2005, the Superior Court entered judgment

12  (the "Judgment") as a terminating sanction against Knight and Death Row, jointly and severally, in

13  the principal amount of $107 million:  $45 million of economic damages; $2 million of non-

14  economic damages; and $60 million of punitive damages.

15         Lydia Harris and Michael Harris were at one time married, but are now divorced.  Pursuant

16  to an order of the Superior Court in their divorce proceeding, Lydia Harris' claims arising out of

17  the Judgment constitute community property.  The manner in which the claims arising out of the

18  Judgment are to be allocated as between Lydia and Michael Harris is disputed, and a trial on such

19  issue is set before the Superior Court.  In the interim, in May 2006, Michael Harris filed proofs of

20  claim in both the Knight and Death Row cases based on the Judgment.[2]  Also, in October 2006,

21  Lydia Harris filed proofs of claim in both cases based on the Judgment.[3]

22  ///

23  ///

24

25      [2] A copy of Michael Harris' proof of claim in the Knight case is attached as Exhibit "2" to
26  the Request for Judicial Notice.

27      [3] A copy of Lydia Harris' proof of claim in the Knight case is attached as Exhibit "3" to
    the Request for Judicial Notice.

28

-7-

1   C.     <u>ADVERSARY PROCEEDING COMMENCED BY KNIGHT AND DEATH ROW</u>

2         <u>AGAINST LYDIA AND MICHAEL HARRIS RELATING TO THEIR ALLEGED</u>

3         <u>CLAIMS</u>

4       In June 2006, Knight and Death Row (acting as debtors-in-possession of their respective

5   estates) filed a complaint against Lydia and Michael Harris. Knight and Death Row alleged,

6   among other things, that in May 2005, Knight and Death Row paid $1 million to Lydia Harris with

7   the understanding that such payment would constitute a complete settlement of the Judgment.

8   They further alleged that Lydia Harris now contends that there was no settlement. Knight and

9   Death Row requested, among other things, that the Bankruptcy Court declare the Judgment invalid

10   and unenforceable, that the Bankruptcy Court declare that the parties entered into a valid and

11   binding settlement in April 2005 pursuant to which the $1 million was paid to Lydia Harris, a

12   judgment for damages allegedly caused by fraud and misrepresentations by the defendants,

13   avoidance of the $1 million transferred to Lydia Harris, and avoidance or subordination of all or

14   portions of Lydia and Michael Harris' alleged claims.

15       In November 2006, the Court entered an order abstaining from hearing certain claims for

16   relief asserted in the complaint filed by Knight and Death Row, and stayed other claims for relief.

17   Pursuant to the Court's order, Knight and Death Row filed a First Amended Complaint, which is

18   currently the operative complaint in the adversary proceeding.[4]

19       Also in November 2006, the Court authorized the substitution of the DRR Trustee as a

20   plaintiff in the adversary proceeding in place of Death Row. In May 2007, the Court authorized the

21   substitution of the Knight Trustee as a plaintiff in place of Knight. This adversary proceeding

22   ("Adversary Proceeding No. 2:06-01660-VZ") remains pending.

23   ///

24   ///

25   ///

26

27       [4] A copy of the First Amended Complaint is attached as Exhibit "5" to the Request for
Judicial Notice.

28

-8-

1  D.    LYDIA HARRIS' AND MICHAEL HARRIS' NON-DISCHARGEABILITY CLAIMS

2        AGAINST KNIGHT

3        In July 2006, Lydia and Michael Harris filed a complaint against Knight, seeking a

4  determination that the debt owed by Knight arising out of the Judgment is non-dischargeable under

5  § 523(a) of the Code.  This adversary proceeding ("Adversary Proceeding No. 2:06-01809-VZ")

6  remains pending.

7

8  E.    THE ASSIGNMENT OF LYDIA AND MICHAEL HARRIS' CLAIMS TO CONQUEST

9        MEDIA GROUP, LLC

10        Lydia and Michael Harris have represented that they each transferred their respective claims

11  against the Knight and Death Row estates arising out of the Judgment to Conquest Media Group,

12  LLC ("Conquest").  In March 2007, Conquest filed a *Request for Issuance of Notice of Transfer of*

13  *Claim Pursuant to F.R.B.P. 3001(e)* with respect to both Lydia Harris' and Michael Harris' claims.

14  The Clerk of the Court issued such a notice on or about April 2, 2007.

15        On or about April 27, 2007, Conquest filed a motion seeking to substitute into Adversary

16  Proceeding No. 2:06-01660-VZ.  By order entered on or about June 7, 2007, the Bankruptcy Court

17  denied Conquest's motion.

18

19  F.    CLAIMS BY THE WASSERMAN FIRM AGAINST THE KNIGHT AND DEATH ROW

20        ESTATES

21        In October 2006, the Wasserman Firm also filed proofs of claims against both the Knight

22  and Death Row estates in the amount of approximately $60.4 million.[5]  According to the

23  Wasserman Firm's proofs of claim, the claims are based upon (a) the contingency fee it allegedly

24  earned when the Superior Court entered judgment against Knight and Death Row for $107 million,

25  and (b) alleged claims against Knight relating to, among other things, payments made by Knight to

26  ───────────

27  [5] A copy of the proof of claim filed in the Knight case is attached as Exhibit "4" to the
Request for Judicial Notice.

28

321941.02 [XP] 0611187A

1  Lydia Harris that, it contends, were part of a scheme to defraud the Wasserman Firm of its rights

2  under its attorneys' fee lien.

3

4  G.   SETTLEMENT BETWEEN THE KNIGHT TRUSTEE AND THE DRR TRUSTEE, ON

5      THE ONE HAND, AND LYDIA HARRIS, MICHAEL HARRIS, CONQUEST, AND

6      THE HARRIS TRUSTEE, ON THE OTHER HAND, OF THEIR RESPECTIVE CLAIMS

7      In August 2007, the Court ordered the parties to mediation. Since then, the parties have

8  engaged in numerous settlement discussions, many with mediator Mitchel R. Goldberg, United

9  States Bankruptcy Judge (now retired).

10      Subject to Bankruptcy Court approval in this case, the Death Row case, and the Lydia

11 Harris case, the Knight Trustee and the DRR Trustee have agreed to a resolution of their claims

12 against Lydia and Michael Harris, Conquest, and the Harris Trustee (collectively the "Harris

13 Parties"), and the Harris Parties' claims against the Knight and Death Row estates (collectively the

14 "Estates"). The terms of the parties' settlement are set forth in the Agreement and Mutual Release

15 (the "Agreement") attached as Exhibit "1" to the Declaration of Richard K. Diamond. Without

16 limiting the detail in that agreement,[6] the terms of the proposed settlement are as follows:

17      1.   The claims of Lydia and Michael Harris against the Estates (collectively referred to

18 hereinafter as the "Harris Claim") will be allowed against the Estates as (a) a general unsecured

19 claim in the amount of $30 million, and (b) a subordinated claim entitled to the priority of claims

20 identified in § 726(a)(4) of the Code in the amount of $15 million.

21      2.   Distributions on account of the general unsecured portion of the Harris Claim will

22 be made in phases, to the extent of available funds:

23          a.   with respect to the first $10 million paid to the Estates' general unsecured

24 creditors, the general unsecured portion of the Harris Claim will share *pari passu* with all other

25 _____

26  [6] The following paragraphs summarize some of the material terms of the Agreement. This
    summary does not identify each and every material term of the Agreement, and is not intended to
27  substitute for the Settlement Agreement itself. If there is a conflict between the summary herein
    and the terms of the Agreement, the terms of the Agreement control.

28

-10-

1  general unsecured claims except that the total amount distributed on account of the Harris Claim

2  (a) will not exceed 50% of the total amount distributed, and (b) in any event, will not exceed $3.5

3  million;

4          b.      with respect to the next $10 million paid to the Estates' general unsecured

5  creditors, the general unsecured portion of the Harris Claim will share *pari passu* with all other

6  outstanding general unsecured claims except that the total amount distributed on account of the

7  Harris Claim (a) will not exceed 50% of the total amount distributed, and (b) in any event, until all

8  other general unsecured claims have been paid in full (not including pre- or postpetition interest)

9  will not exceed $2 million;

10         c.      with respect to distributions to general unsecured claims in excess of $20

11  million, the general unsecured portion of the Harris Claim will share *pari passu* with all other

12  outstanding general unsecured claims except that the total amount distributed on account of the

13  Harris Claim will not exceed 50% of the total amount distributed at this tier until other general

14  unsecured claims have been paid in full (exclusive of surplus interest); and

15         d.      once all other allowed general unsecured claims have been paid in full (not

16  including surplus interest), the Harris Claim will receive 100% of further distributions until the

17  Harris Claim has been paid in full (exclusive of surplus interest).[7]

18     3.      The subordinated portion of the Harris Claim will be paid pursuant to the priority

19  afforded by § 726(a)(4) of the Code.

20     4.      Conquest, Lydia Harris and Michael Harris (collectively, "Conquest/Harris") will

21  inform the Wasserman Firm of the settlement. Unless the Wasserman Firm withdraws its proof of

22  claim, the Knight Trustee, DRR Trustee and/or Harris Trustee may object to the Wasserman Firm's

23  claim. If the Wasserman Firm's claim ultimately is allowed, Conquest/Harris will be responsible

24  for any distribution thereon. Conquest/Harris will indemnify the Estates against any claims by the

25  Wasserman Firm for which the Estates would otherwise be responsible. Any distribution from the

26

27  [7] If the trustees have negotiated similar arrangements with other claimants, the Harris Claim
    will share *pari passu* with such similarly negotiated claims.

28

-11-

321941:02 [XP] 0611187A

1    Estates to the Wasserman Firm will be credited against the distributions due Conquest/Harris under

2    the Agreement.

3       5.     Conquest/Harris will also be responsible for distributions made to any person or

4    entity whose claim is based upon, derivative of or measured by the Judgment. Conquest/Harris

5    will indemnify the Estates against any claims by such parties for which the Estates would otherwise

6    be responsible. Any distribution from the Estates to such parties will be credited against the

7    distributions due Conquest/Harris under the Agreement.

8       6.     The Harris Parties will independently agree upon the manner in which distributions

9    from the Estates are allocated among the Harris Parties.

10       7.     The Knight Trustee and the DRR Trustee will cause Adversary Proceeding No.

11    2:06-01660-VZ to be dismissed. Similarly, Lydia and Michael Harris will cause Adversary

12    Proceeding No. 2:06-01809-VZ to be dismissed.

13       8.     The Knight Trustee and the DRR Trustee each release the Harris Parties from any

14    and all known and unknown claims. Similarly, the Harris Parties release the Knight Trustee, the

15    Knight estate, the DRR Trustee, and the Death Row estate from any and all known and unknown

16    claims.

17

18                         II.

19                   ARGUMENT

20    A.     THE COURT IS AUTHORIZED TO APPROVE THE SETTLEMENT AGREEMENT

21       This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334, and

22    Federal Rule of Bankruptcy Procedure 9019. Federal Rule of Bankruptcy Procedure 9019(a)

23    provides,

24             On motion by the trustee and after a hearing on notice to creditors,
                 the debtor . . . and to such other entities as the court may designate,

25                  the court may approve a compromise or settlement.

26       The Supreme Court, in *Protective Committee for Independent Stockholders of TMT Trailer*

27    *Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968), held that a bankruptcy court, in considering

28    whether to approve a compromise, should inform itself regarding

1   all facts necessary for an intelligent and objective opinion of the
probabilities of ultimate success should the claim be litigated.
2   Further, the judge should form an educated estimate of the
complexity, expense, and likely duration of such litigation, the
3   possible difficulties of collecting on any judgment which might be
obtained, and all other factors relevant to a full and fair assessment of
4   the wisdom of the proposed compromise.

5   The Ninth Circuit has clarified the inquiry as follows:

6   In determining the fairness, reasonableness and adequacy of a
proposed settlement agreement, the court must consider: (a)
7   probability of success in the litigation; (b) the difficulties, if any, to
be encountered in the matter of collection; (c) the complexity of the
8   litigation involved, and the expense, inconvenience and delay
necessarily attending it; [and] (d) the paramount interest of the
9   creditors and a proper deference to their reasonable views in the
premises.
10

11   *In re A & C Properties*, 784 F.2d 1377, 1381 (9th Cir. 1986), *cert. denied*, 479 U.S. 854, 107 S. Ct.

12   189 (1986).

13   The trustee, as the party proposing the compromise, has the burden of persuading the Court

14   that the compromise is fair and equitable and should be approved. *Id.* Although "the creditors'

15   objections to a compromise must be afforded due deference, such objections are not controlling,

16   [citations], and while the court must preserve the rights of the creditors, it must also weigh certain

17   factors to determine whether the compromise is in the best interest of the bankrupt estate." *Id.* at

18   1382.

19   The bankruptcy court has wide latitude and discretion in evaluating a proposed compromise

20   because the judge is "uniquely situated to consider the equities and reasonableness." *United States*

21   *v. Alaska National Bank (In re Walsh Construction, Inc.)*, 669 F.2d 1325, 1328 (9th Cir. 1982).

22   The Ninth Circuit has further stated:

23   A compromise agreement allows the trustee and the creditor to avoid
the expenses and burdens associated with litigating "sharply
24   contested and dubious" claims. [Citation]. The bankruptcy court
need not conduct an exhaustive investigation into the validity of the
25   asserted claim. [Citation]. It is sufficient that, after apprising itself of
all facts necessary for an intelligent and objective opinion concerning
26   the claim's validity, the court determines that either (1) the claim has
a "substantial foundation" and is not "clearly invalid as a matter of
27   law," or (2) the outcome of the claim's litigation is "doubtful."

28   *Id.* at 1328.

-13-

1    The court is not "to decide the numerous questions of law and fact raised by [objectors] but

2    rather to canvass the issues and see whether the settlement '*falls below the lowest point in the*

3    *range of reasonableness.*'" *In re Carla Leather, Inc.*, 44 B.R. 457, 465 (Bankr. S.D.N.Y. 1984)

4    (*quoting In re W. T. Grant & Co.*, 699 F.2d 599, 608 (2d Cir. 1983) (emphasis added), *cert. denied*,

5    464 U.S. 822, 104 S. Ct. 89 (1983)), *aff'd*, 50 B.R. 764 (S.D.N.Y. 1985).

6

7    B.    THE PROPOSED SETTLEMENT AGREEMENT IS REASONABLE AND IN THE

8          BEST INTERESTS OF THE KNIGHT ESTATE

9          The Knight Trustee believes that his proposed settlement with the Harris Parties is a fair

10   and reasonable settlement of the claims asserted by him against the Harris Parties, and the Harris

11   Parties' claims against the Knight estate.  The probability of success of the Knight Trustee's claims

12   against the Harris Parties is highly uncertain, and litigation will be time consuming and complex.

13   There is no dispute that the Superior Court entered the Judgment as a terminating sanction against

14   Knight and Death Row in favor of Lydia Harris for the sum of $107 million, and that the time to

15   appeal from the Judgment expired long ago.  Knight asserts that the judgment is unenforceable

16   because Lydia Harris exerted undue influence over Knight's state court counsel, Dermot Givens,

17   including by threatening Mr. Givens and Mr. Givens' child, which caused Mr. Givens to fail to

18   seek appropriate relief from the Judgment or appeal from the Judgment.[8]  The Bankruptcy Court

19   has abstained from hearing claims relating to the validity of the Judgment, as well as claims

20   seeking to enforce an April 2005 written settlement agreement between Knight and Lydia Harris.[9]

21   Accordingly, in order to pursue his claims against the Harris Parties, the Knight Trustee would be

22   _____

23   [8] The Knight Trustee has filed a legal malpractice complaint against Mr. Givens for actions
     taken, or not taken, by him in connection with entry of the Judgment.

24   [9] Knight has alleged that he paid Lydia Harris $1 million pursuant to a written settlement
     agreement dated April 28, 2005.  Lydia Harris alleges that she did not in fact sign that agreement.
25   Lydia Harris has testified under oath in a written declaration that Knight is using the signature page
     that Lydia Harris signed for the purpose of attaching to the second draft settlement agreement, and
26   attached it to the first draft agreement which she claims to have previously rejected.  Lydia Harris
     alleges that the funds were actually paid pursuant to the second settlement agreement which called
27   for a payment of $1 million and further obligations by Knight thereafter.

28

-14-

1   required to litigate before the Superior Court and convince the Superior Court that the Judgment

2   should either be vacated or deemed satisfied.  Such litigation would involve, among other things,

3   the application of judicial estoppel against the Judgment because Lydia Harris failed to disclose the

4   underlying claims in her personal bankruptcy case.  The Superior Court would most likely be

5   required to weigh the testimony and credibility of Knight and Mr. Givens against Lydia Harris'

6   testimony and credibility.  Even if the Knight Trustee were successful in setting aside the

7   Judgment, the Knight Trustee would then be required to litigate with the Harris Parties concerning

8   the validity of their claims that were asserted against Knight in the Superior Court.  Such litigation

9   would require the Knight Trustee to engage in extensive discovery and pre-trial litigation, and

10  could result in the re-entry of judgment against Knight after a trial on the merits.

11          Even after the Superior Court litigation over claims from which the Bankruptcy Court has

12  abstained,[10] the Knight Trustee would be required to continue litigating with the Harris Parties in

13  connection with the claims from which the Bankruptcy Court did not abstain, including but not

14  limited to the avoidance of transfers, the subordination of the $45 million of economic damages as

15  relating to Lydia Harris' alleged shareholder interest, and the subordination of the $60 million in

16  punitive damages as a penalty.[11]  Such litigation would likely require more discovery and pre-trial

17  litigation, and the outcome of such litigation is uncertain.

18          The Knight Trustee believes that the paramount interest of creditors weighs in favor of

19  settlement.  The Official Committee of Unsecured Creditors appointed in the Knight case was

20  heavily involved in the negotiation of the terms set forth in the Agreement, and has advised the

21  Knight Trustee that it supports approval of the Agreement as being in the best interests of the

22

23      [10] The claims with respect to which the Bankruptcy Court abstained were: (1) for
    declaratory relief to determine the Judgment to be unenforceable; (2) to enforce the settlement that
24  Knight alleges to be the valid settlement agreed to by Lydia Harris; (3) to enforce a pre-litigation
    settlement with Michael Harris from 1996; (4) for rescission of the settlement agreement that Lydia
25  Harris alleges to be the valid settlement agreed to by Knight; (5) for fraud and deceit in connection
    with the 2005 settlement; and (6) alternatively, for negligent misrepresentation in connection with
26  the 2005 settlement.

27      [11] These claims are fully described in the first amended complaint, attached as Exhibit "5"
    to the Request for Judicial Notice.

28

-15-

1  Knight estate and its creditors.  Pursuant to the Agreement, both the Knight Trustee and the DRR

2  Trustee (collectively the "Trustees") will avoid the substantial legal fees and expenses that they

3  would otherwise incur in prosecuting their claims against the Harris Parties.  The Agreement

4  provides for a substantial reduction of the Harris Parties' general unsecured claims against the

5  Knight and Death Row estates, from over $107 million to $30 million.  At the same time, the

6  Agreement contains provisions to ensure that other general unsecured creditors receive at least half

7  of the total distributions made in the first two phases of distributions made to general unsecured

8  creditors.  The Agreement also effectively provides for the reimbursement by the Harris Parties to

9  the Knight Trustee and the DRR Trustee for any distributions made to the Wasserman Firm and

10  any other claims that are based upon, derivative of, or measured by the Judgment.  Therefore,

11  through the Agreement, the Knight Trustee is further reducing general unsecured claims against the

12  Knight estate by providing for payment by the Harris Parties to such third party claimants (or the

13  reduction of amounts to be distributed to the Harris Parties).  In view of the expense of litigating

14  with the Harris Parties, the risk of loss, and the multiple benefits to be received by the Knight estate

15  under the Agreement, the Knight Trustee believes that the proposed settlement with the Harris

16  Parties is in the best interests of the estate and its creditors.

17

18                                                III.

19                                         CONCLUSION

20          For the foregoing reasons, the Knight Trustee requests that the Court approve the Knight

21  Trustee's proposed settlement with the Harris Parties.  The Knight Trustee also requests such

22  further relief as the Court deems just and proper.

23

24  Dated: May 2, 2008                          DANNING, GILL, DIAMOND & KOLLITZ, LLP

25

26

27  By: _____

                                              John N. Tedford, IV
28                                            Attorneys for Richard K. Diamond,
                                              Chapter 11 Trustee

                                              -16-

1

## DECLARATION OF RICHARD K. DIAMOND

2

3    I, Richard K. Diamond, declare and state as follows:

4    1.    I am the duly appointed Chapter 11 trustee for the estate of Marion Knight, Jr.

5 ("Knight"). I have personal knowledge of the facts in this declaration and, if called as a witness,

6 could testify competently to these facts.

7    2.    Death Row Records, Inc. ("Death Row") is a rap and hip-hop record label founded

8 by, among others, Knight. I have been advised that, prior to the Petition Date, Death Row ceased

9 business operations.

10    3.    Based upon the investigation which my counsel and I have conducted in this case,

11 and representations made by Lydia and Michael Harris in connection with my proposed settlement

12 with them, I am informed and believe that the following facts are true and correct:

13    a.    In February 2002, Lydia Harris filed a complaint against Knight and Death

14 Row in the Los Angeles Superior Court. In her lawsuit, Lydia Harris alleged, among other things,

15 that Knight and Death Row had defrauded her of her prospective economic benefits of her interest

16 in Death Row. Lydia Harris was represented in the action by the law firm of Wasserman, Comden

17 & Casselman, LLP (the "Wasserman Firm").

18    b.    On or about March 9, 2005, the Superior Court entered judgment (the

19 "Judgment") against Knight and Death Row in the principal amount of $107 million: $45 million

20 of economic damages; $2 million of non-economic damages; and $60 million of punitive damages.

21    c.    Lydia Harris and Michael Harris were at one time married, but are now

22 divorced. Pursuant to an order of the Superior Court in their divorce proceeding, Lydia Harris'

23 claims arising out of the Judgment constitute community property.

24    d.    The manner in which the claims arising out of the Judgment are to be

25 allocated as between Lydia and Michael Harris is disputed, and a trial on such issue is set before

26 the Superior Court.

27    4.    Prior to my appointment, Knight and Death Row filed a complaint against Lydia and

28 Michael Harris seeking, among other things, disallowance and/or subordination of their alleged

-17-

1    claims against the Knight estate. After I was appointed, I substituted into the action, in my capacity

2    as Chapter 11 trustee for the Knight estate, as a plaintiff in place of Knight. In or about August

3    2007, the Court ordered the parties to mediation. Since then, the parties have engaged in numerous

4    settlement discussions, many with the mediator, the Honorable Mitchel R. Goldberg (now retired).

5         5.    Subject to Bankruptcy Court approval in this case, the Death Row case, and Lydia

6    Harris' personal bankruptcy case, the DRR Trustee and I have agreed to a resolution of our claims

7    against Lydia Harris, Michael Harris, Conquest Media Group, LLC ("Conquest"), and Helen

8    Frazer, the Chapter 7 trustee for Lydia Harris' bankruptcy estate (collectively the "Harris Parties"),

9    as well as the Harris Parties' claims against the Knight and Death Row estates. The terms of our

10   proposed settlement are set forth in the Agreement and Mutual Release (the "Agreement") attached

11   as Exhibit "1" hereto.

12        6.    I believe that the proposed Agreement is a fair and reasonable settlement of the

13   claims asserted by me against the Harris Parties, and the Harris Parties' claims against the Knight

14   estate. I believe that the probability of success of my claims against the Harris Parties is highly

15   uncertain, and litigation with the Harris Parties will be time consuming and complex. The time to

16   appeal from the Judgment expired long ago and the Bankruptcy Court has abstained from hearing

17   claims relating to the validity of the Judgment, as well as claims seeking to enforce an April 2005

18   written settlement agreement between Knight and Lydia Harris. I believe that in order to pursue

19   my claims against the Harris Parties, I will be required to litigate before the Superior Court and

20   convince the Superior Court that the Judgment should either be vacated or deemed satisfied. Such

21   litigation would involve, among other things, the application of judicial estoppel against the

22   Judgment because Lydia Harris failed to disclose the underlying claims in her personal bankruptcy

23   case. I believe that the Superior Court would most likely be required to weigh the testimony and

24   credibility of Knight and Mr. Givens against Lydia Harris' testimony and credibility. Even if I

25   succeed in setting aside the Judgment, I will be required to litigate with the Harris Parties

26   concerning the validity of their claims that were asserted against Knight in the Superior Court. I

27   believe that such litigation would require me to engage in extensive discovery and pre-trial

28   litigation, and could result in the re-entry of judgment against Knight after a trial on the merits.

