

FILED & ENTERED

NOV 04 2014

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Remy    DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>Lydia E Harris<br><br>Debtor(s).<br><hr>Weinstein Weiss & Ordubegian LLP<br><br>Plaintiff(s),<br><br>v.<br><br>Helen Ryan Frazer, Michael Ray Harris, Wasserman, Comden & Cassleman, LLP<br><br>Defendant(s). | CHAPTER 7<br><br>Case No.: 1:96-bk-15521-GM<br>Adv No:  1:13-ap-01035-MT<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW GRANTING THE TRUSTEE'S MOTION FOR APPROVAL OF COMPROMISE**<br><br>Date:    October 23, 2014<br>Time:    9:30 a.m.<br>Courtroom:  302 |

These findings of fact and conclusions of law are submitted with respect to a motion by Helen Ryan Frazer, chapter 7 trustee ("Trustee") of the bankruptcy estate of Lydia Harris, for approval of a compromise (as amended, doc. #200; the "Motion")

-1-

regarding Adv. No. 13-1035 GM (the "Adversary Proceeding").

## Procedural Background

The Adversary Proceeding is a declaratory relief action brought by Weinstein, Weiss & Ordubegian ("WWO") to resolve conflicting claims to a $107 million judgment issued on 3/9/05 (the "$107M Judgment") by the Los Angeles County Superior Court in favor of debtor Lydia Harris ("Debtor" or "Lydia Harris") and New Image Media Group ("New Image", which is wholly owned by Debtor), against Death Row Records ("DRR") and Marion "Suge" Knight ("Knight").

The defendants in the Adversary Proceeding were (1) the Trustee, (2) the Debtor, (3) Wasserman, Comden & Casselman ("Wasserman"), which is the law firm that represented Lydia Harris in the litigation that resulted in the $107M Judgment, (4) Michael Harris, Debtor's ex-husband asserting a community property interest in the $107M Judgment, (5) Conquest Media Group LLC ("Conquest"), an entity that had asserted an assignment of the Debtor's interest in the $107M Judgment, and (6) New Image.

## Findings of Fact

The following findings of fact are based on evidence submitted to the Court that has not been disputed by any party. (Unless otherwise noted, references to document numbers (doc. #) are in Debtor's Bankruptcy case 96-15521-GM, references to "AP doc. #s" are in the Adversary Proceeding, and references to exhibits are to those attached to the FAC (defined below).)

1. Debtor filed for Chapter 7 relief on 5/17/96. (Debtor was apparently a 50%

shareholder in DRR at the time the petition was filed, but failed to list this asset in her schedules.)  Debtor was denied a discharge under 11 U.S.C. §727 on 7/21/97 and the case was closed, without administration of any assets, on 12/15/99 (doc. #80).

2. Debtor entered into the written contingent fee agreement with Wasserman on 1/25/02 (exh. 2).  On 2/26/02 Wasserman filed Debtor's complaint against DRR, Knight and others in Los Angeles Superior Court (exh. 3).  Wasserman prosecuted this lawsuit and on 3/9/05 the Superior Court issued the $107M Judgment (exh. 1), on default, after striking DRR and Knight's answer.

3. On 5/19/05, Debtor fired Wasserman and Wasserman filed a notice of Attorney Lien (in L.A. Superior Court) for 40% of payments received on the $107M Judgment (exh. 4).

4. On 5/20/05 and 5/27/05, Knight paid Debtor $1 million, in partial payment on the $107M Judgment (Declaration of Helen Ryan Frazer submitted in support of Motion for Default Judgment (AP 08-01488 doc. #16) ¶¶ 6, 7).  Debtor neither informed Wasserman of these payments nor paid any part of this money to Wasserman (Declaration of David Casselman in support of Motion to Approve Compromise (doc. #170) ¶ 11).

