FILED & ENTERED

MAY 13 2015

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Fisher    DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SAN FERNANDO VALLEY DIVISION

| In re: | CHAPTER 7 |
|---|---|
| Lydia E Harris | Case No.:  1:96-bk-15521-GM<br>Adv No:   1:13-ap-01035-MT |
| Debtor(s). | |
| Weinstein Weiss & Ordubegian LLP | **NOTICE OF TENTATIVE RULING RE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST MICHAEL HARRIS** |
| Plaintiff(s), | |
| v. | |
| Helen Ryan Frazer, Michael Ray Harris, Wasserman, Comden & Cassleman, LLP | |
| Defendant(s). | Date:       May 6, 2015<br>Time:       1:00 p.m.<br>Courtroom:  302 |

At the above date and time, the Court held a hearing on the Motion for Summary Judgment Against Michael Harris (the "MSJ"), filed by plaintiff Weinstein Weiss & Ordubegian LLP.  Appearances are as noted on the record for the hearing.  At the hearing, the Court adopted its tentative ruling on the MSJ.  A copy of the Court's tentative ruling is attached to this cover page.

-1-

Plaintiff Weinstein, Weiss & Ordubegian ("WWO") brings a motion for summary judgment against defendant Michael Harris in this adversary proceeding (Adv. No. 13-1035-MT; the "Adversary Proceeding").

**Procedural Background**

The Adversary Proceeding is a declaratory relief action brought by WWO to resolve conflicting claims to a $107 million judgment issued on 3/9/05 (the "$107M Judgment") by the Los Angeles County Superior Court in favor of debtor Lydia Harris ("Debtor" or "Lydia Harris") and New Image Media Group ("New Image", which is wholly owned by Debtor), against Death Row Records ("DRR") and Marion "Suge" Knight ("Knight").  (Unless otherwise noted, references to doc. #s are in Debtor's Bankruptcy case 96-15521-GM, references to AP doc. #s are in the Adversary Proceeding, and references to exhibits are to those attached to the FAC (defined below).)

The defendants in the Adversary Proceeding were (1) Helen Ryan Frazer, chapter 7 trustee ("Trustee") of the bankruptcy estate of Lydia Harris, (2) Lydia Harris, (3) Wasserman, Comden & Casselman ("Wasserman"), which is the law firm that represented Lydia Harris in the litigation that resulted in the $107M Judgment, (4) Michael Harris, Debtor's ex-husband asserting a community property interest in the $107M Judgment, (5) Conquest Media Group LLC ("Conquest"), an entity that had asserted an assignment of the Debtor's interest in the $107M Judgment, and (6) New Image.

**Factual Background** – Below are findings of fact (based on evidence submitted to the Court that had not been disputed by any party) made by this Court in Findings of Fact and Conclusions of Law Granting Trustee's Motion for Approval of Compromise ("Findings of Fact"; AP doc. #152):

**Findings of Fact**

1. Debtor filed for Chapter 7 relief on 5/17/96.  (Debtor was apparently a 50% shareholder in DRR at the time the petition was filed, but failed to list this asset in her schedules.)  Debtor was denied a discharge under 11 U.S.C. §727 on 7/21/97 and the case was closed, without administration of any assets, on 12/15/99 (doc. #80).

2. Debtor entered into the written contingent fee agreement with Wasserman on 1/25/02 (exh. 2).  On 2/26/02 Wasserman filed Debtor's complaint against DRR, Knight and others in Los Angeles Superior Court (exh. 3).  Wasserman prosecuted this lawsuit and on 3/9/05 the Superior Court issued

the $107M Judgment (exh. 1), on default, after striking DRR and Knight's answer.

3. On 5/19/05, Debtor fired Wasserman and Wasserman filed a notice of Attorney Lien (in L.A. Superior Court) for 40% of payments received on the $107M Judgment (exh. 4).