-18-

321941.02 [XP] 0611187A

1       7.    I also believe that after the Superior Court litigation over claims from which the

2  Bankruptcy Court has abstained, I will be required to continue litigating with the Harris Parties in

3  connection with the claims from which the Bankruptcy Court did not abstain, including but not

4  limited to the avoidance of transfers, the subordination of the $45 million of economic damages as

5  relating to Lydia Harris' alleged shareholder interest, and the subordination of the $60 million in

6  punitive damages as a penalty.  I believe that such litigation would likely require more discovery

7  and pre-trial litigation, and the outcome of such litigation is uncertain.

8       8.    I further believe that the paramount interest of creditors weighs strongly in favor of

9  settlement.  Under the Agreement, the DRR Trustee and I will avoid, among other things, the

10  substantial legal fees and expenses that we will otherwise incur in prosecuting our claims against

11  the Harris Parties and defending against claims asserted by the Harris Parties against the Knight

12  and Death Row estates.  The Harris Parties' general unsecured claims against the Knight and Death

13  Row estates will be reduced substantially, from over $107 million to $30 million.  At the same

14  time, provisions will be put into place to ensure that other general unsecured creditors receive at

15  least half of the total distributions made in the first two phases of distributions made to general

16  unsecured creditors.  Provisions beneficial to the Knight estate also are included with regard to

17  distributions to be made to the Wasserman Firm and other third party claimants whose claims are

18  based upon, derivative of, or measured by the Judgment.  In view of the expense of litigating with

19  the Harris Parties, the risk of loss, and the multiple benefits to be received by the Knight estate and

20  the Death Row estate under the Agreement, I believe that the proposed settlement with the Harris

21  Parties is in the best interests of the estate and its creditors.

22

23       I declare under penalty of perjury under the laws of the United States of America that the

24  foregoing is true and correct.

25       Executed on May 2, 2008, at Los Angeles, California.

26

27

28                              RICHARD K. DIAMOND

-19-

321941.02 [XP] 0611187A

1

## REQUEST FOR JUDICIAL NOTICE

2

3      Richard K. Diamond, the Chapter 11 trustee (the "Knight Trustee") for the estate of Marion

4 Knight, Jr. ("Knight"), requests that the Court take judicial notice of the following facts:

5      1.     On or about May 17, 1996, Lydia Harris filed a voluntary petition for relief under

6 Chapter 7 of Title 11 of the United States Code (the "Code"). Helen Frazer (the "Harris Trustee")

7 was appointed as the Chapter 7 trustee for Lydia Harris' estate.

8      2.     On or about December 15, 1999, Lydia Harris' bankruptcy case was closed.

9      3.     On or about April 4, 2006 (the "Petition Date"), Knight filed a voluntary petition for

10 relief under Chapter 11 of the Code.

11      4.     On the Petition Date, Death Row Records, Inc. ("Death Row") also filed a voluntary

12 petition for relief under Chapter 11 of the Code.

13      5.     On or about May 4, 2006, Michael Harris filed a proof of claim with the Court in the

14 Knight case, which was assigned claim number 3 by the Clerk of the Court. A true and correct

15 copy of Michael Harris' proof of claim filed in the Knight case is attached as Exhibit "2" hereto.

16      6.     In June 2006, Knight and Death Row (acting as debtors-in-possession of their

17 respective estates) filed a complaint with the Bankruptcy Court against Lydia Harris and Michael

18 Harris. Knight and Death Row alleged, among other things, that in May 2005, Knight and Death

19 Row paid $1 million to Lydia Harris with the understanding that such payment would constitute a

20 settlement of the Judgment. They further alleged that Lydia Harris now contends that there was no

21 settlement. Knight and Death requested, among other things, that the Court declare the Judgment

22 invalid and unenforceable, that the Bankruptcy Court declare that the parties entered into a valid

23 and binding settlement in April 2005 pursuant to which the $1 million was paid to Lydia Harris, a

24 judgment for damages allegedly caused by fraud and misrepresentations by the defendants,

25 avoidance of the $1 million transferred to Lydia Harris, and subordination of Lydia Harris' and

26 Michael Harris' claims.

27 ///

28 ///

-20-

321941.02 [XP] 0611187A

1       7.    On or about July 3, 2006, Lydia and Michael Harris filed a complaint against

2 Knight, seeking a determination that the debt owed by Knight arising out of the Judgment is non-

3 dischargeable under § 523(a) of the Code.

4       8.    On or about July 11, 2006, the Court entered its order directing the appointment of a

5 Chapter 11 trustee in the Death Row case.

6       9.    R. Todd Neilson (the "DRR Trustee") was appointed as the Chapter 11 trustee for

7 the Death Row estate and continues to act in such capacity for the benefit of the Death Row estate

8 and its creditors.

9      10.    On or about October 19, 2006, Lydia Harris filed a proof of claim with the Court in

10 the Knight case, which was assigned claim number 16 by the Clerk of the Court. A true and

11 correct copy of Lydia Harris' proof of claim filed in the Knight case is attached as Exhibit "3"

12 hereto.

13      11.    On or about October 31, 2006, the law firm of Wasserman, Comden & Casselman,

14 LLP (the "Wasserman Firm") filed a proof of claim with the Court in the Knight case, which was

15 assigned claim number 34 by the Clerk of the Court. A true and correct copy of the Wasserman

16 Firm's proof of claim filed in the Knight case is attached as Exhibit "4" hereto.

17      12.    On or about November 20, 2006, the Court entered an order abstaining from hearing

18 certain claims for relief asserted in Knight's and Death Row's complaint against Lydia and Michael

19 Harris. Pursuant to the Court's ruling, on November 1, 2006, Knight and Death Row filed a first

20 amended complaint, which is currently the operative complaint in the adversary proceeding. A true

21 and correct copy of the first amended complaint, excluding exhibits thereto, is attached as Exhibit

22 "5" hereto.

23      13.    On or about November 20, 2006, the Court authorized the substitution of the DRR

24 Trustee as a plaintiff, in place of Death Row, in the adversary proceeding against Lydia and

25 Michael Harris.

26      14.    On or about March 7, 2007, the Court entered its order directing the appointment of

27 a Chapter 11 trustee in the Knight case.

28 ///

321941.02 [XP] 0611187A

1       15.    On or about March 9, 2007, the Court entered its order approving the appointment

2  of Richard K. Diamond as the Chapter 11 trustee. The Knight Trustee accepted appointment as the

3  Chapter 11 trustee for the Knight estate and continues to act in such capacity for the benefit of the

4  estate and its creditors.

5       16.    In March 2007, Conquest Media Group, LLC ("Conquest") filed a *Request for*

6  *Issuance of Notice of Transfer of Claim Pursuant to F.R.B.P. 3001(e)* with respect to both Lydia

7  Harris' and Michael Harris' claims. The Court issued such a notice on or about April 2, 2007.

8       17.    On or about April 27, 2007, Conquest filed a motion seeking to substitute into the

9  adversary proceeding originally filed by Knight and Death Row against Lydia and Michael Harris

10  in June 2006. By order entered on or about June 7, 2007, the Bankruptcy Court denied Conquest's

11  motion.

12       18.    On or about August 23, 2007, pursuant to a stipulation between Lydia Harris and the

13  Harris Trustee, the Court in Lydia Harris' case reopened the bankruptcy case and re-appointed the

14  Harris Trustee.

15       19.    On or about May 31, 2007, the Court authorized the substitution of the Knight

16  Trustee as a plaintiff, in place of Knight, in the adversary proceeding against Lydia and Michael

17  Harris.

18

19  Dated: May 2, 2008               DANNING, GILL, DIAMOND & KOLLITZ, LLP

20

21                           By: _____ IV

22                             John N. Tedford, IV

23                             Attorneys for Richard K. Diamond,
                                   Chapter 11 Trustee

24

25

26

27

28

-22-

# EXHIBIT 1

00023

## AGREEMENT AND MUTUAL RELEASE

This Agreement and Mutual Release (the "AGREEMENT") is made effective as of February 6, 2008 , by and between Richard K. Diamond, as Chapter 11 Trustee for the bankruptcy estate of Marion "Suge" Knight (the "KNIGHT TRUSTEE" and the "KNIGHT ESTATE") and R. Todd Neilson, as Chapter 11 Trustee for the bankruptcy estate of Death Row Records, Inc. (the "DEATH ROW TRUSTEE" and the "DEATH ROW ESTATE", respectively) (collectively the "TRUSTEES" and the "ESTATES", respectively), on the one hand; and LYDIA Harris ("LYDIA") and Michael Ray Harris ("MICHAEL") (collectively "M & L HARRIS"), Conquest Media Group, LLC ("CONQUEST") and any and all of their assignees or successors (CONQUEST and M & L HARRIS collectively are referred to hereinafter collectively as "CONQUEST/HARRIS") and Helen R. Frazer as Chapter 7 trustee for LYDIA (the "HARRIS CHAPTER 7 TRUSTEE"), on the other hand. The parties are sometimes hereafter referred to collectively as the "PARTIES" or each individually as a "PARTY".

### RECITALS

This AGREEMENT is entered into with reference to the following facts:

A.      On or about April 4, 2006, Marion "Suge" Knight, Jr. ("KNIGHT") filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code (the "BANKRUPTCY CODE"), which case is currently pending before the United States Bankruptcy Court for the Central District of California (the "BANKRUPTCY COURT"), Los Angeles Division, bearing case number 02:bk:06-11187-VZ (the "KNIGHT CASE").  Richard K. Diamond serves as the Chapter 11 Trustee for the estate of the KNIGHT CASE.

B.      On or about April 4, 2006, Death Row Records, Inc. ("DEATH ROW") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, which case is currently pending before the Los Angeles Division of the BANKRUPTCY COURT, bearing case number 02:bk:06-11205-VZ (the "DEATH ROW CASE").  R. Todd Neilson serves as the Chapter 11 Trustee for the estate of the DEATH ROW CASE.

C.      On or about February 26, 2002, LYDIA filed a complaint before the California Superior Court in Los Angeles against DEATH ROW and KNIGHT, commencing case no. BC 268857 (the "LAWSUIT").  In the LAWSUIT, LYDIA contended, among other things, that she owned 50% of an entity known as Godfather Entertainment, the parent company to Death Row Records, a company different from DEATH ROW, that DEATH ROW and KNIGHT had defrauded her of the prospective economic benefits of her interest in DEATH ROW , and that DEATH ROW and KNIGHT thereafter slandered her (collectively the "KNIGHT/DRR CLAIMS").  The Firm of Wasserman, Comden & Castleman, LLP (the "WASSERMAN FIRM") at all relevant times through approximately April or May 2005 represented LYDIA in the LAWSUIT.

D.      On or about March 9, 2005, the Superior Court entered a $107,000,000 judgment as a terminating sanction jointly against both DEATH ROW and KNIGHT (the "JUDGMENT"). The JUDGMENT consists of compensatory damages of $45 million of economic damages, $2 million of non-economic damages and $60 million of punitive damages.  No appeal was taken from the JUDGMENT.

E.     On or about May 17, 1996 ("LYDIA'S PETITION DATE"), LYDIA filed a voluntary petition for relief under Chapter 7 of the BANKRUPTCY CODE before the San Fernando Valley Division of the BANKRUPTCY COURT, which was assigned case no. 01:bk:96-15521-AG (the "HARRIS CHAPTER 7 CASE" and the "HARRIS ESTATE").

F.     The HARRIS CHAPTER 7 CASE was filed approximately 6 years prior to the filing of the LAWSUIT, and LYDIA did not list the KNIGHT/DRR CLAIMS on her bankruptcy schedules. The HARRIS CHAPTER 7 TRUSTEE later discovered that the HARRIS CHAPTER 7 CASE may have rights in and to the JUDGMENT at which time, the HARRIS CHAPTER 7 TRUSTEE was reappointed as trustee of the HARRIS CHAPTER 7 CASE, which was thereafter reassigned to Bankruptcy Judge Geraldine Mund in July 2007.

G.     M & L HARRIS are divorced, however, the family law court in Monterey has jurisdiction over the M & L HARRIS divorce case with respect to property issues still in dispute. The family law court entered a judgment in the family law matter declaring the JUDGMENT to be community property; however the issue of the allocation of the JUDGMENT between M & L HARRIS has not yet been adjudicated.

H.     On or about October 19, 2006, LYDIA filed a proof of claim in the DEATH ROW CASE in the sum of $107 million based on the JUDGMENT, which was assigned claim no. 23 ("LYDIA'S DEATH ROW POC"). On or about October 19, 2006, LYDIA filed a proof of claim in the KNIGHT CASE in the sum of $107 million, which was assigned claim no. 16 ( "LYDIA'S KNIGHT POC"). LYDIA'S DEATH ROW POC and LYDIA'S KNIGHT POC shall be referred to hereinafter collectively as "LYDIA'S POCS."

I.     On or about May 4, 2006, MICHAEL filed a proof of claim in the DEATH ROW CASE in the sum of $117,318,631.60 based on the JUDGMENT, which was assigned claim no. 3 (the "MICHAEL'S DEATH ROW POC"). On or about May 4, 2006, MICHAEL filed a proof of claim in the KNIGHT CASE in the sum of $117,318,631.60, which was assigned claim no.3 ( "MICHAEL'S KNIGHT POC"). MICHAEL'S DEATH ROW POC and MICHAEL'S KNIGHT POC shall be referred to hereinafter collectively as "MICHAEL'S POCS." LYDIA'S POCS and MICHAEL'S POCS shall be referred to hereinafter collectively as the "HARRIS POCS."

J.     On or about October 31, 2006, the WASSERMAN FIRM filed a proof of claim against the DEATH ROW ESTATE in the sum of $60,418,315.00, which was assigned claim no. 38 (the "WASSERMAN DEATH ROW POC"). On or about October 31, 2006, the WASSERMAN FIRM filed a proof of claim against the KNIGHT ESTATE in the sum of $60,418,315.00, which was assigned claim no. 34 (the "WASSERMAN KNIGHT POC"). The WASSERMAN DEATH ROW POC and the WASSERMAN KNIGHT POC shall be referred to hereinafter collectively as the "WASSERMAN POCS."

K.     On or about June 6, 2006, KNIGHT as Debtor-In-Possession and DEATH ROW as Debtor-in-Possession jointly filed a complaint against M & L HARRIS before the BANKRUPTCY COURT in the KNIGHT CASE, commencing adversary proceeding no. 02:bk:06-AP-01660-VZ (the "ADVERSARY PROCEEDING"). In the ADVERSARY PROCEEDING, KNIGHT and DEATH ROW sought to, among other things: (1) declare that the JUDGMENT had been compromised and fully resolved by one of several alternative

C:\Documents and Settings\epi\Local Settings\Temporary Internet Files\OLK49\KNIGHT FINAL HARRIS SETTLEMENT STIPULATION_v3.DOC2

00025

settlements; (2) disallow or reduce the HARRIS POCS under various theories, including judicial estoppel; (3) subordinate the compensatory damage component of the JUDGMENT relating to LYDIA's ownership in DEATH ROW pursuant to section 506(c) of the BANKRUPTCY CODE; (4) subordinate the punitive damages component of the JUDGMENT as a penalty pursuant to section 726(a)(4) of the BANKRUPTCY CODE; (5) avoid and recover a $1 million payment made under the JUDGMENT as a preference pursuant to section 547 of the BANKRUPTCY CODE and as a fraudulent conveyance pursuant to sections 544 and 548 of the BANKRUPTCY CODE; and (6) disallow the HARRIS POCS pursuant to section 502(d) of the BANKRUPTCY CODE. M & L HARRIS filed a motion to dismiss the ADVERSARY PROCEEDING which resulted in the BANKRUPTCY COURT abstaining from ruling on certain state law claims for relief, granting dismissal with leave to amend other claims, and staying all claims pending before the BANKRUPTCY COURT.

L.      On or about July 3, 2006, M & L HARRIS filed a complaint against KNIGHT commencing adversary proceeding no. 02-bk:06-AP-01809-VZ, seeking to determine that the JUDGMENT represents a non-dischargeable debt under section 523 of the BANKRUPTCY CODE (the "HARRIS 523 PROCEEDING"). Thereafter, the BANKRUPTCY COURT stayed the HARRIS 523 PROCEEDING to track the ADVERSARY PROCEEDING.

M.      M & L HARRIS state that they assigned the JUDGMENT to CONQUEST, and M & L HARRIS each filed notices of the assignment of the HARRIS POCS in both of the Cases to CONQUEST and filed Notice of the Assignment of the JUDGMENT in the Los Angeles Superior Court case.

N.      The TRUSTEES substituted into the Adversary Proceeding as co-plaintiffs.

O.      In or about August 2007, the BANKRUPTCY COURT ordered the PARTIES to participate in mediation, and the PARTIES since then have participated in numerous mediation sessions before United States Bankruptcy Judge Mitchel R. Goldberg.

P.      In order to eliminate the need for further litigation costs, the PARTIES stipulated and stated on the record on February 6, 2008 before the Honorable Mitchell R. Goldberg terms and conditions of settlement in order to settle completely and forever all disputes, claims, actions, causes of action, demands, damages and liabilities between them. The PARTES set forth in this AGREEMENT the formal terms of their settlement.

Q.      NOW THEREFORE, in consideration of the promises, mutual obligations and undertakings set forth herein and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the PARTIES agree as follows:

1.      Recitals: The Recitals are intended to be and are a part of the AGREEMENT and are incorporated herein.

2.      Settlement Effective Date and Approval Process:

a.      After execution of this AGREEMENT, the TRUSTEES and the HARRIS CHAPTER 7 TRUSTEE shall each file motions seeking entry of orders in their respective cases approving the AGREEMENT (collectively the "Approval Orders"). Each of the

C:\Documents and Settings\epi\Local Settings\Temporary Internet Files\OLK49\KNIGHT FINAL HARRIS SETTLEMENT STIPULATION_v3.DOC3

00026

PARTIES shall fully and actively support the respective motions for entry of the Approval Orders.

      b.     The effective date of this AGREEMENT (the "Effective Date") shall mean the first day that is not less than eleven calendar days following the date of entry of the last of the Approval Orders to be entered that is not a Saturday, Sunday or legal holiday as defined in Federal Rule of Bankruptcy Procedure 9006 (a "Business Day"). If an appeal is taken and a stay issued, the Effective Date shall be the first Business day following the date on which the last of the Approval Orders to be entered becomes final, i.e., the date on which no further appeals or other review of the Approval Orders can be taken. In the event that the TRUSTEES or the HARRIS CHAPTER 7 TRUSTEE are unable to obtain the entry of Approval Orders in their respective cases, (a) the AGREEMENT shall automatically be deemed void *ab initio*, and (b) all rights, claims and defenses shall be preserved as they existed on February 6, 2008, and (c) the PARTIES reserve and retain all rights, claims and/or defenses each of them might have had prior to entry into this AGREEMENT.

      3.    <u>Terms of Settlement</u>:

      a.    <u>HARRIS Allowed Claim</u>. The HARRIS POCS will be allowed in both the KNIGHT CASE and the DEATH ROW CASE as general unsecured claims in the amount of $30 million (collectively the "HARRIS ALLOWED CLAIM") and subordinated claims in the amount of $15 million at the priority level provided in section 726(a)(4) of the BANKRUPTCY CODE (collectively the "HARRIS SUBORDINATED CLAIM"). Any claim of CONQUEST/HARRIS in excess of the HARRIS ALLOWED CLAIM and the HARRIS SUBORDINATED CLAIM is disallowed in its entirety.

      b.    <u>Limitation on Distributions on Account of HARRIS ALLOWED CLAIM.</u> For the purpose of this settlement, references to "distributions" are to the total distributions from both the DEATH ROW ESTATE and the KNIGHT ESTATE, whether or not the Cases later are substantively consolidated. If the Cases are not substantively consolidated, the allocation of distributions from the ESTATES on account of the HARRIS ALLOWED CLAIM, as provided herein, will be coordinated to assure that CONQUEST/HARRIS receives the same economic value as contemplated herein.

      i.    The HARRIS ALLOWED CLAIM (Phase 1) will share pari passu with all other allowed general unsecured claims, to the extent of the first $10 million of distributions to holders of all general unsecured claims ("PHASE 1 UNSECURED CLAIM DISTRIBUTIONS"), provided, however, that in no event shall distributions on account of the HARRIS ALLOWED CLAIM (Phase 1) exceed 50% of PHASE 1 UNSECURED CLAIM DISTRIBUTIONS; and provided, further, that notwithstanding anything to the contrary contained herein, distributions on account of the HARRIS ALLOWED CLAIM (Phase 1) will not exceed $3.5 million.

      ii.    To the extent of distributions to general unsecured claims in excess of $10 million up to $20 million ("PHASE 2 UNSECURED CLAIM DISTRIBUTIONS"), the HARRIS ALLOWED CLAIM (Phase 2) shall share pari passu with all other allowed general unsecured claims (reduced, in each case, by the amount of distributions received on account of PHASE 1 UNSECURED CLAIMS DISTRIBUTIONS); provided,

C:\Documents and Settings\epi\Local Settings\Temporary Internet Files\OLK49\KNIGHT FINAL HARRIS SETTLEMENT STIPULATION_v3.DOC4

00027

however, that in no event shall distributions on account of the HARRIS ALLOWED CLAIM
(Phase 2) exceed 50% of PHASE 2 UNSECURED CLAIM DISTRIBUTIONS, and provided,
further, that, notwithstanding anything to the contrary contained herein, until all other allowed
general unsecured claims have been paid in full, not including surplus interest, the distribution on
account of the HARRIS ALLOWED CLAIM (Phase 2) will not exceed $2 million in addition to
the distribution applicable to the HARRIS ALLOWED CLAIM (Phase 1).

      iii.     To the extent of distributions to general unsecured claims
in excess of $20 million ("Phase 3 Unsecured Claim Distributions"), the HARRIS ALLOWED
CLAIM (Phase 3) shall share distributions pari passu with all other allowed general unsecured
claims (reduced, in each case, by the amount of distributions received on account of PHASE 1
UNSECURED CLAIM DISTRIBUTIONS and PHASE 2 UNSECURED CLAIM
DISTRIBUTIONS), provided, however, that in no event shall distributions on account of the
HARRIS ALLOWED CLAIM (Phase 3) exceed 50% the Phase 3 Unsecured Claim
Distributions. When all other allowed general unsecured claims have been paid in full, not
including pre-petition or post-petition interest, the HARRIS ALLOWED CLAIM (Phase 3) shall
receive 100% (or shall share pari passu in the event of other similarly negotiated claims) of the
remaining Phase 3 Unsecured Claim Distributions until the HARRIS ALLOWED CLAIM are
paid in full (exclusive of surplus interest).

      iv.     The HARRIS SUBORDINATED CLAIM shall be paid
pursuant to the priority afforded by § 726(a)(4) of the BANKRUPTCY CODE.

      c.    Wasserman POCS. CONQUEST/HARRIS will have
responsibility for informing the WASSERMAN FIRM of the settlement. Unless the
WASSERMAN FIRM consents to a distribution agreement with CONQUEST/HARRIS and
withdraws the Wasserman POCS, CONQUEST/HARRIS, the TRUSTEES and/or the HARRIS
CHAPTER 7 TRUSTEE may file an objection to the Wasserman POCS. The Wasserman POCS
and any other claim filed by the WASSERMAN FIRM against either of the ESTATES shall
either be disallowed in their entirety or, if the Court enters an order allowing the Wasserman
POCS, any distribution thereon shall be the responsibility of CONQUEST/HARRIS, and
CONQUEST/HARRIS agrees to indemnify the ESTATES and the TRUSTEES against any
claims by the WASSERMAN FIRM for which the ESTATES would otherwise be responsible
upon entry of a Court order to that effect. Any distribution from the ESTATES due the
WASSERMAN FIRM shall be credited against the distributions due CONQUEST/HARRIS
pursuant to this AGREEMENT.

      d.    Other Related Proofs of Claim. CONQUEST/HARRIS will have
responsibility for any amounts due Mark Friedman and any other person or entity whose claim is
based upon, derivative of or measured by the JUDGMENT (including without limitation current
and former counsel for M & L HARRIS and CONQUEST and any purported assignment of the
JUDGMENT) (collectively "Friedman") which shall be payable, if at all, from their respective
shares of the proceeds of the claims and JUDGMENT. CONQUEST/HARRIS agrees to
indemnify the ESTATES and the TRUSTEES against any claims by any such party for which
the ESTATES would otherwise be responsible upon entry of a Court order to that effect. Any
distributions from the ESTATES due Friedman shall be credited against the amounts due
CONQUEST/HARRIS pursuant to this AGREEMENT.