5. In December 2005, the Monterey Superior Court entered a judgment of dissolution of the marriage of the Debtor and Michael Harris (the "Dissolution Judgment").  *See* Opposition (defined below) at 3:6-7.  The Dissolution Judgment (which is attached to Mr. Harris's proof of claim in the DRR Case and thus part of Exhibits 8A & 8B to the FAC) stated that the $107M Judgment was community property, but the allocation between Lydia and Michael was reserved (Dissolution Judgment ¶ 13).  A trial on allocation was set for January 30, 2006 (*Id.* ¶ 19). (It does not appear

that the trial and allocation ever occurred. Recital G. to the 2008 Settlement Agreement (defined below) stated that the allocation had never been adjudicated. Michael has referred repeatedly to the Dissolution Judgment, but has not referred to any further allocation.) The Dissolution Judgment also states that "[o]f the monies received by [Debtor] from Marion Knight to date," $179,000 shall be paid to Mr. Harris (Dissolution Judgment ¶ 1).

6. On 4/4/06 Knight and DRR filed for chapter 11 relief in the Central District of California, Case Nos. 06-11187-VZ and 06-11205-VZ. (Both cases were subsequently converted to Chapter 7s on 11/25/09 and consolidated (the "DRR Case" and the "DRR Estate").)

7. During 2006, the Debtor, Michael Harris (who asserts a community property interest in the $107M Judgment pursuant to the Dissolution Judgment) and Wasserman all filed proofs of claim based on the $107M Judgment in the DRR Case (exhs. 6A, 6B, 8A, 8B, 9A & 9B).

8. On 6/12/06, Debtor hired WWO to represent her in the DRR Case. The "Retention Agreement" (exh. 7 filed under seal) provides for WWO to be retained (on an hourly basis) and also expressly grants WWO an attorney's lien on any recovery from the DRR Case, including recovery on the $107M Judgment.

9. On 8/21/07, the Debtor's chapter 7 was reopened (doc. #85), on motion made by the Trustee after she learned of the $107M Judgment and determined that it might be based on Debtor's rights existing on the petition date.

10. On 2/8/08, the trustees in the DRR Case, the Trustee, the Debtor, Michael Harris and Conquest entered into an Agreement and Mutual Release (exh. 1 to the Opposition; the "2008 Settlement Agreement"), which (i) allowed Debtor, Michael Harris

and Conquest's collective claims in the amount of a $30 million unsecured claim and a $15 million subordinated claim and (ii) contained detailed provisions for when these claims would receive distributions relative to other claims.  The 2008 Settlement Agreement also provided that Debtor, Michael Harris, Conquest and Trustee would reach a separate agreement on what portion of this distribution the Trustee would receive (*Id.* ¶ 3.f).  The 2008 Settlement Agreement was approved and the Trustee was authorized to take action pursuant to its terms by order entered 6/6/08 (doc. #105, order signed by Zurzolo, J.)

11. On 8/22/08, the Trustee filed adversary proceeding 08-01488-GM seeking to recover the $1 million paid to Debtor by Knight, on grounds it was property of the estate.  On 9/15/09, the Court entered a default judgment of $1 million against Debtor in favor of the Trustee (exh. 14; the "Trustee's Judgment").

12. In September 2008, WWO withdrew as counsel for the Debtor.  WWO alleges that it is owed over $500,000 by the Debtor and filed notices of attorney's lien in the Lydia Harris, DRR and Knight bankruptcies (exhs. 18, 19 & 20).

13. On 2/15/13 WWO filed a complaint commencing the Adversary Proceeding, after it became apparent that there would be a small distribution in the DRR Case and the parties became more interested in resolving their rights to this distribution (AP doc. #1).

14. On 4/9/13, the Trustee filed an abstract of the Trustee's Judgment in the Los Angeles County Recorder's office (exh. 15B).  In August 2013, the Trustee filed a Notice of Lien based on the Trustee's Judgment (i) in the DRR Case and (ii) with the Secretary of State (Trustee's Motion to Dismiss Adversary Proceeding (AP doc. #70) exhs. 4 & 5).

15. The original complaint in the Adversary Proceeding was dismissed with

leave to amend by order entered 7/23/13 (AP doc. #48). WWO filed a First Amended Complaint (AP doc. #64; the "FAC") on 8/12/13.  The FAC asserts three claims for relief, seeking judicial determinations that:

- WWO has a fully enforceable lien against the $107M Judgment and related assets;
- the $107M Judgment and related assets are not part of the Debtor's estate (or if they are part of the estate seeking apportioning between estate and non-estate portions); and
- WWO has priority over other interests in the $107M Judgment and related assets (or alternatively, in the case of Wasserman, is at least *pari passu*).