4. On 5/20/05 and 5/27/05, Knight paid Debtor $1 million, in partial payment on the $107M Judgment (Declaration of Helen Ryan Frazer submitted in support of Motion for Default Judgment (AP 08-01488 doc. 16) ¶¶ 6, 7). Debtor neither informed Wasserman of these payments nor paid any part of this money to Wasserman (Declaration of David Casselman in support of Motion to Approve Compromise (doc. #170) ¶ 11).

5. In December 2005, the Monterey Superior Court entered a judgment of dissolution of the marriage of the Debtor and Michael Harris (the "Dissolution Judgment"). *See* Opposition (defined below) at 3:6-7. The Dissolution Judgment (which is attached to Mr. Harris's proof of claim in the DRR Case and thus part of Exhibits 8A & 8B to the FAC) stated that the $107M Judgment was community property, but the allocation between Lydia and Michael was reserved (Dissolution Judgment ¶ 13). A trial on allocation was set for January 30, 2006 (*Id.* ¶ 19). (It does not appear that the trial and allocation ever occurred. Recital G. to the 2008 Settlement Agreement (defined below) stated that the allocation had never been adjudicated. Michael has referred repeatedly to the Dissolution Judgment, but has not referred to any further allocation.) The Dissolution Judgment also states that "[o]f the monies received by [Debtor] from Marion Knight to date," $179,000 shall be paid to Mr. Harris (Dissolution Judgment ¶ 1).

6. On 4/4/06 Knight and DRR filed for chapter 11 relief in the Central District of California, Case Nos. 06-11187-VZ and 06-11205-VZ. (Both cases were subsequently converted to Chapter 7s on 11/25/09 and consolidated (the "DRR Case" and the "DRR Estate").)

7. During 2006, the Debtor, Michael Harris (who asserts a community property interest in the $107M Judgment pursuant to the Dissolution Judgment) and Wasserman all filed proofs of claim based on the $107M Judgment in the DRR Case (exhs. 6A, 6B, 8A, 8B, 9A & 9B).

8. On 6/12/06, Debtor hired WWO to represent her in the DRR Case. The "Retention Agreement" (exh. 7 filed under seal) provides for WWO to be retained (on an hourly basis) and also expressly grants WWO an attorney's lien on any recovery from the DRR Case, including recovery on the $107M Judgment.

9. On 8/21/07, the Debtor's chapter 7 was reopened (doc. #85), on motion made by the Trustee after she learned of the $107M Judgment and determined that it might be based on Debtor's rights existing on the petition date.

10. On 2/8/08, the trustees in the DRR Case, the Trustee, the Debtor, Michael Harris and Conquest entered into an Agreement and Mutual Release

(exh. 1 to the Opposition; the "2008 Settlement Agreement"), which (i) allowed Debtor, Michael Harris and Conquest's collective claims in the amount of a $30 million unsecured claim and a $15 million subordinated claim and (ii) contained detailed provisions for when these claims would receive distributions relative to other claims.  The 2008 Settlement Agreement also provided that Debtor, Michael Harris, Conquest and Trustee would reach a separate agreement on what portion of this distribution the Trustee would receive (*Id.* ¶ 3.f).  The 2008 Settlement Agreement was approved and the Trustee was authorized to take action pursuant to its terms by order entered 6/6/08 (doc. #105, order signed by Zurzolo, J.)

  11.  On 8/22/08, the Trustee filed adversary proceeding 08-01488-GM seeking to recover the $1 million paid to Debtor by Knight, on grounds it was property of the estate.  On 9/15/09, the Court entered a default judgment of $1 million against Debtor in favor of the Trustee (exh. 14; the "Trustee's Judgment).

  12.  In September 2008, WWO withdrew as counsel for the Debtor.  WWO alleges that it is owed over $500,000 by the Debtor and filed notices of attorney's lien in the Lydia Harris, DRR and Knight bankruptcies (exhs. 18, 19 & 20).

  13.  On 2/15/13 WWO filed a complaint commencing the Adversary Proceeding, after it became apparent that there would be a small distribution in the DRR Case and the parties became more interested in resolving their rights to this distribution (AP doc. #1).