C:\Documents and Settings\epi\Local Settings\Temporary Internet Files\OLK49\KNIGHT FINAL
HARRIS SETTLEMENT STIPULATION_v3.DOC5

00028

e.    Avoidance of Liens.  If there are any judgment or other liens on property of either or both of the ESTATES in favor of CONQUEST/HARRIS, the HARRIS CHAPTER 7 TRUSTEE, Friedman  or the WASSERMAN FIRM (or any of their successors or assignees), such liens are deemed avoided.  CONQUEST/HARRIS and the HARRIS CHAPTER 7 TRUSTEE agree that they will not, sell, transfer, assign or encumber, in whole or in part, the HARRIS ALLOWED CLAIM or the HARRIS SUBORDINATED CLAIM unless agreed upon in writing by all three of them and the TRUSTEES, or by order of the Court.

f.    Rights of HARRIS CHAPTER 7 TRUSTEE.  The HARRIS CHAPTER 7 TRUSTEE will promptly seek approval of the settlement as set forth herein by the BANKRUPTCY COURT in the HARRIS CHAPTER 7 CASE.  The HARRIS CHAPTER 7 TRUSTEE will receive such portion of the distribution on account of the HARRIS ALLOWED CLAIM (and the HARRIS SUBORDINATED CLAIM) as set forth above as shall be independently agreed by the HARRIS CHAPTER 7 TRUSTEE and CONQUEST/HARRIS. The Harris Chapter 7 Estate will have no independent claim in either of the Cases, although it is acknowledged that the HARRIS CHAPTER 7 TRUSTEE shall remain a party in interest in both cases.

g.    Dismissal of 523 Claims against KNIGHT.  Within 15-business day after the Effective Date, M & L HARRIS agree to dismiss with prejudice the HARRIS 523 PROCEEDING.

h.    No Credit Bidding for HARRIS ALLOWED CLAIM.  Neither the HARRIS ALLOWED CLAIM nor the HARRIS SUBORDINATED CLAIM may be used by CONQUEST/HARRIS as part of the consideration for any bid for or acquisition of any of the assets of either or both of the ESTATES.

4.    Dismissal of the Adversary Proceeding.  Within 15 business days after the Effective Date, the ADVERSARY PROCEEDING will be dismissed with prejudice by the parties thereto, with said parties to bear their own attorneys' fees and costs.

5.    Right to Object to Claims.  CONQUEST/HARRIS, or their successors or assignees, shall have the right to object to other claims and oppose any proposed settlement of other proofs of claims.  CONQUEST/HARRIS (including whoever among M & L HARRIS, CONQUEST, any successor or assignee is then the holder of the HARRIS POCS) shall vote affirmatively for any plan of reorganization or plan of liquidation that provides for the treatment of the HARRIS ALLOWED CLAIM and the HARRIS SUBORDINATED CLAIM as provided in this AGREEMENT; provided, however that M & L HARRIS may vote against any plan of reorganization under which pre-petition holders of equity in the DEATH ROW CASE or the KNIGHT CASE retain or receive any interest in either Estate on account of such pre-petition equity before the HARRIS ALLOWED CLAIM and the HARRIS SUBORDINATED CLAIM have been paid in full.  For purposes of this paragraph, the retention by KNIGHT or DEATH ROW of the following shall not relieve M & L HARRIS of their obligation to vote to accept the plans:  (a) exempt property; (b) that portion of the post-petition income described under that certain Order (1) on Motion of Child Support Services Department Interstate Division to Dismiss Debtor's Chapter 11 Case; and (2) Approving Settlement Stated on Record entered in the KNIGHT CASE on or about November 28, 2007; (c) property abandoned by either of the

C:\Documents and Settings\epi\Local Settings\Temporary Internet Files\OLK49\KNIGHT FINAL HARRIS SETTLEMENT STIPULATION_v3.DOC6

00029

TRUSTEES; (d) claims sold by the KNIGHT TRUSTEE or the DEATH ROW TRUSTEE on or before April 4, 2008 with Court approval; and/or (e) the proceeds of any of the above.

      6.    <u>Representations.</u> CONQUEST/HARRIS represent and warrant that:

      a.    Subject to paragraph 8 below, CONQUEST holds all right, title and interest in the HARRIS POCS and the JUDGMENT subject to the Assignment and Assumption Agreement between CONQUEST and LYDIA dated March 13, 2007, and the Assignment and Assumption Agreement between CONQUEST and MICHAEL dated March 13, 2007, and the agreement between CONQUEST, LYDIA and MICHAEL entered on February 5, 2008 which, includes, among other things a reservation of rights between MICHAEL, LYDIA and CONQUEST.

      b.    each of the CONQUEST/HARRIS parties has full authority to enter into this AGREEMENT;

      c.    there are no liens or claims against the HARRIS POCS or the JUDGMENT, except for those held by the WASSERMAN FIRM, Mark Friedman, and current and prior counsel for M & L HARRIS and CONQUEST, all of which will be deemed satisfied as against both of the ESTATES under the terms of this AGREEMENT; and

      d.    it is not necessary for M & L HARRIS to obtain approval of this AGREEMENT from the Monterey County Superior Court in the M & L HARRIS marital dissolution proceeding bearing case no. DR 43369 (the "MARITAL DISSOLUTION ACTION").

      7.    <u>Signatures.</u> The signatures of all PARTIES to this AGREEMENT, including the signatures of M & L HARRIS, shall be notarized.

      8.    <u>Future Assignments.</u>

      a.    Notwithstanding any provisions in any claim assignment agreements between M & L HARRIS and CONQUEST, in the event of any reversion of the HARRIS POCS and/or the JUDGMENT from CONQUEST (or its successor or assignee) to M & L HARRIS or either of them, M & L HARRIS will be deemed to be successors to CONQUEST and will be bound in the same manner as CONQUEST pursuant to the terms of this AGREEMENT.

      b.    In the event that the court in the MARITAL DISSOLUTION ACTION has any jurisdiction to determine the allocation between M & L HARRIS of any distributions on account of the HARRIS POCS from the ESTATES pursuant to this AGREEMENT, M & L HARRIS agree that M & L HARRIS shall have sole responsibility to obtain approval of that allocation, and that the TRUSTEES and the ESTATES shall not have any obligations in that regard. M & L HARRIS further agree that this AGREEMENT is fully enforceable and binding regardless of any possible requirement that said court in the marital

C:\Documents and Settings\epi\Local Settings\Temporary Internet Files\OLK49\KNIGHT FINAL HARRIS SETTLEMENT STIPULATION_v3.DOC7

00030

dissolution action allocate said distributions or otherwise approve this AGREEMENT in any manner whatsoever.

        9.    <u>Releases</u>:

        a.    <u>The KNIGHT TRUSTEE's Release</u>. In consideration of the terms and provisions of and subject to this AGREEMENT, the sufficiency of which is acknowledged by the execution of this AGREEMENT, as of the Effective Date, the KNIGHT TRUSTEE, on behalf of the KNIGHT ESTATE, does hereby fully and forever relieve, release, and discharge CONQUEST/HARRIS, the HARRIS ESTATE, and the HARRIS CHAPTER 7 TRUSTEE, and any and all representatives thereof, of any and all debts, liabilities, demands, obligations, assertions, contentions, arbitrations, promises, acts, contracts, costs, expenses, attorneys' fees, claims, damages, actions, causes of actions, claims for relief, and/or lawsuits, in law or in equity that were made or could have been made in or in response to the Adversary Proceeding, from the beginning of time through the Effective Date of this AGREEMENT, known or unknown, suspected or unsuspected, fixed or contingent.

        b.    <u>The DEATH ROW TRUSTEE's Release</u>. In consideration of the terms and provisions of and subject to this AGREEMENT, the sufficiency of which is acknowledged by the execution of this AGREEMENT, as of the Effective Date, the DEATH ROW TRUSTEE, on behalf of the DEATH ROW ESTATE, does hereby fully and forever relieve, release, and discharge CONQUEST/HARRIS, the HARRIS ESTATE and the HARRIS CHAPTER 7 TRUSTEE, and any and all representatives thereof, of any and all debts, liabilities, demands, obligations, assertions, contentions, arbitrations, promises, acts, contracts, costs, expenses, attorneys' fees, claims, damages, actions, causes of actions, claims for relief, and/or lawsuits, in law or in equity that were made or could have been made in or in response to the Adversary Proceeding, from the beginning of time through the Effective Date of this AGREEMENT, known or unknown, suspected or unsuspected, fixed or contingent. The release hereby granted is effective only as of the Effective Date, and expressly subject to the term provisions and conditions stated in this AGREEMENT, and shall not be effective until each of those conditions is satisfied.

        c.    <u>The CONQUEST/HARRIS Releases</u>. In consideration of the terms and provisions of and subject to this AGREEMENT, the sufficiency of which is acknowledged by the execution of this AGREEMENT, as of the Effective Date, CONQUEST/HARRIS does hereby fully and forever relieve, release, and discharge the DEATH ROW TRUSTEE, the DEATH ROW ESTATE, the KNIGHT TRUSTEE, the KNIGHT ESTATE, the HARRIS ESTATE and the HARRIS CHAPTER 7 TRUSTEE, and any and all representatives thereof, of any and all debts, liabilities, demands, obligations, assertions, contentions, arbitrations, promises, acts, contracts, costs, expenses, attorneys' fees, claims, damages, actions, causes of actions, claims for relief, and/or lawsuits, in law or in equity, from the beginning of time through the Effective Date of this AGREEMENT, known or unknown, suspected or unsuspected, fixed or contingent.

        d.    <u>The HARRIS CHAPTER 7 TRUSTEE's Release</u>. In consideration of the terms and provisions of and subject to this AGREEMENT, the sufficiency of which is acknowledged by the execution of this AGREEMENT, as of the Effective Date, the HARRIS CHAPTER 7 TRUSTEE does hereby fully and forever relieve, release, and discharge

C:\Documents and Settings\epi\Local Settings\Temporary Internet Files\OLK49\KNIGHT FINAL HARRIS SETTLEMENT STIPULATION_v3.DOC8

00031

the DEATH ROW TRUSTEE, the DEATH ROW ESTATE, the KNIGHT TRUSTEE and the KNIGHT ESTATE, and any and all representatives thereof, of any and all debts, liabilities, demands, obligations, assertions, contentions, arbitrations, promises, acts, contracts, costs, expenses, attorneys' fees, claims, damages, actions, causes of actions, claims for relief, and/or lawsuits, in law or in equity, from the beginning of time through the Effective Date of this AGREEMENT, known or unknown, suspected or unsuspected, fixed or contingent.

  e.   Effect of Releases.  The releases granted above in sub-paragraphs 9(a) through (d) are effective only as of the Effective Date, and expressly subject to the term provisions and conditions stated in this AGREEMENT, and shall not be effective until each of those conditions is satisfied.

  f.   General Release:  The PARTIES expressly waive any and all rights under Section 1542 of the Civil Code of the State of California, or any other federal or state statutory or common law rights or rules similar to Section 1542.  Section 1542 provides as follows:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

The PARTIES expressly waive and release any right or benefit which they have or may have under Section 1542, or any similar law or rule of any jurisdiction, to the full extent that they may waive all such right and benefits pertaining to the matters released in this AGREEMENT. In connection with such waiver and relinquishment, the PARTIES acknowledge that they are aware that they may subsequently discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true with respect to the matters released in this AGREEMENT. Nevertheless, it is the intention of each PARTY to this AGREEMENT, through this AGREEMENT, and with the advice of counsel, fully, finally, and forever to settle and release all such matters and all such claims relative to these matters which do now exist, may exist, or previously have existed between the PARTIES. In furtherance of such intention, the releases given by this AGREEMENT shall be and remain in effect as full and complete releases of such matters notwithstanding the discovery or existence of any such additional different claims or facts relative to such matters.

  10.   Continuing Jurisdiction of the BANKRUPTCY COURT:  This AGREEMENT is subject to and contingent upon the approval by the BANKRUPTCY COURT in the DEATH ROW CASE, the KNIGHT CASE, and the HARRIS CHAPTER 7 CASE. The BANKRUPTCY COURT shall have exclusive jurisdiction to determine as a core proceeding any dispute or controversy with respect to the interpretation or enforcement of this AGREEMENT.

  11.   Attorney's Fees:  The PARTIES to this AGREEMENT agree to bear all of their own attorney's fees and costs incurred in connection with the Adversary Proceeding and the negotiation, preparation, execution, delivery, and performance of this AGREEMENT.

C:\Documents and Settings\epi\Local Settings\Temporary Internet Files\OLK49\KNIGHT FINAL HARRIS SETTLEMENT STIPULATION_v3.DOC9

00032

12.    Disputes:  In the event any PARTY to this AGREEMENT makes a claim or raises a defense against the other PARTY involving the interpretation or enforcement of this AGREEMENT and/or the obligations hereunder, the prevailing party shall be entitled to its reasonable attorneys' fees, expenses, and costs incurred in enforcing this AGREEMENT.

13.    Severability:  If any paragraph, term, or provision of this AGREEMENT shall be held or determined to be unenforceable by a court or tribunal of competent jurisdiction, the same shall be deemed severable from this AGREEMENT and the balance of this AGREEMENT shall continue in full force and effect.  The PARTIES agree that if such paragraph, term, or provision is deemed invalid as written, it shall be deemed valid and enforceable to the fullest extent permitted by law.

14.    Entire Agreement:  This AGREEMENT, with its Exhibits, constitutes a single, integrated written contract expressing the entire agreement of the PARTIES hereto concerning subject matter hereof.  No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any PARTY to this AGREEMENT, except as specifically set forth herein.  All prior agreements, discussions, and negotiations, whether oral or written, have been and are merged and integrated into, and are entirely superseded by this AGREEMENT.

15.    Joint Preparation:  The PARTIES agree that this AGREEMENT shall be deemed to have been prepared by all of the PARTIES jointly, and no ambiguity shall be resolved against any PARTY on the premise that it was responsible for drafting this AGREEMENT, in whole or in part.

16.    Representations and Warranties:  The PARTIES hereto represent and warrant that each signatory hereto has the full right and authority to enter into this AGREEMENT and bind the PARTY on whose behalf he or it has executed this AGREEMENT, except for constraints imposed upon the TRUSTEES and the HARRIS CHAPTER 7 TRUSTEE by the BANKRUPTCY CODE.

17.    Binding Agreement:  This AGREEMENT shall bind and shall inure to the benefit of successors and assigns of each PARTY.  With respect to each of the individual PARTIES, this AGREEMENT shall also bind and inure to the benefit of his or her heirs and assigns.  With respect to each of the entity PARTIES, this AGREEMENT shall also bind and inure to the benefit of any parent, affiliate, predecessor-in-interest, successor-in-interest, or assign.  With respect to each of the PARTIES that are bankruptcy trustees, this AGREEMENT shall also inure to the benefit of and bind any successor or assignee, whether by sale, assignment, transfer under a plan of reorganization or conversation of the DEATH ROW CASE and/or the KNIGHT CASE to a Chapter 7 case under the BANKRUPTCY CODE, or otherwise.

18.    Governing Law:  This AGREEMENT shall be governed by, and construed in accordance with, the laws of the State of California and any disputes arising out of this AGREEMENT shall be brought only in BANKRUPTCY COURT, which shall have exclusive jurisdiction of any and all such disputes as a core matter.

19.    Counterparts:  This AGREEMENT may be executed and delivered in two or more counterparts, each of which, when so executed and delivered, shall be an original, but

C:\Documents and Settings\epi\Local Settings\Temporary Internet Files\OLK49\KNIGHT FINAL HARRIS SETTLEMENT STIPULATION_v3.DOC10

00033

such counterparts together shall constitute but one and the same instrument and agreement. Facsimile signatures may be used and shall be deemed to be original signatures for all purposes.

THE PARTIES TO THIS AGREEMENT FURTHER STATE THAT THEY HAVE CAREFULLY READ THIS AGREEMENT, THAT IT HAS BEEN FULLY EXPLAINED TO THEM BY THEIR ATTORNEYS, THAT THEY FULLY UNDERSTAND ITS FULL AND BINDING EFFECT, THAT THE ONLY PROMISES MADE TO THEM TO INDUCE THEM TO SIGN THIS AGREEMENT ARE THOSE CONTAINED IN THIS AGREEMENT, AND THAT THEY ARE SIGNING THIS AGREEMENT VOLUNTARILY.

IN WITNESS OF THIS AGREEMENT, the PARTIES and their respective counsel have approved and executed this AGREEMENT on the dates set forth opposite their respective signatures.

Dated: April __, 2008

CHAPTER 11 TRUSTEE OF THE MARION "SUGE" KNIGHT ESTATE

By:_____
　　Richard K. Diamond, Chapter 11 Trustee
　　of the Marion "Suge" Knight, Jr. Estate

Dated: April __, 2008

CHAPTER 11 TRUSTEE OF THE DEATH ROW RECORDS, INC. ESTATE

By:_____
　　R. Todd Neilson, Chapter 11 Trustee of the
　　Death Row Records, Inc. Estate

Dated: April __, 2008

LYDIA HARRIS

_____
Lydia Harris

Dated: April __, 2008

MICHAEL RAY HARRIS

_____
Michael Ray Harris

C:\Documents and Settings\epi\Local Settings\Temporary Internet Files\OLK49\KNIGHT FINAL
HARRIS SETTLEMENT STIPULATION_v3.DOC11

00034

such counterparts together shall constitute but one and the same instrument and agreement. Facsimile signatures may be used and shall be deemed to be original signatures for all purposes.

THE PARTIES TO THIS AGREEMENT FURTHER STATE THAT THEY HAVE CAREFULLY READ THIS AGREEMENT, THAT IT HAS BEEN FULLY EXPLAINED TO THEM BY THEIR ATTORNEYS, THAT THEY FULLY UNDERSTAND ITS FULL AND BINDING EFFECT, THAT THE ONLY PROMISES MADE TO THEM TO INDUCE THEM TO SIGN THIS AGREEMENT ARE THOSE CONTAINED IN THIS AGREEMENT, AND THAT THEY ARE SIGNING THIS AGREEMENT VOLUNTARILY.

IN WITNESS OF THIS AGREEMENT, the PARTIES and their respective counsel have approved and executed this AGREEMENT on the dates set forth opposite their respective signatures.

Dated: April _ , 2008

CHAPTER 11 TRUSTEE OF THE MARION "SUGE" KNIGHT ESTATE

By: _____
    Richard K. Diamond, Chapter 11 Trustee
    of the Marion "Suge" Knight, Jr. Estate

Dated: April __, 2008

CHAPTER 11 TRUSTEE OF THE DEATH ROW RECORDS, INC. ESTATE

By: _____
    R. Todd Neilson, Chapter 11 Trustee of the
    Death Row Records, Inc. Estate

Dated: April __, 2008

LYDIA HARRIS

_____
Lydia Harris

Dated: April __, 2008

MICHAEL RAY HARRIS

_____
Michael Ray Harris

C:\Documents and Settings\RKD\Local Settings\Temporary Internet Files\OLK6\KNIGHT FINAL HARRIS SETTLEMENT STIPULATION_v3.DOC11

00035

such counterparts together shall constitute but one and the same instrument and agreement.
Facsimile signatures may be used and shall be deemed to be original signatures for all purposes.

THE PARTIES TO THIS AGREEMENT FURTHER STATE THAT THEY
HAVE CAREFULLY READ THIS AGREEMENT, THAT IT HAS BEEN FULLY
EXPLAINED TO THEM BY THEIR ATTORNEYS, THAT THEY FULLY
UNDERSTAND ITS FULL AND BINDING EFFECT, THAT THE ONLY
PROMISES MADE TO THEM TO INDUCE THEM TO SIGN THIS AGREEMENT
ARE THOSE CONTAINED IN THIS AGREEMENT, AND THAT THEY ARE
SIGNING THIS AGREEMENT VOLUNTARILY.

IN WITNESS OF THIS AGREEMENT, the PARTIES and their respective counsel have
approved and executed this AGREEMENT on the dates set forth opposite their respective
signatures.

Dated: April __, 2008                    CHAPTER 11 TRUSTEE OF THE MARION
                                          "SUGE" KNIGHT ESTATE

                                          By:_____
                                             Richard K. Diamond, Chapter 11 Trustee
                                             of the Marion "Suge" Knight, Jr. Estate

Dated: April 2Y, 2008                    CHAPTER 11 TRUSTEE OF THE DEATH
                                          ROW RECORDS, INC. ESTATE

                                          By:_____
                                             R. Todd Neilson, Chapter 11 Trustee of the
                                             Death Row Records, Inc. Estate

Dated: April __, 2008                    LYDIA HARRIS

                                          _____
                                          Lydia Harris

Dated: April __, 2008                    MICHAEL RAY HARRIS

                                          _____
                                          Michael Ray Harris

C:\DOCUME~1\VDORAN~1.LEC\LOCALS~1\Temp\notesE1EF34\KNIGHT FINAL HARRIS
SETTLEMENT STIPULATION_v3.DOC       11

00036

2812421744        Sugar Creek                                                    01:07.01 p.m.        05-02-2008        2/3

such counterparts together shall constitute but one and the same instrument and agreement. Facsimile signatures may be used and shall be deemed to be original signatures for all purposes.

THE PARTIES TO THIS AGREEMENT FURTHER STATE THAT THEY HAVE CAREFULLY READ THIS AGREEMENT, THAT IT HAS BEEN FULLY EXPLAINED TO THEM BY THEIR ATTORNEYS, THAT THEY FULLY UNDERSTAND ITS FULL AND BINDING EFFECT, THAT THE ONLY PROMISES MADE TO THEM TO INDUCE THEM TO SIGN THIS AGREEMENT ARE THOSE CONTAINED IN THIS AGREEMENT, AND THAT THEY ARE SIGNING THIS AGREEMENT VOLUNTARILY.

IN WITNESS OF THIS AGREEMENT, the PARTIES and their respective counsel have approved and executed this AGREEMENT on the dates set forth opposite their respective signatures.

Dated:  April __, 2008                    CHAPTER 11 TRUSTEE OF THE MARION
                                          "SUGE" KNIGHT ESTATE


                                          By:_____
                                              Richard K. Diamond, Chapter 11 Trustee
                                              of the Marion "Suge" Knight, Jr. Estate

Dated:  April __, 2008                    CHAPTER 11 TRUSTEE OF THE DEATH
                                          ROW RECORDS, INC. ESTATE


                                          By:_____
                                              R. Todd Neilson, Chapter 11 Trustee of the
                                              Death Row Records, Inc. Estate

Dated: May 2 2008                         LYDIA HARRIS

CHRISTOPHER K OCONNOR                      _____
My Commission Expires                     Lydia Harris
December 31, 2011

Dated: April 11, 2008  Christa K OCon     MICHAEL RAY HARRIS

                                          _____
JOHANNA DANIELLE HOFFMAN                   Michael Ray Harris
Commission # 1663060
Notary Public - California
Alameda County
My Comm. Expires Jul 22, 2010

Macintosh HD:Users:nikki:Documents:QuickMail Pro Data:~Attachments:KNIGHT FINAL HARRI--
1005076106:KNIGHT FINAL HARRIS SETTLEM.DO                                        11

00037

Apr 16 2008 8:21     HP LASERJET FAX          8188179411              P.12

Dated: April _15_, 2008

CONQUEST MEDIA GROUP, LLC

By: _____

Title: _Chairman_

Its Duly Authorized Representative
*See attached for notary*

Dated: April __, 2008

CHAPTER 7 TRUSTEE OF THE LYDIA
HARRIS ESTATE

By: _____
Helen Ryan Frazer, Chapter 7 Trustee of the
Lydia Harris Estate

APPROVED AS TO FORM:

Dated: April __, 2008

KAYE SCHOLER LLP

By: _____
Ronald L. Leibow, Esq.
Counsel to R. Todd Neilson as Chapter 11
Trustee for Death Row Records, Inc.

Dated: April __, 2008

DANNING, GILL, DIAMOND & KOLLITZ,
LLP

By: _____
Eric P. Israel, Esq.
Counsel to Richard K. Diamond as Chapter
11 Trustee for Marion "Suge" Knight, Jr.

Dated: April _5_, 2008

AKIN, GUMP, STRAUS, HAUER & FELD,
LLP

By: _____
Peter J. Gurfein, Esq.
Counsel to Conquest Media Group, LLC

C:\Documents and Settings\Owner\Local Settings\Temporary Internet
Files\Content.IE5\BG3QRE2R\KNIGHT__FINAL_HARRIS_SETTLEMENT_STIPULATION[1].DOC12

00038

Dated: April __, 2008

CONQUEST MEDIA GROUP, LLC

By:_____

Title:_____

Its  Duly Authorized Representative

Dated: April __, 2008

CHAPTER 7 TRUSTEE OF THE LYDIA
HARRIS ESTATE

By:_____
    Helen Ryan Frazer, Chapter 7 Trustee of the
    Lydia Harris Estate

APPROVED AS TO FORM:

Dated: April 10, 2008

KAYE SCHOLER LLP

By:_____
    ~~Ronald L. Leibow, Esq.~~ PETER HAVILAND
    Counsel to R. Todd Neilson as Chapter 11
    Trustee for Death Row Records, Inc.