16.  On 9/12/13, the Trustee filed a Motion to Dismiss the FAC, which was denied (doc. #s 90, 91).

17.  On 10/21/13, the Clerk of the Court entered a Default against Conquest, New Image and Lydia Harris (AP doc. #s 76, 77, 78).  On 3/7/14, a default judgment was entered against Conquest, New Image and Lydia Harris (AP doc. #113).  (Lydia Harris' subsequent motion to set aside the default judgment entered against her was denied (doc. #s 135, 138).)  Thus, only remaining defendants litigating in this proceeding are the Trustee, Wasserman and Michael Harris.

18.  On 11/14/13 WWO, Wasserman, the Trustee and Michael Harris entered into a stipulation (AP doc. #87), which provides that any distribution from the DRR Case would be paid to the Trustee to hold as custodian pending resolution of the conflicting claims to the money.

**Conclusions of Law**

19. The Trustee is seeking approval of a compromise pursuant to Fed. R. Bankr. P. 9019, thus the question is whether the Settlement is fair, reasonable and adequate to the estate under the factors articulated by the Ninth Circuit:

> In determining the fairness, reasonableness and adequacy of a proposed settlement agreement, the court must consider: (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*In re A & C Properties*, 784 F.2d 1377, 1381 (9th Cir. Cal. 1986), *cert. denied sub nom., Martin v. Robinson*, 479 U.S. 854 (1986). The Court is not required to take evidence and decide questions of law or fact. Instead, the Court should review the issues and determine whether the "settlement falls below the lowest point in a range of reasonableness." *In re Teletronics Service, Inc.,* 762 F.2d 189 (2nd Cir. 1985).

20. By the Court's calculations, the estate will receive approximately $261,000, which is a little more than half of the Preliminary Distribution. Trustee states that this amount will pay administrative expenses and possibly allow for a distribution to creditors. It also resolves a number of outstanding claims that were causing significant litigation. The Trustee is giving up any rights to share in further distributions. The Trustee has concluded that the Settlement is fair and equitable and in the bests interests in the estate because it avoids costly further litigation and uncertainty while giving the estate a substantial up-front payment that will allow payment of administrative expenses and probably some portion of unsecured claims. It will thus allow the timely wind up of the Debtor's estate **after 18 years**. This Settlement easily meets the standards for approval; it is a sound exercise of the Trustee's business judgment and falls well within the range of reasonableness.

21. Given the legal complexity of the issues that would ultimately determine

WWO, Wasserman and the Trustee's relative entitlement to distributions on account of the $107M judgment and the resulting uncertainty (all as outlined in detailed in the Court's rulings on both motions to dismiss in the adversary proceeding (AP doc. ##s 43, 90)), (i) the probability of success and (ii) the complexity, expenses, inconvenience, and delay factors both favor settlement.

22. Michael Harris is not listed in the Debtor's schedules as a creditor. He did not file a proof of claim, and the time to do so has long run. He is simply not a creditor of this estate. He may be entitled to be heard on whether this Settlement is fair and equitable, as this Court previously found (Memorandum of Decision entered June 3, 2013 (doc. #184) at 15:3-8), but he stands to receive funds solely through his community property rights *vis a vis* Lydia Harris. He has appeared through a number of different attorneys in this case and has yet to clearly articulate any theory of his rights other than what he might receive through community property distributions to Lydia Harris.

23. Mr. Harris argues that the litigation is neither complex nor expensive. However, his assertion is not persuasive. Having devoted considerable attention to this matter, the Court understands that the issues are complex. The litigation is particularly expensive relative to the amount of money at issue and could easily preclude any meaningful recovery by the estate. The litigation to date has been complex and extremely costly, and the many parties have just gotten past the pleading stage. It would also cause great delay and inconvenience to the administration of this estate - a 1996 bankruptcy case that should be wrapped up.