  14.  On 4/9/13, the Trustee filed an abstract of the Trustee's Judgment in the Los Angeles County Recorder's office (exh. 15B).  In August 2013, the Trustee filed a Notice of Lien based on the Trustee's Judgment (i) in the DRR Case and (ii) with the Secretary of State (Trustee's Motion to Dismiss Adversary Proceeding (AP doc. #70) exhs. 4 & 5).

  15.  The original complaint in the Adversary Proceeding was dismissed with leave to amend by order entered 7/23/13 (AP doc. #48). WWO filed a First Amended Complaint (AP doc. #64; the "FAC") on 8/12/13.  The FAC asserts three claims for relief, seeking judicial determinations that:

- WWO has a fully enforceable lien against the $107M Judgment and related assets;
- the $107M Judgment and related assets are not part of the Debtor's estate (or if they are part of the estate seeking apportioning between estate and non-estate portions); and
- WWO has priority over other interests in the $107M Judgment and related assets (or alternatively, in the case of Wasserman, is at least *pari passu*).

  16.  On 9/12/13, the Trustee filed a Motion to dismiss the FAC, which was denied (doc. #s 90, 91).

-4-

17. On 10/21/13, the Clerk of the Court entered a Default against Conquest, New Image and Lydia Harris (AP doc. #s 76, 77, 78). On 3/7/14, a default judgment was entered against Conquest, New Image and Lydia Harris (AP doc. #113). (Lydia Harris' subsequent motion to set aside the default judgment entered against her was denied (doc. #s 135, 138).) Thus, only remaining defendants litigating in this proceeding are the Trustee, Wasserman and Michael Harris.

18. On 11/14/13 WWO, Wasserman, the Trustee and Michael Harris entered into a stipulation (AP doc. #87), which provides that any distribution from the DRR Case would be paid to the Trustee to hold as custodian pending resolution of the conflicting claims to the money.

Based on these Findings of Facts and accompanying conclusions of law, the Court granted the Trustee's motion (as amended, doc. #200; the "Motion") for approval of a compromise with WWO and Wasserman respecting their respective claims to the $107M Judgment (the "Compromise"). Under the Compromise, (i) a preliminary distribution of $504,452.55 from the DRR Estate was allocated and distributed to the Trustee, WWO, and Wasserman, and (ii) Wasserman and WWO will share (at specified percentages) any further distributions from the DRR Estate. (Michael Harris had originally been a party to the Compromise and was to receive a small distribution, but he withdrew and then opposed the Court's approval of the Compromise.)

Discussion

Summary judgment is proper when the pleadings, discovery, and affidavits show that there is "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the proceedings. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

Mr. Harris argues that the validity and priority of WWO's lien against Mr. Harris has never been litigated, but this adversary proceeding and this summary judgment motion are that litigation. Mr. Harris might have disputed the Court's Findings of Fact, as well as WWO's Statement of Uncontroverted Facts, which are substantially similar, with his own evidence, but he elected not to do so. (His only evidence is a declaration by his counsel who lacks personal knowledge of the relevant facts. WWO's objections to this declaration are well taken and sustained, as noted below.) With no evidence to the contrary, the Court's Findings of Fact remain undisputed and WWO's Statement of Uncontroverted Facts is deemed admitted under Local Bankruptcy Rule 7056-1(f). Both can be used to resolve this proceeding as a matter of law. The undisputed facts relevant to determining the validity and priority of WWO's interest in the $107M Judgment against Michael Harris' interest in the $107M Judgment are as follows:

- In December 2005, the California Superior Court entered a judgment of dissolution of the Harris marriage. The Dissolution Judgment stated that the $107M Judgment was community property and set a trial for allocation (Finding of Fact #5). According to Mr. Harris, that trial never occurred (Opposition at 4:13).
- In June 2006, Lydia Harris signed the Retention Agreement, which grants WWO an attorney's lien on recoveries from the DRR Estate, including from the $107M Judgment (Finding of Fact # 8; Plaintiff's Statement of Uncontroverted Facts #7 & #8).
- WWO was owed over $500,000 for services rendered under the Retention Agreement (Plaintiff's Statement of Uncontroverted Fact # 14).