Dated: April 30, 2008

DANNING, GILL, DIAMOND & KOLLITZ,
LLP

By:_____
    Eric P. Israel, Esq.
    Counsel to Richard K. Diamond as Chapter
    11 Trustee for Marion "Suge" Knight, Jr.

Dated: April __, 2008

AKIN, GUMP, STRAUS, HAUER & FELD,
LLP

By:_____
    Peter J. Gurfein, Esq.
    Counsel to Conquest Media Group, LLC

C:\Documents and Settings\epi\Local Settings\Temporary Internet Files\OLK49\KNIGHT FINAL
HARRIS SETTLEMENT STIPULATION_v3.DOC12

00039

Dated: April __, 2008

WEINSTEIN, WEISS & ORDUBEGIAN LLP

By: _____
Sharon Z. Weiss, Esq.
Counsel to Lydia Harris

Dated: April 30 2008

RUSS AUGUST & KABAT, LLP

By: _____
Steven M. Goldberg,
Counsel to Michael Ray Harris

Dated: April 2, 2008

LAW OFFICES OF PATRICK K.
McCLELLAN

By: _____

Patrick K. McClellan,
Counsel to Helen Ryan Frazor, Chapter 7
Trustee of the Lydia Harris bankruptcy estate

C:\Documents and Settings\epl\Local Settings\Temporary Internet Files\OLK49\KNIGHT FINAL
HARRIS SETTLEMENT STIPULATION.DOC    13

00040

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of ___Los Angeles___ }

On _April 21, 2008_ before me, ___C. Blair Notary Public___
   Date                                           Here Insert Name and Title of the Officer

personally appeared ___Richard K. Diamond___
                                      Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature ___C. Blair___
                       Signature of Notary Public

**C. BLAIR**
Commission # 1690864
Notary Public - California
Los Angeles County
My Comm. Expires Aug 31, 2010

Place Notary Seal Above

––––––––––––––– OPTIONAL –––––––––––––––

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: _____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

Signer's Name: _____
☑ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

© 2007 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org   Item #5907   Reorder: Call Toll-Free 1-800-876-6827

00041

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**

State of California

County of _Los Angeles_ } ss.

On _April 24, 2008_ before me, _Victoria Lynn Doran_,
Date                                    Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally appeared _R. Todd Neilson_
Name(s) of Signer(s)

☐ personally known to me
☒ proved to me on the basis of satisfactory
evidence

to be the person(s) whose name(s) is/are
subscribed to the within instrument and
acknowledged to me that he/she/they executed
the same in his/her/their authorized
capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or
the entity upon behalf of which the person(s)
acted, executed the instrument.

VICTORIA LYNN DORAN
Commission # 1513196
Notary Public - California
Los Angeles County
My Comm. Expires Sep 29, 2008

WITNESS my hand and official seal.

_____
Signature of Notary Public

——————————— *OPTIONAL* ———————————

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent
fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: _Agreement + Mutual Release_

Document Date: _____   Number of Pages: _14_

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer**

Signer's Name: _R. Todd Neilson_

☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney-in-Fact
☒ Trustee
☐ Guardian or Conservator
☐ Other: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

Signer Is Representing: _Bankruptcy Estate of Death Row Records_

© 1999 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.nationalnotary.org   Prod. No. 5907   Reorder: Call Toll-Free 1-800-876-6827

00042

2812421744          Sugar Creek

02:07:16 p.m.          05-02-2008          3 /3

# TEXAS ORDINARY CERTIFICATE OF ACKNOWLEDGMENT     CIVIL PRACTICE & REMEDIES CODE § 121.007

State of Texas
County of Fort Bend

Before me, _Christopher K. O'Connor_ on this
Name and Character of Notarizing Officer, e.g., "John Smith, Notary Public"

_2_ day personally appeared _LYDIA HARRIS_
Name of Signer

☐ known to me
☐ proved to me on the oath of _____
Name of Credible Witness

☒ proved to me through _TDL 12124452_
Description of Identity Card or Document

to be the person whose name is subscribed to the foregoing
instrument and acknowledged to me that he/she executed the
same for the purposes and consideration therein expressed.

Given under my hand and seal of office this

_2_ day of _May_ , A.D. _2008_
Day              Month                      Year

_Christopher K. O'Connor_
Signature of Notarizing Officer

**OPTIONAL**

Though the information in this section is not required by law, it may prove valuable to persons relying on the
document and could prevent fraudulent removal and reattachment of this form to another document.

**Description of Attached Document**

Title or Type of Document: _Agreement and Mutual Release_

Document Date: _May 2, 2008_          Number of Pages: _14_

Signer(s) Other Than Named Above: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

© 2000 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.nationalnotary.org          Prod. No. 5243          Reorder: Call Toll-Free 1-800-876-6827

00043

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _Marin_

On _April 11, 2008_ before me, _Johanna D. Hoffmann_
    Date                      Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally appeared _Michael Ray Harris_
                          Name(s) of Signer(s)

☑ personally known to me

☑ (or proved to me on the basis of satisfactory evidence)

to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

[Notary Seal: JOHANNA DANIELLE HOFFMANN, Commission # 1683060, Notary Public - California, Alameda County, My Comm. Expires Jul 22, 2010]

_____
Signature of Notary Public

Place Notary Seal Above

──────────────── **OPTIONAL** ────────────────

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**
Title or Type of Document: _Agreement and Mutual Release_

Document Date: _April 11, 2008_ _____ Number of Pages: _13_

Signer(s) Other Than Named Above: _Richard K. Diamond, R. Todd Neilson, Lydia Harris, Empvast Media Group, Helen Ryan Frazer, Ronald L. Leibow, Eric P. Emal, Peter J. Gurfein, Sharon Z. Weiss_

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _Michael Ray Harris_
☑ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

[RIGHT THUMBPRINT OF SIGNER - Top of thumb here]

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

[RIGHT THUMBPRINT OF SIGNER - Top of thumb here]

© 2006 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402    Item No. 5907    Reorder: Call Toll-Free 1-800-876-6827

Apr 16 2008 9:21          HP LASERJET FAX                    8188179411                    p.13

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _Los Angeles_ }

On _4/15/08_ before me, _Sam Jazayeri, Notary Public_
                Date                        Here Insert Name and Title of the Officer

personally appeared _Alvin G. Brown_
                            Name(s) of Signer(s)

[Notary Seal: SAM JAZAYERI / COMM. #1783056 / NOTARY PUBLIC · CALIFORNIA / LOS ANGELES COUNTY / My Comm. Expires Dec. 3, 2011]

who proved to me on the basis of satisfactory evidence to
be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws
of the State of California that the foregoing paragraph is
true and correct.

WITNESS my hand and official seal.

Signature _____
Place Notary Seal Above                        Signature of Notary Public

──────────── OPTIONAL ────────────
Though the information below is not required by law, it may prove valuable to persons relying on the document
and could prevent fraudulent removal and reattachment of this form to another document.

Description of Attached Document

Title or Type of Document: _Agreement and Mutual Release_

Document Date: _4/15/08_ _____ Number of Pages: _14_

Signer(s) Other Than Named Above: _____

Capacity(ies) Claimed by Signer(s)

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____
_____

[RIGHT THUMBPRINT OF SIGNER / Top of thumb here]

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____
_____

[RIGHT THUMBPRINT OF SIGNER / Top of thumb here]

© 2007 National Notary Association · 9350 De Soto Ave., P.O. Box 2402 · Chatsworth, CA 91313-2402 · www.NationalNotary.org   Item #5907   Reorder: Call Toll-Free 1-800-876-6827

00045

## ACKNOWLEDGMENT

STATE OF CALIFORNIA          )
                            )
COUNTY OF LOS ANGELES        )

On May 1, 2008 before me, Sharon A. Woodard, Notary Public, personally appeared Helen Ryan Frazer, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

SHARON A. WOODARD
Commission # 1708744
Notary Public - California
Los Angeles County
My Comm. Expires Dec 5, 2010

_Sharon Woodard_
SIGNATURE OF NOTARY

(Seal)

00046

# EXHIBIT 2

00047

Form B10 (Official Form 10) (10/05)

**United States Bankruptcy Court**    Central District of California

**PROOF OF CLAIM**

| Name of Debtor: MARION H. KNIGHT, JR. | Case Number: IA06–11187 BC |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Name of Creditor (The person or other entity to whom the debtor owes money or property):

MICHAEL RAY HARRIS

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

Name and address where notices should be sent:
Steven M. Goldberg, Esq.
Russ August & Kabat
12424 Wilshire Bl #1200
Los Angeles, CA 90025
Telephone number: (310) 826-7474

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

**FILED**

MAY - 4 2006

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
By _____ Deputy Clerk

This space is for Court use only.

Last four digits of account or other number by which creditor identifies debtor:

Check here ☐ replaces
if this claim ☐ amends    a previously filed claim, dated: _____

**1. Basis for Claim**
☐ Goods sold
☐ Services performed
☐ Money loaned
☐ Personal injury/wrongful death
☐ Taxes
☒ Other Court Judgment

☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Wages, salaries, and compensation (Fill out below)
Last four digits of your Social Security number: _____
Unpaid compensation for services performed
from _____ to _____
      (date)         (date)

**2. Date debt was incurred:** March 9, 2005

**3. If court judgment, date obtained:** March 9, 2005

**4. Total Amount of Claim at Time Case Filed:** $117,318,631.50
                                                  (unsecured)    (secured)    (priority)    (Total)
$ _____    $ _____    $117,318,631.50

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
☐ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:
☐ Real Estate    ☐ Motor Vehicle
☐ Other _____

Value of Collateral: $ _____

Amount of arrearage and other charges at time case filed included in secured claim, if any: $ _____

**6. Unsecured Nonpriority Claim.** $ 117,318,631.50
☒ Check this box if (a) there is no collateral or lien securing your claim, or (b) your claim exceeds the value of the property securing it or (c) none or only part of your claim is entitled to priority.

**7. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim, all or part of which is entitled to priority.
Amount entitled to priority $ _____
Specify the priority of the claim:
☐ Wages, salaries or commissions (up to $10,000),[1] earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
☐ Up to $2,225* of deposits toward purchase, lease or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Domestic support obligations under - 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).
*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. $10,000 and 180-day limits apply to cases filed on or after 4/20/05. Pub. L. 109-8

**8.** Credits: The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**9.** Supporting Documents: Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**10.** Date-Stamped Copy: To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

This space is for Court use only.

| Date 5/3/06 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): _____ STEVEN M. GOLDBERG ESQ |

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## ITEMIZATION OF ADDITIONAL CHARGES

Original Judgment: $107,000,000 (see attached Judgment in LASC Case No. BC 268857)

Statutory Interest: 10% per annum as follows—

$29,315.07 per day from entry of judgment (March 9, 2005) through payment of
$1,000,000 on May 27, 2005 = $2,315,890.50.

$29,041.10 (daily rate of interest on reduced amount of judgment ($106,000,000))
per day from May 27, 2005 to date case filed, April 04, 2006 = $9,002,741.00.

Total Statutory Interest: $11,318,631.50.

Total payments against judgment by debtor: $1,000,000.

Total claim as of date case filed: $117,318,631.50

00049

F.D.

1    DAVID B. CASSELMAN (SBN 81657)
     I.DONALD WEISSMAN (SBN 67980)
2    WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
     5567 Reseda Boulevard, Suite 330
3    Post Office Box 7033
     Tarzana, California 91357-7033
4    Telephone:  (818) 705-6800 · (323) 872-0995
     Facsimile:  (818) 705-8147
5
     Attorneys for Plaintiffs
6    LYDIA HARRIS and NEW IMAGE MEDIA
     CORPORATION
7

**FILED**
LOS ANGELES SUPERIOR COURT

MAR 0 9 2005

JOHN A. CLARKE, CLERK
By: _____
H. CASTLE

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                    FOR THE COUNTY OF LOS ANGELES

10

11   LYDIA HARRIS, LIFESTYLE          )   CASE NO. BC 268857
     RECORDS, INC., AND NEW IMAGE     )
12   MEDIA CORP..                     )
                                      )   Case Assigned to:
13           Plaintiffs,              )   Judge Ronald M. Sohigian - Dept. 41
                                      )
14       v.                           )   [Complaint Filed: February 26, 2002]
                                      )
15   KEVIN GILLIAM AKA BATTLECAT;     )
     MARION H. KNIGHT AKA SUGE        )
16   KNIGHT; DEATH ROW RECORDS;       )   JUDGMENT
     THA ROW, INC.; DAVID E. KENNER;  )
17   DAVID E. KENNER PROFESSIONAL     )
     LAW CORPORATION; DAVID E.        )
18   KENNER, A PROFESSIONAL           )
     CORPORATION; THE DAVID E.        )
19   KENNER TRUST; INTERSCOPE         )
     RECORDS; JIMMY IOVINE; JOHN T.   )
20   MCCLAIN, JR.; A&M RECORDS; ET    )
     AL.,                             )
21                                    )
             Defendants.              )
22   _____)

23

24       Upon the Order striking the Answer of MARION H. KNIGHT, aka SUGE KNIGHT, and

25   DEATH ROW RECORDS, INC., ~~dba DEATH ROW RECORDS E.L.C.,~~ ~~and THA ROW, INC.,~~

26   to Plaintiffs' Complaint and entering default thereon, consideration of the Plaintiffs' Application

27   for Default Prove-up Damages and the supporting declarations of Lydia Harris, I.Donald

28   Weissman, Michael Harris and Phil Ames, and good cause appearing therefor,

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
P.O. BOX 7033
TARZANA, CALIFORNIA 91357-7033

_JUDGMENT_

00050

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IT IS HEREBY ADJUDGED that judgment is entered in favor of plaintiffs, LYDIA
HARRIS and NEW IMAGE MEDIA CORP., and against defendants, MARION H. KNIGHT
aka SUGE KNIGHT, DEATH ROW RECORDS, INC., ~~aka DEATH ROW RECORDS, L.C.,~~
~~and THA ROW, INC.~~, in the sum of $ _45,000,000_ for economic damages,
$_2,000,000_ for non-economic damages, $ _60,000,000_ for punitive damages.

Further, PLAINTIFFS to recover costs pursuant to a memorandum of costs to be filed
pursuant to the statute _in the amount of $_ _____

Dated: _3-9-05_                          _Rouzel M Dohigian_
                                JUDGE OF THE LOS ANGELES SUPERIOR COURT

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
P.O. BOX 7033
TARZANA, CALIFORNIA 91357-7033

2

*JUDGMENT*

00051

FL-180

**ATTORNEY OR PARTY WITHOUT ATTORNEY** (Name, State Bar number, and address):
DEBRA VANIMAN CRANFORD, SBN 116222
LAW OFFICES OF CRANFORD & CRANFORD
P.O. Box 373
SW Mission & 4th
Carmel, California 93921-0373
TELEPHONE NO.: 831-624-2422   FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name): LYDIA HARRIS

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF MONTEREY**
STREET ADDRESS: 1200 Aguajito Road
MAILING ADDRESS: 1200 Aguajito Road
CITY AND ZIP CODE: Monterey, CA 93940
BRANCH NAME: MONTEREY

MARRIAGE OF
PETITIONER: MICHAEL RAY HARRIS

RESPONDENT: LYDIA HARRIS

**FOR COURT USE ONLY**

**FILED**

DEC 2 3 2005

LISA M. GALDOS
CLERK OF THE SUPERIOR COURT
C.J. CAMACHO       DEPUTY

**JUDGMENT**

| [X] DISSOLUTION | [ ] LEGAL SEPARATION | [ ] NULLITY |

[ ] Status only
[ ] Reserving jurisdiction over termination of
marital or domestic partnership status
[ ] Judgment on reserved issues
Date marital or domestic partnership status ends: DATE OF FILE STAMP   DEC 2 3 2005

**CASE NUMBER:**
DR 43369

1. [ ] This judgment   [ ] contains personal conduct restraining orders   [ ] modifies existing restraining orders.
The restraining orders are contained on page(s)                    of the attachment. They expire on (date):

2. This proceeding was heard as follows: [ ] Default or uncontested [ ] By declaration under Family Code section 2336
[X] Contested
a. Date: 11-14-05        Dept: 13          Room:
b. Judicial officer (name): ADRIENNE M. GROVER   [ ] Temporary judge
c. [X] Petitioner present in court       [X] Attorney present in court (name): STEVEN M. GOLDBERG
d. [X] Respondent present in court       [X] Attorney present in court (name): DEBRA V. CRANFORD
e. [ ] Claimant present in court (name):   [ ] Attorney present in court (name):
f. [X] Other (specify name): Attorney for
   Petitioner: DAN GOLDMAN

3. The court acquired jurisdiction of the respondent on (date): June 9, 2005
a. [X] The respondent was served with process.
b. [X] The respondent appeared.

THE COURT ORDERS, GOOD CAUSE APPEARING
4. a. [X] Judgment of dissolution is entered. Marital or domestic partnership status is terminated and the parties are restored to the
status of single persons.
   (1) [X] on (specify date): SAME DATE AS FILE STAMP   DEC 2 3 2005
   (2) [ ] on a date to be determined on noticed motion of either party or on stipulation.
b. [ ] Judgment of legal separation is entered.
c. [ ] Judgment of nullity is entered. The parties are declared to be single persons on the ground of (specify):

d. [ ] This judgment will be entered nunc pro tunc as of (date):
e. [ ] Judgment on reserved issues.
f. The [ ] petitioner's [ ] respondent's   former name is restored to (specify):
g. [ ] Jurisdiction is reserved over all other issues, and all present orders remain in effect except as provided below.
h. [ ] This judgment contains provisions for child support or family support. Each party must complete and file with the court a
Child Support Case Registry Form (form FL-191) within 10 days of the date of this judgment. The parents must notify the
court of any change in the information submitted within 10 days of the change, by filing an updated form. The Notice
of Rights and Responsibilities—Health Care Costs and Reimbursement Procedures and Information Sheet on Changing a
Child Support Order (form FL-192) is attached.

Form Adopted for Mandatory Use
Judicial Council of California
FL-180 [Rev. January 1, 2005]

**JUDGMENT**
(Family Law)

Legal
Solutions
Plus

Page 1 of 2
Family Code, §§ 2024, 2340,
2343, 2346

00052

DEC. 13. 2005€10:21AMLB31&RUSS AUGUST&KABAT    CRAWFORD & CRAWFORD    NO. 8028   P. 2/4  #2/04

1    PURSUANT TO STIPULATION OF THE PARTIES RECITED IN COURT, IT IS HEREBY

2    ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

3

4        1.    Of the monies received by Respondent from Marion Knight to date, Sixty

5    Thousand ($60,000) shall be paid to an individual per agreement of the parties,  One

6    Hundred and Seventy-Nine Thousand Dollars ($179,000) shall be given to Petitioner

7    and Two Hundred Thousand Dollars ($200,000) shall be retained by Respondent.

8        Each party shall pay one-half of the copying costs for the Xenon case out of said

9    money.

10       Respondent shall put Two Hundred Six Thousand Dollars ($206,000) in escrow

11   for potential fees or costs in LASC Case BC 266857.

12       Each party shall pay taxes, if any, on their share of said money.

13       2.    Each party is awarded one-half of the net profits of the DVD on the

14   documentary "Welcome to Death Row."

15       3.    Any and all major decisions on the lawsuit regarding the "Welcome to Death

16   Row" documentary versus Xenon shall be made by the parties jointly.  The net proceeds

17   of said lawsuit shall be divided equally by the parties.  The costs shall be shared equally

18   by the parties and shall be advanced, if possible.  Respondent will keep Petitioner

19   advised of all developments in the case, and shall provide him with copies of all filed

20   documents to date at Petitioner's expense.

21       4.    Each party shall receive one-half of the net proceeds from the Battlecat

22   Judgment in LASC Case BC 266857, which was an arbitrated judgment.

23       Petitioner is awarded the Battlecat masters.  Respondent shall arrange for

24   shipment of said masters to Petitioner at his cost and direction.

25       Petitioner shall license the songs from the Battlecat masters in the documentary

26   "Married to the Game" to Respondent at no cost. Each party shall be awarded one-half

27   of the net proceeds of the "Married to the Game" DVD, but Respondent shall have

28

Judgment; Marriage of Harris; DR 43369

00053

¹²DEC. 13. 2005·E¹0:21AM ¹⁸³LERUSS AUGUSTAKABAT    CRAWFORD & CRAWFORD    NO. 8029.   P. 3/4 ₀₃/₀₄

1  management and control over the "Married to the Game" DVD.   No salary shall be paid

2  to Respondent in determining net proceeds.

3      5.    The corporation KDA is awarded to Respondent.

4      6.    The restaurant Dasha's Soul Food is awarded to Respondent.

5      7.    The proceeds from the "Married to the Game" book is awarded to

6  Respondent.

7      8.    O Lydia, a company, is awarded to Respondent.  However, one-half of the

8  net proceeds from the "Married to the Game" DVD is awarded to each party.

9      9.    The parties shall cooperate to consolidate their ongoing business concerns

10  which are community property and from which they are each getting profits into a

11  company to be created called Harris Enterprises.

12      10.    The company Dream On Production is awarded to Respondent, except for

13  one-half of the net royalties from "Married to the Game" DVD shall be awarded to each

14  party.

15      11.    Petitioner's life story is awarded to Petitioner.

16      12.    Nu Image Media is awarded to Petitioner after the One Hundred Seven

17  Million Dollar Judgment in LASC Case BC 268857 has been collected or compromised to

18  the satisfaction of Petitioner and Respondent.

19      13.    The proceeds of Los Angeles Superior Court Case BC 268857 are

20  community property.  The allocation to the parties is reserved as to how much of said

21  proceeds shall be awarded to each party.

22      The fees and costs to Casselman's firm when they are determined shall be

23  divided between the parties on an equal basis.  Each party shall pay their own fees and

24  costs in the case of Casselman versus Harris which is Los Angeles Superior Court case

25  BC 340196.

26      14.    The issue of child support is reserved.

27      15.    Child custody jurisdiction is in the State of Texas.  The parties have stated

28

Judgment; Marriage of Harris; DR 43369                                    2

DEC. 13. 2005 10:22AM RUSS AUGUST & KABAT          CRAWFORD & CRAWFORD          NO. 9028   P. 4/484/84

1    their intent that Respondent will bring the child of the parties to visit Petitioner once

2    every two months until the child is 18 years of age.

3      16.   The parties jointly support a motion for the appointment of a receiver for the

4    collection of the judgment in LASC Case BC 268857.

5      17.   Each party shall pay their own attorneys fees and costs in this case to date.

6      18.   The Court reserves jurisdiction over the executory portions of this Judgment

7    including the formation of Harris Enterprises.

8      19.   The trial on the issue of the allocation of the proceeds of LASC Case BC

9    268857 is set for January 30, 2006, at 9:00 a.m. in Department 13 of this Court.

10      20.   The parties shall exchange Preliminary Declarations of Disclosure forthwith.

11    The Final Declarations of Disclosure are waived.

12    APPROVED AS TO FORM AND CONTENT:

13

14

15    STEVEN M. GOLDBERG,
      Attorney for Petitioner,

16    MICHAEL HARRIS

17

18

19    DEBRA VANIMAN CRAWFORD,
      Attorney for Respondent,

20    LYDIA HARRIS

21      12-23-05

22                   ADRIENNE M. GROVER,
                    Judge of the Superior Court

23

24

25

26

27

28

Judgment; Marriage of Harris, DR 43369      3

00055

1  Hon. Stephen E. Haberfeld, Discovery Referee
2  JAMS
   707 Wilshire Blvd., 46th Fl.
3  Los Angeles, CA 90017
   Tel.:    213-353-9711
4  Fax:    213-620-0100
   E-Mail: judgehaberfeld@comcast.net
5

6

7

8

9

10

11                    SUPERIOR COURT OF CALIFORNIA

12                         COUNTY OF MONTEREY

13

14   MICHAEL RAY HARRIS,                   Case No. DR 43369

15                    Petitioner,          REFEREE'S ORDER GRANTING
                                           PETITIONER'S MOTION TO COMPEL
16   vs.                                   MARION H. "SUGE" KNIGHT TO
                                           PRODUCE DOCUMENTS RESPONSIVE
17                                         TO PETITIONER'S FIRST SET OF
                                           REQUESTS FOR PRODUCTION OF
18   LYDIA HARRIS,                         DOCUMENTS

19                    Respondent.          Hearing
                                           Date:    January 5, 2006
20                                         Time:    5:15 p.m.
                                           Place:   Via Conference Call
21                                         Referee: Hon. Stephen E. Haberfeld

22

23

24        Petitioner Michael Ray Harris's ("Petitioner's") motion to compel Marion H. "Suge"

25   Knight ("Mr. Knight") to respond and produce documents responsive to Petitioner's first set

26   of requests for production of documents ("Motion") was expressly and specifically referred to

27   the undersigned discovery referee ("Referee") by the Court's Order, dated December 13, 2005 —

28   - which also appointed the Referee.   Steven M. Goldberg, Esq. and Dan Goldman, Esq. of the

Referee]                              1
                        [PROPOSED] ORDER

1   law firm of Russ August & Kabat appeared and participated with the Referee in a telephonic

2   hearing on the Motion --- which hearing was set by stipulation, including the agreement of

3   Dermot D. Givens, Esq. counsel for Mr. Knight, during a telephonic Status Conference held on

4   January 4, 2006.  Debra Crawford, Esq. of the law firm of Crawford & Crawford, counsel for

5   Respondent Lydia Harris in this proceeding --- having been apprised of the stipulated and

6   ordered telephonic hearing during the aforesaid Status Conference --- stated  that she did not

7   intend to participate in the hearing on the Motion.