24. The difficulty of collection is not relevant as any distributions will be received by the Trustee directly from the DRR Estate, to be held pending resolution.

25. The interests of creditors strongly favor the Settlement. The Trustee has concluded they will likely receive a distribution under the Settlement, or that this is the only chance they have at a distribution. If the Trustee is required to litigate all of this to the end, it is unlikely creditors will receive anything and the administrative expenses may not even be covered. This payment can be made soon, and the estate can be wound up. Given the costs and risks of litigation, the Settlement appears be only way for the Trustee to even have a chance to make any meaningful distribution to creditors. Mr. Harris argues that the Settlement is not in the best interests of creditors, but he bases that conclusion on the fact that it is not in *his* best interest, which is not the relevant inquiry. Without articulating how exactly he stands to receive anything, he would like to deny anything to any other creditor through requiring additional litigation.

26. Michael Harris had originally been a party to the Settlement, but then withdrew and is now arguing that the Settlement cannot proceed without his consent. (He has recently retained new counsel, and current counsel does not appear to have the benefit of lengthy hearings, rulings and documents filed earlier in the bankruptcy and adversary cases.) Mr. Harris asks the Court to reject the Settlement because it ignores his rights as a major creditor, arguing that WWO has never shown how its rights in the $107M Judgment are superior to Mr. Harris's rights.

27. Mr. Harris, in fact, has not ever articulated a legal theory why his interest in the $107M Judgment is either senior or *pari passu* to WWO, Wasserman and the Trustee. The Court has previously concluded that the Debtor's (and thus Mr. Harris's community property) rights in monies to be paid from the DRR Estate were subordinate to liens on the $107M Judgment (Memorandum of Decision entered June 3, 2013 (doc. #184) at 16:4-19). (And, of course, the pre-petition portion of the $107M Judgment is

simply part of the estate. *Id.*) Mr. Harris offers neither facts nor law to disturb that conclusion. He argues that the December 2005 Dissolution Judgment granted him community property rights, but does not explain why those community property rights are anything but an equity interest shared with the Debtor and thus subordinate to all existing liens on the $107M Judgment.

28. The Dissolution Judgment stated that the $107M Judgment was community property, but the allocation between Lydia and Michael was reserved (and does not appear to have occurred). Nothing in the Dissolution Judgment changes the Court's earlier conclusion that Michael shares community property ownership of the $107M Judgment, subject to all liens on that judgment.

29. Mr. Harris argues that the 2008 Settlement precludes this Settlement, although his reasoning is again not articulated and is inconsistent with the Court's reading of the 2008 Settlement Agreement. The 2008 Settlement was between the DRR parties, on the one hand, and the Trustee, Debtor and Mr. Harris, on the other. It set the amount and treatment of the claim against the DRR Estate based on the $107M Judgment, but left allocation of that claim to be resolved by the Trustee, Debtor and Mr. Harris. Wasserman and WWO were not parties to the 2008 Settlement, so it does not bind them.

30. Mr. Harris also argues against recovery by Wasserman and WWO on equitable grounds: "What kind of contingency fee is it when the lawyers get 100% and the client gets nothing?" (Opposition at 8:21-9:2) This argument ignores the plain facts. The Debtor received (prior to the Dissolution Judgment), $1 million from Knight on account of the $107M Judgment. Under the Dissolution Judgment, Mr. Harris received $179,000 of the money left in the community from that payment. The equities are

against Mr. Harris: he is the only current party in the Adversary Proceeding to have received anything on account of the $107M Judgment to date. He may have a dispute with Lydia Harris, but the Trustee also did not receive any of that $1 million.

31. The standards for approval require the Court to defer to the business judgment of the Trustee and approve any reasonable settlement. Given the importance of the Settlement for the estate to actually receive any benefit from the $107M Judgment, not approving the Settlement would be wholly unreasonable. Mr. Harris's repeated, but wholly unsupported, assertion of rights to the $107M Judgment does not change that conclusion.

**Conclusion**

For the reasons stated above, the Motion is GRANTED.

###

Date: November 4, 2014

*Maureen A. Tighe*
Maureen A. Tighe
United States Bankruptcy Judge

-11-