Under these facts, as a matter of law, WWO's interest in the $107M Judgment and any other recovery from the DRR Estate is superior to Michael Harris's interest. Until allocation, the $107M Judgment remained community property and Lydia Harris had the power to grant a lien on community property that is binding on the community.

> Except as provided in [not applicable provisions], either spouse has the management and control of the community personal property, whether acquired prior to or on or after January 1, 1975, with like absolute power of disposition, other than testamentary, as the spouse has of the separate estate of the spouse.

Cal. Fam.Code § 1100(a); *see also Vick v. DaCorsi*, 110 Cal. App. 4th 206 (Cal. App. 2d Dist. 2003).

The Dissolution Judgment dissolving the Harris's marriage was entered before Lydia Harris granted WWO its lien. However, the $107M Judgment remained community property subject to disposition by either former spouse, because it had not been divided by a court:

> Because the judgment had not been divided by the parties or a court at the time Ruf assigned it to Appellee, it remained community property subject to the unilateral management, and disposition, by either spouse. Therefore, the assignment by Ruf to Appellee was valid.

*In re Zavala*, 505 B.R. 268, 276 (C.D. Cal. 2014).

//

//

Mr. Harris has not made the showing required for a need for further discovery to defeat a motion for summary judgment. Local Bankruptcy Rule 7056(1)(c)(4) provides that:

> If a need for further discovery is asserted as basis for the denial of the motion [for summary judgement], the respondent must identify the specific facts or issues on which discovery is necessary and justify the request for additional time to pursue such discovery.

Mr. Harris has neither identified specific facts/issues nor justified additional time: two years after this proceeding was commenced and without having even started discovery, Mr. Harris now lists 20 (often quite broadly drafted) issues on which discovery is needed before this proceeding can be adjudicated. Mr. Harris's lack of diligence alone is enough to deny a continuance under Fed. R. Civ. P. 56(d). *See Ins. Co. of the State of Pa. v. Nat'l Fire & Marine Ins. Co.*, 592 Fed. Appx. 630 (9th Cir. 2015).

Most fundamentally, the relevant Ninth Circuit precedent requires that the issue be material or essential to Mr. Harris' defense before the need for discovery can be the basis for denial of a summary judgment motion. *Roberts v. McAfee, Inc.,* 660 F.3d 1156 (9th Cir. Cal. 2011). None of these asserted issues are essential because they do not contravene the few and simple facts that support this Court's determination that WWO's interest in the $107M Judgment and its proceeds is superior to Mr. Harris's interests, *i.e.*:

> Mr. Harris interest in the $107M Judgment is a community property interest, which had not been divided by the court at the time that Ms. Harris retained WWO and granted WWO an attorneys' lien in the $107M Judgment. WWO is owed over $500,000 in unpaid legal fees under this retention.

(Mr. Harris makes much of the 2008 Settlement Agreement, but it did not change Mr. Harris's rights *vis a vis* WWO. WWO's lien on the $107M Judgment was already in place and effective against Mr. Harris's community property interest in 2008. As WWO was not a party to the 2008 Settlement Agreement, it could not have waived any of its lien rights in that agreement.)

Mr. Harris also argues that WWO's fees have never been mediated, reviewed for reasonableness, the subject of a fee application, or of benefit to Mr. Harris. Roughly half of his "additional needed discovery" concerns this issue. WWO's right to fees and corresponding attorney's lien arises from a contract between WWO and Lydia Harris. Thus, there is no legal requirement that WWO submit a fee application to any court, that

this Court pass on the reasonableness of the fees, that WWO mediate the fees (unless Lydia Harris had objected to them and there is no evidence of that), or that WWO's legal work be of benefit to Mr. Harris. Mr. Harris's list of "necessary discovery" on this issue strongly suggests that his goal is a line-by-line reappraisal of WWO's invoices, almost ten years after the fact and without any legal entitlement to do so. The Court will not permit that litigation tactic.

Evidentiary Objections SUSTAINED; Motion GRANTED

###

Date: May 13, 2015

Maureen A. Tighe
United States Bankruptcy Judge