8       Mr. Givens did not appear or participate in the hearing on the Motion, as agreed and

9   accordingly so ordered, or communicate with either the Referee or Petitioner's counsel after the

10  January 4, 2006 Status Conference and before or during the hearing on the Motion concerning

11  that hearing or at all.

12      All participants in the January 4, 2006 Status Conference knew the date, time and call-in

13  information for the hearing on the Motion.   Messrs. Goldberg and Goldman dialed in for the

14  telephonic hearing, as agreed and ordered, shortly after 5:15 p.m. (PT).  The Referee was already

15  on the line.  After waiting for Mr. Givens for approximately five minutes, at approximately 5:20

16  p.m. (PT), the Referee stated that the Referee would go off line until the earlier of being

17  contacted that Mr. Givens had joined the conference call or 5:30 p.m. (PT), at which time the

18  Referee would dial back into the conference call and discuss with whoever was on the line at that

19  time what next to do.

20      At approximately 5:30 p.m. (PT) — not having been contacted by anyone concerning that

21  or whether Mr. Givens had joined the conference call for the hearing — the Referee dialed back

22  into the conference call and ascertained that Mr. Givens was not on the line.   Petitioner's

23  counsel, Mr. Goldberg, represented to the Referee that Mr. Givens had not joined the conference

24  call at any time prior to the Referee's re-joining the conference call at 5:30 p.m. (PT) and that

25  Mr. Goldberg had unsuccessfully tried to contact Mr. Givens about his joining the telephonic

26  hearing on the Motion during the approximately ten minute (5:20-5:30 p.m. (PT)) interval when

27  the Referee was off-line.  Mr. Goldberg represented that he had called Mr. Givens' cell phone

28  and that Mr. Givens did not answer, and that Mr. Goldberg left a message, and that Mr. Goldberg

Referral

2

[PROPOSED] ORDER

00057

1    additionally sent Mr. Givens an e-mail, but Mr. Givens did not respond or call in to the

2    conference call.

3        At approximately 5:35 p.m. (PT), the Referee ruled that — in view of the above-

4    referenced facts and circumstances, and good cause appearing — the stipulated and ordered

5    telephonic hearing on the Motion would go forward, and the Referee made the following ruling

6    and order concerning the Motion during the hearing which lasted until approximately 5:45 p.m.

7    (PT).

8        Based on careful consideration of the papers submitted by Petitioner and Mr. Knight in

9    support of and in opposition to Petitioner's motion to compel Mr. Knight to produce, without

10    objection, all documents responsive to Petitioner's First Set of Requests for Production of

11    Documents ("document request") and, after a hearing and good cause appearing, it is hereby

12    ORDERED as follows.  Petitioner's motion to compel is granted as to the production of all

13    documents requested to be produced by Mr. Knight in Petitioner's document request.  Mr.

14    Knight is hereby ordered to produce, without objection, all documents in his possession, custody

15    and/or control which are responsive to Petitioner's document request, immediately prior to the

16    commencement of the taking of Mr. Knight's ordered deposition on Tuesday, January 10, 2006

17    at 10:00 a.m., at JAMS, 707 Wilshire Boulevard, 46th Floor, Los Angeles, California 90017.

18    Petitioner's request for monetary sanctions in connection with the Motion is reserved.

19        Immediately prior to the conclusion of the hearing on the Motion, the Referee requested

20    that Petitioner's counsel prepare, submit to the Referee and disseminate to all participants in the

21    discovery reference, including the Wasserman Comden firm, a proposed form of order for the

22    Referee's review and signature, reflecting the Referee's rulings and orders made during the

23    hearing on the Motion.

24

25    DATED: January 6, 2006

        STEPHEN E. HABERFELD
        Discovery Referee

26

27

28

Referral

3

[PROPOSED] ORDER

00058

## PROOF OF SERVICE
### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 707 Wilshire Blvd. 46th Floor, Los Angeles, CA 90017.

On January 6, 2006, I served the foregoing document described as REFEREE'S ORDER GRANTING PETITIONER'S MOTION TO COMPEL MARION H. "SUGE" KNIGHT TO PRODUCE DOCUMENTS RESPONSIVE TO PETITIONER'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS in the matter of MICHAEL RAY HARRIS V. LYDIA HARRIS to interested parties in this action, as follows:

ORIGINAL FILED TO: (Via fax & mail)

Hon. Adrienne Grover
Monterey Courthouse
1200 Aguajito Road
Courtroom #13
Monterey, CA 93940
Fax: 831-647-5897

( SEE ATTACHED SERVICE LIST )

(X ) BY MAIL:   as follows: I am "readily familiar"   with the firm's practice of collection and processing of correspondence for mailing with the United States Postal Service.   I know that the correspondence was deposited with the United States Postal Service on the same day this declaration was executed in the ordinary course of business.   I know that the envelope was sealed and, with postage thereon fully prepaid, placed for collection and mailing on this date in the United States mail at Los Angeles, California.

(X )BY FACSIMILE TRANSMISSION:  I caused the above-referenced document(s)  to  be  transmitted  to  the  above-named person(s) at the telecopy numbers on the attached list.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on January 6, 2006.

_Geraldine C. Yulo_
Geraldine C. Yulo

**CA001 - JAMS, Inc.**    **Service List**    1/6/2006

THE RESOLUTION EXPERTS

Reference # :    1220034123
Case Name :    Harris, Michael Ray vs. Harris, Lydia
Case Type:    FAMI
Referring Judge:
Panelist:    Haberfeld, Stephen E.,

---

**2    Goldberg, Steven M.**
Steven M. Goldberg                ( Active )
Russ, August & Kabat              PETI  Petitioner
12424 Wilshire Blvd.                        Main Phone # 310-826-7474
Suite 1200                                  Direct Phone #
Los Angeles, CA  90025                        FAX # 310-826-6991
sgoldberg@raklaw.com
Party Represented :

    Michael Ray Harris

---

**3    Givens, Dermot**
Dermot Givens                     ( Active )
L/O Dermot Givens                 RESP  Respondent
433 Camden Dr.                              Main Phone # 310-854-8823
Suite 600                                   Direct Phone #
Beverly Hills, CA  90210                      FAX # 323-878-0416
dermotg@aol.com
Party Represented :

    Marion Knight
    Death Row Records Inc.

---

**4    Crawford, Debra Vaniman**
Debra Vaniman Crawford             ( Active )
Crawford & Crawford                RESP  Respondent
P.O. Box 373                                Main Phone # 831-624-2422
SW Mission & 4th                            Direct Phone #
Carmel, CA  93921                             FAX # 831-624-2428
Debra@Divorce-123.com
Party Represented :

    Lydia Harris

---

**5    Goldman, Dan**
Dan Goldman                       ( Active )
Russ, August & Kabat              PETI  Petitioner
12424 Wilshire Blvd.                        Main Phone # 310-826-7474
Suite 1200                                  Direct Phone #
Los Angeles, CA  90025                        FAX # 310-826-6991
dwgoldman@raklaw.com
Party Represented :

    Michael Ray Harris

---

707 WILSHIRE BLVD.    46TH FLOOR   LOS ANGELES, CA 90017   TEL 213-620-1133   FAX 213-620-0100
Page    1

00060

CA001 - JAMS, Inc.    Service List

**JAMS**

THE RESOLUTION EXPERTS

1/6/2006

6         Comden, Leonard J.
Leonard J. Comden
Wasserman, Comden, Casselman & Pearson
5567 Reseda Blvd., Suite 330
PO Box 7033
Tarzana, CA 91357-7033
lcomden@wccplaw.com
Party Represented :

( Active )
RESP  Respondent
              Main Phone # 818-705-6800
        Direct Phone #
                FAX # 818-345-0162

Wasserman, Comden, Casselman & Pearson

707 WILSHIRE BLVD.    46TH FLOOR   LOS ANGELES, CA 90017   TEL 213-620-1133   FAX 213-620-0100

Page     2

00061

P. 1

x x x Transmission Result Report(MemoryTX) ( Jan. 6. 2006  2:49PM ) x x x

Date/Time: Jan. 6. 2006  2:13PM

| File No. | Mode | Destination | Pg(s) | Result | Page Not Sent |
|---|---|---|---|---|---|
| 4540 | Memory TX | 18315475897 — REFAXED to CourT Judge Haberfeld | P. 7 | E-3) 3) OK | P. 1-7 |
| | | 13108266991 | | OK | |
| | | 13238780416 — CORRECT # GIVENS | | E-2) 2) 2) 2) 2) | P. 1-7 |
| | | 18316242428 — CRAWFORD | | E-3) 3) | P. 1-7 |
| | | 13108266991 | | OK | |
| | | 18183450162 | | OK | |

Reason for error
E. 1) Hang up or line fail                    E. 2) Busy
E. 3) No Answer                              E. 4) No facsimile connection



January 6, 2006

Total Pages: 7
VIA FAX & U.S. MAIL

Hon. Adrianne Garcez
Monterey Courthouse
1200 Aguajito Road
Courtroom #13
Monterey, CA 93940
Fax: 831-877-5877

Re:   Harris, Michael Ray v. Harris Lydia
Case:  DR 43369
JAMS: 1230054123

Dear Judge Garcez:

Attached please find Judge Stephen Haberfeld's Referee's Order for your review and consideration.

Due to the production date and time of this morning Tuesday morning, the attached Order is being faxed and mailed to you and all counsel.

Thank you for your attention. Please feel free to contact me should you have any questions at 213-253-9711.

Sincerely,

Amy Yale
Case Manager to
Judge Stephen Haberfeld, Discovery Referee
ayale@jamsadr.com

cc:   all counsel

**PROOF OF SERVICE**

STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

    I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 12424 Wilshire Boulevard, 12th Floor, Los Angeles, California 90025.

    On May 4, 2006 I caused to be served the foregoing document described as PROOF OF CLAIM on interested parties in this action

☑   by placing true copies thereof enclosed in sealed envelopes addressed as stated on the attached mailing list.

☐   by placing ☐ the original ☐ a true copy thereof enclosed in sealed envelopes addressed as follows:

**SERVICE NAME/ADDRESS**

☑   BY MAIL

☐   I deposited such in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

☑   As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☑   Federal: I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on May 4, 2006 at Los Angeles, California.

_____
NICOLE JONES

2714-01 POS-OR-special

00063

1

## SERVICE LIST

2

3   Daniel McCarthy, Esq.          *Attorney for Debtor, Marion H. Knight,*
    Hill, Farrer & Burrill LLP      *Jr.*
    300 S. Grand Avenue, 37th floor
4   Los Angeles, CA 90071

5   Marion H. Knight, Jr.           *Debtor*
    PO Box 3037
6   Beverly Hills, CA 90212

7   Alvin Mar, Esq.                 *Trustee*
    Office of the US Trustee
8   725 S. Figueroa Street, 26th floor
    Los Angeles, CA 90017

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2714-01 POS-DR-special

00064

# EXHIBIT 3

00065

ORIGINAL

Form B10 (Official Form 10) (10/05)

| United States Bankruptcy Court    Central District of California | PROOF OF CLAIM |
|---|---|

**Name of Debtor** MARION KNIGHT, JR. aka
SUGE KNIGHT

**Case Number**
LA 06-11187-EC

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

**Name of Creditor** (The person or other entity to whom the debtor owes money or property):
LYDIA HARRIS

☒ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

**Name and address where notices should be sent:**
SHARON Z. WEISS (State Bar No. 169446)
WEINSTEIN, WEISS & ORDUBEGIAN LLP
1925 Century Park East, Suite 1150
Los Angeles, CA 90067-2712
Telephone number: (310) 203-9393

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

FILED
OCT 1 9 2006

This space is for Court use only.

Last four digits of account or other number by which creditor identifies debtor:

Check here ☐ replaces
if this claim ☐ amends   a previously filed claim, dated: _____

**1. Basis for Claim**
☐ Goods sold
☐ Services performed
☐ Money loaned
☒ Personal Injury/wrongful death
☐ Taxes
☐ Other _____

☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Wages, salaries, and compensation (Fill out below)
Last four digits of your Social Security number: _____
Unpaid compensation for services performed
from _____ to _____
    (date)        (date)

**2. Date debt was incurred:** Dec. 15, 1992 - Feb. 26, 2002

**3. If court judgment, date obtained:** March 9, 2005

**4. Total Amount of Claim at Time Case Filed:** $ 107 million*   $ _____   $ _____   $ _____   $ _____
                                               (unsecured)      (secured)   (priority)   (Total)
If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges. * In excess of $107 million - some or all may be secured.

**5. Secured Claim.**
☐ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:
☐ Real Estate   ☐ Motor Vehicle
☐ Other _____

Value of Collateral: $ _____

Amount of arrearage and other charges at time case filed included in secured claim, if any $ _____

**6. Unsecured Nonpriority Claim.**   $ 107 million
☒ Check this box if (a) there is no collateral or lien securing your claim, or (b) your claim exceeds the value of the property securing it or (c) none or only part of your claim is entitled to priority.   • See above.

**7. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim, all or part of which is entitled to priority.
Amount entitled to priority $ _____
Specify the priority of the claim:
☐ Wages, salaries or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
☐ Up to $2,225* of deposits toward purchase, lease or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Domestic support obligations under - 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(__).
*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. $10,000 and 180-day limits apply to cases filed on or after 4/20/05. Pub. L. 109-8

**8. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**9. Supporting Documents:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**10. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

This space is for Court use only.

| Date | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): |
|---|---|
| Sep ___, 2006 | LYDIA HARRIS |

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

00066



F.D.

DAVID B. CASSELMAN (SBN 81657)
I.DONALD WEISSMAN (SBN 67980)
WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 Reseda Boulevard, Suite 330
Post Office Box 7033
Tarzana, California 91357-7033
Telephone:  (818) 705-6800 · (323) 872-0995
Facsimile:  (818) 705-8147

Attorneys for Plaintiffs
LYDIA HARRIS and NEW IMAGE MEDIA
CORPORATION

**FILED**
LOS ANGELES SUPERIOR COURT

MAR 0 9 2005

JOHN A. CLARKE, CLERK
By_____
R. CASTLE

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| LYDIA HARRIS, LIFESTYLE RECORDS, INC., AND NEW IMAGE MEDIA CORP., | CASE NO. BC 268857 |
| Plaintiffs, | Case Assigned to: Judge Ronald M. Sohigian – Dept. 41 |
| v. | [Complaint Filed: February 26, 2002] |
| KEVIN GILLIAM AKA BATTLECAT; MARION H. KNIGHT AKA SUGE KNIGHT; DEATH ROW RECORDS; THA ROW, INC.; DAVID E. KENNER; DAVID E. KENNER PROFESSIONAL LAW CORPORATION; DAVID E. KENNER, A PROFESSIONAL CORPORATION; THE DAVID E. KENNER TRUST; INTERSCOPE RECORDS; JIMMY IOVINE; JOHN T. MCCLAIN, JR.; A&M RECORDS; ET AL., | JUDGMENT |
| Defendants. | |

Upon the Order striking the Answer of MARION H. KNIGHT, aka SUGE KNIGHT, ~~and~~

DEATH ROW RECORDS, INC., ~~a DEATH ROW RECORDS L.L.C., a THA ROW, INC.,~~

to Plaintiffs' Complaint and entering default thereon, consideration of the Plaintiffs' Application

for Default Prove-up Damages and the supporting declarations of Lydia Harris, I.Donald

Weissman, Michael Harris and Phil Ames, and good cause appearing therefor,

*JUDGMENT*

— 2 —

00067

1    IT IS HEREBY ADJUDGED that judgment is entered in favor of plaintiffs, LYDIA

2    HARRIS and NEW IMAGE MEDIA CORP., and against defendants, MARION H. KNIGHT

3    aka SUGE KNIGHT, DEATH ROW RECORDS, INC., aka DEATH ROW RECORDS L.L.C.,

4    and THA ROW, INC., in the sum of $ 45,000,000 for economic damages,

5    $ 2,000,000 for non-economic damages, $ 60,000,000 for punitive damages.

6

7    Further, PLAINTIFFS to recover costs pursuant to a memorandum of costs to be filed

8    pursuant to the statute in the amount of $

9

10   Dated: 3-9-05

11                                        JUDGE OF THE LOS ANGELES SUPERIOR COURT

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                            2
                                        JUDGMENT

— 3 —

00068

FL-180

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
DEBRA VANDMAN CRANFORD, SBN 116222
LAW OFFICES OF CRANFORD & CRANFORD
P.O. Box 373
SW Mission & 4th
Carmel, California 93921-0373
TELEPHONE NO.: 831-624-2422    FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name): LYDIA HARRIS

SUPERIOR COURT OF CALIFORNIA, COUNTY OF MONTEREY
STREET ADDRESS: 1200 Aguajito Road
MAILING ADDRESS: 1200 Aguajito Road
CITY AND ZIP CODE: Monterey, CA 93940
BRANCH NAME: MONTEREY

MARRIAGE OF
PETITIONER: MICHAEL RAY HARRIS

RESPONDENT: LYDIA HARRIS

JUDGMENT
[X] DISSOLUTION    [ ] LEGAL SEPARATION    [ ] NULLITY
[ ] Status only
[ ] Reserving jurisdiction over termination of
marital or domestic partnership status
[ ] Judgment on reserved issues
Date marital or domestic partnership status ends: DATE OF FILE STAMP

FOR COURT USE ONLY

FILED

DEC 23 2005

LISA M. GALDOS
CLERK OF THE SUPERIOR COURT
C.J. CAMACHO        DEPUTY

CASE NUMBER:
DR 43369

DEC 23 2005

1. [ ] This judgment  [ ] contains personal conduct restraining orders.  [ ] modifies existing restraining orders.
   The restraining orders are contained on page(s) _____ of the attachment. They expire on (date): _____.

2. This proceeding was heard as follows: [ ] Default or uncontested [ ] By declaration under Family Code section 2336
   [X] Contested
   a. Date: 11-14-05    Dept: 13    Room: _____
   b. Judicial officer (name): ADRIENNE M. GROVER    [ ] Temporary judge
   c. [X] Petitioner present in court (name): STEVEN M. GOLDBERG    [X] Attorney present in court (name): STEVEN M. GOLDBERG
   d. [X] Respondent present in court.    [X] Attorney present in court (name): DEBRA V. CRANFORD
   e. [ ] Claimant present in court (name): _____    [ ] Attorney present in court (name): _____
   f. [X] Other (specify name): Attorney for
       Petitioner: DAN GOLDMAN

3. The court acquired jurisdiction of the respondent on (date): June 9, 2005
   a. [X] The respondent was served with process.
   b. [ ] The respondent appeared.

THE COURT ORDERS, GOOD CAUSE APPEARING

4. a. [X] Judgment of dissolution is entered. Marital or domestic partnership status is terminated and the parties are restored to the
       status of single persons
       (1) [X] on (specify date): SAME DATE AS FILE STAMP    DEC 23 2005
       (2) [ ] on a date to be determined on noticed motion of either party or on stipulation.
   b. [ ] Judgment of legal separation is entered.
   c. [ ] Judgment of nullity is entered. The parties are declared to be single persons on the ground of (specify):

   d. [ ] This judgment will be entered nunc pro tunc as of (date): _____.
   e. [ ] Judgment on reserved issues.
   f. The [ ] petitioner's [ ] respondent's    former name is restored to (specify): _____
   g. [ ] Jurisdiction is reserved over all other issues, and all present orders remain in effect except as provided below.
   h. [ ] This judgment contains provisions for child support or family support. Each party must complete and file with the court a
       Child Support Case Registry Form (form FL-191) within 10 days of the date of this judgment. The parents must notify the
       court of any change in the information submitted within 10 days of the change, by filing an updated form. The Notice
       of Rights and Responsibilities—Health Care Costs and Reimbursement Procedures and Information Sheet on Changing a
       Child Support Order (form FL-192) is attached.

Form Adopted for Mandatory Use
Judicial Council of California
FL-180 [Rev. January 1, 2005]

JUDGMENT
(Family Law)

Legal
Solutions
Plus

Page 1 of 2
Family Code, §§ 2024, 2340,
2343, 2346

-4-

00069

DEC. 13. 2005 10:21AM  LAW OFFICES AUGUST&KABAT    CRAWFORD & CRAWFORD    NO. 8028   P. 2/4

PURSUANT TO STIPULATION OF THE PARTIES RECITED IN COURT, IT IS HEREBY

ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1.   Of the monies received by Respondent from Marion Knight to date, Sixty

Thousand ($60,000) shall be paid to an individual per agreement of the parties.  One

Hundred and Seventy-Nine Thousand Dollars ($179,000) shall be given to Petitioner

and Two Hundred Thousand Dollars ($200,000) shall be retained by Respondent.

Each party shall pay one-half of the copying costs for the Xenon case out of said

money.

Respondent shall put Two Hundred Six Thousand Dollars ($206,000) in escrow

for potential fees or costs in LASC Case BC-288857.

Each party shall pay taxes, if any, on their share of said money.

2.   Each party is awarded one-half of the net profits of the DVD on the

documentary "Welcome to Death Row."

3.   Any and all major decisions on the lawsuit regarding the "Welcome to Death

Row" documentary versus Xenon shall be made by the parties jointly.  The net proceeds

of said lawsuit shall be divided equally by the parties.  The costs shall be shared equally

by the parties and shall be advanced, if possible.  Respondent will keep Petitioner

advised of all developments in the case, and shall provide him with copies of all filed

documents to date at Petitioner's expense.

4.   Each party shall receive one-half of the net proceeds from the Battlecat

Judgment in LASC Case BC-288857, which was an arbitrated judgment.

Petitioner is awarded the Battlecat masters. Respondent shall arrange for

shipment of said masters to Petitioner at his cost and direction.

Petitioner shall license the songs from the Battlecat masters in the documentary

"Married to the Game" to Respondent at no cost.  Each party shall be awarded one-half

of the net proceeds of the "Married to the Game" DVD, but Respondent shall have

Judgment; Marriage of Harris; DR 43369

-5-

00070

DEC. 13. 2005 10:21AM CROSS AUGUST&KABAT    CRAWFORD & CRAWFORD    NO. 8029    P. 3/4

1  management and control over the "Married to the Game" DVD.  No salary shall be paid

2  to Respondent in determining net proceeds.

3      5.    The corporation KOA is awarded to Respondent.

4      6.    The restaurant Dasha's Soul Food is awarded to Respondent.

5      7.    The proceeds from the "Married to the Game" book is awarded to

6  Respondent.

7      8.    O Lydia, a company, is awarded to Respondent.  However, one-half of the

8  net proceeds from the "Married to the Game" DVD is awarded to each party.

9      9.    The parties shall cooperate to consolidate their ongoing business concerns

10  which are community property and from which they are each getting profits into a

11  company to be created called Harris Enterprises.

12     10.    The company Dream On Production is awarded to Respondent, except for

13  one-half of the net royalties from "Married to the Game" DVD shall be awarded to each

14  party.

15     11.    Petitioner's life story is awarded to Petitioner.

16     12.    Nu Image Media is awarded to Petitioner after the One Hundred Seven

17  Million Dollar Judgment in LASC Case BC 288857 has been collected or compromised to

18  the satisfaction of Petitioner and Respondent.

19     13.    The proceeds of Los Angeles Superior Court Case BC 288857 are

20  community property.  The allocation to the parties is reserved as to how much of said

21  proceeds shall be awarded to each party.

22     The fees and costs to Casselman' firm when they are determined shall be

23  divided between the parties on an equal basis.  Each party shall pay their own fees and

24  costs in the case of Casselman versus Harris which is Los Angeles Superior Court case

25  BC 340196.

26     14.    The issue of child support is reserved.

27     15.    Child custody jurisdiction is in the State of Texas.  The parties have stated

28

Judgment; Marriage of Harris; DR 43369                                    2

-6-



their intent that Respondent will bring the child of the parties to visit Petitioner once every two months until the child is 18 years of age.

16.   The parties jointly support a motion for the appointment of a receiver for the collection of the judgment in LASC Case BC 288857.

17.   Each party shall pay their own attorneys fees and costs in this case to date.

18.   The Court reserves jurisdiction over the executory portions of this Judgment including the formation of Harris Enterprises.

19.   The trial on the issue of the allocation of the proceeds of LASC Case BC 288857 is set for January 30, 2006, at 8:00 a.m. in Department 13 of this Court.

20.   The parties shall exchange Preliminary Declarations of Disclosure forthwith. The Final Declarations of Disclosure are waived.

APPROVED AS TO FORM AND CONTENT:

STEVEN M. GOLDBERG,
Attorney for Petitioner,
MICHAEL HARRIS

DEBRA VANIMAN CRAWFORD,
Attorney for Respondent,
LYDIA HARRIS

12-23-05

ADRIENNE M. GROVER,
Judge of the Superior Court

Judgment; Marriage of Harris; DR 43369

- 7 -

00072

1  Hon. Stephen E. Haberfeld, Discovery Referee
2  JAMS
   707 Wilshire Blvd., 46th Fl.
3  Los Angeles, CA 90017
   Tel.:   213-353-9711
4  Fax:    213-620-0100
   E-Mail: judgehaberfeld@comcast.net
5

6

7

8

9

10

11                    SUPERIOR COURT OF CALIFORNIA

12                        COUNTY OF MONTEREY

13

14  MICHAEL RAY HARRIS,                    Case No. DR 43369

15                   Petitioner,           REFEREE'S ORDER GRANTING
                                           PETITIONER'S MOTION TO COMPEL
16  vs.                                    MARION H. "SUGE" KNIGHT TO
                                           PRODUCE DOCUMENTS RESPONSIVE
17                                         TO PETITIONER'S FIRST SET OF
    LYDIA HARRIS,                          REQUESTS FOR PRODUCTION OF
18                                         DOCUMENTS
                     Respondent.
19                                         Hearing
                                           Date:    January 5, 2006
20                                         Time:    5:15 p.m.
                                           Place:   Via Conference Call
21                                         Referee: Hon. Stephen E. Haberfeld

22

23

24      Petitioner Michael Ray Harris's ("Petitioner's") motion to compel Marion H. "Suge"

25  Knight ("Mr. Knight") to respond and produce documents responsive to Petitioner's first set

26  of requests for production of documents ("Motion") was expressly and specifically referred to

27  the undersigned discovery referee ("Referee") by the Court's Order, dated December 13, 2005 –

28  – which also appointed the Referee.   Steven M. Goldberg, Esq. and Dan Goldman, Esq. of the

                                          1
                                  [PROPOSED] ORDER

00073

1   law firm of Russ August & Kabat appeared and participated with the Referee in a telephonic

2   hearing on the Motion — which hearing was set by stipulation, including the agreement of

3   Dermot D. Givens, Esq. counsel for Mr. Knight, during a telephonic Status Conference held on

4   January 4, 2006. Debra Crawford, Esq. of the law firm of Crawford & Crawford, counsel for

5   Respondent Lydia Harris in this proceeding — having been apprised of the stipulated and

6   ordered telephonic hearing during the aforesaid Status Conference — stated that she did not

7   intend to participate in the hearing on the Motion.

8        Mr. Givens did not appear or participate in the hearing on the Motion, as agreed and

9   accordingly so ordered, or communicate with either the Referee or Petitioner's counsel after the

10  January 4, 2006 Status Conference and before or during the hearing on the Motion concerning

11  that hearing or at all.

12       All participants in the January 4, 2006 Status Conference knew the date, time and call-in

13  information for the hearing on the Motion. Messrs. Goldberg and Goldman dialed in for the

14  telephonic hearing, as agreed and ordered, shortly after 5:15 p.m. (PT). The Referee was already

15  on the line. After waiting for Mr. Givens for approximately five minutes, at approximately 5:20

16  p.m. (PT), the Referee stated that the Referee would go off line until the earlier of being

17  contacted that Mr. Givens had joined the conference call or 5:30 p.m. (PT), at which time the

18  Referee would dial back into the conference call and discuss with whoever was on the line at that

19  time what next to do.

20       At approximately 5:30 p.m. (PT) — not having been contacted by anyone concerning that

21  or whether Mr. Givens had joined the conference call for the hearing — the Referee dialed back

22  into the conference call and ascertained that Mr. Givens was not on the line. Petitioner's

23  counsel, Mr. Goldberg, represented to the Referee that Mr. Givens had not joined the conference

24  call at any time prior to the Referee's re-joining the conference call at 5:30 p.m. (PT) and that

25  Mr. Goldberg had unsuccessfully tried to contact Mr. Givens about his joining the telephonic

26  hearing on the Motion during the approximately ten minute (5:20-5:30 p.m. (PT)) interval when

27  the Referee was off-line. Mr. Goldberg represented that he had called Mr. Givens' cell phone

28  and that Mr. Givens did not answer, and Mr. Goldberg left a message, and that Mr. Goldberg

Referee                          2
[PROPOSED] ORDER

- 9 -

00074

1  additionally sent Mr. Givens an e-mail, but Mr. Givens did not respond or call in to the

2  conference call.

3      At approximately 5:35 p.m. (PT), the Referee ruled that — in view of the above-

4  referenced facts and circumstances, and good cause appearing — the stipulated and ordered

5  telephonic hearing on the Motion would go forward, and the Referee made the following ruling

6  and order concerning the Motion during the hearing which lasted until approximately 5:45 p.m.

7  (PT).

8      Based on careful consideration of the papers submitted by Petitioner and Mr. Knight in

9  support of and in opposition to Petitioner's motion to compel Mr. Knight to produce, without

10  objection, all documents responsive to Petitioner's First Set of Requests for Production of

11  Documents ("document request") and, after a hearing and good cause appearing, it is hereby

12  ORDERED as follows.  Petitioner's motion to compel is granted as to the production of all

13  documents requested to be produced by Mr. Knight in Petitioner's document request.  Mr.

14  Knight is hereby ordered to produce, without objection, all documents in his possession, custody

15  and/or control which are responsive to Petitioner's document request, immediately prior to the

16  commencement of the taking of Mr. Knight's ordered deposition on Tuesday, January 10, 2006

17  at 10:00 a.m., at JAMS, 707 Wilshire Boulevard, 46th Floor, Los Angeles, California 90017.

18  Petitioner's request for monetary sanctions in connection with the Motion is reserved.

19      Immediately prior to the conclusion of the hearing on the Motion, the Referee requested

20  that Petitioner's counsel prepare, submit to the Referee and disseminate to all participants in the

21  discovery reference, including the Wasserman Comden firm, a proposed form of order for the

22  Referee's review and signature, reflecting the Referee's rulings and orders made during the

23  hearing on the Motion.

24

25  DATED: January 6, 2006

26                                    _____
                                      STEPHEN E. HABERFELD
                                      Discovery Referee

27

28

                                      3
                               [PROPOSED] ORDER

– 10 –

00075

### PROOF OF SERVICE
### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 707 Wilshire Blvd. 46th Floor, Los Angeles, CA 90017.

On January 6, 2006, I served the foregoing document described as REFEREE'S ORDER GRANTING PETITIONER'S MOTION TO COMPEL MARION H. "SUGE" KNIGHT TO PRODUCE DOCUMENTS RESPONSIVE TO PETITIONER'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS in the matter of MICHAEL RAY HARRIS V. LYDIA HARRIS to interested parties in this action, as follows:

ORIGINAL FILED TO: (Via fax & mail)

Hon. Adrienne Grover
Monterey Courthouse
1200 Aguajito Road
Courtroom #13
Monterey, CA 93940
Fax: 831-647-5897

( SEE ATTACHED SERVICE LIST )

(X ) BY MAIL: as follows: I am "readily familiar" with the firm's practice of collection and processing of correspondence for mailing with the United States Postal Service. I know that the correspondence was deposited with the United States Postal Service on the same day this declaration was executed in the ordinary course of business. I know that the envelope was sealed and, with postage thereon fully prepaid, placed for collection and mailing on this date in the United States mail at Los Angeles, California.

(X )BY FACSIMILE TRANSMISSION: I caused the above-referenced document(s) to be transmitted to the above-named person(s) at the telecopy numbers on the attached list.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on January 6, 2006.

_Geraldine C. Yalo_
Geraldine C. Yalo

-//-

CA001 - JAMS, Inc.   Service List                                    1/6/2006

THE RESOLUTION EXPERTS

Reference # :        1220034123
Case Name :          Harris, Michael Ray vs. Harris, Lydia
Case Type:           FAMI
Referring Judge:
Panelist:            Haberfeld, Stephen K.,

---

**2          Goldberg, Stevan M.**
Stevan M. Goldberg              ( Active )
Russ, August & Kabat            PETI  Petitioner
12424 Wilshire Blvd.                        Main Phone # 310-826-7474
Suite 1200                                  Direct Phone #
Los Angeles, CA 90025                       FAX # 310-826-6991
sgoldberg@raklaw.com
Party Represented :

   Michael Ray Harris

---

**3          Givens, Dermot**
Dermot Givens                   ( Active )
L/O Dermot Givens               RESP  Respondent
433 Camden Dr.                              Main Phone # 310-854-8823
Suite 606                                   Direct Phone #
Beverly Hills, CA 90210                     FAX # 323-878-0416
dermotg@aol.com
Party Represented :

   Marion Knight
   Death Row Records Inc.

---

**4          Crawford, Debra Vaniman**
Debra Vaniman Crawford           ( Active )
Crawford & Crawford              RESP  Respondent
P.O. Box 373                                Main Phone # 831-624-2422
SW Mission & 4th                            Direct Phone #
Carmel, CA 93921                            FAX # 831-624-2428
Debra@Divorce-123.com
Party Represented :

   Lydia Harris

---

**5          Goldman, Dan**
Dan Goldman                      ( Active )
Russ, August & Kabat             PETI  Petitioner
12424 Wilshire Blvd.                        Main Phone # 310-826-7474
Suite 1200                                  Direct Phone #
Los Angeles, CA 90025                       FAX # 310-826-6991
dwgoldman@raklaw.com
Party Represented :

   Michael Ray Harris

---

707 WILSHIRE BLVD.  46TH FLOOR  LOS ANGELES, CA 90017  (T) 213-620-1133  (F) 213-620-0100      Page      1

—/2—

**CA001 - JAMS, Inc.**    Service List

1/6/2006

6        Comden, Leonard J.
Leonard J. Comden
Wasserman, Comden, Casselman & Pearson
5567 Reseda Blvd., Suite 330
PO Box 7033
Tarzana, CA  91357-7033
lcomden@wccplaw.com
Party Represented :

THE RESOLUTION EXPERTS
( Active )
RESP  Respondent
          Main Phone # 818-705-6800
          Direct Phone #
          FAX # 818-345-0162

Wasserman, Comden, Casselman & Pearson

707 WILSHIRE BLVD.   44TH FLOOR   LOS ANGELES, CA 90017   TEL 213-620-1133   FAX  213-620-0100        Page    2

~ /3 ~

00078

P. 1

* * * Transmission Result Report (Memory TX) ( Jan. 6. 2006 2:49PM ) * * *
13

Date/Time: Jan. 6. 2006 2:13PM

| File No. Mode | Destination | Pg(s) | Result | Page Not Sent |
|---|---|---|---|---|
| 4540 Memory TX | 18915475891 — REFAXED TO COURT | P. 7 | E-3) 3) | P. 1-7 |
| | Judge Haberfeld | | OK | |
| | 13108266991 | | OK | |
| | 13238780416 — CORRECT # GIVENS | | E-2) 2) 2) 2) 2) | P. 1-7 |
| | 18316242428 — CRAWFORD | | E-3) 3) | P. 1-7 |
| | 13108266991 | | OK | |
| | 18183450162 | | OK | |

Reason for error
E. 1) Hang up or line fall                E. 2) Busy
E. 3) No answer                           E. 4) No facsimile connection



—14—

00079

### PROOF OF SERVICE

STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 12424 Wilshire Boulevard, 12th Floor, Los Angeles, California 90025.

On May 4, 2006 I caused to be served the foregoing document described as PROOF OF CLAIM on interested parties in this action

☒ by placing true copies thereof enclosed in sealed envelopes addressed as stated on the attached mailing list.

☐ by placing ☐ the original ☐ a true copy thereof enclosed in sealed envelopes addressed as follows:

**SERVICE NAME/ADDRESS**

☒ BY MAIL

☐ I deposited such in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

☒ As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒ Federal: I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on May 4, 2006 at Los Angeles, California.

_____
NICOLE JONES

2314-01 POS-DM-special

~15~

00080

## SERVICE LIST

| | |
|---|---|
| 1 | |
| 2 | Daniel McCarthy, Esq. |
| 3 | Hill, Farrer & Burrill LLP |
| 4 | 300 S. Grand Avenue, 37th floor<br>Los Angeles, CA 90071 |

Daniel McCarthy, Esq.
Hill, Farrer & Burrill LLP
300 S. Grand Avenue, 37th floor
Los Angeles, CA 90071

*Attorney for Debtor, Marion H. Knight, Jr.*

Marion H. Knight, Jr.
PO Box 3037
Beverly Hills, CA 90212

*Debtor*

Alvin Mar, Esq.
Office of the US Trustee
725 S. Figueroa Street, 26th floor
Los Angeles, CA 90017

*Trustee*

2714-04 PO2-ER.epsdel

– 16 –

00081

# EXHIBIT 4

00082

Case 2:06-bk-11187-VZ   Doc 524-1   Filed 05/02/08   Entered 05/02/08 15:56:55   Desc
Exhibit   Page 42 of 55

Form B10 (Official Form 10) (10/05)

| United States Bankruptcy Court   Central District of California | PROOF OF CLAIM |
|---|---|

**Name of Debtor**
Marion Knight, Jr. aka Suge Knight

**Case Number**
LA 06-11187-EC

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

**Name of Creditor (The person or other entity to whom the debtor owes money or property):**
Wasserman, Comden & Casselman, L.L.P.

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

**FILED**

**OCT 3 1 2006**

CLERK, U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY _____ Deputy Clerk

**Name and address where notices should be sent:**
Wasserman, Comden & Casselman, L.L.P.
C/O David B. Casselman
5567 Reseda Boulevard, Suite 330
Tarzana, CA 91357-7033
Telephone number: (818) 705-6800; Facsimile (818) 345-0162

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

**This space is for Court use only.**

**Last four digits of account or other number by which creditor identifies debtor:**

Check here ☐ replaces
if this claim ☐ amends   a previously filed claim, dated: _____

**1. Basis for Claim**
☐ Goods sold
☐ Services performed
☐ Money loaned
☐ Personal injury/wrongful death
☐ Taxes
☑ Other See Attachment

☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
☐ Wages, salaries, and compensation (Fill out below)
Last four digits of your Social Security number: _____
Unpaid compensation for services performed
from _____ to _____
    (date)      (date)

**2. Date debt was incurred:**

**3. If court judgment, date obtained:** March 9, 2005

**4. Total Amount of Claim at Time Case Filed:** $ 60,418,315.00  $ _____  $ _____  in an amt not less than $ 60,418,315.00*
                                          (unsecured)      (secured)      (for priority)      (Total)

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.   *See Attachment for additional claims against Debtor.
☑ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.  See Attachment for Details.

**5. Secured Claim.**
☐ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:
☐ Real Estate   ☐ Motor Vehicle
☐ Other _____
Value of Collateral:   $ _____
Amount of arrearage and other charges at time case filed included in secured claim, if any $ _____

**6. Unsecured Nonpriority Claim.**   $ _____
☐ Check this box if (a) there is no collateral or lien securing your claim, or (b) your claim exceeds the value of the property securing it or (c) none or only part of your claim is entitled to priority.

**7. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim, all or part of which is entitled to priority.
Amount entitled to priority $ _____
Specify the priority of the claim:
☐ Wages, salaries or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
☐ Up to $2,225* of deposits toward purchase, lease or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Domestic support obligations under - 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).
*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment, $10,000 and 180-day limits apply to cases filed on or after 4/20/05. Pub. L. 109-8

**8.** Credits: The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**9.** Supporting Documents: Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**10.** Date-Stamped Copy: To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

**This space is for Court use only.**

**Date**
10/30/06

Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):
David B. Casselman

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

ORIGINAL

00083

### ATTACHMENT TO PROOF OF CLAIM
### FILED BY WASSERMAN, COMDEN & CASSELMAN, L.L.P.

Wasserman, Comden & Casselman, L.L.P. ("Wasserman") has the followings claims against the Debtor:[1]

(1)  **Contingency Fee & Reimbursement of Expenses Arising out of Harris Judgment.**
Wasserman has a pending state court action (the "Wasserman Action") against, among others, Marion H. Knight *aka* Suge Knight ("Mr. Knight"), and Death Row Records, Inc. ("Death Row" and collectively, with Mr. Knight, the "Debtors"). The Wasserman Action was commenced on September 21, 2005 by the filing of a complaint in the Superior Court of the State of California for the County of Los Angeles - Central District (the "State Court"), styled Wasserman, Comden & Casselman, L.L.P. v. Lydia Harris; Lifestyle Records, Inc.; New Image Media Corp.; Marion H. Knight, *aka* Suge Knight; Death Row Records, Inc.; Death Row Records, L.L.C.; Tha Row, Inc.; Dermot Givens; Kevin Gilliam *aka* Battlecat; and Does 1 through 100, inclusive and bearing case number BC 308790.[2] The Wasserman Action arises out of Wasserman's representation[3] of the Harris Parties in that certain action (the "Harris Action") commenced by the Harris Parties against, among others, Mr. Knight and Death Row. On March 9, 2006, Judgment was entered in the Harris Action in favor of Lydia Harris and New Image Media Corp. ("New Image") against the Debtors in the sum of $107 million, which included $60 million in punitive damages (the "Harris Judgment"). Wasserman is entitled to its 40% contingency fee on any recovery, as well as reimbursement for all out of pocket expenses. To the extent the Harris Parties have any claim against this estate, Wasserman is entitled to be paid directly from the Debtor's estate for its 40% contingency fee and related reimbursement of expenses.

(2)  **Direct Claims Against the Debtors.** On or about May 19, 2005, after the Harris Judgment was entered and after all appeals had been waived, Lydia terminated Wasserman as her attorney. In response and also on May 19, 2005, Wasserman filed and served on the Harris Parties and the Debtors a Notice of Attorney Lien (the "Attorney Lien Notice") equal to 40% of any and all gross recovery, payments or consideration of any kind or nature paid or transferred in satisfaction

---

[1] Wasserman reserves the right to supplement its claim.

[2] A true and correct copy of the First Amended Complaint filed by Wasserman in the Wasserman Action (the "First Amended Complaint") is annexed hereto.

[3] On or about January 25, 2002, Wasserman, on the one hand, and Lydia Harris, New Image Entertainment, Inc., and Lifestyle Records, Inc. (the "Harris Parties"), on the other hand, entered into a written Contingency Fee Agreement (the "Contingency Fee Agreement") pursuant to which Wasserman agreed to represent the Harris Parties in connection with liability claims against, among others, the Debtors. Pursuant to the Contingency Fee Agreement, Wasserman is entitled to a forty-percent (40%) contingency fee on any recovery, as well as reimbursement of all reasonable out of pocket litigation costs and expenses.

1

ATTACHMENT TO PROOF OF CLAIM FILED BY WASSERMAN, COMDEN & CASSELMAN L.L.P.

of the Harris Judgment (40% of $107 million, plus interest accruing at the rate of $29,315.00 day), plus costs of $213,890.27.[4]    Despite the Contingency Fee Agreement, Lydia and the Debtors secretly negotiated during the time she was represented by Wasserman and purportedly entered into a settlement agreement pursuant to which the Harris Judgment would be resolved. The Debtors and the Harris Parties are currently litigating over this purported settlement. However, it is undisputed that, despite signature of the Contingency Fee Agreement by Lydia and receipt of the Attorney Lien Notice by Lydia and the Debtors, the Debtors and/or related entities paid to Lydia the sum of at least $1 million[5] without acknowledging Wasserman's lien rights, or reserving any of the funds paid to Lydia to satisfy Wasserman's lien. Lydia refused to voluntarily pay any portion of the $1 million to Wasserman, or even to reimburse Wasserman's actual costs, which were in excess of $200,000. The Debtors, who had full knowledge of Wasserman's Attorney Lien Notice, proceeded to pay Lydia the $1 million purported settlement payment. As set forth more fully in the First Amended Complaint filed in the Wasserman Action, Wasserman has alleged the following causes of action against the Harris Parties and the Debtors: (1) breach of contract of the Contingency Fee Agreement; (2) quantum meruit based on the actual legal services provided by Wasserman to the Harris Parties; (3) for money had and received; (4) an accounting of any and all gross recovery, payments or consideration of any kind paid or transferred in satisfaction, whole or part, of the Harris Judgment; (5) interference with contract based on, among others, the Debtors' conspiracy to deprive Wasserman of its lien rights; (6) an equitable assignment of 40% of the Harris Judgment and/or 40% of any settlement or other recoveries obtained by or on behalf of the Harris Parties; and (7) declaratory relief that Wasserman may recover judgment against the Debtors and their related entities and alter egos in the sum of 40% of the Harris Judgment, plus interest at the rate of $29,315 per day from March 9, 2005.

---

[4] A true and correct copy of the Attorney Lien Notice is attached as Exhibit "C" to the First Amended Complaint.
[5] Since the payment of the $1 million, Lydia and the Debtors have disagreed on whether that payment effectuated a full or partial payment under the purported settlement agreement, or whether a meeting of the minds occurred at all, so as to create a binding settlement agreement.

2

ATTACHMENT TO PROOF OF CLAIM FILED BY WASSERMAN, COMDEN & CASSELMAN L.L.P.

00085

1  Peter Q. Ezzell (Bar No. 53497)
   Nancy E. Lucas (Bar No. 126854)
2  HAIGHT BROWN & BONESTEEL LLP
   6080 Center Drive, Suite 800
3  Los Angeles, CA 90045-1574
   Telephone:  310.215.7100
4  Facsimile: 310.215.7300

5  David B. Casselman (Bar No. 91657)
   Leonard J. Comden (Bar No. 56775)
6  Howard S. Blum (Bar No. 60603)
   WASSERMAN, COMDEN & CASSELMAN, L.L.P.
7  5567 Reseda Boulevard, Suite 330
   Post Office box 7033
8  Tarzana, CA  91357-7033
   Telephone:   (818) 705-6800 * (323) 872-0995
9  Facsimile:   (818) 345-0162

10 Associated Attorneys for Plaintiff
   WASSERMAN, COMDEN, CASSELMAN & PEARSON, L.L.P.

11

**CONFORMED COPY**
OF ORIGINAL FILED
Los Angeles Superior Court

APR 0 4 2006

John A. Clarke, Executive Officer/Clerk

By _____,Deputy
A E LA FLEUR-CLAYTON

12              SUPERIOR COURT OF THE STATE OF CALIFORNIA

13             FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT

14

15 WASSERMAN, COMDEN,                    ) Case No. BC 340196
   CASSELMAN & PEARSON, L.L.P.,          )
16                                       ) [Assigned to Judge Ronald M. Sohigian,
                        Plaintiff,       ) Dept. 41]
17         v.                            )
                                         ) FIRST AMENDED COMPLAINT
18 LYDIA HARRIS; LIFESTYLE              )
   RECORDS, INC., NEW IMAGE MEDIA        )
19 CORP.; MARION H. KNIGHT, aka SUGE     )
   KNIGHT; DEATH ROW RECORDS,            )
20 INC.; DEATH ROW RECORDS, L.L.C.;      ) Complaint Filed:   September 21, 2005
   THA ROW, INC.; DERMOT GIVENS;         ) Trial Date:         April 17, 2006
21 KEVIN GILLIAM aka BATTLECAT;          )
   AND DOES 1 through 100, Inclusive,    )
22                                       )
                        Defendants.      )
23 _____ )

24                          <u>GENERAL ALLEGATIONS</u>

25      1.    Plaintiff, WASSERMAN, COMDEN, CASSELMAN & PEARSON, L.L.P.

26 (hereinafter "WCCP") is a limited liability partnership organized and existing under the

27 laws of the State of California with its principal place of business in Tarzana, California.

28

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Los Angeles

WC11-0000007
3123884.1

1

FIRST AMENDED COMPLAINT

00086

1  Peter Q. Ezzell (Bar No. 53497)
   Nancy E. Lucas (Bar No. 126854)
2  HAIGHT BROWN & BONESTEEL LLP
   6080 Center Drive, Suite 800
3  Los Angeles, CA 90045-1574
   Telephone:  310.215.7100
4  Facsimile:  310.215.7300

5  David B. Casselman (Bar No. 91657)
   Leonard J. Comden (Bar No. 56775)
6  Howard S. Blum (Bar No. 60603)
   WASSERMAN, COMDEN & CASSELMAN, L.L.P.
7  5567 Reseda Boulevard, Suite 330
   Post Office box 7033
8  Tarzana, CA  91357-7033
   Telephone:   (818) 705-6800 * (323) 872-0995
9  Facsimile:   (818) 345-0162

10  Associated Attorneys for Plaintiff
    WASSERMAN, COMDEN, CASSELMAN & PEARSON, L.L.P.

11

12          SUPERIOR COURT OF THE STATE OF CALIFORNIA

13          FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT

14

15  WASSERMAN, COMDEN,                    )  Case No. BC 340196
    CASSELMAN & PEARSON, L.L.P.,          )
16                                        )  [Assigned to Judge Ronald M. Sohigian,
                 Plaintiff,               )  Dept. 41]
17       v.                               )
                                          )  FIRST AMENDED COMPLAINT
18  LYDIA HARRIS; LIFESTYLE              )
    RECORDS, INC., NEW IMAGE MEDIA       )
19  CORP.; MARION H. KNIGHT, aka SUGE    )
    KNIGHT; DEATH ROW RECORDS,           )
20  INC.; DEATH ROW RECORDS, L.L.C.;     )  Complaint Filed:  September 21, 2005
    THA ROW, INC.; DERMOT GIVENS;        )  Trial Date:       April 17, 2006
21  KEVIN GILLIAM aka BATTLECAT;         )
    AND DOES 1 through 100, Inclusive,   )
22                                        )
                 Defendants.              )
23                                        )

24              GENERAL ALLEGATIONS

25       1.    Plaintiff, WASSERMAN, COMDEN, CASSELMAN & PEARSON, L.L.P.

26  (hereinafter "WCCP") is a limited liability partnership organized and existing under the

27  laws of the State of California with its principal place of business in Tarzana, California.

28

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.     WC11-0000007                          1
Los Angeles          3123884.1              FIRST AMENDED COMPLAINT

4/13/06  00087

1   The law firm of Wasserman, Comden, Casselman & Pearson, L.L.P., changed its name

2   effective January 1, 2006. It is now known as Wasserman, Comden & Casselman, L.L.P.

3       2.    Defendants LYDIA HARRIS (hereinafter "HARRIS"), MARION H.

4   KNIGHT, aka SUGE KNIGHT (hereinafter "KNIGHT"), DERMOT GIVENS (hereinafter

5   "GIVENS") and KEVIN GILLIAM aka BATTLECAT (hereinafter "GILLIAM") are

6   individuals who, at all material times resided in Los Angeles County, California.

7       3.    Plaintiff is informed and believes and thereon alleges that the remaining

8   defendants, LIFESTYLE RECORDS, INC., NEW IMAGE MEDIA CORP., DEATH

9   ROW RECORDS, INC., DEATH ROW RECORDS, L.L.C., and THA ROW, INC. are

10   business entities who were or are authorized to transact business in the State of California.

11       4.    Plaintiff is ignorant of the true names and capacities of defendants sued

12   herein as Does 1 through 100 and therefore sues these defendants by such fictitious names.

13   Plaintiff will amend this pleading to allege the true names and capacities of such Does

14   when ascertained. The conduct of Does 1 through 100 proximately caused damages to

15   plaintiff as alleged herein. DOES 1 through 25 are the alter egos of LYDIA HARRIS,

16   LIFESTYLE RECORDS, INC. and NEW IMAGE MEDIA CORP. (hereinafter "The

17   HARRIS Defendants"). DOES 26 through 50 are the alter egos of MARION H. KNIGHT,

18   aka SUGE KNIGHT and DEATH ROW RECORDS, INC. (hereinafter "The KNIGHT

19   Defendants"). DOES 51 through 75 are the alter egos of GILLIAM. Does 76-100 are the

20   persons and entities that knowingly interfered with plaintiffs contractual lien rights.

21       5.    On or about January 25, 2002, plaintiff and defendant HARRIS entered into

22   a written Contingency Fee Agreement in Los Angeles County, California whereby plaintiff

23   agreed to represent HARRIS in connection with liability claims against MARION H.

24   KNIGHT, aka SUGE KNIGHT and his related entity DEATH ROW RECORDS, INC, and

25   in connection with liability claims against GILLIAM. A copy of that written retainer

26   agreement is attached as Exhibit F, and is incorporated herein by this reference.

27       6.    Some of the material terms of the Contingency Fee Agreement include that

28   WCCP was authorized to incur reasonable costs and expenses in performing legal services

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Los Angeles

WCI1-0000067
3123884.1

2

FIRST AMENDED COMPLAINT

00088

1   and that "[HARRIS] agrees to reimburse [WCCP] for such costs and expenses in addition

2   to the contingency fee..."

3        7.    HARRIS discussed and agreed to a forty percent (40%) contingency fee and

4   acknowledged that the fee arrangement was fair and reasonable.

5        8.    HARRIS specifically negotiated a contingency fee arrangement and agreed

6   to allow a lien upon any recovery for payment of attorneys' fees, "to secure payment to

7   Attorney of all sums due under this Agreement for services rendered or costs advanced,

8   Client hereby grants Attorney a lien on Client's claim and any cause of action or lawsuit

9   filed thereon, and to any recovery Client may obtain, whether by settlement, judgment or

10   otherwise."

11        9.    Plaintiff has performed all conditions, covenants and promises of the

12   Agreement, and represented HARRIS vigorously and competently in her litigation against

13   the KNIGHT Defendants. On February 26, 2002, plaintiff prepared and filed a complaint

14   for damages on behalf of The HARRIS Defendants, Los Angeles Superior Court Case

15   Number BC268857.

16       10.    Plaintiff prosecuted the HARRIS lawsuit from February 26, 2002, through

17   March 9, 2005 when the Court entered a money judgment in favor of HARRIS and her

18   related business entity NEW IMAGE MEDIA CORP. and against The KNIGHT

19   Defendants in the sum of $107 million ($45 million for economic damages, $2 million for

20   non-economic damages and $60 million for punitive damages). A copy of the Judgment is

21   attached hereto and incorporated herein by reference as Exhibit A. In addition, on March

22   26, 2004, the Court entered judgment in favor of HARRIS and her related business entity

23   NEW IMAGE MEDIA CORP. and against GILLIAM in the sum of $760,000 plus interest

24   (attached as Exhibit C).

25       11.    On or about May 19, 2005, HARRIS discharged plaintiff as her attorney. On

26   or about May 20, 2005, HARRIS filed a Substitution of Attorney with the Court indicating

27   that she was representing herself.

28

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Los Angeles

WCI1-0000007
3123884.1

3

FIRST AMENDED COMPLAINT

00089

1      12.   On May 19, 2005, plaintiff filed and served on defendants a Notice of

2   Attorney Lien equal to forty percent (40%) of any and all gross recovery, payments or

3   consideration of any kind or nature paid or transferred in satisfaction, in whole or in part,

4   of the Judgment against KNIGHT, et al., entered in LASC Case No. BC268857 (40% of

5   $107 million, plus interest accruing at the rate of $29,315.00 per day), plus costs expended

6   in the sum of $213,890.27. (Exhibit C.)  On September 9, 2005, plaintiff filed and served

7   on GILLIAM a Notice of Lien in the sum of $304,000.00 plus interest.  (Exhibit D.)

8      13.   On June 17, 2005, HARRIS filed with the Court a "Notice of Settlement"

9   which represents that HARRIS and KNIGHT had agreed to a conditional settlement on

10   "specified terms that are not to be performed within 45 days of the settlement." The Notice

11   states that a Request for Dismissal will be filed no later than May 27, 2005 (40 days

12   earlier). By the terms of the "Notice of Settlement," the negotiations and settlement itself

13   occurred before a Substitution of Attorney was filed.  None of the defendants notified

14   plaintiff of any such negotiations or settlement and the defendants have, affirmatively

15   concealed the fact of such negotiations and the settlement terms.

16      14.   It was reported on August 29, 2005 in the Los Angeles Times that HARRIS

17   has received the sum of $1.2 million as a result of the lawsuit.  A "settlement" in the sum

18   of $1 million is reported by counsel for KNIGHT in this action.  Plaintiff has received no

19   compensation for professional services rendered.

20      15.   Plaintiff has requested and defendants have refused to disclose the material

21   terms of the settlement or make any payment to the plaintiff.  Plaintiff is informed and

22   believes and thereon alleges that HARRIS and The KNIGHT Defendants conspired to

23   conceal the true terms of any settlement agreement (if any), and the true sum(s) of any

24   payment(s) from plaintiff, and that the defendants willfully and intentionally executed one

25   or more settlement agreements, all in disregard of plaintiff's valid lien rights.  Plaintiff is

26   informed and believes and thereon alleges that HARRIS and The KNIGHT Defendants

27   deliberately chose not to file a Partial Satisfaction of Judgment in order to conceal the

28   material terms of the settlement from plaintiff.

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Los Angeles

WC11-0000007
3123884.1

4

FIRST AMENDED COMPLAINT

00090

1      16.    Plaintiff is informed, and thereon alleges, that HARRIS negotiated a secret

2  settlement agreement with the KNIGHT defendants that resulted in HARRIS being paid at

3  least $1 million by the KNIGHT defendants. (HARRIS and the KNIGHT Defendants have

4  since disagreed on whether that payment effectuated a full or partial payment under their

5  settlement agreement, or whether a meeting of the minds occurred at all, so as to create a

6  binding settlement agreement. Both parties have admitted that the $1 million was

7  transferred from the KNIGHT Defendants to HARRIS to satisfy, in full or in part, the

8  Judgment.) HARRIS claims, or has claimed, that she, through other counsel, Dermot

9  Damien Givens, negotiated a purported settlement with the KNIGHT Defendants that

10  would result in the KNIGHT Defendants paying her consideration including, among other

11  things, the greater of $5.8 million paid to her annually on a specified date over five years,

12  or the income generated from certain specified songs or intellectual properties owned by

13  the KNIGHT Defendants.

14      17.    On further information and belief, plaintiff alleges that HARRIS has

15  received other sums and assets from the KNIGHT Defendants, in partial satisfaction of the

16  Judgment, the value of which is subject to proof at trial but which is believed to total not

17  less than $2 million. Accordingly, plaintiff claims damage against HARRIS in the sum of

18  40 percent of any gross recoveries she obtained, or may obtain in the future, from all or

19  any of the KNIGHT Defendants.

20      18.    As a result of this, plaintiff has been damaged by HARRIS' failure and

21  refusal to pay for all or part the attorneys' fees called for in the Retainer Agreement,

22  including but not limited to payment of forty percent (40%) of any and all gross recovery,

23  payments or consideration of any kind paid to HARRIS to date. Other defendants have

24  similarly caused damage by failing and refusing to acknowledge plaintiff's lien rights, or

25  to actually pay or reserve any of the funds paid to HARRIS to satisfy the lien for attorneys'

26  services properly put into place by plaintiff.

27

28

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Los Angeles

WCI1-0000007
3123884.1

5

**FIRST AMENDED COMPLAINT**

00091

## FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT

### (Against Lydia Harris, Lifestyle Records, Inc., New Image Media Corp. and
### Does 1 through 25, Inclusive)

19.    Plaintiff incorporates by this reference all allegations and facts alleged in paragraphs 1 through 18, above.

20.    On or about January 25, 2002, plaintiff and defendant HARRIS entered into a written Contingency Fee Agreement in Los Angeles County, California whereby plaintiff agreed to represent HARRIS in connection with liability claims against MARION H. KNIGHT, aka SUGE KNIGHT and his related entity DEATH ROW RECORDS, INC, and in connection with liability claims against GILLIAM. A copy of that written retainer agreement, attached as Exhibit F, is incorporated herein in full by this reference.

21.    Some of the material terms of the Contingency Fee Agreement include that WCCP is authorized to incur reasonable costs and expenses in performing legal services and that "[HARRIS] agrees to reimburse [WCCP] for such costs and expenses in addition to the contingency fee. . ." The contingency fee negotiated by HARRIS was for forty percent (40%); HARRIS acknowledged that the fee arrangement is fair and reasonable.

22.    The Contingency Fee Agreement negotiated by HARRIS further specifically included language granting plaintiff a lien upon any recovery, for payment of plaintiff's attorneys' fees, "to secure payment to Attorney of all sums due under this Agreement for services rendered or costs advanced, Client hereby grants Attorney a lien on Client's claim and any cause of action or lawsuit filed thereon, and to any recovery Client may obtain, whether by settlement, judgment or otherwise."

23.    Plaintiff has performed all conditions, covenants and promises of the Agreement. On February 26, 2002, plaintiff prepared and filed a complaint for damages on behalf of The HARRIS Defendants, Los Angeles Superior Court Case Number BC268857.

24.    Plaintiff prosecuted the HARRIS lawsuit from February 26, 2002 through March 9, 2005 when the Court entered a money judgment in favor of HARRIS and her

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Los Angeles

WC11-0000007
3123884.1

6

FIRST AMENDED COMPLAINT

00092

1   related business entity NEW IMAGE MEDIA CORP. and against The KNIGHT

2   Defendants in the sum of $107 million ($45 million for economic damages, $2 million for

3   non-economic damages and $60 million for punitive damages). A copy of the Judgment is

4   attached hereto and incorporated herein by reference as Exhibit A. In addition, on March

5   26, 2004, the Court entered judgment in favor of HARRIS and her related business entity

6   NEW IMAGE MEDIA CORP. and against GILLIAM in the sum of $760,000 plus interest.

7   (Exhibit B.)

8        25.   On or about May 19, 2005, HARRIS discharged plaintiff as her attorney. On

9   or about May 20, 2005, HARRIS filed a Substitution of Attorney with the Court indicating

10   that she was representing herself.

11        26.   On May 19, 2005, plaintiff filed and served on defendants a Notice of

12   Attorney Lien equal to forty percent (40%) of any and all gross recovery, payments or

13   consideration of any kind or nature paid or transferred in satisfaction, in whole or in part,

14   of the Judgment against KNIGHT, et al., entered in LASC Case No. BC268857 (40% of

15   $107 million plus interest accruing at the rate of $29,315.00 per day) plus costs expended

16   in the sum of $213,890.27. (Exhibit C.) On September 9, 2005, plaintiff filed and served

17   on GILLIAM a Notice of Lien in the sum of $304,000.00 plus interest. (Exhibit D.)

18        27.   On June 17, 2005, HARRIS filed with the Court a "Notice of Settlement"

19   which represents that HARRIS and KNIGHT had agreed to a conditional settlement on

20   "specified terms that are not to be performed within 45 days of the settlement." The

21   Notice states that a Request for Dismissal will be filed no later than May 27, 2005 (40 days

22   earlier). By the terms of the "Notice of Settlement," the negotiations and settlement itself

23   occurred before a Substitution of Attorney was filed. None of the defendants notified

24   plaintiff of any such negotiations or settlement and the defendants have, affirmatively

25   concealed the fact of such negotiations and the settlement terms.

26        28.   The HARRIS Defendants have breached the material terms of the

27   Contingency Fee Agreement by, among other things, failing and refusing to pay plaintiff

28   for professional legal services rendered on her behalf.

LAW OFFICES
RAIGHT, BROWN &
BONESTEEL, L.L.P.
Los Angeles

WCI1-0000007
3123884.1

7

FIRST AMENDED COMPLAINT

00093

1     29.   As a result of HARRIS' breach of contract, plaintiff has been damaged by

2 HARRIS' failure and refusal to pay for all or part the attorneys' fees called for in the

3 Retainer Agreement, including but not limited to payment of forty percent (40%) of any

4 and all gross recovery, payments or consideration of any kind paid to HARRIS to date.

5     30.   Plaintiff is informed, and thereon alleges, that its damages include, but are

6 not limited to, HARRIS's failure and refusal to pay anything at all to plaintiff out of the $1

7 million secret purported settlement paid by or through the KNIGHT Defendants to

8 HARRIS in or about June 2005. Refusal to pay any sum at all to the plaintiff out of that $1

9 million violates plaintiff's lien rights, and is a breach of HARRIS' Retainer Fee

10 Agreement with plaintiff. No other payments have been made by HARRIS to plaintiff

11 from any other payments or transfers made to HARRIS by or on behalf of the KNIGHT

12 Defendants (if any), in further violation of plaintiff's lien rights and in further breach of

13 HARRIS' Retainer Fee Agreement with plaintiff.

14                    SECOND CAUSE OF ACTION

15                    QUANTUM MERUIT

16   (Plaintiff vs. The HARRIS Defendants and DOES 1 Through 25, Inclusive)

17     31.   Plaintiff incorporates herein by reference paragraphs 1 through 18 of this

18 First Amended Complaint as though fully set forth herein.

19     32.   Within the past two years, plaintiff rendered legal services to The HARRIS

20 Defendants and incurred costs in connection with those legal services at the special request

21 of the HARRIS Defendants. The HARRIS Defendants promised to pay plaintiff for those

22 legal services and costs. Neither the HARRIS Defendants nor plaintiff reasonably

23 expected or believed that plaintiff would provide legal services, and prepay legal costs, on

24 behalf of the HARRIS Defendants for no compensation at all.

25     33.   Upon plaintiff's information and belief, the reasonable value of the services

26 and unpaid costs incurred by plaintiff for the benefit of The HARRIS Defendants may

27 exceed $10 million.

28

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Los Angeles

WC11-0000007
3123884.1

8

FIRST AMENDED COMPLAINT

00094

1   Plaintiff has repeatedly demanded from the HARRIS Defendants information

2   concerning any purported settlement with The KNIGHT Defendants, or the receipt

3   of payments from or on behalf of the KNIGHT Defendants. The HARRIS

4   Defendants have refused and continue to refuse to provide completely and accurately

5   any such information, or pay any sums for the reasonable value of professional

6   services rendered on behalf of HARRIS.THIRD CAUSE OF ACTION

FOR MONEY HAD AND RECEIVED

8   (Plaintiff vs. The HARRIS Defendants and DOES 1 Through 25, Inclusive)

9        35.    Plaintiff incorporates herein by reference paragraphs 1 through 18 of this

10   First Amended Complaint as though fully set forth herein.

11        36.    Plaintiff is informed and believes and thereon alleges that as a proximate

12   result of professional legal services performed by plaintiff on behalf of The HARRIS

13   Defendants, The HARRIS Defendants received payments or other consideration in full or

14   partial satisfaction of the $107 million judgment against The KNIGHT Defendants.

15        37.    In equity and in good conscience, forty percent (40%) of any recovery to

16   HARRIS should be paid to plaintiff.

17        38.    The HARRIS Defendants have refused to pay anything to plaintiff for the

18   attorneys' fees it incurred, in good faith, on her behalf, and in reliance on HARRIS'

19   written promise to pay plaintiff forty (40) percent of any recovery she obtained against the

20   KNIGHT Defendants. One or more of The HARRIS Defendants received a sum of money

21   from or on behalf of the KNIGHT Defendants, in full or partial satisfaction of the

22   Judgment; upon information and belief, plaintiff contends that this sum was at least $1

23   million. HARRIS, the KNIGHT Defendants, and Dermot Damien Givens concede that at

24   least $1 million was paid by or on behalf of the KNIGHT Defendants to HARRIS, and that

25   no notice of that settlement or payment was given to plaintiff. No fees have been paid to

26   plaintiff from any other transfer of money or assets to or on behalf of the HARRIS

27   Defendants by or on behalf of the KNIGHT Defendants, with the actual knowledge and

28   assistance of their attorney, Dermot Damien Givens, in full or partial satisfaction of the

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Los Angeles

WC11-0000007
3123884.1

9

FIRST AMENDED COMPLAINT

00095

1  Judgment. The HARRIS Defendants have instead concealed the terms of any purported

2  settlement with the KNIGHT Defendants from plaintiff, or has hidden the fact of payments

3  made to or on behalf of the HARRIS Defendants from or on behalf of the KNIGHT

4  Defendants.

5

6                    **FOURTH CAUSE OF ACTION**

7                      **FOR AN ACCOUNTING**

8                   **(Plaintiff vs. All Defendants)**

9       39.    Plaintiff incorporates herein by reference paragraphs 1 through 18, and 36

10  through 38 of this First Amended Complaint as though fully set forth herein.

11      40.    Plaintiff has demanded an accounting of any and all gross recovery,

12  payments or consideration of any kind or nature paid or transferred in satisfaction, in

13  whole or in part, of the Judgment entered in LASC Case No. BC268857. The defendants,

14  and each of them, have refused to provide any accounting of the consideration agreed to or

15  paid. Plaintiff therefore now requests that this court order a full and complete accounting

16  of all sums or assets received by or on behalf of any of The HARRIS Defendants, or any of

17  their agents or persons acting on their behalf, from or on behalf of any of the KNIGHT

18  Defendants, or from any other entity or source, in partial or full satisfaction of the

19  Judgment.

20

21                    **FIFTH CAUSE OF ACTION**

22                   **INTERFERENCE WITH CONTRACT**

23    **(Plaintiff vs. The KNIGHT Defendants, THA ROW RECORDS, LLC,**

24    **THA ROW, INC., DERMOT GIVENS and DOES 26 Through 100, Inclusive)**

25      41.    Plaintiff incorporates herein by reference paragraphs 1 through 18 of this

26  First Amended Complaint as though fully set forth herein.

27      42.    Defendants MARION H. KNIGHT, aka SUGE KNIGHT, DEATH ROW

28  RECORDS, INC., DEATH ROW RECORDS, LLC, THA ROW, INC., DERMOT

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Los Angeles

WC11-0000007
3123884.1

                              10
                  FIRST AMENDED COMPLAINT

00096

1  GIVENS, LYDIA HARRIS, LIFESTYLE RECORDS, INC., NEW IMAGE MEDIA

2  CORP. and DOES 26 through 100 were served with notice of plaintiffs lien on May 19,

3  2005. Defendant GILLIAM and DOES 70 through 80 were served with Notice of Lien on

4  the GILLIAM Judgment on September 9, 2005. The defendants, and each of them, by and

5  through their authorized representatives, had actual knowledge of plaintiffs valid contract

6  and lien.

7      43.    Plaintiff is informed and believes and thereon alleges that the judgment

8  debtors (The KNIGHT Defendants) and their attorney, DERMOT GIVENS, conspired

9  with HARRIS to deprive plaintiff of its lien rights. Plaintiff is informed and believes and

10  thereon alleges that The KNIGHT Defendants, DERMOT GIVENS and Does 26 through

11  100 caused payments or other consideration to be made to HARRIS pursuant to the

12  judgment without notice to plaintiff and without satisfying any portion of plaintiffs valid

13  lien. The Knight defendants and GIVENS made it more difficult, expensive or

14  burdensome to collect fees and costs which were earned. The Knight defendants and

15  GIVENS either intended to prevent Harris from performing her contractual obligations to

16  plaintiff or knew that collection of fees and costs would be more expensive or burdensome

17  as a result of their conduct.

18      44.    The KNIGHT Defendants, GIVENS and Does 26 through 100 intentionally

19  interfered with plaintiffs valid contractual and/or equitable lien in an amount equal to the

20  payment or other consideration which has passed or will pass between KNIGHT and

21  GILLIAM on the one hand and HARRIS on the other hand.

22      45.    Plaintiff is informed and believes and thereon alleges that The KNIGHT

23  Defendants have provided payments or other consideration to HARRIS with a value in

24  excess of $2 million. Accordingly, plaintiff alleges that, to date, said defendants'

25  intentional interference with plaintiff's contractual lien rights has caused damage to

26  plaintiff in a sum exceeding $1,013,890.27, or forty (40) percent of any actual payments

27  made by or on behalf of the KNIGHT Defendants to the HARRIS Defendants, plus

28  interest.

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Los Angeles

WC11-0000007
3125884.1

11
FIRST AMENDED COMPLAINT

00097

<u>SIXTH CAUSE OF ACTION</u>

<u>FOR ORDER GRANTING EQUITABLE ASSIGNMENT OF JUDGMENTS</u>

<u>(Plaintiff vs. The KNIGHT Defendants, GILLIAM, Lydia Harris, and</u>

<u>DOES 1 Through 25</u>

<u>and DOES 50 through 75, Inclusive)</u>

46.   Plaintiff incorporates herein by reference paragraphs 1 through 18 and 36 through 38 of this First Amended Complaint as though fully set forth herein.

47.   HARRIS discharged plaintiff without cause after entry of judgment in the sum of $107 million against The KNIGHT Defendants.

48.   Plaintiff is informed and believes and thereon alleges that HARRIS discharged plaintiff for the primary purpose of concealing payments and violating plaintiffs contractual right to collect a contingency fee based upon any recovery in the underlying lawsuit, as well as in violation of its rights as set forth in the May 19, 2005 Notice of Lien, as well as violating plaintiffs rights to a contingent fee from any recovery against GILLIAM.

49.   Plaintiffs contract with HARRIS created a lien upon the recovery whether by settlement or judgment.  By reason of the professional services rendered, plaintiff is an equitable assignee of the judgments or settlements to the extent of fees and costs which are due plaintiff for services. [*Siciliano v. Fireman's Fund Ins. Co.* (1976) 62 Cal.App.3d 745.]

50.   Plaintiff is informed and believes and thereon alleges that it is entitled to an equitable assignment of forty (40) percent of the judgments against The KNIGHT Defendants and GILLIAM, and/or forty (40) percent of any settlement or other recoveries obtained by or on behalf of the HARRIS Defendants from or on behalf of the KNIGHT Defendants.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Los Angeles

WC11-0000007
3123884.1

12
FIRST AMENDED COMPLAINT

00098

## SEVENTH CAUSE OF ACTION FOR DECLARATORY RELIEF

### (Plaintiff vs. All Defendants)

51.     Plaintiff incorporates herein by reference paragraphs 1 through 18 and 36 through 38 of this First Amended Complaint as though fully set forth herein.

52.     Plaintiff alleges that it has a valid lien on any and all recovery, payments, or consideration of any kind or nature paid in satisfaction of the judgment against The KNIGHT Defendants for forty percent (40%) of $107 million plus interest at the rate of $29,315.00 per day plus costs expended in the sum of $213,890.27.  Plaintiff alleges that it has a valid lien on any and all recovery, payments, or consideration of any kind or nature paid in satisfaction of the judgment against GILLIAM for forty percent (40%) of $760,000.00 plus interest at the rate of $208.22 per day plus costs as aforementioned. Plaintiff is informed and believes and thereon alleges that defendants contend that they had or have the right to disregard plaintiffs lien and that KNIGHT and/or GILLIAM can make payments in partial or total satisfaction of the judgment without paying anything to plaintiff.  Plaintiff contends to the contrary.

53.     Plaintiff contends that any settlement agreement between The KNIGHT Defendants and HARRIS and/or any settlement between GILLIAM and HARRIS is void to the extent that it purports to release, extinguish, impair or modify plaintiffs vested rights to recover forty percent (40%) of the judgment plus costs as reflected in the attorney liens served on May 19, 2005 and September 9, 2005.

54.     Plaintiff is informed and believes and thereon alleges that defendants contend that they have or had the right to disregard, impair, release, diminish or extinguish the lien rights of plaintiff.

55.     Plaintiff contends that any agreement between the defendants that was made without the consent of plaintiff is a nullity as to plaintiff because any such agreement was a fraud upon plaintiff, was made with unclean hands and without any consideration to plaintiffs vested interests.  Plaintiff is informed and believes and thereon alleges that defendants contend to the contrary.

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Los Angeles

WC11-0000007
3123884.1

13

FIRST AMENDED COMPLAINT

00099

56.   Plaintiff requests a judicial declaration that plaintiff may recover judgment against The KNIGHT Defendants and its related entities and alter egos in the sum of forty percent (40%) of $107 million plus interest at the rate of $27,315.00 per day from March 9, 2005. Plaintiff also requests a judicial declaration that plaintiff may recover judgment against GILLIAM in the sum of forty percent (40%) of $760,000 plus interest at the rate of $208.22 per day from February 5, 2004.

WHEREFORE, plaintiff prays for judgment as follows:

1.   For special damages in the sum of $42,800,000.00 plus interest jointly and severally against The HARRIS Defendants, The KNIGHT Defendants and DERMOT GIVENS, or according to proof;

2.   For special damages in the sum of $304,000.00 plus interest from GILLIAM, or according to proof, and

3.   For a judgment assigning to plaintiff forty percent (40%) of the March 9, 2005 judgment against MARION H. KNIGHT and DEATH ROW RECORDS, INC., and/or;

4.   For a judgment assigning to plaintiff forty percent (40%) of the March 26, 2004 judgment against GILLIAM.  Further, plaintiff requests:

5.   A judicial declaration that any agreement by and between the defendants which purports to affect the rights of the plaintiff is void;

6.   The imposition of a constructive trust upon any proceeds paid to The HARRIS Defendants in satisfaction of the judgments;

7.   An accounting, requiring the defendants to disclose to plaintiff the exact arms of any and all settlement agreements reached between the defendants and any consideration paid in satisfaction of the judgment;

8.   A temporary restraining order, preliminary injunction and/or permanent injunction freezing and/or attaching the assets of the defendants up to plaintiffs interest in the underlying judgments;

9.   Its costs of suit;

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Los Angeles

WC11-0000097
3123884.1

14
FIRST AMENDED COMPLAINT

00100



1      10.    Prejudgment interest, as provided by law;  and

2      11.    Such further relief which is just and proper.

3  Dated:  April 3, 2006           HAIGHT BROWN & BONESTEEL LLP;
                         WASSERMAN, COMDEN &
4                         CASSELMAN, L.L.P.

5

6                  By:

7                    Peter O. Ezzell
                    Nancy E. Lucas
8                    Stephen M. Caine;
                    David B. Casselman
9                    Leonard J. Comden
                    Attorneys for Plaintiff WASSERMAN,
10                  COMDEN, CASSELMAN &
                    PEARSON, L.L.P.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Los Angeles

WC11-0000007
3123384.1

15

FIRST AMENDED COMPLAINT

00101

## LIST OF EXHIBITS

A.  Judgment in favor of HARRIS and NEW IMAGE MEDIA CORP. and against MARION H. KNIGHT, aka SUGE KNIGHT and DEATH ROW RECORDS, INC.

B.  March 26, 2004, Court judgment in favor of HARRIS and her related business entity NEW IMAGE MEDIA CORP. and against GILLIAM in the sum of $760,000 plus interest.

C.  May 19, 2005 Notice of Attorney Lien equal to forty percent (40%) of any and all gross recovery, payments or consideration of any kind or nature paid or transferred in satisfaction, in whole or in part, of the Judgment against KNIGHT, et al. entered in LASC Case No. BC268857 (40% of $107 million plus interest accruing at the rate of $29,315.00 per day) plus costs expended in the sum of $213,890.27.

D.  September 9, 2005 Notice of Attorney Lien filed September 9, 2005 in the sum of $304,000.00, plus interest.

E.  Notice of Settlement, filed June 17, 2005.

F.  Contingency Fee Agreement.

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Los Angeles

WC11-0000007
3123884.1

16
FIRST AMENDED COMPLAINT

00102

1    **PROOF OF SERVICE BY MAIL**

2

3   STATE OF CALIFORNIA        )
                               )  ss.:
4   COUNTY OF LOS ANGELES      )

5   *WASSERMAN v. LYDIA HARRIS; LIFESTYLE RECORDS*
    *BC 340196*
6
         I am employed in the County of Los Angeles, State of California. I am over the age
7   of 18 and not a party to the within action. My business address is 6080 Center Drive, Suite
    800, Los Angeles, CA 90045-1574.
8
         On April 3, 2006, I served on interested parties in said action the within:
9
         FIRST AMENDED COMPLAINT
10
    ☒    (MAIL) by placing a true copy thereof in sealed envelope(s) addressed as stated on
11       the attached service list.

12

13       I am readily familiar with this firm's practice of collection and processing
    correspondence for mailing. Under that practice it would be deposited with the U.S. postal
14  service on that same day with postage thereon fully prepaid at Los Angeles, California, in
    the ordinary course of business. I am aware that on motion of party served, service is
15  presumed invalid if postal cancellation date or postage meter date is more than 1 day after
    date of deposit for mailing in affidavit.
16
         Executed on April 3, 2006, at Los Angeles, California.
17
         I declare under penalty of perjury under the laws of the State of California that the
18  foregoing is true and correct.

19
         _____Theresa Welsch_____        _____
20           (Type or print name)                      (Signature)

21

22

23

24

25

26

27

28

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Los Angeles

WC11-0000007
3123384.1

17

FIRST AMENDED COMPLAINT

00103



MAILING LIST
WASSERMAN v. LYDIA HARRIS; LIFESTYLE RECORDS
BC 340196

| | |
|---|---|
| David B. Casselman<br>Wasserman Comden, Casselman & Pearson<br>5567 Reseda Blvd., #330<br>Tarzana, CA 91357<br><br>Tel:   818-705-6800<br>Fax:   818-705-8634<br>hblum@wcclaw.com | Gary S. Soter<br>Pearson, Soter, Warshaw & Penny<br>15165 Ventura Blvd., #400<br>Sherman Oaks, CA 91403<br><br>Tel:   818-788-8300<br>Fax:   818-788-8104<br>gsoter@pswplaw.com |
| Kevin Gilliam<br>1502 South Alpine Dr.<br>West Covina, CA 91791<br><br>[Pro Per] | |

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Los Angeles

WC11-0000007
5123884.1

18

FIRST AMENDED COMPLAINT

00104



## PROOF OF SERVICE BY OVERNIGHT DELIVERY

STATE OF CALIFORNIA          )
                             )  ss.:
COUNTY OF LOS ANGELES        )

*WASSERMAN v. LYDIA HARRIS; LIFESTYLE RECORDS*
*BC 340196*

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 6080 Center Drive, Suite 800, Los Angeles, CA 90045-1574.

On April 3, 2006, I served on interested parties in said action the within:

FIRST AMENDED COMPLAINT

I deposited in a box or other facility regularly maintained by Federal Express, an express service carrier, or delivered to a courier or driver authorized by said express service carrier to receive documents, a true copy of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed as stated on the attached service list, with fees for overnight delivery paid or provided for.

Executed on April 3, 2006, at Los Angeles, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

_____          _____
Theresa Welsch
(Type or print name)                    (Signature)



MAILING LIST
WASSERMAN v. LYDIA HARRIS; LIFESTYLE RECORDS
BC 340196

Rex Julian Beaber
1546 Calmar Court
Los Angeles, CA 90024

Tel:    557-1198
Fax:
Xerxers@aol.com

Debra V. Crawford
P.O. Box 373, SW Mission & 4th, #5
Carmel, CA 93921-0373

Tel:    831-624-2422
Fax:    831-624-2428
ddvcrawford@earthlink.net

Laurence D. Strick
Law Office of Laurence D. Strick
339 N. Sycamore Ave., # 2
Los Angeles, CA 90036

Tel: (323) 964-5231
Fax: (323) 964-8135

larrystrick@yahoo.com

Dermot Damian Givens
433 North Camden Dr., #600
Beverly Hills, CA 90210

Tel:    310-854-8823
Fax:    323-878-0416
dermotg@aol.com

Steven M. Goldberg
Russ, August & Kabat
12424 Wilshire Blvd., 12th Floor
Los Angeles, CA 90025

Tel:    310-979-8274
Fax:    310-826-6991

Larry Nagelberg
Nagelberg & Associates
The Tower, Suite 2150
10940 Wilshire Blvd.
Los Angeles, CA 90024

Tel: (310) 208-3220
Fax: (310) 208-3830

LAW OFFICES
HAIGHT, BROWN &
BONESTEEL, L.L.P.
Los Angeles

WC11-0000007
3123884.1

23
FIRST AMENDED COMPLAINT

03/24/06 4:18 PM
Draft

00106

**EXHIBIT A**

1. DAVID B. CASSELMAN (SBN 81657)
   I.DONALD WEISSMAN (SBN 67980)
2. WASSERMAN, COMDEN, CASSELMAN & PEARSON, L.L.P.
   5567 Reseda Boulevard, Suite 330
3. Post Office Box 7033
   Tarzana, California 91357-7033
4. Telephone:  (818) 705-6800 • (323) 872-0995
   Facsimile:   (818) 705-8147
5.
   Attorneys for Plaintiffs
6. LYDIA HARRIS and NEW IMAGE MEDIA
   CORPORATION
7.

**FILED**
LOS ANGELES SUPERIOR COURT

APR 1 4 2005

JOHN A. CLARKE, CLERK
E. Martinez
BY ELIZABETH MARTINEZ, DEPUTY

8.              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9.                  FOR THE COUNTY OF LOS ANGELES

10.

11. LYDIA HARRIS, LIFESTYLE          )   CASE NO. BC 268857
    RECORDS, INC., AND NEW IMAGE     )
12. MEDIA CORP.,                     )
                                     )   Case Assigned to:
13.            Plaintiffs,            )   Judge Ronald M. Sohigian - Dept. 41
                                     )
14.       v.                         )   [Complaint Filed: February 26, 2002]
                                     )
15. KEVIN GILLIAM AKA BATTLECAT;     )
    MARION H. KNIGHT AKA SUGE        )
16. KNIGHT; DEATH ROW RECORDS;       )   NOTICE OF ENTRY OF JUDGMENT
    THA ROW, INC.; DAVID E. KENNER;  )
17. DAVID E. KENNER PROFESSIONAL     )
    LAW CORPORATION; DAVID E.        )
18. KENNER, A  PROFESSIONAL          )
    CORPORATION; THE DAVID E.        )
    KENNER TRUST;  INTERSCOPE        )
19. RECORDS; JIMMY IOVINE; JOHN T.   )
    MCCLAIN, JR.; A&M RECORDS; ET    )
20. AL.,                             )
                                     )
21.            Defendants.           )
                                     )
22. _____ )

23. TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

24.

25.       PLEASE TAKE NOTICE that pursuant to the Judgment dated March 9, 2005 (a true

26. and correct copy of which is attached hereto as Exhibit A), judgment was entered in the sum of

27. $107,000,000.00, together with interest thereon at the rate of ten (10) percent per year from

28. March 9, 2005, in favor of LYDIA HARRIS and NEW IMAGE MEDIA CORP. and against

---

400305.1                    *NOTICE OF ENTRY OF JUDGMENT*



1  MARION H. KNIGHT, aka SUGE KNIGHT and DEATH ROW RECORDS.

2

3  DATED: April 13, 2005

4                              WASSERMAN, COMDEN, CASSELMAN &
                               PEARSON L.L.P.

5

6                              By: _____
                                   I. DONALD WEISSMAN
7                              Attorneys for Plaintiffs
                               LYDIA HARRIS and NEW IMAGE MEDIA
8                              CORPORATION

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

400205.1                        *NOTICE OF ENTRY OF JUDGMENT*

00109



1    MARION H. KNIGHT, aka SUGE KNIGHT and DEATH ROW RECORDS.

2

3    DATED: April 13, 2005                    WASSERMAN, COMDEN, CASSELMAN &
4                                             PEARSON L.L.P.

5

6    By:

7                                                I. DONALD WEISSMAN
                                             Attorneys for Plaintiffs
8    LYDIA HARRIS and NEW IMAGE MEDIA
     CORPORATION

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*NOTICE OF ENTRY OF JUDGMENT*

400205.1

00110

1   DAVID B. CASSELMAN (SBN 81657)
    I.DONALD WEISSMAN (SBN 67980)
2   WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
    5567 Reseda Boulevard, Suite 330
3   Post Office Box 7033
    Tarzana, California 91357-7033
4   Telephone:  (818) 705-6800 • (323) 872-0995
    Facsimile:   (818) 705-8147
5
    Attorneys for Plaintiffs
6   LYDIA HARRIS and NEW IMAGE MEDIA
    CORPORATION
7

**FILED**
LOS ANGELES SUPERIOR COURT

APR 1 4 2005

JOHN A. CLARKE, CLERK
E. Martinez
BY ELIZABETH MARTINEZ, DEPUTY

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                   FOR THE COUNTY OF LOS ANGELES

10

11  LYDIA HARRIS, LIFESTYLE            ) CASE NO. BC 268857
    RECORDS, INC., AND NEW IMAGE       )
12  MEDIA CORP.,                       )
                                       ) Case Assigned to:
13          Plaintiffs,                ) Judge Ronald M. Sohigian - Dept. 41
                                       )
14      v.                             ) [Complaint Filed: February 26, 2002]
                                       )
15  KEVIN GILLIAM AKA BATTLECAT;       )
    MARION H. KNIGHT AKA SUGE          )
16  KNIGHT; DEATH ROW RECORDS;         ) NOTICE OF ENTRY OF JUDGMENT
    THA ROW, INC.; DAVID E. KENNER;    )
17  DAVID E. KENNER PROFESSIONAL       )
    LAW CORPORATION; DAVID E.          )
18  KENNER, A PROFESSIONAL             )
    CORPORATION; THE DAVID E.          )
19  KENNER TRUST; INTERSCOPE           )
    RECORDS; JIMMY IOVINE; JOHN T.     )
20  MCCLAIN, JR.; A&M RECORDS; ET      )
    AL.,                               )
21                                     )
            Defendants.                )
22  _____)

23  TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

24

25      PLEASE TAKE NOTICE that pursuant to the Judgment dated March 9, 2005 (a true

26  and correct copy of which is attached hereto as Exhibit A), judgment was entered in the sum of

27  $107,000,000.00, together with interest thereon at the rate of ten (10) percent per year from

28  March 9, 2005, in favor of LYDIA HARRIS and NEW IMAGE MEDIA CORP. and against

_____
400205.1                    *NOTICE OF ENTRY OF JUDGMENT*

ORIGINAL FILED

MAR 0 9 2005

LOS ANGELES
SUPERIOR COURT

1   DAVID B. CASSELMAN (SBN 81657)
    I.DONALD WEISSMAN (SBN 67980)
2   WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
    5567 Reseda Boulevard, Suite 330
3   Post Office Box 7033
    Tarzana, California 91357-7033
4   Telephone:  (818) 705-6800 · (323) 872-0995
    Facsimile:  (818) 705-8147
5
    Attorneys for Plaintiffs
6   LYDIA HARRIS and NEW IMAGE MEDIA
    CORPORATION
7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                   FOR THE COUNTY OF LOS ANGELES

10

11  LYDIA HARRIS, LIFESTYLE          )   CASE NO. BC 268857
    RECORDS, INC., AND NEW IMAGE     )
12  MEDIA CORP.,                     )
                                     )   Case Assigned to:
13            Plaintiffs,            )   Judge Ronald M. Sohigian - Dept. 41
                                     )
14      v.                           )   [Complaint Filed: February 26, 2002]
                                     )
15  KEVIN GILLIAM AKA BATTLECAT;     )
    MARION H. KNIGHT AKA SUGE        )
16  KNIGHT; DEATH ROW RECORDS;       )   JUDGMENT
    THA ROW, INC.; DAVID E. KENNER;  )
17  DAVID E. KENNER PROFESSIONAL     )
    LAW CORPORATION; DAVID E.        )
18  KENNER, A PROFESSIONAL           )
    CORPORATION; THE DAVID E.        )
19  KENNER TRUST; INTERSCOPE         )
    RECORDS; JIMMY IOVINE; JOHN T.   )
20  MCCLAIN, JR.; A&M RECORDS; ET    )
    AL.,                             )
21                                   )
              Defendants.            )
22

23      Upon the Order striking the Answer of MARION H. KNIGHT, aka SUGE KNIGHT, AND

24  DEATH ROW RECORDS, INC., ~~DEATH ROW RECORDS L.L.C., and THA ROW, INC.,~~

25  to Plaintiffs' Complaint and entering default thereon, consideration of the Plaintiffs' Application

26  for Default Prove-up Damages and the supporting declarations of Lydia Harris, I.Donald

27  Weissman, Michael Harris and Phil Ames, and good cause appearing therefor,

28
                            Ex A /

                    _____JUDGMENT_____

IT IS HEREBY ADJUDGED that judgment is entered in favor of plaintiffs, LYDIA

HARRIS and NEW IMAGE MEDIA CORP., and against defendants, MARION H. KNIGHT

aka SUGE KNIGHT, DEATH ROW RECORDS, INC., ~~a DEATH ROW RECORDS L.L.C.,~~

~~and DTH ROW, INC.~~, in the sum of $ _45 000 000_ for economic damages,

$_2 000 000_ for non-economic damages, $ _60 000 000_ for punitive damages.

Further, PLAINTIFFS to recover costs pursuant to a memorandum of costs to be filed

pursuant to the statute _IN THE AMOUNT OF $_ _____.

Dated: _MAR 0 9 2005_

**RONALD M. SOHIGIAN**
JUDGE OF THE LOS ANGELES SUPERIOR COURT

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
P.O. BOX 7033
TARZANA, CALIFORNIA 91357-7033

2

JUDGMENT

00113

**PROOF OF SERVICE**
Harris et al. v. Gilliam et al.
BC268857

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:

I am employed in the County of LOS ANGELES, STATE OF CALIFORNIA. My business address is: 5567 Reseda Boulevard, Suite 330, Post Office Box 7033, Tarzana, California 91357-7033. I am over the age of 18 years and am not a party to this action.

On April 13, 2005, I served the following document(s) entitled NOTICE OF ENTRY OF JUDGMENT on ALL INTERESTED PARTIES in this action:

Dermot Damian Givens, Esq.            Attorney for defendant MARION H.
433 N. Camden Dr., Ste. 600           KNIGHT, DEATH ROW RECORDS
Beverly Hills, CA 90210               and THA ROW, INC.

☒   **BY MAIL:** By placing a true copy thereof in a sealed envelope addressed as above, and placing it for collection and mailing following ordinary business practices. I am readily familiar with the firm's practice of collection and processing correspondence, pleadings, and other matters for mailing with the United States Postal Service. The correspondence, pleadings and other matters are deposited with the United States Postal Service with postage thereon fully prepaid in Tarzana, California, on the same day in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐   **BY OVERNIGHT COURIER:** I caused the above-referenced document(s) to be delivered to _____ for delivery to the above address(es).

☐   **BY FAX:** I transmitted a copy of the foregoing document(s) this date via telecopier to the facsimile numbers shown above.

☐   **BY PERSONAL SERVICE:** I served such envelope to be delivered by hand to the offices of the addressee(s).

☒   [State]   I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☐   [Federal]   I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on April 13, 2005, at Tarzana, California.

BILLIE J. TOWE

NOTICE OF ENTRY OF JUDGMENT

400205.1

00114

**EXHIBIT B**

00115

COPY

FILED
LOS ANGELES SUPERIOR COURT

MAR 2 6 2004

JOHN A. CLARKE, CLERK
R. Mathin
BY R. McGLOTHLIN, DEPUTY

1  DAVID B. CASSELMAN (SBN 81657)
   LDONALD WEISSMAN (SBN 67980)
2  WASSERMAN, COMDEN, CASSELMAN & PEARSON, L.L.P.
   5567 Reseda Boulevard, Suite 330
3  Post Office Box 7033
   Tarzana, California 91357-7033
4  Telephone:  (818) 705-6800 • (323) 872-0995
   Facsimile:  (818) 705-8147
5
   Attorneys for Plaintiffs
6  LYDIA HARRIS and NEW IMAGE MEDIA
   CORPORATION
7
8          SUPERIOR COURT OF THE STATE OF CALIFORNIA
9              FOR THE COUNTY OF LOS ANGELES
10
11  LYDIA HARRIS, LIFESTYLE          )  CASE NO. BC 268857
    RECORDS, INC., AND NEW IMAGE     )
12  MEDIA CORP.,                     )
                                     )  Case Assigned to:
13          Plaintiffs,              )  Judge David A. Workman - Dept. 40
                                     )
14      v.                           )  [Complaint Filed:  February 26, 2002]
                                     )
15  KEVIN GILLIAM AKA BATTLECAT;     )
    MARION H. KNIGHT AKA SUGE        )
16  KNIGHT; DEATH ROW RECORDS;       )  ORDER CONFIRMING
    THA ROW, INC.; DAVID E. KENNER;  )  ARBITRATION AWARD AND
17  DAVID E. KENNER PROFESSIONAL     )  JUDGMENT
    LAW CORPORATION; DAVID E.        )
18  KENNER, A    PROFESSIONAL        )
    CORPORATION; THE DAVID E.        )
19  KENNER TRUST; INTERSCOPE         )
    RECORDS; JIMMY IOVINE; JOHN T.   )
20  McCLAIN, JR.; A&M RECORDS; ET    )
    AL.,                             )
21                                   )
            Defendants.              )
22                                   )
23                      ORDER
24
25      The petition of LYDIA HARRIS and NEW IMAGE MEDIA CORP. for an order
26  confirming an arbitration award came on regularly on February 5, 2004, at 8:30 a.m., in
27  Department 40 for hearing by the court.
28

WASSERMAN, COMDEN, CASSELMAN & PEARSON L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
P.O. BOX 7033
TARZANA, CALIFORNIA 91357-7033

372694.1          ORDER CONFIRMING ARBITRATION AWARD AND JUDGMENT

00116